Keith J. Shapiro (Admitted Pro Hac Vice)
Andrew Cardonick (Admitted Pro Hac Vice)
David W. Baddley (Admitted Pro Hac Vice)
GREENBERG TRAURIG, LLP
77 West Wacker Drive, Suite 3100
Chicago, IL 60601
Telephone: 312/456-8400
Facsimile: 312/456-8465

John D. Fiero (CA Bar No. 136557)
Kenneth H. Brown (CA Bar No. 100396)
PACHULSKI STANG ZIEHL & JONES LLP
150 California Street, 15th Floor
San Francisco, California 94111-4500
Telephone: 415/263-7000
Facsimile: 415/263-7010

E-mail:jfiero@pszjlaw.com
      kbrown@pszjlaw.com

Attorneys for Debtor and Debtor in Possession Heller Ehrman LLP

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>Heller Ehrman LLP,<br><br>            Debtor | Case No.: 08-32514<br><br>Chapter 11<br><br>**DEBTOR'S RESPONSE TO QUESTIONS POSED BY THE COURT REGARDING MOTION FOR ORDER AUTHORIZING THE ESTATE'S PURCHASE OF TAIL LEGAL MALPRACTICE INSURANCE COVERAGE PURSUANT TO 11 U.S.C. § 363(B)(1)**<br><br>Date: January 28, 2009<br>Time: 1:30 p.m.<br>Place: U. S. Bankruptcy Court<br>       235 Pine Street, 22nd Floor<br>       San Francisco, CA<br>Judge: Honorable Dennis Montali |

**TO THE HONORABLE DENNIS MONTALI, UNITED STATES BANKRUPTCY JUDGE:**

Heller Ehrman LLP, the debtor and debtor-in-possession herein (the "Debtor"), hereby submits the following responses to the inquiries posed by the Court in its journal entry of January 18, 2009 with regard to the Debtor's *Motion for Order Authorizing the Estate's Purchase of Tail Legal Malpractice Insurance Coverage Pursuant to 11 U.S.C. §363(b)(1)* (the "Motion"):

1. <u>Will the debtor pay the three remaining payments to AFCO?</u> Yes, although there are only two remaining monthly installments, due on February 14 and March 14, 2009.

2. <u>If so, why is this necessary if debtor is no longer rendering legal services?</u> The Debtor is still acting in ways that could trigger liability that would be covered by the existing policy. This activity includes file transfer, file disposal, and the culling of files for documents which must be preserved under the rules governing attorney file maintenance, such as original wills. These current activities will not be insured against by the tail, because it relates solely to acts that occurred prior to January 1, 2009.

The Debtor believes that, at this time (when no tail is in place), the ability to present claims to the current malpractice carrier is absolutely necessary. Moreover, in the event the Motion is denied, then the current coverage will act as a form of tail policy (albeit of limited duration). Specifically, the Debtor will still have the ability to report claims to the existing carrier (the Debtor has received the carrier's assurance that the current coverage will remain in place for remainder of the policy period so long as the monthly payments are made to AFCO).

3. <u>Why is it necessary to obtain $20 million in coverage, rather than $7.5 million, or perhaps $10 million?</u> The claims history and claims disclosed in the Motion are only those that the Debtor is currently aware of. There are likely other claims which have been incurred but are not yet reported. The incremental cost of the additional coverage (from $10 million to $20 million) is modest in relation to the increase in coverage -- $750,000 plus tax.

4. <u>Why not save approximately $3.5 million, and let uninsured malpractice claims be treated the same as other general unsecured claims?</u> The Debtor believes this proposition only makes sense if one assumes that there is a finite exposure to malpractice claims of $7.5 million. The

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

exposure could be much higher. $20 million of coverage will protect creditors from an outcome that could otherwise present significant dilution to the creditor distribution.

5. <u>How will the $2 million self-insured retention be handled if and when a claim arises after expiration of the current insurance?</u> Assets of the estate will be needed to fund the litigation defending any such claims up to the self-insured retention amount. This is contested claims litigation, and the estate would be required to fund it in any case unless the Debtor elected to stipulate to the amount of any given malpractice claim.

6. <u>What is the estimated amount of taxes that must be paid in addition to the $3.5 million cost of coverage?</u> The Debtor believes that the premium tax is not substantial – approximately $3.5% of the total premium, and will confirm this information with the broker prior to the hearing.

The Debtor will be prepared to present the testimony of its primary insurance expert, Paul Sugarman, Esq. (a member of the firm's Dissolution Committee), to supplement these responses at the hearing. Mr. Sugarman has been out of the country in rural Central America since January 6, 2009, and the ability to communicate with him has been very limited. Mr. Sugarman returns to the United States on or about January 26, 2009.

Dated: January 23, 2009        PACHULSKI STANG ZIEHL & JONES LLP

By    */s/ John D. Fiero*
      John D. Fiero (CA Bar No. 136557)
      Kenneth H. Brown (CA Bar No. 100396)
      Attorneys for Debtor and Debtor in
      Possession Heller Ehrman LLP