1    John D. Fiero (CA Bar No. 136557)
     Kenneth H. Brown (CA Bar No. 100396)
2    Teddy M. Kapur (CA Bar No. 242486)
     PACHULSKI STANG ZIEHL & JONES LLP
3    150 California Street, 15th Floor
     San Francisco, California  94111-4500
4    Telephone: 415/263-7000
     Facsimile: 415/263-7010
5
     E-mail: jfiero@pszjlaw.com
6            kbrown@pszjlaw.com
             tkapur@pszjlaw.com
7
     Attorneys for Heller Ehrman LLP,
8    Debtor and Debtor in Possession
9    Steven H. Felderstein (CA Bar No. 56978)
     Thomas A. Willoughby (CA Bar No. 137597)
10   Joan S. Huh (CA Bar No. 225724)
     FELDERSTEIN FITZGERALD WILLOUGHBY &
11   PASCUZZI LLP
     400 Capitol Mall, Suite 1450
12   Sacramento, CA  95814
     Telephone: (916) 329-7400
13   Facsimile: (916) 329-7435

14   Attorneys for The Official Committee of Unsecured Creditors

15                   UNITED STATES BANKRUPTCY COURT
16                   NORTHERN DISTRICT OF CALIFORNIA
                          SAN FRANCISCO DIVISION
17
     In re:                              Case No.:  08-32514
18
     **HELLER EHRMAN LLP,**              Chapter 11
19
                        Debtor.          **JOINT PLAN OF LIQUIDATION OF**
20                                       **HELLER EHRMAN LLP**

21                                       **Confirmation Hearing**

22                                       Date:   TBA
                                         Time:   TBA
23                                       Place:  United States Bankruptcy Court
                                                 235 Pine Street, 22nd Floor
24                                                San Francisco, CA
                                         Judge:  Honorable Dennis Montali
25

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

# TABLE OF CONTENTS

**Page**

ARTICLE I DEFINITIONS ............................................................................................................ 2

| | | |
|---|---|---|
| 1.1 | "Administrative Claim" ........................................................................ | 3 |
| 1.2 | "Administrative Claims Bar Date" ...................................................... | 3 |
| 1.3 | "Administrative Claims Bar Date Order" ............................................ | 3 |
| 1.4 | "Allowed" ............................................................................................. | 3 |
| 1.5 | "Allowed Secured Claim" .................................................................... | 4 |
| 1.6 | "Allowed Unsecured Claim" ................................................................ | 4 |
| 1.7 | "Amended Complaint" ......................................................................... | 4 |
| 1.8 | "Assumed Contract" or "Assumed Contracts" ................................... | 5 |
| 1.9 | "Assumption and Cure Order" ............................................................ | 5 |
| 1.10 | "Available Cash" ................................................................................. | 5 |
| 1.11 | "Avoidance Actions" ........................................................................... | 5 |
| 1.12 | "Ballot" ................................................................................................ | 5 |
| 1.13 | "Bank of America" .............................................................................. | 5 |
| 1.14 | "Bank of America Preference Action" ................................................. | 5 |
| 1.15 | "Bankruptcy Code" .............................................................................. | 5 |
| 1.16 | "Bankruptcy Court" ............................................................................. | 5 |
| 1.17 | "Bankruptcy Rules" ............................................................................ | 5 |
| 1.18 | "Bar Date" ........................................................................................... | 6 |
| 1.19 | "Biggers Adversary" ........................................................................... | 6 |
| 1.20 | "Biggers Approval Order" ................................................................... | 6 |
| 1.21 | "Biggers Defendant Shareholder Class" ............................................ | 6 |
| 1.22 | "Biggers Class" ................................................................................... | 6 |
| 1.23 | "Biggers Priority Employee Claim" .................................................... | 6 |
| 1.24 | "Biggers Opt Out" ............................................................................... | 7 |
| 1.25 | "Biggers Opt Out Deadline" ................................................................ | 7 |
| 1.26 | "Biggers Settlement Agreement" ........................................................ | 7 |
| 1.27 | "Biggers Settlement Release" ............................................................. | 7 |
| 1.28 | "Biggers Subordinated Unsecured Claim" ......................................... | 7 |
| 1.29 | "Biggers Unsecured Claim" ................................................................ | 7 |
| 1.30 | "Business Day" .................................................................................... | 7 |
| 1.31 | "Cash" .................................................................................................. | 7 |
| 1.32 | "Chapter 11 Case" ............................................................................... | 8 |
| 1.33 | "Citibank" ............................................................................................ | 8 |
| 1.34 | "Claim" ................................................................................................ | 8 |
| 1.35 | "Claimant" ........................................................................................... | 8 |
| 1.36 | "Claims Reserve Account" .................................................................. | 8 |
| 1.37 | "Class" ................................................................................................. | 8 |
| 1.38 | "Class Counsel" .................................................................................. | 8 |
| 1.39 | "Class Proof of Claim" ........................................................................ | 8 |
| 1.40 | "Committee" ........................................................................................ | 8 |
| 1.41 | "Confirmation" .................................................................................... | 8 |
| 1.42 | "Confirmation Date" ........................................................................... | 8 |
| 1.43 | "Confirmation Hearing" ...................................................................... | 9 |
| 1.44 | "Confirmation Order" ......................................................................... | 9 |
| 1.45 | "Contingent Claim" ............................................................................. | 9 |
| 1.46 | "Creditor" ............................................................................................ | 9 |
| 1.47 | "Cure Obligation" ............................................................................... | 9 |
| 1.48 | "Debt" .................................................................................................. | 9 |
| 1.49 | "Debtor" ............................................................................................... | 9 |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

DOCS_SF:67453.10

1.50 "Disallowed Claim" ........................................................................................ 9
1.51 "Disclosure Statement" ................................................................................ 10
1.52 "Dissolution Committee" .............................................................................. 10
1.53 "Disputed Claim" ............................................................................................ 10
1.54 "Disputed Claims Amount" .......................................................................... 10
1.55 "Effective Date" .............................................................................................. 10
1.56 "Employee Benefit Plans" ............................................................................ 10
1.57 "Employee Retention Orders" ..................................................................... 11
1.58 "Estate" .............................................................................................................. 11
1.59 "Estate Assets" ................................................................................................ 11
1.60 "Exculpated Parties" ...................................................................................... 11
1.61 "Final Order" ................................................................................................... 11
1.62 "Former Shareholders" .................................................................................. 11
1.63 "Heller Ehrman" ............................................................................................. 11
1.64 "Heller Ehrman PCs" ..................................................................................... 12
1.65 "Initial Trust Corpus" .................................................................................... 12
1.66 "Insured Malpractice Claim" ....................................................................... 12
1.67 "Insured Portion" ............................................................................................ 12
1.68 "Interest Holder" ............................................................................................ 12
1.69 "Interests" ......................................................................................................... 12
1.70 "LEO Plan" ....................................................................................................... 12
1.71 "Lien" .................................................................................................................. 12
1.72 "Liquidating Debtor" ..................................................................................... 12
1.73 "Malpractice Claim" ....................................................................................... 12
1.74 "Malpractice Costs and Expenses" ............................................................ 13
1.75 "Malpractice Policy" or "Policies" ............................................................ 13
1.76 "MPC" ................................................................................................................ 13
1.77 "Net SIR" ........................................................................................................... 13
1.78 "New Plan Documents" ................................................................................ 13
1.79 "Non-Debtor Biggers Defendants" ............................................................ 13
1.80 "Petition Date" ................................................................................................ 13
1.81 "Plaintiff Class Members" ............................................................................ 13
1.82 "Plaintiff Class Representatives" ............................................................... 13
1.83 "Plan" ................................................................................................................. 13
1.84 "Plan Administrator" ..................................................................................... 14
1.85 "Plan Expenses" .............................................................................................. 14
1.86 "Plan of Dissolution" .................................................................................... 14
1.87 "Priority Employee Claim" .......................................................................... 14
1.88 "Priority Tax Claim" ...................................................................................... 14
1.89 "Professional Fees" ........................................................................................ 14
1.90 "Professionals" ................................................................................................ 14
1.91 "Pro Rata" or "Pro Rata Share" .................................................................. 15
1.92 "Rejected" ......................................................................................................... 15
1.93 "Rejection Claim" ........................................................................................... 15
1.94 "Rejection Claim Bar Date" ......................................................................... 15
1.95 "Reserved Claims Pool" ................................................................................ 15
1.96 "Reserved Claims Pool Account" ............................................................... 15
1.97 "Retained Claims and Defenses" ................................................................ 15
1.98 "Schedules" ...................................................................................................... 16
1.99 "Secured Claim" .............................................................................................. 16
1.100 "Settling Shareholder" ................................................................................. 16
1.101 "Shareholder Liquidation Settlement" .................................................... 16
1.102 "Shareholder Settlement Payment" .......................................................... 16
1.103 "Shareholder Liquidation Trust" ............................................................... 16
1.104 "Shareholder Liquidation Trustee" ........................................................... 16
1.105 "Shareholder Liquidation Trust Agreement" ........................................ 16

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1.106 "SIR Amount"...................................................................................... 17
1.107 "Substantial Contribution Payment"................................................... 17
1.108 "Uninsured Malpractice Claim"......................................................... 17
1.109 "Uninsured Portion".......................................................................... 17
1.110 "Unliquidated Claim"........................................................................ 17
1.111 "Unsecured Claim"............................................................................ 17
1.112 "WARN Act"..................................................................................... 17

ARTICLE II CLASSIFICATION OF CLAIMS AND INTERESTS................................. 17

2.1    Criterion of Class.............................................................................. 17
2.2    Classes of Claims and Interests......................................................... 18
    2.2.1    Class 1 Claims............................................................... 18
    2.2.2    Class 2 Claims............................................................... 18
    2.2.3    Class 3 Claims............................................................... 18
    2.2.4    Class 4 Claims............................................................... 18
    2.2.5    Class 5 Claims............................................................... 18
    2.2.6    Class 6 Claims............................................................... 18
    2.2.7    Class 7 Claims............................................................... 18

ARTICLE III TREATMENT OF UNCLASSIFIED CLAIMS........................................ 18

3.1    Administrative Claims........................................................................ 18
3.2    Administrative Claim Bar Date.......................................................... 18
3.3    Claims for Professional Fees. ........................................................... 19
3.4    Priority Tax Claims............................................................................ 19

ARTICLE IV TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS ................. 20

4.1    Class 1 (Priority Employee Claims). ................................................. 20
4.2    Class 2 (Biggers Priority Employee Claims)...................................... 20
4.3    Class 3 (Secured Claims of Bank of America and Citibank)............... 20
4.4    Class 4 Claims (Insured Malpractice Claims)..................................... 21
4.5    Class 5 (Unsecured Claims)............................................................... 21
4.6    Class 6 (Subordinated Biggers Unsecured Claims)............................ 22
4.7    Class 7 (Interests)............................................................................. 22
4.8    Nonconsensual Confirmation............................................................ 22
    4.8.1    Classes 1 through 6 Cramdown. ................................... 22
    4.8.2    Class 7 Cramdown. ...................................................... 22

ARTICLE V MEANS FOR IMPLEMENTATION OF THE PLAN ................................ 23

5.1    Effective Date Transactions............................................................... 23
5.2    Revesting of Estate Assets. .............................................................. 23
5.3    Replacement of Dissolution Committee/Continued Existence. .......... 24
5.4    Management of Liquidating Debtor by Plan Administrator. ............... 24
5.5    Continued Business of Liquidating Debtor......................................... 25
5.6    Retained Claims and Defenses........................................................... 25
5.7    Avoidance Actions............................................................................. 26
5.8    Claims Reserve Account..................................................................... 26
5.9    Liquidating Debtor Litigation Budget................................................. 26
5.10   Liquidating Debtor Liquidation Budget.............................................. 27
5.11   Shareholder Liquidation Settlement. ................................................ 27
5.12   Funding of the Shareholder Liquidation Trust.................................... 27
5.13   Use of Shareholder Liquidation Trust Funds...................................... 27
5.14   Management of Shareholder Liquidation Trust.................................... 28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

5.15    Limitation of Liability of Plan Administrator and Shareholder Liquidation Trustee. ........ 28
5.16    Dissolution of the Committee. ........................................................................................ 29
5.17    Material default under the Plan. .................................................................................... 29
5.18    Cooperation. .................................................................................................................. 30
5.19    Payment of Plan Expenses. ............................................................................................ 30
5.20    Biggers Settlement Mechanism. ..................................................................................... 30
5.21    Distribution Procedures. ............................................................................................... 30
5.22    Resolution of Disputed Claims ...................................................................................... 31
5.23    Reserve Provisions for Disputed Claims. ....................................................................... 31
5.24    Allocation of Distributions. ........................................................................................... 33
5.25    Rounding. ...................................................................................................................... 33
5.26    De Minimis Distributions. .............................................................................................. 33
5.27    Disputed Payments. ....................................................................................................... 33
5.28    Unclaimed Property. ...................................................................................................... 33
5.29    Successor Plan Administrator or Shareholder Liquidation Trustee. ................................ 34
5.30    Setoffs. .......................................................................................................................... 34
5.31    No Distributions on Late-Filed Claims. ......................................................................... 34
5.32    Withholding Taxes. ........................................................................................................ 34
5.33    Post-Effective Date Reports. .......................................................................................... 35
5.34    Post Effective Date Employment and Compensation of Professionals. ........................... 35
5.35    Final Decree. ................................................................................................................. 35

ARTICLE VI EXECUTORY CONTRACTS ............................................................................ 36

6.1     Executory Contracts and Unexpired Leases. .................................................................. 36
    6.1.1       Assumption. ..................................................................................................... 36
    6.1.2       Rejection. ......................................................................................................... 36
6.2     Satisfaction of Cure Obligations. ................................................................................... 36
6.3     Post-Petition Executory Contracts and Unexpired Leases. ............................................ 37
6.4     Employee Benefit Plans. ................................................................................................. 37
6.5     Order Authorizing Assumption or Rejection. .................................................................. 37

ARTICLE VII CONDITIONS PRECEDENT ......................................................................... 38

7.1     Conditions to Confirmation. .......................................................................................... 38
7.2     Conditions to Effective Date. ......................................................................................... 38

ARTICLE VIII EFFECTS OF CONFIRMATION ................................................................. 38

8.1     Binding Effect of Plan. .................................................................................................. 38
8.2     Revesting of Property Free and Clear. ........................................................................... 39
8.3     Injunction. ..................................................................................................................... 39
8.4     Full and Final Satisfaction. ........................................................................................... 40
8.5     Limitation of Liability. ................................................................................................... 40

ARTICLE IX RETENTION OF JURISDICTION .................................................................. 41

ARTICLE X MISCELLANEOUS ............................................................................................ 43

10.1    Severability of Plan Provisions. ..................................................................................... 43
10.2    Governing Law. ............................................................................................................. 43
10.3    Headings. ...................................................................................................................... 43
10.4    Language Interpretation. ............................................................................................... 43
10.5    Exhibits. ........................................................................................................................ 43
10.6    Exemption from Transfer Taxes: .................................................................................... 44
10.7    Notices. ......................................................................................................................... 44

Case: 08-32514    Doc# 680    Filed: 10/08/09    Entered: 10/08/09 23:40:43    Page 5 of
53

10.8    Computation of Time Periods. ................................................................ 45
10.9    Defects, Omissions and Amendments. .................................................. 45
10.10    Filing of Additional Documents. ......................................................... 45
10.11    Successors and Assigns. ....................................................................... 45
10.12    Implementation. ................................................................................... 45
10.13    Certain Actions. ................................................................................... 46
10.14    Waiver of Ten (10) Day Stay. ............................................................... 46

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

SF:67635.9/0

JOINT PLAN OF LIQUIDATION

v

**Exhibits**

Exhibit A    -    Assumed Contracts

Exhibit B    -    Former Shareholders

Exhibit C          Compromise and Settlement Agreement

Exhibit D          Form of Release

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## PRELIMINARY STATEMENT

Heller Ehrman, LLP, the above-referenced debtor and debtor in possession (the "Debtor") and the Official Unsecured Creditors' Committee appointed in the Debtor's case (the "Committee") and together with the Debtor (the "Proponents"), hereby propose the following *Joint Plan of Liquidation.* (the "Plan"). All Creditors should review the Disclosure Statement, and its accompanying exhibits and other information, before voting to accept or reject the Plan.

The Plan sets forth a proposal for the resolution of all Claims and Interests against the Debtor. In sum, the Plan provides for the Debtor to continue its wind-down efforts after confirmation with its administration to be handled by a professional wind-down manager (the "Plan Administrator") replacing the Dissolution Committee as the primarily responsible party. Confirmation of the Plan shall constitute and confirm the appointment of the Plan Administrator, including responsibility and authority to (a) exercise the rights, power, and authority of the Liquidating Debtor, under the applicable provisions of the Plan and bankruptcy and non-bankruptcy law, and (b) retain post-confirmation professionals to represent the Liquidating Debtor and assist the Plan Administrator in performing and implementing the Plan, including without limitation retaining professionals originally engaged by the Debtor and/or the Committee, and (c) otherwise implement the Plan, wind up the affairs of the Estate and close the Chapter 11 Case.

The Plan contemplates the liquidation of all Estate Assets for the benefit of the holders of Allowed Claims and Allowed Interests. The resulting funds, after payment of Plan Expenses, will be made available for distribution to holders of Allowed Claims and Allowed Interests in accordance with the terms of the Plan. The Plan Administrator's operation of the Liquidating Debtor will be for the purpose of liquidating and monetizing Estate Assets, which consist primarily of the Retained Claims and Defenses.

From and after the Effective Date, the Liquidating Debtor, acting through the Plan Administrator, shall expeditiously seek to collect, liquidate, sell and/or reduce to Cash all Estate Assets, including, without limitation, through pursuit of the Retained Claims and Defenses, and use the proceeds thereof to fund the Plan.

In addition, a Shareholder Liquidation Trust will be established (and a trustee appointed) to address one specific element of the continued wind-down – file transfer and destruction – as well as other matters of special importance to former shareholders of the Debtor's partners. As set forth in the Disclosure Statement, the Proponents believe that the Plan will allow the holders of Unsecured Claims to receive a meaningful return on account of their Allowed Claims against the Debtor, depending on the outcome of litigation and the allowance of Claims.

With the Plan, Creditors will receive a Ballot for voting on the Plan, and a Disclosure Statement that provides information concerning the Debtor and the Plan. The Disclosure Statement includes a summary of the assets and liabilities of the Debtor, a summary of what Creditors and Interest Holders will receive under the Plan, a discussion of certain alternatives to the Plan, and a summary of the procedures and voting requirements necessary for confirmation of the Plan. You should thoroughly review both the Plan and Disclosure Statement before deciding whether you will accept or reject the Plan.

As more fully described in the Disclosure Statement, the Plan must be approved by the requisite number of Creditors and the Bankruptcy Court must find that it meets the applicable legal standards before the Plan can be confirmed. If the Plan is not confirmed, the Bankruptcy Court may order the case dismissed, or converted to a liquidating case under Chapter 7 of the Bankruptcy Code, or the Debtor or other parties in interest may propose a different plan.

The Debtor and the Committee believe that the Plan provides the best mechanism available for maximizing returns to Creditors and urge Creditors to vote in favor of the Plan.

## ARTICLE I

## DEFINITIONS

For purposes of this Plan, all capitalized terms used herein and not otherwise defined shall have the meanings set forth below. A term not defined in the Plan, but defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to it in the Bankruptcy Code or the Bankruptcy Rules, unless the context clearly requires otherwise. The rules of construction used in section 102 of the Bankruptcy Code shall apply to construction of this Plan. The phrase "as soon as practicable" shall mean within ten (10) Business Days of the relevant date. Headings and

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

captions are utilized in this Plan for convenient reference only, and shall not constitute a part of this Plan for any other purpose.

1.1 **"Administrative Claim"** shall mean a Claim for an expense of administration of the Debtor arising during the period commencing on the Petition Date and ending on the Effective Date under sections 503(b), 1114(e)(2) or 546(c)(2) of the Bankruptcy Code and entitled to priority under section 507(a)(1) of the Bankruptcy Code, including, but not limited to, (i) any actual and necessary cost or expense of preserving the Estate of the Debtor or conducting the business of the Debtor, (ii) administrative expenses previously allowed by the Bankruptcy Court, (iii) administrative claims that are timely filed prior to the Administrative Claims Bar Date, (iv) any Tax Claims incurred by the Debtor after the Petition Date or relating to a tax year or period which occurs after the Petition Date, (v) any claim by a seller of goods for reclamation; (vi) Professional Fees, and (vii) all fees and charges assessed against the Debtor pursuant to 28 U.S.C. § 1930. For purposes of this Plan, Administrative Claims shall also include Cure Obligations.

1.2 **"Administrative Claims Bar Date"** shall mean the first Business Day that is thirty (30) days after the Effective Date pursuant to which Claimants must file a request for payment of any Administrative Claim that arose between the Petition Date and the Effective Date.

1.3 **"Administrative Claims Bar Date Order"** shall mean an order setting the Administrative Claims Bar Date, which order could be the Confirmation Order.

1.4 **"Allowed"** shall mean

With respect to any Claim (other than an Administrative Claim as set forth below):

(i) a Claim that appears in the Schedules, except a Claim that is listed as disputed, contingent or unliquidated, or for which a contrary proof of Claim has been filed;

(ii) a Claim for which a proof of Claim has been timely filed as of the Bar Date or Rejection Claim Bar Date, as applicable, and no objection thereto has been made on or before any applicable deadline, provided that, prior to any deadline imposed by this Plan or by the Bankruptcy Court to file objections to a given Claim, no Claim shall be treated as Allowed to the extent that it is filed by the holder of such Claim (i) in an amount greater than the amount listed for such Claim by

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

the Debtor in its Schedules or (ii) asserting a priority higher than the priority listed for such Claim by the Debtor in its Schedules; or

(iii) a Claim that has been allowed, but only to the extent allowed (i) by a Final Order, (ii) under this Plan, or (iii) under any agreements entered into in connection with this Plan (and approved by the Bankruptcy Court) establishing the amount and nature of any Claim; and

With respect to an Administrative Claim, a request for payment that has been filed prior to the Administrative Claims Bar Date, and in accordance with either section 503(b) of the Bankruptcy Code or the procedures for filing requests for payment of an expense of administration set forth in the Administrative Claims Bar Date Order, and as to which either no objection has been made on or before any applicable deadline, or if an objection has been made, a claim has been allowed by Final Order.

1.5 **"Allowed Secured Claim"** shall mean that portion of an Allowed Claim (i) secured by a valid, perfected and enforceable Lien that is not subject to avoidance under bankruptcy or non-bankruptcy law, in an amount equal to the value, as determined by the Bankruptcy Court pursuant to sections 506(a) and 1129(b) of the Bankruptcy Code and Bankruptcy Rule 3012, of the interest of the holder of such Allowed Claim in the property of the Debtor, the Liquidating Debtor, or the Estate, securing such Allowed Claim, or (ii) in an amount equal to the amount subject to setoff by the holder of such Claim under section 553 of the Bankruptcy Code.

1.6 **"Allowed Unsecured Claim"** shall mean any Allowed Claim (including any Rejection Claim) that is not an Allowed Administrative Claim, an Allowed Secured Claim, an Allowed Priority Employee Claim, an Allowed Priority Tax Claim, or an Assumed Obligation.

1.7 **"Amended Complaint"** means the amended complaint in the Biggers Adversary filed on or about April 23, 2009, which added as defendants the Biggers Defendant Shareholder Class and the Non-Debtor Defendants. The Amended Complaint alleges (1) violation of the Federal Worker Adjustment and Retraining Notification ("WARN") Act, 29 U.S.C. §§ 2101 *et seq.*; (2) violation of the California WARN Act; (3) failure to pay vacation in violation of California law; (4) waiting time penalties; (5) failure to pay wages under Washington law; (6) breach of contract as to the Washington and New York putative vacation class; (7) promissory estoppel as to the Washington

and New York putative vacation class; (8) failure to pay wages under Washington, D.C. and New York law; and (9) unfair business practices under California law.

1.8 **"Assumed Contract" or "Assumed Contracts"** shall mean each executory contract or unexpired lease assumed by the Debtor.

1.9 **"Assumption and Cure Order"** shall mean, with respect to any Assumed Contract, an order of the Bankruptcy Court approving the assumption of such executory contract or unexpired lease, and determining any Cure Obligation with respect thereto. The Confirmation Order may constitute an Assumption and Cure Order.

1.10 **"Available Cash"** shall mean the aggregate amount of all Cash held by the Liquidating Debtor as of the Effective Date.

1.11 **"Avoidance Actions"** shall mean all claims or causes of action arising under sections 547 and 548 of the Bankruptcy Code.

1.12 **"Ballot"** shall mean the form for acceptance or rejection of the Plan distributed to those Creditors entitled to vote on the Plan, as such form may be approved by the Bankruptcy Court and which shall otherwise comply with the requirements of Bankruptcy Rule 3018(c).

1.13 **"Bank of America"** shall mean Bank of America, N.A.

1.14 **"Bank of America Preference Action"** shall mean that certain adversary proceeding styled as *Official Committee of Unsecured Creditors v. Bank of America, et al.*, Adv. No. 09-03071.

1.15 **"Bankruptcy Code"** shall mean Title 11 of the United States Code, §§ 101 et seq., as in effect on the Petition Date, as the same thereafter has been and may be amended, provided such amendments are in effect.

1.16 **"Bankruptcy Court"** shall mean the United States Bankruptcy Court for the Northern District of California (San Francisco Division), or such other court as may hereafter exercise jurisdiction over the Chapter 11 Case.

1.17 **"Bankruptcy Rules"** shall mean the Federal Rules of Bankruptcy Procedure, as in effect on the Filing Date, as the same thereafter has been and may be amended, and the Local Rules of the Bankruptcy Court to the extent applicable to the Chapter 11 Case.

Case: 98-32514    Doc# 680    Filed: 10/08/09    Entered: 10/08/09 23:40:43    Page 12 of
53
36897-001\DOCS_SF:67859.9

1.18 **"Bar Date"** shall mean, as applicable, (i) April 27, 2009, which was the date set by the Bankruptcy Court as the last date for filing a proof of Claim for a Claim that arose before the Petition Date for non-Governmental Units, or (ii) June 26, 2009 for Governmental Units.

1.19 **"Biggers Adversary"** shall mean that certain adversary proceeding now pending in the Bankruptcy Court styled as *Biggers, et al, v. Heller Ehrman, LLP*, Adv. No. 09-03058.

1.20 **"Biggers Approval Order"** shall mean a Final Order of the Bankruptcy Court approving the Biggers Settlement Agreement under Bankruptcy Rule 9019, after notice and hearing to creditors and parties in interest, in accordance with applicable law and local rules, which shall be deemed to have occurred when 15 days have elapsed from the entry of the Bankruptcy Court's order approving the Biggers Settlement Agreement (i) which order has not been reversed, stayed, modified or amended, (ii) as to which the time to or the right to appeal or seek reconsideration, review, rehearing, or certiorari has expired or been waived, and (iii) as to which no appeal or petition for reconsideration, review, rehearing, or certiorari is pending.

1.21 **"Biggers Defendant Shareholder Class"** means individuals Matthew Larrabee, Robert Hubbell, Steven Koppel, Marie Fiala, Mark Weeks, Lynn Loacker, Barry Levin, Kenneth Chernof, Lawrence Keeshan, Robert Rosenfeld, Peter Benvenutti, and Jonathan Hayden, on behalf of themselves and on behalf of the individuals listed on Exhibit 2 to the Settlement Agreement. The Biggers Defendant Shareholder Class comprises all shareholders of Heller Ehrman PCs as of September 26, 2008.

1.22 **"Biggers Class"** shall mean each former employee of the Debtor who meets the description of the Plaintiff Class Members set forth in Recital D to the Biggers Settlement Agreement attached hereto as **Exhibit C**.

1.23 **"Biggers Priority Employee Claim"** shall mean that portion of an Allowed Claim held by a member of the Biggers Class who does not exercise the Biggers Opt Out that is unsecured and is entitled to priority under sections 507(a)(4) of the Bankruptcy Code. Such claims relate primarily to claims under the WARN Act.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1.24 **"Biggers Opt Out"** shall mean that certain right of a member of the Biggers Class to opt out of the Biggers Class as set forth in Section 17 of the Biggers Settlement Agreement attached hereto as **Exhibit C**.

1.25 **"Biggers Opt Out Deadline"** shall mean Wednesday, December 2, 2009.

1.26 **"Biggers Settlement Agreement"** means that certain *Compromise and Settlement Agreement*, dated as of October 8, 2009, entered into by and between certain Plaintiff Class Representatives on behalf of the Plaintiff Class Members, on the one hand and the Debtor, the Non-Debtor Biggers Defendants, the Biggers Defendant Shareholder Class, and the Committee, on the other hand, and attached hereto as **Exhibit C.**

1.27 **"Biggers Settlement Release"** shall mean that form of Release attached hereto as **Exhibit D**, which a member of the Biggers Class can execute in order to receive the payments due to members of the Biggers Class after the Plan's Effective Date but before final Bankruptcy Court approval of the Biggers Settlement Agreement.

1.28 **"Biggers Subordinated Unsecured Claim"** shall mean an Allowed Claim for that portion of a Biggers Unsecured Claim held by a member of the Biggers Class who does not exercise the Biggers Opt Out in an amount that is set forth in an exhibit to be sent to each member of the Biggers Class in connection with the solicitation of the member's vote on this Plan. Such claims relate primarily to waiting time penalties.

1.29 **"Biggers Unsecured Claim"** shall mean shall mean an Allowed Claim for that portion of a Claim held by a member of the Biggers Class who does not exercise the Biggers Opt Out that is unsecured and is not an Administrative Claim, a Priority Tax Claim, a Priority Employee Claim, a Biggers Priority Employee Claim, a Biggers Subordinated Unsecured Claim, a Secured Claim, or an Assumed Obligation. Such claims relate primarily to claims under the WARN Act.

1.30 **"Business Day"** shall mean any day that is not a Saturday, a Sunday or other day on which banks are required or authorized by any federal, state or local law to be closed in the City of San Jose, California.

1.31 **"Cash"** shall mean cash and cash equivalents including, but not limited to, cash on deposit in the bank accounts of the Debtor or the Liquidating Debtor, as applicable, checks, wire

transfers, money orders, certificates of deposit, money market or similar investments, and other similar, readily, marketable securities or instruments.

1.32 **"Chapter 11 Case"** shall mean the Chapter 11 Case commenced by the Debtor upon the filing with the Bankruptcy Court of a voluntary petition under chapter 11 of the Bankruptcy Code.

1.33 **"Citibank"** shall mean Citibank, N.A.

1.34 **"Claim"** shall mean a claim against the Debtor within the meaning of section 101(5) of the Bankruptcy Code.

1.35 **"Claimant"** shall mean the holder of a Claim.

1.36 **"Claims Reserve Account"** shall mean an interest bearing bank account or money market account to be established and held in trust for the benefit of holders of Allowed Unsecured Claims by the Liquidating Debtor on or after the Effective Date for the purpose of holding the funds to be distributed under the Plan to Unsecured Creditors and for Plan Expenses, and any interest, dividends or other income earned upon the investment of such Claims Reserve Account.

1.37 **"Class"** shall mean a category or group of Creditors or Interest Holders which are substantially similar to the Claims or Interests of the other Creditors or Interests Holders in such Class, as designated by this Plan pursuant to sections 1122 and 1123 of the Bankruptcy Code.

1.38 **"Class Counsel"** means Blum & Collins LLP.

1.39 **"Class Proof of Claim"** means the Class Proof of Claim filed on behalf of all purported Plaintiff Class Members in the Biggers Adversary on or about March 27,2009 and the Amended Class Proof of Claim filed on April 3, 2009 and alleging substantially the same claims as alleged in the Biggers Adversary.

1.40 **"Committee"** shall mean the Official Committee of Unsecured Creditors appointed by the United States Trustee in the Debtor's Chapter 11 Case.

1.41 **"Confirmation"** shall mean the approval of the Plan by and subject to the terms of the Confirmation Order.

1.42 **"Confirmation Date"** shall mean the date of Confirmation.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1.43 **"Confirmation Hearing"** shall mean the duly noticed hearing held by the Bankruptcy Court on confirmation of the Plan pursuant to section 1128 of the Bankruptcy Code. The Confirmation Hearing may be adjourned by the Bankruptcy Court from time to time without further notice other than the announcement of the adjourned date at the Confirmation Hearing.

1.44 **"Confirmation Order"** shall mean the order of the Bankruptcy Court, confirming this Plan and providing for the effectuation of the transactions contemplated by this Plan in accordance with the terms and provisions hereof and thereof.

1.45 **"Contingent Claim"** shall mean any Claim for which a proof of Claim has been filed with the Bankruptcy Court but was not filed in a sum certain and which Claim has not been estimated, fixed or liquidated by the Bankruptcy Court at a sum certain as of the Effective Date.

1.46 **"Creditor"** shall mean any entity that holds a Claim that arose or is deemed to have arisen at the time of, before or after the Petition Date.

1.47 **"Cure Obligation"** shall mean, individually, any monetary amount payable to the non-debtor party to an Assumed Contract pursuant to section 365(b)(1) of the Bankruptcy Code as a condition to the assumption of such contract or lease and, collectively, all monetary amounts payable to all non-debtor parties to all Assumed Contracts.

1.48 **"Debt"** shall mean liability on a Claim.

1.49 **"Debtor"** shall mean Heller Ehrman, LLP, as debtor and debtor in possession in its Chapter 11 Case.

1.50 **"Disallowed Claim"** shall mean (i) a Claim or any portion thereof, that has been disallowed by a Final Order of the Bankruptcy Court; (ii) a Claim that has been listed in the Schedules at zero or as contingent, disputed, or unliquidated and as to which no proof of Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to the Bankruptcy Code, any Final Order of the Court, or other applicable law; or (iii) a Claim that has not been listed in the Schedules and as to which no proof of Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to the Bankruptcy Code, any Final Order of the Court, or other applicable law.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1.51 **"Disclosure Statement"** shall mean the disclosure statement in support of the Plan, in the form approved by the Bankruptcy Court, disseminated by the Proponents to the holders of Claims against the Debtor in order to provide to such persons adequate information in accordance with section 1125 of the Bankruptcy Code, as such disclosure statement may be modified, amended or supplemented from time to time.

1.52 **"Dissolution Committee"** shall mean the Dissolution Committee formed under the Plan of Dissolution for the purpose of governing the affairs of the Debtor after September 26, 2008, currently comprised of Peter J. Benvenutti, Jonathan Hayden, Lynn Loacker, and Paul Sugarman.

1.53 **"Disputed Claim"** shall mean, with respect to a Secured Claim, an Administrative Claim, a Priority Tax Claim, a Priority Employee Claim or an Unsecured Claim, as applicable (i) any Claim or portion of a Claim as to which an objection to the allowance thereof has been interposed as of the Effective Date or any later deadline fixed under the Plan or by order of the Bankruptcy Court, which objection has not been withdrawn or determined by Final Order; (ii) any Claim for which a proof of Claim is required to be filed and no such Proof of Claim is filed or, if filed, is filed after the Bar Date; or (iii) any Contingent Claim or Unliquidated Claim. To the extent an objection relates to the allowance of only a part of a Claim, such Claim shall be a Disputed Claim only to the extent of the objection.

1.54 **"Disputed Claims Amount"** shall mean the aggregate amount of Disputed Claims that are fixed and absolute. For purposes of calculating distributions of Cash under the Plan, the amount of each Disputed Claim shall be based upon either (i) the face amount of such Creditor's Disputed Claim (or the disputed portion thereof) as set forth in the Creditor's filed proof of Claim or (ii) the amount at which the Bankruptcy Court may estimate such Disputed Claim.

1.55 **"Effective Date"** shall mean the first Business Day on which each of the conditions specified in Article VII of the Plan has been satisfied or duly waived.

1.56 **"Employee Benefit Plans"** shall mean any and all vacation or other paid leave policies, health, dental, flexible medical payment, pension, welfare, severance, retention, deferred compensation, and retirement plans, and life and disability insurance policies, established by the Debtor for the benefit of its employees, that are in effect as of the Effective Date, including, without

limitation, any severance and retention plans approved by the Bankruptcy Court pursuant to the Employee Retention Orders.

1.57 **"Employee Retention Orders"** shall mean that certain *Order (1) Authorizing Debtor And Debtor In Possession To (A) Pay And Honor Pre-Petition Employee Wages And Other Employee Obligations In The Ordinary Course Of Business, And (B) Continue Honoring Employee Obligations, Including Wages, Benefits On A Post-Petition Basis; And (2) Providing Related Relief* entered on or about December 30, 2008, and the *Order Approving Revised Non-Insider Employee Retention And Incentive Bonus Plan* entered on or about March 3, 2009.

1.58 **"Estate"** shall mean the bankruptcy estate of the Debtor pursuant to Bankruptcy Code section 541.

1.59 **"Estate Assets"** shall mean all property of the estate of the Debtor under section 541 of the Bankruptcy Code including, all property, assets, equitable or legal rights or interests, contract rights, benefits, causes of action, claims, or any other thing tangible or intangible, of any kind whatsoever, owned or held by or on behalf of the Debtor in which the Debtor has any right, title or interest to the full extent provided under section 541 of the Bankruptcy Code including, without limitation, Available Cash, any Retained Claims and Defenses, and Avoidance Actions.

1.60 **"Exculpated Parties"** shall have the meaning assigned to it in Section 8.5 of this Plan.

1.61 **"Final Order"** shall mean an order or judgment of the Bankruptcy Court or other court of competent jurisdiction (i) which has not been reversed, stayed, modified or amended, (ii) as to which the time to or the right to appeal or seek reconsideration, review, rehearing, or certiorari has expired or been waived (without regard to whether the time to seek relief from a judgment under Bankruptcy Rule 9024 has expired), and (iii) as to which no appeal or petition for reconsideration, review, rehearing, or certiorari is pending.

1.62 **"Former Shareholders"** shall mean each of the individuals that held an equity interest in one of the Heller Ehrman PCs, each of whom is named on Exhibit B, attached hereto.

1.63 **"Heller Ehrman"** shall mean Heller Ehrman, LLP.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Case: 98-32514  Doc# 680  Filed: 10/08/09  Entered: 10/08/09 23:40:43  Page 18 of 53

JOINT PLAN OF LIQUIDATION
36689-001\DOCS_SF:67830.97
11

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1.64    **"Heller Ehrman PCs"** shall mean each of the six partners holding an equity interest in the Debtor, including but not limited to: Heller Ehrman (California), a Professional Corporation, Heller Ehrman White & McAuliffe (Washington), P.S., a Washington professional service corporation, Heller Ehrman White & McAuliffe (Oregon), P.C., an Oregon professional corporation, Heller Ehrman (Alaska), P.C., a professional corporation, Heller Ehrman (New York), a Professional Corporation, and Heller Ehrman (China), P.C., a District of Columbia professional corporation.

1.65    **"Initial Trust Corpus"** shall mean an amount to be agreed upon by the Debtor and the Committee no less than the amount reasonably sufficient to pay the estimated costs of file transfer and disposition.

1.66    **"Insured Malpractice Claim"** shall mean the Insured Portion of any Claim subject to a Malpractice Policy.

1.67    **"Insured Portion"** shall mean, with respect to any Malpractice Policy, the insurance coverage available for Insured Malpractice Claims thereunder.

1.68    **"Interest Holder"** shall mean, individually, each of the Heller Ehrman PCs, or their successors and assigns.

1.69    **"Interests"** shall mean any interests in the Debtor owned by the Heller Ehrman PCs, or their successors and assigns.

1.70    **"LEO Plan"** shall mean the Heller Ehrman LLP Retirement Plan (as Amended and Restated Effective January 1, 2007).

1.71    **"Lien"** shall mean a charge against or interest in property to secure payment of a debt or performance of an obligation.

1.72    **"Liquidating Debtor"** shall mean the Debtor as reorganized and reconstituted on and after the Effective Date.

1.73    **"Malpractice Claim"** shall mean any unsecured non-priority claim against the Debtor or any Former Shareholder, or any former employee of the Debtor arising out of alleged acts, errors, or omissions in connection with the rendering or failing to render professional legal services by the Debtor or other potential or actual liability or costs arising in connection therewith, whether or not covered by a Malpractice Policy.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1.74 **"Malpractice Costs and Expenses"** shall mean, as to any Malpractice Policy, (i) the aggregate fees, costs and expenses (including attorneys' fees) arising from or related to the investigation, adjustment, defense and appeal of the Malpractice Claims applicable to such policy; and (ii) such other costs and expense of the Liquidating Debtor or the Plan Administrator allocable to such Malpractice Claims.

1.75 **"Malpractice Policy" or "Policies"** shall mean the policies of professional liability insurance issued to the Debtor, as such policies have been amended, modified, renewed or supplemented, from time to time.

1.76 **"MPC"** shall mean MPC Insurance, Ltd.

1.77 **"Net SIR"** shall mean the Self Insured Retention Amount less the Malpractice Costs and Expenses associated with such policy, provided however, that if Net SIR equals an amount less than zero, then Net SIR shall instead be deemed equal to zero.

1.78 **"New Plan Documents"** shall mean the First Amendment to Plan of Dissolution, the Shareholder Liquidation Trust Agreement, and such other documents as are deemed necessary to confirmation, to be filed with the Bankruptcy Court and served upon each of party requesting special notice and the Office of the United States Trustee, no later than ten (10) days prior to the date the Bankruptcy Court sets for objections to Confirmation.

1.79 **"Non-Debtor Biggers Defendants"** means the Heller Ehrman PCs.

1.80 **"Petition Date"** shall mean December 28, 2008, which is the date when the Debtor filed its voluntary petition pursuant to chapter 11 of the Bankruptcy Code.

1.81 **"Plaintiff Class Members"** means  the Class Representatives and the persons listed on Exhibit A to the Biggers Settlement Agreement.

1.82 **"Plaintiff Class Representatives"** means Debora K. Biggers, Carl Goodman, Anna Scarpa, and Marjorie Norris, on behalf of themselves and on behalf of the individuals named on Exhibit A to the Biggers Settlement Agreement

1.83 **"Plan"** shall mean this joint chapter 11 plan of liquidation and any exhibits and schedules hereto and any documents incorporated herein by reference, as the same may from time to time be amended or modified as and to the extent permitted herein or by the Bankruptcy Code.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1.84 **"Plan Administrator"** shall mean Michael Burkart, who shall file a statement setting forth his qualifications and affiliations, including a disclosure of any potential conflicts of interest, pursuant to Bankruptcy Code section 1129(a)(5(A)(i).

1.85 **"Plan Expenses"** shall mean all actual and necessary costs and expenses incurred after the Effective Date in connection with the administration of the Plan, including, but not limited to, (i) costs, expenses and legal fees incurred related to filing and prosecuting objections to Claims, (ii) the costs, expenses and legal fees incurred to investigate, litigate, estimate and settle the Retained Claims and Defenses (which shall include the Avoidance Actions), including, but not limited to, attorneys' fees, accounting fees, expert witness fees, and all costs relating to obtaining and distributing such recoveries, incurred by the Liquidating Trustee, (iii) the costs and expenses of administration of the Liquidating Debtor, including without limitation the fees and costs of the Plan Administrator; and (iv) all fees payable pursuant to section 1930 of Title 28 of the United States Code.

1.86 **"Plan of Dissolution"** shall mean that certain Plan of Dissolution of Heller Ehrman LLP, dated as of September 26, 2008.

1.87 **"Priority Employee Claim"** shall mean that portion of an Allowed Claim that is unsecured and that is entitled to priority under section 507(a)(4) of the Bankruptcy Code that is not a Biggers Priority Employee Claim.

1.88 **"Priority Tax Claim"** shall mean that portion of a Tax Claim, if any, entitled to priority in payment under section 507(a)(8) of the Bankruptcy Code.

1.89 **"Professional Fees"** shall mean all amounts allowed and awarded by the Bankruptcy Court for compensation for services rendered and reimbursement of expenses incurred by Professionals pursuant to sections 330(a) and 503(b) of the Bankruptcy Code.

1.90 **"Professionals"** shall mean those attorneys, accountants and other financial advisors employed by the Debtor (pursuant to section 327 of the Bankruptcy Code) or the Committee (pursuant to section 1103 of Bankruptcy Code) in the Chapter 11 Case and to be compensated for services rendered and reimbursed for expenses incurred pursuant to sections 330(a) and 503(b) of the Bankruptcy Code.

1.91 **"Pro Rata" or "Pro Rata Share"** shall mean, with respect to distributions on account of Allowed Claims, in the same ratio of an Allowed Claim in a particular Class to the aggregate of all Allowed Claims in that Class.

1.92 **"Rejected"** shall mean those executory contracts and unexpired leases which are rejected by the Debtor pursuant to section 365 or 1123(b)(2) of the Bankruptcy Code.

1.93 **"Rejection Claim"** shall mean any Allowed Claim under Bankruptcy Code section 502(g) that arises under Bankruptcy Code section 365(g)(1) in favor of the non-debtor party to any executory contract or unexpired lease that is rejected by the Debtor pursuant to Bankruptcy Code sections 365(a) or 1123(b)(2).

1.94 **"Rejection Claim Bar Date"** shall mean the last date established by the Bankruptcy Court by which entities asserting a Rejection Claim against the Debtor must have filed a proof of Claim with respect to such Rejection Claim or be forever barred from asserting such Claim and/or sharing in any distribution hereunder in respect of such Claim. For contracts or leases rejected at least thirty (30) days prior to the Bar Date and for which no Rejection Claim Bar Date was previously fixed by the Court pursuant to Bankruptcy Rule 3002(c)(4), the Rejection Claim Bar Date shall be the Bar Date. For contracts and leases rejected pursuant to the Plan, the Rejection Claims Bar Date shall be thirty (30) days following the date upon which the Confirmation Order is entered.

1.95 **"Reserved Claims Pool"** shall mean the amounts which shall be funded on or after the Effective Date pursuant to Section 5.1 of this Plan for the purpose of holding as reserves the amounts of Administrative Claims (including amounts due for Professional Fees) which have not become Allowed Claims.

1.96 **"Reserved Claims Pool Account"** shall mean the bank account established by the Liquidating Trust into which the Liquidating Trustee shall deposit the amounts which constitute the Reserved Claims Pool.

1.97 **"Retained Claims and Defenses"** shall mean all claims, rights, interests, causes of action, defenses, counterclaims, cross-claims, third-party claims, or rights of offset, recoupment, subrogation or subordination held by the Debtor or its Estate against any party whether or not

pending on the Effective Date, not otherwise released or settled before the Effective Date, including but not limited to those specifically set forth in Section VII.D of the Disclosure Statement.

1.98 **"Schedules"** shall mean the schedules of assets and liabilities and the statement of financial affairs filed by the Debtor with the Bankruptcy Court pursuant to section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, as amended from time to time.

1.99 **"Secured Claim"** shall mean a Claim secured by a Lien on property of the Debtor, or the Estate, or secured by an amount subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of such Lien or right of setoff as determined under sections 506(a) or 1129(b) of the Bankruptcy Code, as applicable.

1.100 **"Settling Shareholder"** shall mean any Former Shareholder who timely makes the Shareholder Settlement Payment.

1.101 **"Shareholder Liquidation Settlement"** shall mean the binding agreement created by the Plan which shall be deemed entered into on the Effective Date by and between the Estate and any Former Shareholder who tenders the Shareholder Settlement Payment 14 days prior to the date set for the Confirmation Hearing.

1.102 **"Shareholder Settlement Payment"** shall mean a timely payment in good funds made by a Former Shareholder in an amount fixed by the Committee and disclosed to the Former Shareholder in an exhibit sent to each individual Former Shareholder in connection with the solicitation of votes on the Plan.

1.103 **"Shareholder Liquidation Trust"** shall mean that certain trust to be established and operated under sections 5.12, 5.13 and 5.14 of the Plan.

1.104 **"Shareholder Liquidation Trustee"** shall be an individual identified by the Debtor in a document filed with the Bankruptcy Court no later than ten (10) days prior to the date the Bankruptcy Court sets for objections to Confirmation.

1.105 **"Shareholder Liquidation Trust Agreement"** shall mean that Shareholder Liquidation Trust Agreement to be executed by the Debtor on the Effective Date substantially in the form of the document filed with the Bankruptcy Court no later than ten (10) days prior to the date the Bankruptcy Court sets for objections to Confirmation.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1.106  **"SIR Amount"** shall mean the unexpended portion of self-insured retention necessary to trigger a malpractice insurer's obligation to fund a defense of a Claim or pay an amount agreed to or adjudged to be owing on account of an Insured Malpractice Claim.

1.107  **"Substantial Contribution Payment"** shall mean those certain payments to Blum Collins LLP to be made as contemplated in the Biggers Settlement Agreement attached hereto as **Exhibit C** in the event the Biggers Approval Order becomes a Final Order.

1.108  **"Uninsured Malpractice Claim"** shall mean any timely filed Malpractice Claim to the extent of the Uninsured Portion of the applicable Malpractice Policy or Malpractice Policies.

1.109  **"Uninsured Portion"** shall mean, with respect to any given Malpractice Claim, the Debtor's out-of-pocket liability on such Malpractice Claim, if any, as determined by the Net SIR of the applicable Malpractice Policy.

1.110  **"Unliquidated Claim"** shall mean any Claim for which a proof of Claim has been filed with the Bankruptcy Court but was not filed in a sum certain, and which Claim has not been estimated, fixed or liquidated by the Bankruptcy Court at a sum certain as of the Effective Date.

1.111  **"Unsecured Claim"** shall mean any Claim that is not an Administrative Claim, a Priority Tax Claim, a Priority Employee Claim, a Biggers Priority Employee Claim, a Secured Claim, a Biggers Unsecured Claim, or an Assumed Obligation.

1.112  **"WARN Act"** means Federal Worker Adjustment and Retraining Notification Act, 29 U.S.C. §§ 2101 *et seq.* and California Labor Code section 1400 *et seq.*

## ARTICLE II

## CLASSIFICATION OF CLAIMS AND INTERESTS

2.1  **Criterion of Class.**  The following is a designation of Classes of Claims under the Plan.  Administrative Claims and Priority Tax Claims have not been classified and are excluded from the following Classes in accordance with section 1123(a)(1) of the Bankruptcy Code.  A Claim is classified in a particular Class only to the extent that (i) the Claim qualifies within the description of that Class, and is classified in a different Class to the extent that the remainder of the Claim qualifies within the description of that different Class, and (ii) the Claim, or any portion or Allowed amount of such Claim, is an Allowed Claim in that Class and has not been paid, released or

otherwise satisfied prior to the Effective Date.  In the event of a controversy as to whether (a) any Class of Claims is impaired, or (b) any Class of Claims is properly designated, the Bankruptcy Court shall, after notice and a hearing, determine such controversy pursuant to applicable provisions of the Bankruptcy Code and Bankruptcy Rule 3013.

2.2     **Classes of Claims and Interests.**  All Claims and Interests are divided into the following Classes, which Classes shall be mutually exclusive:

2.2.1   **Class 1 Claims.**  Class 1 shall consist of all Priority Employee Claims.

2.2.2   **Class 2 Claims.**  Class 2 shall consist of all Biggers Priority Employee Claims.

2.2.3   **Class 3 Claims.**  Class 3 shall consist of the Secured Claims of Bank of America and Citibank.

2.2.4   **Class 4 Claims.**  Class 4 shall consist of Insured Malpractice Claims.

2.2.5   **Class 5 Claims.**  Class 5 shall consist of Unsecured Claims.

2.2.6   **Class 6 Claims.**  Class 6 shall consist of all Biggers Subordinated Unsecured Claims.

2.2.7   **Class 7 Claims.**  Class 7 shall consist of the Interests held by the Interest Holders.

**ARTICLE III**

**TREATMENT OF UNCLASSIFIED CLAIMS**

3.1     **Administrative Claims.**  Each Allowed Administrative Claim, unless the holder of such Claim has agreed to a different treatment, shall be paid in full by the Liquidating Debtor from Available Cash or the Reserved Claims Pool Account (as applicable) on the latest of: (a) the Effective Date, or as soon thereafter as practicable; (b) such date as may be fixed by the Bankruptcy Court, or as soon thereafter as practicable; (c) the tenth Business Day after such Claim is Allowed, or as soon thereafter as practicable; and (d) such date as the holder of such Claim and the Liquidating Debtor may agree.

3.2     **Administrative Claim Bar Date.**  All requests for payment of Administrative Claims must be filed by the Administrative Claim Bar Date or the holders thereof shall be forever barred from asserting such Administrative Claims against the Debtor or the Liquidating Debtor or from

sharing in any distribution under the Plan.  Holders of Administrative Claims based on liabilities incurred in the ordinary course of the Debtor's business following the Petition Date shall not be required to comply with the Administrative Claim Bar Date, provided that, (i) such holders have otherwise submitted an invoice, billing statement or other evidence of indebtedness to the Debtor in the ordinary course of business, and (ii) such Claims are not past due according to their terms. Holders of Administrative Claims based on reclamation, shall be Allowed in the amounts set forth in the Debtor's Reclamation Report.

3.3     **Claims for Professional Fees.**  Each party seeking an award by the Bankruptcy Court of Professional Fees: (a) must file its final application for allowance of compensation for services rendered and reimbursement of expenses incurred through the Effective Date on or before the Administrative Claims Bar Date; and (b) if the Bankruptcy Court grants such an award, each such party will be paid in full in Cash by the Liquidating Debtor in such amounts as are allowed by the Bankruptcy Court as soon thereafter as practicable.  All final applications for allowance and disbursement of Professional Fees must be in compliance with all of the terms and provisions of any applicable order of the Bankruptcy Court, including the Confirmation Order.

3.4     **Priority Tax Claims.**  Each Allowed Priority Tax Claim, unless the holder of such Claim has agreed to a different treatment, shall receive at the option of the Liquidating Debtor the following:  (i) payment in full by the Liquidating Debtor from Available Cash on the latest of:  (a) the Effective Date, or as soon thereafter as practicable; (b) such date as may be fixed by the Bankruptcy Court, or as soon thereafter as practicable; (c) the tenth Business Day after such Claim is Allowed, or as soon thereafter as practicable; and (d) such date as the holder of such Claim and the Liquidating Debtor may agree, or (ii) deferred cash payments to the extent permitted by section 1129(a)(9) of the Bankruptcy Code with interest on the unpaid portion of such Claim at the  rate of five per cent (5%) per annum or at such other rate as may determined by the Court or agreed upon between the Liquidating Debtor and the appropriate governmental unit, provided that, in the event that the Liquidating Debtor elects payment option (ii), the Liquidating Debtor may prepay any or all such Claims at any time, without premium or penalty.  In the event the Liquidating Debtor elects

payment option (ii), each such holder shall receive, on account of such Claim, deferred Cash payments of a present value as of the Effective Date equal to the Allowed amount of such Claim.

## ARTICLE IV

## TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS

4.1 **Class 1 (Priority Employee Claims).** Class 1 shall consist of Priority Employee Claims. Class 1 Claims are impaired. Each holder of an Allowed Priority Employee Claim who is not employed by the Debtor as of the Effective Date of the Plan shall receive full payment of the Allowed amount of such Claim from Available Cash on or as soon as practicable after the later of (i) the Effective Date, or (ii) the date upon which the Bankruptcy Court enters a Final Order determining or allowing such Claim.

The Liquidating Debtor shall either pay or honor in the ordinary course of business, any Allowed Class 1 Priority Employee Claim for any employee who is employed by the Liquidating Debtor on the Effective Date of the Plan. Holders of Class 1 Claims who are members of the Biggers Class shall receive their distribution hereunder even if they Opt-Out of the Biggers Settlement.

4.2 **Class 2 (Biggers Priority Employee Claims).** Class 2 shall consist of Biggers Priority Employee Claims. Class 2 Claims are impaired. Each holder of an Allowed Biggers Priority Employee Claim who is not employed with the Debtor as of the Effective Date of the Plan shall receive full payment of the Allowed amount of such Claim from Available Cash only after the Biggers Approval Order becomes a Final Order, unless prior to the deadline for balloting on the Plan, such holder of a Class 2 Claim delivers to the Proponents a fully executed original Biggers Settlement Release, in which case such Claim shall be paid to the Claimant earlier (simultaneously with the payment of Class 1 Claims).

4.3 **Class 3 (Secured Claims of Bank of America and Citibank).** Class 3 shall consist of the Secured Claims of Bank of America and Citibank. The Class 3 Claim is impaired and is also a Disputed Claim. On the Effective Date, Bank of America and Citibank shall effect a payment of the principal and interest (but not attorneys fees and costs) then claimed to be owing to them on the Class 3 Claim by applying their cash collateral thereto, and then return to the Liquidating Debtor the

36689-001\DOCS_SF:67859.9/

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

balance of collateral currently held by Bank of America and/or Citibank. The Bank shall retain all of its liens and cash collateral rights until receipt of the payments required hereunder. The Liquidating Debtor and the Bank shall make such customary arrangements and execute such customary documents, as mutually agreed upon, to effectuate a release of the Bank's security interests or liens in the Liquidating Debtor's assets upon receipt of the payments required hereunder. The Court shall retain jurisdiction to resolve any disputes which may arise in connection with the foregoing matters. Notwithstanding the foregoing, nothing in this Plan shall affect or diminish the Debtor's Retained Claims and Defenses against Bank of America or Citibank, nor shall it affect or diminish the Debtor's rights in the Bank of America Preference Action.

4.4     **Class 4 Claims (Insured Malpractice Claims).**  Class 4 shall consist of Insured Malpractice Claims. Such claims are impaired. On the Effective Date, or as soon as practicable, in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Class 4 Insured Malpractice Claim, each Class 4 Insured Malpractice Claim shall be paid solely from the proceeds of any applicable Malpractice Policy, with respect to the Insured Portion of the Claim. Any Claim, or portion of a Claim, for the Uninsured Portion of any Malpractice Claim, including the Net SIR, shall be treated as a Class 5 Unsecured Claim. No holder of an Allowed Class 4 Claim shall receive any distribution from Available Cash on account of such Class 4 Claim.

4.5     **Class 5 (Unsecured Claims).**  Class 5 shall consist of General Unsecured Claims, including but not limited to Biggers Unsecured Claims, Uninsured Malpractice Claims, and Claims for any Uninsured Portion. Class 5 Claims are impaired. Each holder of an Allowed Unsecured Claim shall receive, in exchange for and in full and final satisfaction of such Claim, including any post-petition interest at the annual rate of five per cent (5%) per annum, a Pro Rata Share of Available Cash, net of amounts reserved for Disputed Claims or Plan Expenses. To the extent that all Allowed Class 5 Unsecured Claims have been paid in full, including post-petition interest as set forth above, and funds remain in the Claims Reserve Account, such funds shall be used by the Liquidating Debtor to fund the expense of claims in Classes 6 and 7, as described below.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Holders of Class 5 Claims who are also members of the Biggers Class shall receive their distribution hereunder for the portion of such Claim that is not a Biggers Unsecured Claim even if they Opt-Out of the Biggers Settlement.

4.6     **Class 6 (Subordinated Biggers Unsecured Claims).**  Class 6 shall consist of all Subordinated Biggers Unsecured Claims.  Class 6 Claims are impaired.  Once Allowed Class 5 Claims are satisfied in full with interest, as described above, each holder of a Biggers Unsecured Claim shall receive, in exchange for and in full and final satisfaction of such Claim, including any post-petition interest at the annual rate of five per cent (5%) per annum, a Pro Rata Share of Available Cash, net of amounts reserved for Disputed Claims or Plan Expenses.  To the extent that all Class 6 Biggers Subordinated Unsecured Claims have been paid in full, including post-petition interest as set forth above, and funds remain in the Claims Reserve Account, such funds shall be used by the Liquidating Debtor to fund the expense of claims in Class 7, as described below.

4.7     **Class 7 (Interests).** Class 7 consists of the Interests held by the Interest Holders.  On the Effective Date, the Interest Holders shall have no ability to direct or control the affairs of the Liquidating Debtor, but shall retain their status as partners of the Liquidating Debtor.  Interest Holders shall receive nothing under the Plan until the Allowed Claims of Classes 1 through 6 are paid in full, with interest at the rate of five percent simple interest, at which point all Available Cash, net of amounts reserved for Disputed Claims or Plan Expenses, shall be paid to the Interests Holders consistent with the extent of their Interests.

4.8     **Nonconsensual Confirmation.**

4.8.1     **Classes 1 through 6 Cramdown.**  The Proponents hereby request confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code on the basis that the Plan is fair and equitable and does not discriminate unfairly as to the holders of Class 1 through 6 Claims.

4.8.2     **Class 7 Cramdown.**  The Proponents hereby request confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code on the basis that the Plan is fair and equitable and does not discriminate unfairly as to the holders of Class 7 Interests.

**ARTICLE V**

**MEANS FOR IMPLEMENTATION OF THE PLAN**

The Plan shall be implemented on the Effective Date. In addition to the provisions set forth elsewhere in this Plan regarding means of execution, the following shall constitute the principal means for implementation of the Plan.

5.1 **Effective Date Transactions.** Without limiting the generality of the foregoing, and without altering or amending the terms of the Plan in any manner, on (or, where appropriate, after) the Effective Date, the following actions shall occur:

(i) The transactions contemplated under the Plan shall be consummated;

(ii) The Liquidating Debtor shall be capitalized with the Shareholder Settlement Payments, subject to the terms of the Shareholder Liquidation Settlement;

(iii) The Liquidating Debtor shall fund the Reserved Claims Pool Account with the funds necessary to establish the Reserved Claims Pool;

(iv) The Liquidating Debtor shall reserve such funds as are necessary to fund all anticipated Plan Expenses, including without limitation any anticipated litigation costs, prior to making any distributions pursuant to this Plan;

(v) To the extent that Cash is available, the Liquidating Debtor shall assume the Assumed Contracts and, when required under the terms of this Plan, satisfy any Cure Obligations, subject to any contract, legal and other rights and defenses;

(vi) To the extent that Cash is available, the Liquidating Debtor will make the Substantial Contribution Payment, to the extent the same has previously been authorized by the Bankruptcy Court;

(vii) Upon Confirmation, the Debtor shall execute the Shareholder Liquidation Trust Agreement and fund the Initial Trust Corpus; and

(viii) Upon Confirmation, the Debtor and the Shareholder Liquidation Trustee shall execute the New Plan Documents, and assume his or her responsibilities under the Plan.

5.2 **Revesting of Estate Assets.** Upon the Effective Date, the Liquidating Debtor shall be vested with all right, title and interest in the Estate Assets free and clear of all Claims and Liens,

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

other than any obligations under this Plan and other than any Estate Assets contributed to the Shareholder Liquidation Trustee.

5.3 **Replacement of Dissolution Committee/Continued Existence.** Upon the Effective Date, the Plan of Dissolution shall be deemed amended to replace the Dissolution Committee with the Plan Administrator, and the Dissolution Committee shall be relieved of its responsibilities for the Debtor. Nothing contained herein shall affect the Dissolution Committee's responsibility to administer the affairs of the Heller Ehrman PCs or their successors and assigns, which shall maintain their separate existence for all purposes under this Plan. The Liquidating Debtor, as represented by the Plan Administrator, shall be authorized to execute such other documents as are necessary and appropriate to carry out the provisions of this Plan, without the necessity of filing such documents with the Bankruptcy Court.

5.4 **Management of Liquidating Debtor by Plan Administrator.** On and after the Effective Date, and except for the duties of the Shareholder Liquidation Trustee as set forth in this Plan, the Plan Administrator shall be responsible for implementation of the Plan, including with respect to the management, control and operation of the Liquidating Debtor; provided, however, that nothing contained herein shall give the Plan Administrator authority over the administration of the LEO Plan, which shall be unaffected by the Plan. The Plan Administrator shall post a bond in favor of the Liquidating Debtor in an amount equal to not less than 125% of the amount of Estate Assets which are held in Cash at any time, and the bond may be proportionately reduced or increased from time to time, as required by the circumstances. The cost of such bond shall be paid from Estate Assets. The Plan Administrator shall be compensated on an interim basis at the rate of $250 per hour, plus reasonable out of pocket expenses, including reimbursement of the premium for a professional E&O policy, paid monthly from Estate Assets without further order of the Bankruptcy Court. The Plan Administrator may petition the Court to modify the hourly rate two years after the Effective Date. Upon completion of all duties and concurrent with a motion for closure of the Chapter 11 Case, the Plan Administrator shall file a motion seeking approval of all fees and expenses previously paid as compensation by the Liquidating Debtor after the Effective Date.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

5.5   **Continued Business of Liquidating Debtor.** On and after the Effective Date, the Liquidating Debtor shall continue to engage in its wind-down operations and may use, acquire and dispose of the Estate Assets without supervision by the Bankruptcy Court and free of any restrictions under the Bankruptcy Code or the Bankruptcy Rules. The Liquidating Debtor will not continue or engage in the conduct of any trade or business, except to the limited extent necessary to accomplish the liquidation and distribution of the Estate Assets.

5.6   **Retained Claims and Defenses.** On and after the Effective Date, pursuant to section 1123(b)(3) of the Bankruptcy Code, the Liquidating Debtor, acting through the Plan Administrator, shall retain and may enforce the Retained Claims and Defenses with all powers and authority of a debtor in possession or trustee under the Bankruptcy Code. Except as set forth below, the Plan Administrator may investigate Retained Claims and Defenses and may assert, settle or enforce any such claims or defenses without supervision by the Bankruptcy Court and free of any restrictions under the Bankruptcy Code or the Bankruptcy Rules. After the Effective Date, the Plan Administrator shall serve all creditors who were members of the Committee as of the Effective Date with notice of: (a) his intent to settle any affirmative claim to recover in excess of $100,000.00 from any third party, and/or (b) to abandon any affirmative claim to recover in excess of $100,000.00 from any third party. The notice shall give creditors five business days to deliver to the Plan Administrator an objection to the proposed settlement or abandonment. In the event an objection is timely received, the Plan Administrator shall file a motion seeking approval of such settlement and/or such abandonment. The Committee members shall have no fiduciary duty or obligation to review or object to these notices. In the course of any ongoing investigations, the Plan Administrator shall have the right post-confirmation to utilize Bankruptcy Rule 2004 examinations, to be enforced pursuant to Bankruptcy Rule 2005.

To the extent any Retained Claims and Defenses are already pending on the Effective Date, the Plan Administrator as successor to the Debtor may continue the prosecution of such Retained Claims and Defenses. Without limiting the foregoing, the Plan Administrator, acting on behalf of the Liquidating Debtor, shall accede to and become the holder of all rights in and to any confidentiality agreements, joint defense agreements, and privilege agreements, as well as rights

pursuant to attorney-client privilege, attorney work product and any other or similar doctrine, of the Debtor and the Committee. Any proceeds received from or on account of the Retained Claims and Defenses shall constitute Estate Assets and shall vest entirely in the Liquidating Debtor.

5.7 **Avoidance Actions.** On and after the Effective Date, the Liquidating Debtor, acting through the Plan Administrator, shall retain and may enforce the Avoidance Actions with all powers and authority of a debtor in possession or trustee under the Bankruptcy Code. The Plan Administrator may investigate Avoidance Actions and may assert, settle or enforce any such claims or defenses. To the extent any Avoidance Actions (including the Bank of America Preference Action) are already pending on the Effective Date, the Plan Administrator as successor to both the Debtor and the Committee, may continue the prosecution of such Avoidance Actions. Any proceeds received from or on account of the Avoidance Actions shall constitute Estate Assets and shall vest entirely in the Liquidating Debtor.

5.8 **Claims Reserve Account.** On or as soon as practical following the Effective Date, the Claims Reserve Account shall be opened by the Plan Administrator and held by the Liquidating Debtor and funded by all Estate Assets not transferred to the Shareholder Liquidation Trust or deposited in the Reserved Claims Pool Account, which funds (minus Plan Expenses) shall be held for the benefit of holders of Classes 2, 5, 6, 7, and 8. Unless otherwise provided in the Confirmation Order, the Claims Reserve Account shall be invested by the Plan Administrator in a manner consistent with the objectives of section 345(a) of the Bankruptcy Code. All duties and obligations associated with the maintenance of the Claims Reserve Account, including but not limited to, any fees, taxes, tax reporting or filings with any governmental authority, shall be the sole responsibility of the Plan Administrator.

5.9 **Liquidating Debtor Litigation Budget.** Upon Confirmation, the Plan Administrator shall reserve an amount sufficient for the completion of the investigations started pre-confirmation, and to fund cost deposits to bring any Retained Claims and Defenses. The Plan Administrator may reserve additional funds post confirmation based on information available at the time in the exercise of his business judgment.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

5.10 **Liquidating Debtor Liquidation Budget.** Upon Confirmation, the Plan Administrator shall reserve the estimated amount of two years' U.S. Trustee fees, and a sufficient amount for estimated costs to be incurred by the Liquidating Debtor through the close of the case The Liquidating Debtor may reserve additional funds post confirmation based on information available at the time in the exercise of his or her business judgment.

5.11 **Shareholder Liquidation Settlement.** In connection with the solicitation of the Plan, each Former Shareholder will receive a separate exhibit detailing the Shareholder Settlement Payment, which is amount that the Estate will agree to accept in order to settle all known and unknown claims against such Former Shareholder. Each Shareholder who makes the Settlement Payment to the Debtor with his or her Ballot accepting the Plan fourteen days prior to the Confirmation Hearing shall receive on the Effective Date:

(i) A release of the Debtor's known and unknown claims against the Shareholder, excepting any claims arising from or related (e.g. any claims necessary to avoid release of *Jewel v. Boxer* claims in the Dissolution Plan) to the doctrine of *Jewel v. Boxer*;

(ii) The right to receive the benefits of and the protections and benefits provided in the Shareholder Liquidation Trust described below; and

(iii) To the extent that the Liquidating Debtor is actively incurring attorneys fees and costs defending any Claims against the Estate that have also been made directly against a Former Shareholder, any Former Shareholder who timely makes a Shareholder Settlement Payment may elect to be defended in such action by counsel for the Liquidating Debtor upon the execution of such waivers of any conflicts of interest as are required by the Liquidating Debtor.

5.12 **Funding of the Shareholder Liquidation Trust.**
On the Effective Date, the Shareholder Liquidation Trust shall be funded with the Initial Trust Corpus.

5.13 **Use of Shareholder Liquidation Trust Funds.** The funds in the Shareholder Liquidation Trust shall first be used to cover (a) the projected cost to complete the destruction and/or return of all client files in an organized manner in accordance with the requirements of applicable

ethics rules, and (b) the costs of administering the Trust including compensation for the Shareholder Liquidation Trustee.

In his sole discretion, the Shareholder Liquidation Trustee shall have the power to use any excess funds from Settling Shareholders and/or from the liquidation of the MPC Equity to defend, settle or otherwise resolve any Malpractice Claims and/or other claims against Settling Shareholders. The Shareholder Liquidation Trustee shall make decisions with respect to whether to expend funds to defend, settle or otherwise resolve Malpractice Claims against Settling Shareholders based on the total amount of funds available in the Shareholder Liquidation Trust and the projected costs of completing all obligations under the Shareholder Liquidation Trust Agreement.

5.14 **Management of Shareholder Liquidation Trust.** So long as it does not prevent the Shareholder Liquidation Trustee from performing his duties, the Shareholder Liquidation Trustee shall be prohibited from expending any funds either directly or indirectly for the benefit of any Shareholder that is not a Settling Shareholder. Additionally, Liquidating Debtor shall make its personnel, software and systems reasonably available to the Shareholder Liquidation Trustee to the extent necessary to assist the Shareholder Liquidation Trustee in handling the records administration and disposal duties imposed upon him under the Plan and the Shareholder Liquidation Trust Agreement, at no cost to the Shareholder Liquidation Trust. The Shareholder Liquidation Trustee shall be compensated by charging a reasonable hourly rate on an interim basis by the Shareholder Liquidation Trust without further Order of the Court Bankruptcy Court, plus out of pocket costs, including the cost of appropriate E&O insurance.

Upon the completion of all duties, the Shareholder Liquidation Trustee shall file a motion to close the Shareholder Liquidation Trust, to turn over any excess funds to the Liquidating Debtor, and to be discharged as the Trustee. The Shareholder Liquidation Trustee shall file concurrently a motion seeking approval of all fees and expenses paid as compensation after the Effective Date by the Shareholder Liquidation Trust.

5.15 **Limitation of Liability of Plan Administrator and Shareholder Liquidation Trustee.** The Plan Administrator and the Shareholder Liquidation Trustee, and their officers, directors, attorneys, accountants, consultants, employees, agents and assignees, shall have no

liability for any error of judgment made in good faith other than as a result of gross negligence or willful misconduct. The Plan Administrator and the Shareholder Liquidation Trustee shall not be liable for any action taken or omitted in good faith and believed by him to be authorized within the discretion or rights or powers conferred upon them by this Plan or the New Plan Documents. In performing their duties hereunder, the Plan Administrator and the Shareholder Liquidation Trustee may consult with counsel selected by them, at the expense of the Liquidating Debtor or Shareholder Liquidation Trust, as applicable. No provisions of this Plan shall require any employee, officer or director of the Plan Administrator and the Shareholder Liquidation Trustee to expend or risk his own funds or otherwise incur personal financial liability in the performance of any of its duties under this Plan or in the exercise of any of the Plan Administrator and the Shareholder Liquidation Trustee's rights and powers. The Liquidating Debtor shall indemnify and hold the Plan Administrator harmless, and the Shareholder Liquidation Trust shall indemnify and hold the Shareholder Liquidation Trustee harmless, from and against any damages, costs, claims and other liabilities incurred in connection with their respective duties and responsibilities hereunder, other than those damages, costs, claims and other liabilities that result from such party's gross negligence or willful misconduct. The Plan Administrator may purchase errors and omissions insurance to cover potential liabilities that may be incurred in this case, and such cost shall be paid for by the Liquidating Debtor.

5.16 **Dissolution of the Committee.** From and after the Effective Date, the Committee will be dissolved, except for the limited purpose of reviewing, analyzing, and if appropriate, objecting to Claims for Professional Fees incurred prior to the Effective Date. The members of the Committee shall have no further obligations or fiduciary duties of any kind after the Effective Date.

5.17 **Material default under the Plan.** Failure to make any payment required to be made under the Plan by the Liquidating Debtor, including but not limited to any regular amortized payments of principal and interest, or any payments due upon maturity, shall be considered a default under the Plan. If any default is not cured within 30 days after service of written notice of such default to the Liquidating Debtor, the U.S. Trustee, any affected Creditor, or any affected party in interest asserting such default may seek appropriate relief to enforce its rights under the Plan.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

5.18 **Cooperation.** Proponents of the Plan shall cooperate with one another in connection with any matter related to the consummation or implementation of this Plan.

5.19 **Payment of Plan Expenses.** All Plan Expenses may be paid by the Liquidating Debtor.

5.20 **Biggers Settlement Mechanism.** Pursuant to the Biggers Settlement Agreement, holders of Biggers Priority Claims and Biggers Unsecured Claims who do not Opt Out will have their Claims Allowed once the Biggers Settlement Order becomes a Final Order and a judgment is entered and becomes final. The Proponents expect this will occur some time after the Effective Date. Should a member of the Biggers Class prefer to not wait for the Biggers Approval Order to become a Final Order (and for entry of the judgment), such member can execute the Biggers Settlement Release attached hereto as Exhibit D and deliver the original to the Proponents prior to the expiration of the time for balloting on the Plan, in which case such class member shall be entitled to have their Biggers Priority Claim and Biggers Unsecured Claim paid earlier.

Even if a member of the Biggers Class elects to Opt Out of the Biggers Settlement by the Biggers Opt Out Deadline, such member shall still receive the treatment provided in the Plan for their Class 1 and Class 5 Claims that are not related to the WARN Act or waiting time penalties.

Once the Biggers Settlement Order becomes a Final Order, the Substantial Contribution Payment shall be owing, as set forth in the Biggers Settlement Agreement.

5.21 **Distribution Procedures.** No payments or distributions shall be made by the Liquidating Debtor on account of Disputed Claims unless and to the extent such Claims become Allowed Claims. The funds allocated to Disputed Claims will not be distributed, but will be held in the Claims Reserve Account by the Liquidating Debtor in accordance with this Plan pending resolution of such Disputed Claims. Except as otherwise agreed by the holder of a particular Claim, or as provided in this Plan, all amounts to be paid by the Liquidating Debtor under the Plan shall be distributed in such amounts and at such times as is reasonably prudent, in the form of interim and/or final distributions, with sufficient reserves established to satisfy any Disputed Unsecured Claims, Professional Fees and anticipated Plan Expenses. Unless otherwise provided in this Plan, all distributions to Creditors shall be: (i) in U.S. dollars by check, draft or warrant, drawn on a domestic

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1    bank, or by wire transfer from a domestic bank, and (ii) by first-class mail (or by other equivalent or

2    superior means as appropriate).

3        5.22    **Resolution of Disputed Claims**  The Plan Administrator shall promptly move to file

4    objections to Claims with the goal being that all objections be filed and served not later than one

5    hundred and eighty (180) days following the Effective Date, provided that, such date shall not bar

6    later objections. Unless otherwise provided in the Confirmation Order, the Liquidating Debtor shall

7    be authorized to settle, or withdraw any objections to, any Disputed Claim following the

8    Confirmation Date without further notice to Creditors or authorization of the Bankruptcy Court, in

9    which event such Claim shall be deemed to be an Allowed Claim in the amount compromised for

10   purposes of this Plan, provided however, that the Bankruptcy Court shall retain jurisdiction to hear

11   and adjudicate the allowance or disallowance of Claims, as provided for in Article IX of this Plan.

12   Nothing herein shall confer on the Liquidating Debtor the right to estimate undisputed, liquidated or

13   non-contingent Claims; such Claims shall be allowed (or disallowed) as determined by the parties,

14   or, alternatively, by the Bankruptcy Court if the parties are unable to agree on the amount of the

15   Claim.  Under no circumstances will any distributions be made on account of Disallowed Claims.

16       5.23    **Reserve Provisions for Disputed Claims.**  The Liquidating Debtor shall implement

17   the following procedures with respect to the allocation and distribution of Cash held in reserve for

18   the benefit of holders of Disputed Claims that may become Allowed Claims:

19           (i)    Cash respecting Disputed Claims shall not be distributed, but, if necessary,

20   shall be withheld by the Liquidating Debtor, in an amount equal to the amount of the distributions

21   that would otherwise be made to the holders of such Claims if such Claims had been Allowed

22   Claims;

23           (ii)    All holders of Allowed Claims shall be entitled to receive, if available, interim

24   distributions under the Plan.  No distributions may be made to the holders of Allowed Claims unless

25   adequate reserves are established for the payment of Disputed Claims, and sufficient funds are also

26   reserved for expected Plan Expenses;

27           (iii)    For the purposes of effectuating the provisions of this Section 5.15 the

28   Bankruptcy Court may estimate the amount of any Disputed Unsecured Claim pursuant to section

502(c) of the Bankruptcy Code, in which event the amounts so fixed or liquidated shall be deemed to be Allowed Claims pursuant to section 502(c) of the Bankruptcy Code for purposes of distribution under this Plan.  In lieu of estimating the amount of any Disputed Claim, the Bankruptcy Court may determine the Disputed Claims Amount to be reserved for such Disputed Claim, or such amount may be fixed by agreement in writing with the holder thereof;

               (iv)     When a Disputed Claim becomes an Allowed Claim, there shall be distributed to the holder of such Allowed Claim, in accordance with the provisions of this Plan, Cash equal to a Pro Rata Share of the Cash set aside for such Claim, but in no event shall such holder be paid more than the amount that would otherwise have been paid to such holder if the Disputed Claim (or the Allowed portion of the Disputed Claim) had not been a Disputed Claim;

               (v)     Interim distributions may be made from time to time to the holders of Allowed Claims prior to the resolution by Final Order or otherwise of all Disputed Claims, provided that, such distributions are otherwise consistent with the terms of this Plan and the aggregate amount of Cash to be distributed at such time is practicable in comparison to the anticipated costs of such interim distributions;

               (vi)     No holder of a Disputed Claim shall have any Claim against the Cash reserved with respect to such Claim until such Disputed Claim shall become an Allowed Claim.  In no event shall any holder of any Disputed Claim be entitled to receive (under the Plan or otherwise) any payment (x) which is greater than the amount reserved for such Claim by the Bankruptcy Court pursuant to this Section 5.15 or (y) except as otherwise permitted under this Plan, of interest or other compensation for delays in distribution.  In no event shall the Plan Administrator have any responsibility or liability for any loss to or of any amount reserved under these provisions of this Plan;

               (vii)     To the extent a Disputed Claim ultimately becomes an Allowed Claim in an amount less than the Disputed Claims Amount reserved for such Disputed Claim, then the resulting surplus of cash shall be distributed among the holders of Allowed Claims of like Class until such time as each holder of an Allowed Claim has been paid the Allowed amount of its Claim.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

5.24 **Allocation of Distributions.** Distributions to any holder of an Allowed Claim shall be allocated first to the principal amount of any such Allowed Claim, as determined for federal income tax purposes, and then, to the extent the consideration exceeds such amount, to the remainder of such Claim comprising interest, if any (but solely to the extent that interest is an allowable portion of such Allowed Claim).

5.25 **Rounding.** Whenever any payment of a fraction of a cent would otherwise be called for the actual distribution shall reflect a rounding of such fraction down to the nearest cent.

5.26 **De Minimis Distributions.** Notwithstanding any other provision of this Plan, distributions of less than $50.00 need not be made by the Liquidating Debtor on account of any Allowed Claim, provided that, distributions that would otherwise be made but for this provision shall carry over until the next date of a distribution until the cumulative amount to which any holder of an Allowed Claim is entitled is more than $50.00, at which time the cumulative amount of such distributions shall be paid to such holder. Distributions that will not be made as of the date of a final distribution shall be treated as unclaimed distributions as provided in Section 5.27 of this Plan.

Notwithstanding any other provision of this Plan, at the point when the remaining funds in the Claims Reserve Account consist of an amount impracticable to distribute, the Liquidating Debtor may donate (or authorize the Plan Administrator to donate) such Cash to a nonprofit organization or organizations in this judicial district that are exempt pursuant to section 501(c) of the Internal Revenue Code (Title 26 of the United States Code).

5.27 **Disputed Payments.** In the event of any dispute between and among Creditors as to the right of any entity to receive or retain any payment or distribution to be made to such entity under the Plan, the Liquidating Debtor may, in lieu of making such payment or distribution to such entity, instead hold such payment or distribution until the disposition thereof shall be determined by the Bankruptcy Court.

5.28 **Unclaimed Property.** Creditors have the obligation to file change of address forms with the Court and to serve such changes of address on the Liquidating Debtor and its counsel. Any Claimant which fails to claim any Cash within 90 days from the date upon which a distribution is first made to such entity shall forfeit all rights to any distribution under the Plan, and shall not be

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

subject to the unclaimed property or escheat laws of any governmental unit. Upon forfeiture, such Cash (including interest thereon) shall be made available for re-distribution to other holders of Allowed Claims of like Class. Entities which fail to claim Cash shall forfeit their rights thereto and shall have no claim whatsoever against the Liquidating Debtor or the Plan Administrator, as applicable, or any holder of an Allowed Claim to whom distributions are made under this Plan, provided, however, that the Plan Administrator may but is not required to undertake reasonable efforts, in its business judgment, to locate creditors whose distributions are returned.

5.29 **Successor Plan Administrator or Shareholder Liquidation Trustee.** In the event any Plan Administrator resigns, dies, or is otherwise unable or unwilling to perform his or her duties under this Plan, the successor Plan Administrator shall be Paul D. Menzies. In the event Mr. Menzies is unable or unwilling to serve the successor shall be selected by the Office of the United States Trustee, after consultation with parties in interest, including unsecured creditors and Interest Holders or their successors, as appropriate. In the event any Shareholder Liquidation Trustee resigns, dies, or is otherwise unable or unwilling to perform his or her duties under this Plan, a successor shall be selected by the Office of the United States Trustee, after consultation with parties in interest, including Interest Holders or their successors, as appropriate.

5.30 **Setoffs.** Nothing contained in this Plan shall constitute a waiver or release by the Debtor of any right of setoff or recoupment that the Debtor or the Liquidating Debtor may have against any Creditor or Interest Holder.

5.31 **No Distributions on Late-Filed Claims.** Except as otherwise provided in a Final Order of the Bankruptcy Court, any Claim as to which a proof of Claim was first filed after the Bar Date shall be a Disallowed Claim, and no distribution shall be made to a holder of such a Claim, provided that, to the extent such Claim was listed in the Schedules (other than as contingent, disputed, or unliquidated), such Claim shall be treated as an Allowed Claim in the amount in which it was so listed.

5.32 **Withholding Taxes.** Pursuant to section 346(f) of the Bankruptcy Code, the Liquidating Debtor shall be entitled to deduct any federal, state or local withholding taxes from any

Case: 98-32514    Doc# 680    Filed: 10/08/09    Entered: 10/08/09 23:40:43    Page 41 of 53

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Cash payments made with respect to Allowed Claims, as appropriate.  The Liquidating Debtor shall comply with all reporting obligations imposed on it by any governmental unit.

5.33    **Post-Effective Date Reports.**  Following the Effective Date, the Liquidating Debtor shall prepare and submit to the Bankruptcy Court and the Office of the United States Trustee, post-confirmation reports for a revested debtor in the form suggested by the Office of the United States Trustee for Region 17.  The first post-confirmation report shall be due within thirty (30) days following the end of the first calendar quarter from the Effective Date and shall be filed on a quarterly basis thereafter, unless otherwise agreed by the Liquidating Debtor and the Office of the United States Trustee.

5.34    **Post Effective Date Employment and Compensation of Professionals.**  After the Effective Date, the Plan Administrator may retain any existing Professionals of the Committee or the Debtor without further employment agreements or orders.  Additionally, after the Effective Date, the Plan Administrator and the Shareholder Liquidation Trustee may hire Professionals without the requirement that such Professionals file employment applications for Bankruptcy Court approval of their employment, whether on an hourly, contingency fee or other basis, and without requirement that such Professionals file applications for payment of post-Effective Date fees and expenses on an interim basis; provided, however, that no less frequently than every 180 days, such post-confirmation Professionals, and the Plan Administrator and the Shareholder Liquidation Trustee shall each file an application with the Bankruptcy Court seeking final approval of their respective fees and expenses as previously invoiced or paid on an interim basis, as the case may be.  Such applications shall be served on the United States Trustee; provided, however, such applications need not be in the format required by the Local Rules of the Bankruptcy Court or the United States Trustee's Guidelines, but shall be sufficiently detailed to identify the hours worked, the rates charged and the work performed.  In the case of fees or expenses paid on a basis which is not by billable hours, the application shall include such other, sufficiently specific information so that the Bankruptcy Court can otherwise determine the reasonableness of such fees and expenses.

5.35    **Final Decree.**  Upon substantial consummation of the Plan, the Plan Administrator (after consultation with the Shareholder Liquidation Trustee) shall be authorized to file a motion for

the entry of a final decree closing the Chapter 11 case pursuant to section 350 of the Bankruptcy Code. Concurrently with the motion for entry of final decree, the Plan Administrator shall also file a report with the Court and the Office of the United States Trustee that sets forth the distributions made by the Liquidating Debtor pursuant to the Plan.

**ARTICLE VI**

**EXECUTORY CONTRACTS**

6.1     **Executory Contracts and Unexpired Leases.**

6.1.1     **Assumption.**  Upon the Effective Date, the Debtor will reject each of the Rejected except for any Assumed Contracts identified on **Exhibit B**, which shall be assumed.  The Debtor reserves the right to make additions to Exhibit B up to 10 days prior to the date on which objections must be filed to the Plan with respect to the Confirmation Hearing.  The Liquidating Debtor shall be responsible for all Cure Obligations with respect to the Assumed Contracts.

6.1.2     **Rejection.**  Nothing contained herein shall constitute a waiver by the Debtor or the Liquidating Debtor of the right to contend that some or all of a Rejected Contract is not executory, or that it was not terminated earlier by agreement or operation of law.  Any Rejection Claim arising from the rejection of an executory contract or unexpired lease pursuant to the Plan shall be filed within thirty (30) days of entry of the Confirmation Order, provided that such deadline is not applicable to any executory contract or unexpired lease rejected prior to the Effective Date and for which a different Rejection Claim Bar Date was previously fixed by the Bankruptcy Court pursuant to Bankruptcy Rule 3002(c)(4).  The notice of entry of the Confirmation Order shall provide the Rejection Claim Bar Date for agreements rejected pursuant to the Plan.  Any Rejection Claim not filed by the applicable Rejection Claims Bar Date shall be a Disallowed Claim and shall be forever barred as a Claim against the Debtor, the Liquidating Debtor, the Committee or any property of the Debtor and from sharing in any distribution under this Plan.

6.2     **Satisfaction of Cure Obligations.**  The Liquidating Debtor shall satisfy any Cure Obligations for the Assumed Contracts by making a Cash payment equal to the lesser of the amount: (a) set forth in any other notice,  motion or supplement to the Plan filed and served in connection with the Confirmation Hearing or as may be determined in an Assumption and Cure Order, or (b)

agreed to in writing between the Liquidating Debtor and the non-debtor parties to such contracts or leases. The Debtor shall attach a schedule of proposed Cure Obligations to the Disclosure Statement approved by the Court pursuant to section 1125 of the Bankruptcy Code. Objections, if any, to the Cure Obligations must be filed fourteen (14) days prior to the Confirmation Hearing. The Liquidating Debtor shall satisfy the Cure Obligations within ten (10) days from the date from which an Assumed Contract is assumed pursuant to section 365(b) of the Bankruptcy Code.

6.3 **Post-Petition Executory Contracts and Unexpired Leases.** Except as may be provided otherwise by the Confirmation Order, all agreements and stipulations entered into by the Debtor on or after the Petition Date, and all executory contracts and unexpired leases previously assumed by the Debtor on or after the Petition Date, shall remain in full force and effect following Confirmation to the extent and in the manner set forth in such agreements, stipulations and Assumed Contracts or leases, in each case as approved and authorized by the Bankruptcy Court, and as the same may have been amended, modified or transferred.

6.4 **Employee Benefit Plans.** Except as otherwise provided in the Plan, all Employee Benefit Programs for existing employees of the Debtor on the Effective Date shall be treated as "executory contracts" and shall be assumed pursuant to sections 365 and 1123(b)(2) of the Bankruptcy Code by operation of the Plan.

6.5 **Order Authorizing Assumption or Rejection.** The Confirmation Order (or if set forth in a separate order from the Confirmation Order, the Assumption and Cure Order applicable to such Assumed Contract) shall constitute an order of the Bankruptcy Court approving (effective only upon the occurrence of the Effective Date) the assumption or rejection, as the case may be, pursuant to sections 365 and 1123(b)(2) of the Bankruptcy Code of all executory contracts and unexpired leases under this Article of the Plan. The contracts and leases under this Article 6 will be assumed or rejected, respectively, only to the extent that such contracts or leases constitute executory contracts or unexpired leases.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

## ARTICLE VII

## CONDITIONS PRECEDENT

7.1    **Conditions to Confirmation.**  Confirmation of this Plan is conditioned upon the entry of an order confirming the Plan which shall, among other things, (1) decree that the Plan and the Confirmation Order shall supersede any Bankruptcy Court orders issued prior to the Effective Date that are inconsistent therewith; (2) authorize the implementation of the Plan in accordance with its terms; (3) contain findings supported by evidence adduced at the Confirmation Hearing that upon the occurrence of the Effective Date, that the Plan is proposed in good faith, that all actions contemplated by the Plan necessary to implement the restructuring contemplated by the Plan are authorized by all corporate action, and pursuant to section 1146(c) of the Bankruptcy Code the issuance of securities and the grant of liens and security interests pursuant to the Plan are not subject to any stamp, real estate, or transfer tax; (4) issue the injunction set forth in the Plan, effective as of the Effective Date; (5) decree that on the Effective Date, the revesting of assets in the Debtor contemplated by the Plan is or will be legal, valid and effective, and vest or will vest in the Liquidating Debtor good and marketable title to such property free and clear of all Liens, Claims, and Interests except as provided in the Plan; and (6) confirm the Plan and authorize implementation in accordance with its terms.  If any of the foregoing terms and conditions is not met, the Proponents may, at their option, withdraw this Plan and, if withdrawn, this Plan shall be of no further force or effect.

7.2    **Conditions to Effective Date.**  If no stay of the Confirmation Order is then in effect, this Plan shall become effective and the Effective Date shall occur upon the closing of the transactions contemplated herein, but no later than thirty (30) days after entry of the date that the Confirmation Order becomes a Final Order.

## ARTICLE VIII

## EFFECTS OF CONFIRMATION

8.1    **Binding Effect of Plan.**  The provisions of the confirmed Plan shall bind the Debtor, the Liquidating Debtor, the Committee, and any Creditor or Interest Holder, whether or not such Creditor or Interest Holder has filed a proof of Claim or Interest in the Chapter 11 Case, whether or

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

not the Claim of such Creditor or the Interest of such Interest Holder is impaired under the Plan, and whether or not such Creditor or Interest Holder has accepted or rejected the Plan. All Claims and Debts shall be as fixed and adjusted pursuant to this Plan. With respect to any taxes of the kind specified in Bankruptcy Code section 1146(c), this Plan shall also bind any taxing authority, recorder of deeds or similar official for any county, state, or governmental unit or parish in which any instrument related to under this Plan or related to any transaction contemplated under this Plan is to be recorded.

8.2     **Revesting of Property Free and Clear.** Upon the Effective Date, title to all Estate Assets shall vest in the Liquidating Debtor for the purposes contemplated under the Plan and shall no longer constitute property of the Estate created for Heller Ehrman in its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code. Except as otherwise provided by this Plan, and to the full extent allowed by sections 1141(b) and (c) of the Bankruptcy Code, upon the Effective Date, all Estate Assets shall be free and clear of all Claims, Liens and Interests, including Unsecured Claims. All Unsecured Claims against the Debtor or the Estate shall be of no further force or effect except with respect to the rights of holders of Allowed Claims to received payments or distributions as set forth herein. Following the Effective Date, the Liquidating Debtor may use, acquire or dispose of any such property free of any restrictions imposed by the Bankruptcy Court, the Bankruptcy Code or the Bankruptcy Rules and without further approval of the Bankruptcy Court or notice to Creditors, except as may otherwise be required under the Plan or the Confirmation Order. Except as otherwise expressly provided in the Plan or Confirmation Order, all rights or causes of action are hereby preserved and retained for enforcement solely and exclusively by and at the discretion of the Liquidating Debtor.

8.3     **Injunction.** On the Effective Date, and except as otherwise provided by the Plan, all entities who have held, hold or may hold Claims against or Interests in the Debtor or the Debtor's estate that arose prior to the Effective Date are permanently enjoined from: (a) commencing or continuing in any manner, directly or indirectly, any action or other proceeding of any kind against the Liquidating Debtor with respect to any such Claim or Interest; (b) the enforcement, attachment, collection or recovery by any manner or means, directly or indirectly, of any judgment, award,

decree, or order against the Liquidating Debtor or any assets or property of the Liquidating Debtor with respect to any such Claim or Interest; (c) creating, perfecting or enforcing, directly or indirectly, any Lien or encumbrance of any kind against the Liquidating Debtor or any property of the Liquidating Debtor with respect to any such Claim; (d) asserting, directly or indirectly any obligation against the Liquidating Debtor any property of the Liquidating Debtor with respect to any such Claim or Interest; and (e) any act, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan with respect to such Claim or Interest. Except as otherwise provided in the Plan, no claims of the Debtor or Liquidating Debtor against any person or entity shall be discharged, released, or compromised pursuant to the Plan or Confirmation Order.

8.4 **Full and Final Satisfaction.** Commencing upon the Effective Date, the Liquidating Debtor shall be authorized and directed to distribute the amounts required under this Plan to the holders of Allowed Claims according to the provisions of the Plan. Upon the Effective Date, all Debts of the Debtor shall be deemed fixed and adjusted pursuant to this Plan and the Debtor, the Liquidating Debtor, the Committee, as applicable, shall have no further liability on account of any Claims or Interests except as set forth in this Plan. All payments and all distributions made by the Liquidating Debtor under the Plan shall be in full and final satisfaction, settlement and release of all Allowed Claims.

8.5 **Limitation of Liability.** The Debtor, the Liquidating Debtor, the Dissolution Committee and each of its members, the Committee, the Shareholder Liquidation Trustee, and their respective officers, directors, managers, employees, agents, and representatives (collectively, the "Exculpated Parties"), will neither have nor incur any liability to any entity for any action in good faith taken or omitted to be taken in connection with or related to the Chapter 11 Case the investigations of potential claims or the formulation, preparation, dissemination, implementation, Confirmation or consummation of the Plan, the Disclosure Statement, or any agreement created or entered into in connection with the Plan or incident to the Chapter 11 Case, provided that, this limitation will not affect or modify the rights of any holder of an Allowed Claim to enforce its rights under the Plan or the non-debtor party to an Assumed Contract to enforce its rights under the Assumed Contract, nor shall the foregoing exonerate any of the Exculpated Parties from any liability

that is determined that would otherwise result from an act or omission to the extent such act or omission is determined by Final Order to have constituted negligence or willful misconduct.  In addition, notwithstanding any other provision of this Plan, no holder of a Claim or Interest, no other party in interest, none of their respective agents, employees, representatives, financial advisors, attorneys or affiliates, and no successors or assigns of the foregoing, shall have any right of action against any Exculpated Party for any act or omission in connection with, relating to or arising out of the Chapter 11 Case or the consideration, formulation, preparation, dissemination, implementation, Confirmation or consummation of the Plan, the Disclosure Statement, or any transaction or document created or entered into, or any other act taken or omitted to be taken, in connection therewith, except for:  (a) the liability of any entity that would otherwise result from the failure to perform or pay any obligation or liability under the Plan or any contract, instrument, release or other agreement or document to be entered into or delivered in connection with the Plan, or (b) the liability of any entity that would otherwise result from any such act or omission to the extent that such act or omission is determined in a Final Order to have constituted negligence or willful misconduct.  The Exculpated Parties do not include any Professionals.

## ARTICLE IX

## RETENTION OF JURISDICTION

From and after the Confirmation Date, the Bankruptcy Court shall retain such jurisdiction as is legally permissible, including, but not limited to, for the following purposes:

(i)      To hear and determine any and all objections to the allowance of a Claim, actions to equitably subordinate a Claim, or any controversy as to the classification of a Claim in a particular Class under the Plan;

(ii)      To administer or enforce the Plan;

(iii)      To liquidate any Disputed Claims;

(iv)      To hear and determine any and all adversary proceedings, contested matters or applications pending on the Effective Date;

(v)      To hear and determine any and all motions for the rejection of executory contracts and unexpired leases and to fix and allow any Claims arising therefrom;

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

(vi) To hear and determine any and all applications by the Plan Administrator, the Shareholder Liquidation Trustee, or Professionals for an award of pre-Effective Date Professional Fees, and to consider the periodic final fee applications of Professionals post-Confirmation as provided in section 5.33, above, or to resolve any disputes concerning payment of post-Effective Date Professionals Fees or Plan Expenses;

(vii) To interpret and/or enforce the provisions of the Plan, and the injunction provided for in the Plan and to determine any and all disputes arising under or regarding interpretation of the Plan, or any other agreement, document or instrument contemplated by the Plan, including, without limitation, and claims asserted against the Plan Administrator or against Professionals engaged by him;

(viii) To enter and implement such orders as may be appropriate in the event Confirmation is for any reason stayed, reversed, revoked, modified or vacated;

(ix) To modify any provision of the Plan to the extent permitted by the Bankruptcy Code and to correct any defect, cure any omission, or reconcile any inconsistency in the Plan or in the Confirmation Order as may be necessary to carry out the purposes and intent of the Plan;

(x) To approve applications for Bankruptcy Rule 2004 Examinations and any enforcement orders necessary, including but not limited to pursuant to Bankruptcy Rule 2005;

(xi) To approve any compromise and settlements and/or abandonments of claims against third parties, which either the Plan Administrator in his sole discretion believes should be noticed to creditors, or which is the subject of an objection by a former Committee member;

(xii) To approve any sales of assets or claims pursuant to section 363 of the Bankruptcy Code, which the Plan Administrator in his sole discretion believes should be noticed to creditors;

(xiii) To approve interim and/or final distributions to creditors, including the approval of any publication notices, which the Plan Administrator in his sole discretion believes should be noticed to creditors; and

(xiv) To close the Chapter 11 Case when administration of the case has been completed.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

# ARTICLE X

## MISCELLANEOUS

10.1 **Severability of Plan Provisions.** In the event that, prior to the Confirmation Date, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court shall, have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions hereof shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision hereof, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

10.2 **Governing Law.** Except to the extent that the Bankruptcy Code or other federal law is applicable, the rights, duties and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of California.

10.3 **Headings.** The headings contained in this Plan are for convenience of reference only and shall not limit or otherwise affect in any way the meaning or interpretation of this Plan.

10.4 **Language Interpretation.** In the interpretation of this Plan, unless the context otherwise requires, references in this Plan to the singular shall be construed to include references to the plural and vice versa; words importing the singular shall be deemed to import the plural and vice versa; words denoting gender shall include all genders; references to sections, schedules, and exhibits shall mean sections, schedules, and exhibits of and to this Plan; references to part includes the whole, except where the context clearly requires otherwise "or" has the inclusive meaning represented by the phrase "and/or," and the words "hereof," "herein," "hereunder," and similar terms in this Plan refer to this Plan as a whole and not to any particular provision of this Plan.

10.5 **Exhibits.** All exhibits attached to this Plan or the Disclosure Statement are, by this reference, hereby incorporated into the Plan. The final version of all exhibits to the Plan and the

SF68690/001\DOCS_SF:6785990

JOINT PLAN OF LIQUIDATION
43

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Disclosure Statement will be substantially in the forms attached hereto or thereto.  The Proponents reserve the right to make non-substantive changes and corrections to such exhibits in advance of the Confirmation Hearing.  If any exhibits are changed or corrected, the replacement exhibits will be filed with the Bankruptcy Court prior to the commencement of the Confirmation Hearing

    10.6    **Exemption from Transfer Taxes:**  Pursuant to the provisions of section 1146(c) of the Bankruptcy Code, the issuance, transfer or exchange of notes or equity securities under the Plan, the creation of any mortgage, deed of trust or other security interest, the making or assignment of any lease or sublease, the sale or other transfer of any assets by the Debtor or Liquidating Debtor to a third party, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including any deeds, bills of sale or assignments executed in connection with any of the transactions contemplated under the Plan, shall not be subject to any stamp, real estate transfer, mortgage recording, sales, or other similar tax.

    10.7    **Notices.**  All notices required or permitted to be made in accordance with the Plan shall be in writing and shall be delivered personally or by nationally recognized overnight or next-day courier service, first class mail or via facsimile with electronic confirmation of receipt as follows:

                    If to the Debtor:
                    (By Mail or Facsimile)

                    Shelley Salinero
                    Heller Ehrman LLP
                    333 Bush Street, 10th Floor
                    San Francisco, CA 94104
                    (415) 772-6463
                    (415) 772 6268 (Facsimile)

                    With a copy to:

                    John D. Fiero, Esq.
                    Teddy M. Kapur, Esq.
                    Pachulski Stang Ziehl & Jones LLP
                    1509 California Street, Suite 1500
                    San Francisco, CA  94111
                    (415) 263-7000
                    (415) 263-7010 (Facsimile)

If to the Committee:
(By Mail or Facsimile)
Thomas A. Willoughby, Esq.
Felderstein, Fitzgerald, Willoughby & Pascuzzi, LLP
400 Capital Mall, Suite 1450
Sacramento, CA  95814
(916) 329-7400
(916) 329-7435 (Facsimile)

10.8 **Computation of Time Periods.**  In computing any period of time prescribed or allowed by the Plan, the day of the act, event, or default from which the designated period of time begins to run shall not be included.  The last day of the period so computed shall be included unless it is a Saturday, a Sunday, or a legal holiday, or, when the act to be done is the filing of a paper in the Bankruptcy Court, a day on which weather or other conditions have made the clerk's office inaccessible, in which event the period runs until the end of the next day which is not one of the aforementioned days.

10.9 **Defects, Omissions and Amendments.**  The Proponents, with the approval of the Bankruptcy Court and without notice to all holders of Claims or Interests, insofar as it does not materially and adversely affect holders of Claims, may correct any defect, omission or inconsistency in the Plan in such manner and to such extent as may be necessary or desirable to expedite the execution of the Plan.  The Plan may be altered or amended before or after Confirmation as provided in section 1127 of the Bankruptcy Code.

10.10 **Filing of Additional Documents.**  The Proponents shall file with the Bankruptcy Court such agreements or other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

10.11 **Successors and Assigns.**  The rights, benefits and obligations of any entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors and/or assigns of such entity.

10.12 **Implementation.**  Upon Confirmation, the Debtor and the Committee shall be authorized to take all steps and execute all documents necessary to effectuate the provisions contained in the Plan.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

10.13 **Certain Actions.** By reason of entry of the Confirmation Order, prior to, on or after the Effective Date (as appropriate), all matters provided for under the Plan that would otherwise require approval of the owners, stockholders, shareholders, members, directors, managers, or officers of the Debtor under the Plan, including, without limitation, (i) the distribution of Cash pursuant to the Plan, (ii) the adoption, execution, delivery, and implementation of all contracts, leases, instruments, releases, and other agreements or documents related to the Plan, and (iii) the adoption, execution, and implementation of other matters provided for under the Plan involving the company or organizational structure of the Debtor, shall be deemed to have occurred and shall be in effect prior to, on or after the Effective Date (as appropriate), pursuant to the applicable general corporation, limited liability, or partnership law of the state in which the Debtor or the Liquidating Debtor is chartered, organized or incorporated, without any requirement of further action by the owners, stockholders, shareholders, members, directors, managers, or officers of the Debtor.

10.14 **Waiver of Ten (10) Day Stay.** The Proponents request as part of the Confirmation Order a waiver from the Bankruptcy Court of the ten (10) day stay of Bankruptcy Rule 3020(e) and, to the extent applicable, a waiver of the ten (10) day stay of Bankruptcy Rule 6004(g).

Dated: October 8, 2009                    PACHULSKI STANG ZIEHL & JONES LLP

                                          By      */s/ John D. Fiero*
                                                  John D. Fiero
                                                  Attorneys for Heller Ehrman LLP,
                                                  Debtor and Debtor in Possession


Dated:    October 8, 2009                 FELDERSTEIN, FITZGERALD, WILLOUGHBY
                                              & PASCUZZI, LLP

                                          By      */s/ Thomas Willoughby*
                                                  Thomas Willoughby, Esq.
                                                  Counsel to the Official Committee of
                                                  Unsecured Creditors