1  DALE L. BRATTON (Bar No. 124328)
2  172 – 7th Avenue
   San Francisco, CA 94118-1207
3  Telephone:   415-518-5313
   Email:  brattonlaw@comcast.net
4
5  Creditor Appearing Pro Se
6
7
8              UNITED STATES BANKRUPTCY COURT
9               NORTHERN DISTRICT OF CALIFORNIA
10                  SAN FRANCISCO DIVISION
11

| | |
|---|---|
| In re: | Bk. No.: 08-32514 |
| **HELLER EHRMAN, LLP**, | Chapter 11 |
| Debtor. | **CREDITOR BRATTON'S OBJECTION TO APPROVAL OF DISCLOSURE STATEMENT** |
| | Date:    November 9, 2009<br>Time:    1:30 p.m.<br>Place:   U.S. Bankruptcy Court<br>            235 Pine Street, 22nd Floor<br>            San Francisco, CA |
| | Judge:  The Honorable Dennis Montali |

        Dale L. Bratton, a creditor with a duly filed claim in this Ch. 11 case, herein, objects

to approval of the Disclosure Statement In Support Of Joint Plan Of Liquidation Of Heller

Ehrman LLP [dated October 8, 2009] ("Disclosure Statement" or "DS") filed jointly by

debtor Heller Ehrman LLP ("Debtor") and the Committee of Unsecured Creditors

("Committee," and collectively with the Debtor, the "Proponents").  I have reviewed the

Disclosure Statement, and the Joint Plan of Liquidation of Heller Ehrman LLP [dated

                                              1

Case: 08-32514    Doc# 747    Filed: 11/02/09    Entered: 11/02/09 16:07:53    Page 1 of 9

October 8, 2009] ("Plan") to which it relates, insofar as they have been made available to creditors. The Disclosure Statement fails, on the grounds stated herein, to provide "adequate information" as required by 11 U.S.C. § 1125(a), and approval must therefore be denied.

## I.  DISCLOSURE STATEMENT CONCERNS AN UNCONFIRMABLE PLAN, AND THEREFORE CANNOT BE APPROVED

1. A disclosure statement that describes an unconfirmable plan inherently fails to provide adequate information. Such an inherently illusory disclosure statement should not be approved. 7 COLLIER ON BANKRUPTCY, ¶ 1125.03, at p. 1125-24 (citing cases). The Plan that the Proponents have presented contains several provisions that are in plain violation of bankruptcy law, making the Plan unconfirmable on its face.

(a) Duly filed claims in bankruptcy cases have prima facie validity. Duly filed claims are "deemed allowed" by law, unless and until there has been an objection (11 U.S.C. § 502(a)) and appropriate process on that objection (11 U.S.C. § 502(b)). Such process includes a requirement that the objector include a copy of the claim with the objection as filed and served. Bankr. Local Rule ("BLR") 3007-1(a). Further, when the objector asserts a factual dispute with respect to any element of the claim, there is to be an initial hearing which "shall be deemed a status conference at which the Court will not receive evidence." BLR 3007-1(b).

The Plan violates this mandatory framework. It defines Allowed Claim as the amount that the Debtor – without any judicial process whatsoever – determines as the allowable amount of any particular claim, as listed in the Debtor's Schedules. Plan, Sec. 1.4; DS, pp. 45-47. The same provision of the Plan further arrogates to the Debtor the determination of the priority of any claim instead of the priority asserted in duly filed claims. These provisions turn the applicable bankruptcy law on its head, giving a presumption of validity to the Debtor's books and records as to both amount and priority of claims. DS, pp. 47-48 ("allowed claims accurately reflects

2

the contents of the Debtor's books and records to the best of Debtor's knowledge, information and belief")  It is elementary that there is no presumption of validity accorded to the Debtor's books and records.  The presumption of validity is assigned by law to the duly filed claims, and only judicial process devoted to the claims individually, on their merits, can overturn that presumption.  See In re Commercial Western Finance, 761 F.2d 1329, 1337 (9th Cir. 1985) (plan cannot deal with claims in a manner contrary to express bankruptcy code provisions specifying how such claims are to be resolved, nor does characterizing the plan treatment as a compromise of those claims remedy the process violation).

(b) The Plan purports to give the Debtor a discharge of various claims, including some employee claims.  See Plan §§ 4.4, 4.5, 8.2, and 8.4.  The Plan is a liquidating plan for an entity, not a natural person.  Such an entity, which does not continue in business post-confirmation, cannot receive a bankruptcy discharge.  11 U.S.C. § 1141(d)(3).  The Plan also purports to discharge various claims against non-debtor parties.  Plan §8.5.  This is prohibited by 11 U.S.C. § 524(e).

(c) A plan must treat all claimants in a particular class of claims in the same manner financially.  11 U.S.C. § 1123(a)(4).  The Plan does not do that.  In its treatment of employee claims in classes 2 and 5, claims are treated as allowed only to the extent of the amount that the Debtor has specified for them in its Schedules.  This involves reducing various employee claims as filed to amounts in the Debtor's Schedules.  These reductions apparently would reflect the Debtor's opinion as to how much of a particular claim is overstated or otherwise not allowable for some reason.  It readily follows that those reductions will vary as among claimants, and each claim in the class is not receiving the same treatment.

The Plan provisions noted in subsections (a), ( b), and (c) above make the Plan unconfirmable, and the DS is therefore unapprovable.

(2) Every claimant in a particular class must receive the "same disclosure statement." 11 U.S.C. § 1125(c).  Not similar disclosure statements, or substantially the same disclosure

3

statements, or disclosure statements that are the same except for individualized quantitative exhibits – only the "same disclosure statement" meets the standard. "[D]ifferent disclosure statements, differing in amount, detail, or kind of information" may be transmitted only "as between classes," not within a class. Id. The DS fails to meet this standard. In classes 2 and 5, each employee class member will receive a different disclosure statement, one that has a different exhibit with the actual detail of how only one class member's claims are treated financially. There are several hundred employee members of classes 2 and 5 under the Plan, and the Disclosure Statement transmitted to each of them is different in "amount, detail, or kind of information," in violation of the bankruptcy code. Moreover, just as critically, *not one employee claimant* in those classes receives the *entire* DS as filed with the court, i.e. with the complete exhibit detailing financially how the claims in the class are treated.

These provisions make the Disclosure Statement unapprovable.

## II.     DISCLOSURE STATEMENT'S FLAWED INFORMATION

1.  A key document for understanding how the Plan works as to classes 2 and 5 is Exhibit A to the Biggers Settlement Agreement. This document (referred to hereinafter as "Master Claims Exhibit A") is mentioned at least 13 times in the DS, and is described as "attached hereto" or similar language at least seven times in the DS. But in fact it is not attached to the DS as provided to me, and the Proponents have no intention of sharing it with the creditors in classes 2 and 5 as it has been filed under seal with the bankruptcy court. Without a copy of Master Claims Exhibit A, employee creditors in classes 2 and 5 cannot tell whether the Plan is treating them fairly, or whether their claims are being treated equally with other members of the class they are in. Further, the information that document contains may assist a dissatisfied creditor in persuading other creditors that the Plan should not be confirmed. Each and every creditor is therefore entitled to that

4

BRATTON OBJ. TO DISCL. STATEMENT

information.  <u>In re Perez</u>, 30 F.3d 1209, 1217 (9th Cir. 1994).  A creditor may object to adequacy of disclosure generally, not just as to information specifically affecting his or her claim.  <u>Id</u>.  Each creditor is entitled to the whole picture, not just the slices of information that the plan proponent for its own purposes wants to disclose.

2.  A further problem with Master Claims Exhibit A is that, in the limited format intended for each individual class member (i.e. containing data only for that claimant), it would still be seriously incomplete.  It does not take as its starting point claims *as filed* but only amounts the Debtor unilaterally declares should be allowed on the creditor's claim.  This results in disclosure that is both incomplete and misleading.

   Based on this incomplete presentation, the Debtor gives the impression that employee members of classes 2 and 5 do relatively well under the Plan (and if they accept the Biggers Settlement).  In reality, recovery is, or may be, much less, according to how much of a creditor's claim the Debtor chooses to treat as allowed.  Actual recovery may be as little as zero, a fact that is not disclosed.

   Debtor should therefore disclose, as to each creditor in the employee class, the amount of his claim as filed, the amount the Debtor thinks should be allowed, the amounts the Debtor proposes to distribute on the allowed claim, the percentages the allowed amounts are in relation to the filed claim, and the percentages the allowed amounts are in relation to the allowed claim.

3.  The DS does not indicate on what bases employee claims are modified from as-filed to as allowed unilaterally by the Debtor.  This reduction is left under the vague rubric, "allowed claims accurately reflects the contents of the Debtor's books and records to the best of Debtor's knowledge, information and belief." DS, pp. 47-48.  The Debtor must

5

spell out, in a clear step-by-step manner, how it gets from filed claim to its assertion of allowed claim. This should include the legal and factual bases for reduction, and the amounts of reductions of each type applied. The DS should also discuss how and why reductions from filed to allowed claims are not a uniform percentage across the class of employee claims.

4. The Plan provides that class counsel in the Biggers Settlement will receive up to $950,000 in fees from the Debtor's estate. The benefit allegedly provided by class counsel – and that's to the class, not to the estate – is, at best, with respect to WARN claims. The Debtor states that it will pay vacation and other wage claims without regard to whether the Biggers Settlement is approved, and state waiting time penalty compensation is subordinated by the Plan to a category that everyone – including apparently the court – believes will result in no distribution. The Debtor should disclose how the fees allowed to class counsel relate to the quantum of benefit provided. By my rough estimation, fees are likely to be 45% or more of the supposed benefit. If that is so, creditors should certainly be clearly and expressly made aware of how expensively the Debtor is seeking peace with the class action counsel.

5. Exhibit H to the Biggers Settlement Agreement, which is an exhibit to an exhibit to the DS, is not provided to creditors. That exhibit states a percentage of employee creditors who must accept the Biggers Settlement, or the Debtor may withdraw entirely from the settlement. That exhibit should be disclosed to all creditors. It is information that is relevant to an understanding of whether the proposed Plan is feasible or illusory, and also is important to any creditor who may wish to persuade other creditors against acceptance of the Plan. Such

6

information is not properly withheld from creditors.  In re Perez, 30 F.3d 1209, 1217 (9th Cir. 1994).

6. The Plan states that the Liquidating Debtor will be capitalized by the proceeds of a contemplated settlement of claims or potential claims against former shareholders of the Debtor.  But the DS provides no information as to amounts that might be expected in total from this source, no information as to when it might be received, what happens if its recovery is delayed, or what minimum amount from this source must be recovered for the Plan to be feasible.  A full discussion of the role, and mechanics, of a settlement with shareholders in the financial feasibility of the Plan must be provided.

7. The Plan provides that the post-confirmation Plan Administrator will reserve sufficient funds for litigation of various claims by and against the Debtor.  Plan § 5.9.  There is no disclosure in the DS of how much this litigation budget will deplete funds otherwise available for distribution to creditors.  Nor is there any disclosure of whether there are, or will be, sufficient funds available to meaningfully conduct such litigation activities at all.  These matters must be discussed in the DS, including indications of the probable range of funds needed and to be provided in this category.

8. The Plan provides that the post-confirmation Plan Administrator will reserve sufficient funds for "estimated costs to be incurred . . . through the close of the case."  Plan § 5.10.  There is no disclosure in the DS of how much this expense budget will deplete funds otherwise available for distribution to creditors, for what is not even a finitely specified period of time.  Nor is there any disclosure of whether there are, or will be, sufficient funds available to meet the post-confirmation administrative expenses.  These matters must be discussed in the DS,

7

including indications of the probable range of funds needed and to be provided in this category.

9. The DS, § III.D, notes that the Plan will be implemented, but gives no explanation at all of how that will occur. A laundry list of Plan provisions are mentioned, but neither stated nor explained. This does not constitute adequate information on how the Plan is to be implemented.

10. The DS, § III.F, mentions that there are conditions to confirmation, and to the effectiveness, of the Plan. But the DS provides no statement, nor any explanation of, those conditions. The reader should be told in plain English what the conditions are, what their significance is, and how likely – or unlikely – they are to be satisfied.

The grounds stated in subsections 1-10 above are serious defects in the amount and quality of information provided by the Disclosure Statement. The Disclosure Statement falls far short of meeting the standard for "adequate information" under the bankruptcy code.

**CONCLUSION**

For the reasons given above, the Disclosure Statement must not be approved.

**JOINDER**

Creditors Monika Lee and David Simon have authorized me to state that they join in the foregoing Objection.

November 2, 2009                    Respectfully submitted,

Dale L. Bratton

Dale L. Bratton

8

**PROOF OF SERVICE**

I am over 18 years of age, and not a party to this action. My business address is 172 7th Avenue, San Francisco, CA 94118.

On November 2, 2009, I served the following document(s):

CREDITOR BRATTON'S OBJECTION TO DISCLOSURE STATEMENT

on the person(s) below:

| | |
|---|---|
| Pachulski Stang Ziehl & Jones LLP<br>Attn: John D. Fiero and Teddy Kapur<br>150 California Street, 15th Floor<br>San Francisco, CA 94111 | Counsel for Debtor |
| Felderstein, Fitzgerald, Willoughby & Pascuzzi, LLP<br>Attn: Thomas A. Willoughby<br>400 Capital Mall, Suite 1450<br>Sacramento, CA 95814 | Counsel for Committee |
| Office of the United States Trustee<br>Attn: Minnie Loo<br>235 Pine Street, 7th Floor<br>San Francisco, CA 94104 | Counsel for U.S. Trustee |

The documents were served in the following manner:

I enclosed the documents in a seal envelope addressed to the person(s), at the address(es) as shown above, by placing the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

I am a resident or employed in the county where the mailing occurred. The envelope was placed in the mail at: San Francisco, California.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: November 2, 2009

*Judith M. Bratton*

Judith M. Bratton