MEYERS LAW GROUP, P.C.
MERLE C. MEYERS, ESQ., CA Bar #66849
MICHELE THOMPSON, ESQ., CA Bar #241676
44 Montgomery Street, Suite 1010
San Francisco, CA 94104
Telephone: (415) 362-7500
Facsimile: (415) 362-7515

Attorneys for
AboveNet Communications, Inc.

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re<br><br>HELLER EHRMAN LLP,<br><br>      Debtor. | Case No. 08-32514<br><br>Chapter 11<br><br>Date: January 28, 2010<br>Time: 1:30 p.m.<br>Place: 235 Pine Street, 22nd Floor<br>    San Francisco, CA 94104<br>Judge: The Honorable Dennis Montali |

## MOTION OF ABOVENET COMMUNICATIONS INC. FOR ALLOWANCE OF ADMINISTRATIVE CLAIM PURSUANT TO 11 U.S.C. §§ 365(D)(5) AND 503(A)

AboveNet Communications, Inc. ("AboveNet") hereby submits this motion (this "Motion") for entry of an order for allowance of administrative claims under 11 U.S.C. §§ 365(d)(5) and 503(a). In support thereof, AboveNet respectfully states as follow:

### I.   JURISDICTION AND VENUE

1.   This Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334. This is core proceeding under 28 U.S.C. § 157(b)(2).

2.   The venue of this bankruptcy case and this Motion are proper under 28 U.S.C. §§ 1408 and 1409.

### II.   BACKGROUND

The record of this Court, together with the declaration of Hadley E. Feldman, filed concurrently herewith (the "Supporting Declaration"), establishes the following pertinent facts:

1

MOTION OF ABOVENET INC. FOR ALLOWANCE OF ADMINISTRATIVE CLAIM PURSUANT TO 11 U.S.C. §§ 365(D)(5) AND 503(A)
20045/23848

Case: 08-32514  Doc# 802  Filed: 12/02/09  Entered: 12/02/09 18:35:39  Page 1 of 9

### A. The Master Products and Service Agreement

3. On or about June 30, 2005, AboveNet and Heller Ehrman LLP, the debtor-in-possession herein (the "Debtor"), entered into a personal property lease titled the *Master Products and Services Agreement* (the "Lease"). A true and correct copy of the Lease, together with supplemental, related agreements, is attached to the Supporting Declaration as **Exhibit "A."** Pursuant to the terms of the Lease, the Debtor leased from AboveNet access to AboveNet's network of fiber optics, which allowed the Debtor to use high bandwidth connectivity for its private network and permitted the Debtor to obtain other information services provided by AboveNet.

4. Under the terms of the Lease, the Debtor was required to make monthly lease payments to AboveNet for multi-year periods from the commencement dates indicated in supplemental order forms to the Lease, which commencement dates began in September 2005. In addition to those monthly payments, the Debtor was also liable for late charges on all past-due amounts.

5. Under the terms of the Lease, as set forth in paragraph no. 12 of the *General Terms And Conditions* signed by the Debtor on June 30, 2005, all notices provided by the Debtor to AboveNet under the Lease were to be effective following personal delivery, overnight delivery service or deposit into the United States mail, registered and certified, to the following address: AboveNet Communications, Inc., 360 Hamilton Avenue, White Plains, New York 10601, Attn: Senior Vice President-General Counsel.

### B. Debtor's Chapter 11 Filing.

6. On December 28, 2008 (the "Petition Date"), the Debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court. The Debtor continues to operate as debtor in possession under Sections 1107 and 1108 of the Bankruptcy Code, not trustee having been appointed.

7. As of the Petition Date, the Lease remained in full force and effect, never having been terminated by either the Debtor or AboveNet. As of the Petition Date, the aggregate amount of monthly charges accruing under the terms of the Lease, together with supplemental agreements, was $53,366.07.

8. Immediately following the Petition Date, the Debtor continued to maintain 54 full-time employees to, among other tasks, (a) pursue collection of outstanding accounts receivable, (b) coordinate and manage the transition and securing of client and firm business records, (c) assist in negotiations with key creditor constituencies and (d) perform a number of bookkeeping, office and administrative services essential to the winding down of the Debtor's operations. (see, *Motion of Debtor and Debtor in Possession For Order (1) Authorizing Debtor and Debtor in Possession to (A) Pay and Honor Pre-Petition Wages, etc.*, p. 4:24-27; p. 5:1-3) (Docket no. 5).

9. AboveNet is informed and believes that as the debtor-in-possession, the Debtor continued to utilize the leased equipment, network and services provided by AboveNet under the Lease after the Petition Date. Additionally, all such equipment, network and services remained available and accessible to the Debtor after the Petition Date.

10. On January 27, 2009, Scott Kelly, apparently an employee of the Debtor, sent a short (two sentence) email to Kirk Martinez, an employee of AboveNet, a true and correct copy of which is attached to the Supporting Declaration as **Exhibit "B."** In that email, Mr. Kelly purported to repeat Mr. Martinez's confirmation that "all the circuits are canceled," and asked whether there was "anything else you need from me or Heller Ehrman to insure the proper paperwork is generated." Mr. Martinez responded on the same date (also contained in Exhibit "B" to the Supporting Declaration) by stating "Nothing. Good luck with work and please let me know where you end up."

11. Notwithstanding that email exchange, no notice was provided by the Debtor to AboveNet that the Debtor wished to terminate the Lease and ancillary services, and no notice or other communication of any kind was delivered or sent to the above-referenced address for notices under the *General Terms And Conditions*.

12. On March 30, 2009, Mr. Kelly sent another email to Mr. Martinez, a true and correct copy of which is attached to the Supporting Declaration as **Exhibit "C,"** asking for certain changes in certain AboveNet cross-connections and possible termination of other AboveNet circuits. In particular, Mr. Kelly stated:

> I would like to remove all the AboveNet cross connections into our cage at 365 Main. Please provide AboveNet's portion of the information for the two 365 Main to 333 Bush and Silicon Valley lines.:

3

> Room
> Row
> Rack
> Demarc Port
>
> I would still like to discuss the termination arrangement for the other circuits. Please feel free to call me at your earliest convenience.

13. Following the March 30, 2009 email, in which continued service and access under the Lease was apparently presumed by Mr. Kelly, no notice or other communication of a desire to terminate the Lease was provided by the Debtor, either to the authorized AboveNet address in White Plains, New York, or to any other address.

14. Further, AboveNet was not notified of any intention of the Debtor to obtain a Bankruptcy Court order authorizing rejection of the Lease until June 22, 2009. On that date (the "Rejection Date"), the Debtor filed a motion seeking authority to reject the Lease, along with other executory contracts (docket no. 492).

15. On July 16, 2009, the Bankruptcy Court entered an order (the "Rejection Order") authorizing rejection of the Lease and other executory contracts, *nunc pro tunc* to June 22, 2009 (docket no. 553).

16. Since the Petition Date, AboveNet has sent invoices to the Debtor for amounts accruing after the Petition Date, all of which are attached to the Supporting Declaration as **Exhibit "D."** Those invoices contain all charges accrued under the Lease from the Petition Date until June 22, 2009, in an aggregate amount of $162,394.07.

17. No payment has been made by the Debtor to AboveNet for any of the above-referenced charges at any time. As a result, the aggregate amount of $162,394.07 is owed to AboveNet for services and charges accruing under the Lease from the Petition Date to the Rejection Date.

### III. RELIEF REQUESTED

AboveNet respectfully requests that the Bankruptcy Court enter an order (a) allowing a chapter 11 administrative expense claim in the amount of $162,394.07; and (b) directing and compelling immediate payment of those amounts by the Debtor to AboveNet.

4

## IV. DISCUSSION

The Debtor and AboveNet were parties to the Lease as of Petition Date, and continued to be so until the Rejection Date, June 22, 2009. From the Petition Date until the Rejection Date, the Debtor had the benefit of the access and services provided by the Lease, but never paid for any of such benefit. AboveNet is therefore entitled to an administrative expense claim for all payments that accrued under the terms of the Lease during that period, and that claim should be allowed and paid forthwith under applicable provisions of the Bankruptcy Code.

### A. AboveNet's Section 503(b) Claim

AboveNet is entitled to the administrative expense claim requested herein under the provisions of Section 503(b) of the Bankruptcy Code, for the reasons set forth below.

#### 1. The Lease Terms Establish the Claim Amount.

Section 503(b)(1)(A) of the Bankruptcy Code allows a party to recover "the actual, necessary costs and expenses of preserving the estate" as administrative expenses. Pursuant to this provision, "[t]hat which is actually utilized . . . in the operation of a debtor's business is a necessary cost and expense of preserving the estate and should be accorded the priority of an administrative expense." *In re Subscription Television of Greater Atlanta*, 789 F.2d 1530, 1532 (11th Cir. 1986).

The best indicator of what constitutes a reasonable price for the Debtor's use of the property in question during the postpetition, pre-rejection period is generally the contract rate as a rate negotiated freely between the parties prior to bankruptcy. *In re Dant & Russell, Inc.*, 853 F.2d 700, 707 (9th Cir. 1988). The contract rate is the best indicator of what constitutes a reasonable price for the debtor's ability to use the property in question during the postpetition, pre-rejection period. *In re Lacklow Brothers, Inc.*, 18 B.R. 770, 772 (Bankr. S.D.Fla .1982) In other words, courts have essentially accorded the contract price presumptive validity in the absence of evidence that the prepetition contract price is clearly unreasonable.

As of the Petition Date, the Debtor had and continued to hold the benefit of the leased fiber optics and networks, together with related services, at its disposal. The Debtor made use of that benefit, by accessing the leased fiber optics during the postpetition period, and such use benefited and preserved the Debtor's estate. The contract rate pursuant to the Lease terms provides the most

LAW OFFICES
**MEYERS LAW GROUP, P.C.**
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

accurate measurement of that benefit provided under the Lease. AboveNet is therefore entitled to recover, as an administrative expense, the Lease rates and amounts that accrued after the Petition Date until the Rejection Date.

Accordingly, AboveNet is entitled to receive as an allowed administrative expense under Section 503(b)(1) of the Bankruptcy Code the sum of $162,394.07 for payments due and owing under the Lease, including fees and penalties, for the post-petition period commencing on the Petition Date and continuing through June 22, 2009, the Rejection Date. *See Farber v. Wards Co.*, 825 F.2d 684, 689-90 (2d Cir. 1987) (recognizing a presumption that contractual payment terms are a reasonable measure of the administrative expenses to be allowed); *Dant & Russell*, 853 F.2d at 707 (recognizing a presumption that contractual payment terms are a reasonable measure of the administrative expenses to be allowed); *In re Litho Specialties, Inc.,* 154 B.R. 733, 736 (D. Minn. 1993) (finding that this presumption of reasonableness can only be rebutted by "substantial and convincing proof by the Debtor that the imposition of the [contractual] terms would be unwarranted"); *In re Cardinal Indus.*, 151 B.R. 838, 842-43 (Bankr. S.D. Ohio 1992) (noting that the debtor is not entitled to a "bargain basement" rate of compensation); *In re Beverage Canners Int'l Corp.*, 255 B.R. 89, 93 (Bankr. S.D. Fla. 2000) ("Presumptively, the value of consideration received under an executory contract is the amount set forth in the contract.").

### 2. Reasonable Value

In the alternative, the Debtor owes to AboveNet the reasonable value of the leased property and services used by the Debtor in the operation of a Debtor's business, as a necessary cost and expense of preserving the estate, under Section 503(b), with the priority of an administrative expense. *Ford Motor Credit Co. v. Dobbins*, 35 F.3d 860, 867 (4th Cir. 1994).

In addition to AboveNet's right to an administrative expense and priority for the amount of the "contract rate" pursuant to the terms of the Lease asserted above, AboveNet is alternatively entitled to an administrative expense claim because the recovery represents the reasonable value of the actual and necessary costs of preserving the estate. *In re Magnolia Gas Co.*, 255 B.R. at 917 (allowing administrative claim for rental value of leased equipment); *In re Furley's Transp., Inc.*, 263 B.R. 733, 740-42 (Bankr. D. Md. 2001) (holding that equipment lessor could pursue administrative claim for

6

MOTION OF ABOVENET INC. FOR ALLOWANCE OF ADMINISTRATIVE CLAIM PURSUANT TO 11 U.S.C. §§ 365(D)(5) AND 503(A)
20045/23848

Case: 08-32514    Doc# 802    Filed: 12/02/09    Entered: 12/02/09 18:35:39    Page 6 of 9

rents accruing during first sixty days of case); *In re Pan Am. Airways Corp.*, 245 B.R. 897, 900 (Bankr. S.D. Fla. 2000) (holding that equipment lessor entitled to administrative claim for rents for actual and necessary costs of preserving the bankruptcy estate).

The Debtor had the full range of leased fiber optics and networks accessible after the Petition Date, as well as the customer support service that is an integral part of the Lease. As of the Petition Date, the Debtor retained at least 54 full-time employees to facilitate the wind down of the Debtor's business. To accomplish such a task, it is almost unquestionable that the Debtor's employees utilized the leased fiber optics and networks provided by AboveNet. Because the Debtor used the leased equipment for the benefit of the bankruptcy estate postpetition, AboveNet incurred actual and necessary costs and expenses in preserving the Debtor's estate. The reasonable value of these costs is most accurately measured by the terms stated in the Lease. Indeed, it would be implausible to calculate the administrative claim amount in any alternate fashion.

Therefore, AboveNet is entitled to receive as an allowed administrative expense under Section 503(b)(1) of the Bankruptcy Code the sum of $162,394.07, for amounts accruing under the Lease, including fees and penalties, for the post-petition period commencing on the Petition Date and continuing through June 22, 2009, the Rejection Date.

### B.  AboveNet's is Entitled to Immediate Payment, Pursuant to Section 365(d)(5).

Regardless of the method used to establish the amount of the administrative claim, Section 503(b) must be read in conjunction with Section 365(d)(5) of the Bankruptcy Code, which requires the Debtor to timely perform all of its obligations under unexpired personal property leases, from the 60th day after the order for relief until such lease is assumed or rejected. 11 U.S.C. § 365(d)(5); *See, e.g., In re Rebel Rents, Inc.*, 291 B.R. 520, 531-35 (Bankr. C.D. Cal. 2003) (requiring debtor to make full monthly payments under the personal property leases). Pursuant to Section 365(d)(5), AboveNet is entitled to immediate payment of the outstanding amounts accrued after this sixty-day period, in addition to the reasonable value of the contract for the first 60 days. *See, e.g., In re Midway Airlines Corp.*, 406 F.3d 229, 237-238 (4th Cir. 2005) ("We agree . . . that a lessor is entitled to recover all payments due under the lease (including rent, taxes, interest, late fees, and attorney's fees)"). *In re Food, Etc., L.L.C.*, 281 B.R. 82, 85-89 (Bankr. S.D. Ala. 2001) (granting administrative claim under

former Section 365(d)(10) for attorneys' fees and expenses without the need to demonstrate a benefit to the estate).

### C. Rejection of Lease Pursuant to Section 365(a)

In prior discussions, the Debtor has suggested that the Lease was rejected earlier than the Rejection Date, by virtue of the sparse communication received from the Debtor in January 2009. Aside from the fact that the Rejection Order makes it clear that rejection occurred on June 22, 2009 and not on an earlier date, the Debtor's suggestion is not supportable under applicable law.

Until an executory contract or an unexpired lease is assumed or rejected under Section 365(a) of the Bankruptcy Code, that contract continues to exist. *See Bildisco,* 465 U.S. 513 (1984). In addition, a trustee's or debtor-in-possession's decision to assume or reject an executory contract is ineffective without court approval. *See In re O'Connor,* 258 F.3d 392, 400 (5th Cir. 2001). Strict adherence to the requirement for court approval before a rejection or assumption will be effective is not mere form. *Id.*

Informal rejections are simply ineffective – judicial authorization is necessary for proper rejection. *In re Thinking Machines Corp.*, 67 F.3d 1021, 1026 (1st Cir. 1995). *See In re W.T. Grant Co.*, 620 F.2d 319, 321 (2d Cir.1980) (holding that only a formal rejection pursuant to court approval is sufficient to disaffirm an executory contract); *See also In re Kelly Lyn Franchise Co., Inc.,* 26 B.R. 441, 443 (Bankr. Tenn. 1983) (holding that assumption or rejection of lease could not be accomplished by implication or action, but, rather, judicial approval was required).

This principle was implicitly recognized by the Debtor in this case by its request that the Lease be rejected *nunc pro tunc* to June 22, 2009, rather than as of the date of the order entered by the Court: The request can only have been made in recognition of the fact that until that rejection, by court order, the Lease and all of the Debtor's obligations thereunder would continue. The meager communications by the Debtor to an AboveNet sales representative that predated the Debtor's actual rejection of the Lease do not constitute a rejection in and of themselves. First, as stated, nothing short of a Court order approving the rejection will suffice. Second, those communications were ambiguous and internally inconsistent at best, and cannot form the basis of a rejection: Whereas one of the emails referenced the "cancellation" of circuits, nothing was said about contract termination and the subsequent email, from

8

MOTION OF ABOVENET, INC. FOR ALLOWANCE OF ADMINISTRATIVE CLAIM PURSUANT TO 11 U.S.C. §§ 365(D)(5) AND 503(A)
20045/23848
Case: 08-32514    Doc# 802    Filed: 12/02/09    Entered: 12/02/09 18:35:39    Page 8 of 9

the same employee of the Debtor, presumed continued operations and use of AboveNet's circuits, and hence, the continued effectiveness of the Lease.

Third, any notice under the Lease, in order to be effective, was required to be sent to AboveNet's primary office in White Plains, New York, by personal or overnight delivery or by certified mail, not an email to a sales representative in San Francisco, California. Fourth, the inadequacy of the communications is best illustrated by imagining a reversal of position: If AboveNet had in fact terminated the Debtor's access to its networks based solely upon the January 27, 2009 email, and the Debtor had later desired such access, would AboveNet have escaped liability for discontinuation of service based solely upon that inadequate and misdirected email communication? Clearly not.

Accordingly, under the case law described above and the facts and circumstances set forth in this Motion, it is evident that the Lease was not rejected, and the Debtor's obligations did not cease to AboveNet until June 22, 2009, the effective date proposed by the Debtor and identified in the Rejection Order. All charges that accrued under the Lease until that date, therefore, must constitute an administrative expense claim in the Debtor's chapter 11 case.

## V. CONCLUSION

Based upon the foregoing, AboveNet respectfully submits that it is entitled by this Motion to entry of an order (a) allowing a chapter 11 administrative expense claim in the amount of $162,394.07; and (b) directing and compelling immediate payment of those amounts by the Debtor to AboveNet.

DATED: December 2, 2009

                    MEYERS LAW GROUP, P.C.

                    By    /s/    Merle C. Meyers
                        Merle C. Meyers, Esq.
                        Attorneys for AboveNet Communications, Inc.