BINGHAM McCUTCHEN LLP
William Bates III (SBN 63317)
bill.bates@bingham.com
1900 University Avenue
East Palo Alto, CA 94303-2223, U.S.A.
Telephone: 650.849.4400
Facsimile: 650.849.4800

Attorneys for Creditor
MPC Insurance, Ltd.

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re<br><br>HELLER EHRMAN LLP,<br><br>            Debtor. | Case No. 08-32514 DM<br><br>Chapter 11<br><br>**OBJECTION OF CREDITOR MPC INSURANCE, LTD. TO PROPOSED DISCLOSURE STATEMENT DATED MARCH 31, 2010**<br><br>Date:    May 5, 2010<br>Time:   9:30 a.m.<br>Place:  235 Pine St, 22nd Floor<br>           San Francisco, CA<br>Judge:  Hon. Dennis Montali |

MPC Insurance, Ltd. provided malpractice insurance coverage to Heller Ehrman LLP for many years before its bankruptcy by reinsuring policy issuer Lexington Insurance Co. Heller is one of the law firms that collectively own MPC.

The Disclosure Statement filed March 31, 2010, and proposed jointly by Heller and its Committee of Unsecured Creditors is deficient both in its handling of MPC's claim and in its description of how malpractice claims will be treated under the Plan of Liquidation and the insurance policies arranged and reinsured by MPC. MPC therefore objects to the Disclosure Statement as inadequate under Bankruptcy Code (11 U.S.C.) § 1125.

MPC INSURANCE, LTD.'S OBJECTION TO DISCLOSURE STATEMENT

**Standard for approval of Disclosure Statement.** Section 1125(b) provides for the Court's approval of disclosure statements that contain "adequate information" and forbids solicitation of votes on a plan without an approved disclosure statement. "Adequate information" is defined in § 1125(a). In essence, it means information such that an informed investor typical of holders in a particular class can make an informed judgment about how to vote on a plan.

**Inadequate disclosure of treatment of MPC's secured claim.** MPC filed its proof of claim on April 22, 2009, and it appears as no. 604 in the Court's claims register. The proof of claim recites that MPC's claim is secured and attaches the UCC-1 MPC filed to perfect its security interest. Pursuant to Bankruptcy Rule 3001(f), the proof of claim constitutes prima facie evidence of the validity and amount of MPC's secured claim.

The security that MPC claims is "amounts at any time due by Secured Party to Debtor under Section 6.2 or Section 6.4 of that certain Shareholders Agreement ...." The Shareholders Agreement, which is attached to MPC's proof of claim, is the agreement among MPC and its member firms concerning, among other things, the firms' ownership interests in MPC. Under that agreement, MPC has the right (but not the obligation) to purchase Heller's shares in MPC, and the agreement provides for a payout over time when that happens. Section 6.4 of the agreement also provides that MPC shall have a lien on those payments to secure any obligations of Heller to MPC. MPC has not yet made any commitment to purchase Heller's shares.

The proposed Disclosure Statement mentions MPC's claim only in footnote 4 on page 45: "MPC filed an allegedly secured claim in the Chapter 11 Case but, because no collateral exists for this Claim, the Proponents have not proposed a secured treatment therefore [*sic*]."

In effect, the Proponents have objected to and, ruling upon their own objection, disallowed MPC's secured claim. Bankruptcy Rule 3001(f) prohibits that. Further, it is not a substantively correct result: What happens if MPC purchases Heller's shares between now and confirmation? What happens if MPC purchases Heller's shares one week after the Plan's

effective date? MPC thinks that if either of those events occurs MPC maintains its security interest in the resulting payment stream in order to satisfy its claim. What the Proponents think is unstated, but must be stated; otherwise the Disclosure Statement does not provide adequate information for MPC to make an informed decision about the Plan.

<u>Misleading description of treatment of malpractice claims</u>. The Disclosure Statement is confusing with respect to the treatment of the malpractice claims for which MPC arranged and reinsured Heller's insurance.

According to the Disclosure Statement, at 47, "Insured Malpractice Claims are classified as Class 4 Claims under the Plan. …[T]he Insured Portion of any such claim … shall be treated as a Class 4 Claim and paid solely from the proceeds of any applicable Malpractice Policy. …[T]he Uninsured Portion of any Malpractice Claim, including Net SIR, shall be treated as a Class 5 Unsecured Claim."

"Net SIR" means the self-insured retention under the policy (which is $2 million per claim, under MPC policies for recent years), less "Malpractice Costs and Expenses," which appear to include pre- and post-confirmation defense costs. Plan §§ 1.78, 1.85, at 13-14. (The latter definition refers to costs incurred by the Plan Administrator, who does not take office until the Plan is confirmed.) Therefore, says the Disclosure Statement, if there is a $1 million Net SIR for a given Malpractice Claim, that "would have to be satisfied through distributions made upon it as a Class 5 [General Unsecured] Claim before the balance could be allowed as a Class 4 Claim." Disclosure Statement at 47.

From this description MPC guesses -- but it is not possible to do more than guess -- that the Plan Administrator will be authorized and expected to expend funds to defend malpractice claims until the self-insured retention has been met with respect to each claim. That is what MPC's Policy contemplates. (After the SIR has been met, the Policy further contemplates that MPC takes full control of the defense of a malpractice claim, and MPC guesses that the Plan contemplates that as well.) Thus, MPC does not have a substantive

MPC INSURANCE, LTD.'S OBJECTION TO DISCLOSURE STATEMENT

3

Case: 08-32514   Doc# 1101   Filed: 04/28/10   Entered: 04/28/10 11:03:36   Page 3 of 19

problem with what the Proponents propose, if its guess about what that is proves correct.[1]

However, the Disclosure Statement should not require guessing. If the Proponents intend the post-confirmation defense of malpractice claims to be managed by the Plan Administrator (consistent, of course, with his contractual duties of cooperation with MPC under the express terms of the malpractice policy, including, among others, his duty to obtain MPC's written consent to any payment, admission of liability, settlement or assumption of any obligation) at the Liquidating Debtor's expense until the SIR has been met, they should say so. In addition, the Disclosure Statement should make clear that the Malpractice Costs and Expenses that will reduce the SIR Amount are the same as the "Claim Expenses" that the malpractice policy counts as reducing the SIR provided thereunder. *See* Definitions, § III in the attached exemplar policy. No one would benefit from creating a different definition in the Plan than exists in the policy: Only confusion could result.

Without the changes outlined above, the Disclosure Statement does not provide sufficient information for MPC to make an informed judgment about the Plan, and the Court should not approve the Disclosure Statement in its present form.

Dated: April 28, 2010.

Respectfully submitted,

BINGHAM McCUTCHEN LLP

By: /s/ William Bates III
William Bates III
Attorneys for Creditor
MPC Insurance, Ltd.

---

[1] MPC's counsel invited the Proponents to discuss the Disclosure Statement in order to obviate the need for this objection, but received no response to that invitation.

1  PROOF OF SERVICE

2  I am over 18 years of age, not a party to this action and employed in the County
3  of San Mateo, California at 1900 University Avenue, East Palo Alto, California 94303-2223,
4  U.S.A.. I am readily familiar with the practice of this office for collection and processing of
5  correspondence for mailing with the United States Postal Service and correspondence is
6  deposited with the United States Postal Service that same day in the ordinary course of business.
7  Today I served the attached:

8  OBJECTION OF CREDITOR MPC INSURANCE, LTD. TO PROPOSED
   DISCLOSURE STATEMENT DATED MARCH 31, 2010
9
   by causing a true and correct copy of the above to be placed in the United States Mail at East
10
   Palo Alto, California in sealed envelope(s) with postage prepaid, addressed as follows:
11

12  Pachulski Stang Ziehl & Jones LLP          Felderstein, Fitzgerald, Willoughby &
    150 California Street, 15th Fl.            Pascuzzi, LLP
13  San Francisco, CA 94111                    400 Capital Mall, Suite 1450
    Attn: John D. Fiero, Esq.                  Sacramento, CA 95814
14  Teddy Kapur, Esq.                          Attn: Thomas A. Willoughby

15  Office of the United States Trustee
    235 Pine Street, 7th Floor
16  San Francisco, CA 94104
    Attn: Minnie Loo, Esq.
17

18
    I declare that I am employed in the office of a member of the bar of this court at
19
    whose direction the service was made and that this declaration was executed on April 28, 2010.
20

21
                                            /s/ Marianne DeRitis
22
                                            Marianne DeRitis
23
    A/73361016.1
24

25

26

27

28

MPC INSURANCE, LTD.'S OBJECTION TO DISCLOSURE STATEMENT

## LAWYER'S PROFESSIONAL LIABILITY INSURANCE

**LEXINGTON INSURANCE COMPANY**, (hereinafter called the "Company"), in consideration of the payment of the premium and in reliance upon the statements in the application, the census letter and any other representation made in writing as part of the application process for this policy, copies of which are incorporated herein by reference and made a part hereof, and subject to the limits of liability, exclusions, conditions and all other terms of this Policy, agrees with the Named Insured as follows:

### INSURING AGREEMENTS

I. **COVERAGE - PROFESSIONAL LIABILITY**

Subject to the limitations in Section II hereof the Company will pay on behalf of the **Insured** all sums in excess of the self insured retention stated in the Declarations which the **Insured** shall become legally obligated to pay as **damages** and **claim expenses** on account of **claims first made** against the **Insured** during the **Policy Period**, and reported to the Company during the **Policy Period** or within sixty (60) days thereafter.

(A) By reason of any act, error or omission in professional or notarial services rendered, or that should have been rendered, by the **Insured** or by any person for whose acts the **Insured** is responsible, and arising out of the conduct of the **Insured's** profession as a lawyer or notary public, including services rendered by the **Insured** as an arbitrator, mediator, conciliator, judge pro tem, or in a similar capacity; and

(B) Because of **personal injury** arising out of professional services rendered or that should have been rendered by the **Insured** as a lawyer or notary public;

provided always that such act, error, omission or **personal injury** giving rise to the **claim** took place or happened on or after the retroactive date in item 6 of the Declarations.

Subject to all other policy terms and conditions, when the **Insured** in conjunction with rendering legal services also renders services as an administrator, conservator, executor, guardian, trustee, or in any similar fiduciary capacity, his acts, errors or omissions in such capacity shall be deemed for the purpose of this insurance to be the performance of professional services arising out of the conduct of the **Insured's** profession as a lawyer; provided that this Policy shall not apply to any loss sustained by the **Insured** as the beneficiary or distributee of any trust or estate.

II. **LIMIT OF LIABILITY**

(A) The liability of the Company for **damages** and **claim expenses** for each **claim first made** against the **Insured** during the **Policy Period** shall not exceed the amount stated in the declarations for "each claim" and subject to that limit for each **claim**, the total limit of the Company's liability for **damages** and **claim expenses** for all **claims first made** during the **Policy Period** shall never in the aggregate

exceed the amount stated in the declarations as "aggregate". **<u>NOTE: THE LIMITS OF LIABILITY INCLUDE, AND ARE NOT IN ADDITION TO, CLAIMS EXPENSES.</u>**

(B) The inclusion herein of more than one **Insured** or the making of **claims** or the bringing of suits by more than one person or organization shall not operate to increase the limit of the Company's liability for each **claim** and in the aggregate. Two or more **claims** arising out of a single act, error or omission or series of related acts, errors or omissions shall be treated as a single **claim**, and such **claim** shall be deemed made during the policy year or any Extended Reporting Period, if purchased, in which such **claim** is first made

### III. <u>SELF INSURED RETENTION (SIR)</u>

That amount designated as the self-insured retention in the declarations shall apply to **damages** and **claims expenses** and shall be retained for the **Insured's** own account, except that if the **Insured** purchases any separate Lawyers Professional Liability insurance, with respect to the provision of legal services, that is required by law in any jurisdiction, then this Policy, subject to its terms, conditions and limitations, shall pay excess of either of the following, whichever is greater:

A) the self-insured retention stated in the declarations, or
B) the amount of any payments under such required separate insurance.

The amount of any payments under such required separate insurance shall apply to either reduce or wholly satisfy the **Insured's** financial obligations under the self-insured retention in the Declarations dependent upon whether the amount of such payments is either less than, equal to or greater than the self-insured retention stated in the Declarations. If such payments are equal to or greater than the **Insured's** self-insured retention in the Declarations, the **Insured's** financial obligations under the self-insured retention will be deemed to have been fully satisfied as to that **claim**.

### IV. <u>DEFENSE AND SETTLEMENT</u>

(A) Subject to Item (B) below, the Company shall at any time during the pendency of a **claim** against an **Insured** under this Policy have the right to associate with the **Insured** in the investigation and defense of any **claim**, and shall assume the whole cost and control of the defense when the self insured retention is exhausted, irrespective of the jurisdiction in which suit or other proceedings is commenced and of whether or not the **claim** upon which such suit or other proceeding is based is groundless, false or fraudulent. The Company's obligation hereunder shall terminate when the aggregate limit of liability has been exhausted by payment of **claim expenses**, settlements, judgments or a combination thereof.

(B) Notwithstanding item (A) above, selection of defense counsel will be agreed upon by the Company and the **Insured**.

(C) The Company shall not settle any **claim** without the consent of the **Insured**. If, however, the **Insured** shall refuse to consent to any settlement recommended by the Company and acceptable to the Claimant and shall elect to contest or continue any

proceedings in connection with such claim, then the Company's liability for the claim shall not exceed the amount for which the claim could have been settled plus claim expenses incurred up to the date of such refusal. In the event that the Company shall refuse to consent to or participate in the consummation of any settlement of any claim acceptable to the Insured and the Claimant, which settlement demand is within policy limits, or as to which the Company's requested contribution is within policy limits, and if the Company shall elect to contest or continue any proceedings in connection with such claim, then the Company will assume full and complete liability (other than the self insured retention and other than any and all amounts of insurance available to the Insured and collectable) for all damages assessed against the Insured. No action taken by the Company pursuant to its rights under this clause (C) shall be deemed to waive any policy defenses against any claim.

**DEFINITIONS**

**I. INSURED**

The term "Insured" means"

(A) The "Named Insured" stated in item 1 of the declarations and any **predecessor firm** thereof that was identified in the initial application to the Company or thereafter underwritten and endorsed to this policy or to any previous policy of which this policy is one in a succession of renewal policies;

(B) Any lawyer or professional legal corporation that is or was a partner, officer, director, "of counsel" or employee of the Named Insured solely while acting, or claimed by any person to be acting, in a professional capacity within the scope of his, her or its duties for, or claimed by any person to be acting with apparent authority for, the Named Insured or any **predecessor firm** thereof;

(C) Any lawyer who is or was an employee of a professional legal corporation otherwise defined above as an Insured, solely while acting in a professional capacity within the scope of his, her or its duties for or claimed by any person to be acting with apparent authority for, the Named Insured or any **predecessor firm** thereof;

(D) Any other employee of the Named Insured solely while acting at the direction of the Named Insured or any **predecessor firm** thereof;

(E) Any other lawyer for whose acts the Insured is legally responsible, but only for those acts performed at the direction of the Insured;

(F) As respects the liability of each Insured as otherwise covered herein the heirs, executors, estate, administrators and legal representatives of each Insured in the event of his death, incapacity or bankruptcy.

Primary Insuring Agmt '07-08.doc    3

Case: 08-32514    Doc# 1101    Filed: 04/28/10    Entered: 04/28/10 11:03:36    Page 8 of 19

## II. **CLAIM, CLAIM FIRST MADE**

(A) For the purpose of this Policy, the term "claim" means a demand received by the **Insured** for money or services, including the service of suit or institution of arbitration proceedings.

(B) The term "claim first made" shall be the first in time of the following:

In the event of a suit or action against the **Insured**, the date the **Insured** receives notice of said suit or action by service of process or otherwise; or absent a suit or action, the date the Management Committee or other governing body of the **Insured** receives knowledge of any act, error, omission, event, condition or **personal injury** which may reasonably be expected to result in a **claim**; or the date the Management Committee or other governing body of the **Insured** otherwise receives any written or oral statement which is a **claim** or which may reasonably be expected to result in a **claim**; provided, however, that when there is a **claim first made** as defined herein, written notice of such claim must also be given to the Company in accordance with CONDITIONS III. of this policy ("NOTICE OF CLAIM OR SUIT").

## III. **CLAIM EXPENSES**

The term "claim expenses" means all fees, costs and expenses in the investigation, adjustment, settlement, defense and appeal of any **claim** and shall include all fees, costs and expenses in the investigation, adjustment, settlement or defense of any **claim** which includes a request for fines, penalties or punitive damages, whether or not compensatory in nature. The term does not include salaries of regular employees of either the Company or the **Insured**, nor office overhead expenses of either. Likewise, the costs of supervisory or monitoring counsel retained by the Company are not included and are to be paid by the Company.

## IV. **DAMAGES**

The term "damages" means monetary judgments or settlements, including punitive or exemplary damages, provided however that "damages" does not include fines, penalties or sanctions. "Damages" also means multiples of compensatory damages pursuant to any statute or law, except that such multiples of damages shall only be deemed covered if the act, error or omission giving rise to a **claim** is otherwise covered and the "damages" are deemed insurable under the law under which this Policy provision shall be construed.

## V. **PERSONAL INJURY**

The term "personal injury" means:

(A) False arrest, humiliation, detention or imprisonment, wrongful entry or eviction or invasion of private occupancy, malicious prosecution or abuse of process or the infliction of emotional distress;

(B) The publication or utterance of a libel or slander or other defamatory or disparaging material or a publication or an utterance in violation of an individual's right of privacy or interference with economic relations or contract.

## VI. POLICY PERIOD

The term "**Policy Period**" means the period of time between the inception date stated in the Declarations and the effective date of termination, expiration or cancellation of coverage and specifically excludes any extended reporting period hereunder.

## VII. PREDECESSOR FIRM

The term "**predecessor firm**" means any lawyer, law firm or professional legal corporation engaged in the practice of law to whose financial assets and liabilities the Named Insured was the majority successor in interest.

## EXCLUSIONS

It is the intent of both parties to this contract that this Policy does not apply to, nor provide insurance coverage for

(A) A settlement on behalf of or a judgment or award against any **Insured** who has been determined, either by adjudication, admission or by arbitration between such **Insured** and the Company conducted in accordance with Section XIV of this Policy, to have committed an intentionally dishonest, intentionally fraudulent or intentionally injurious act, error or omission which gives rise to such settlement, judgment or award; provided, however, that nothing contained in the foregoing shall exclude coverage to the Named Insured or to any other **Insured** who has not been determined to have committed such intentionally dishonest, intentionally fraudulent or intentionally injurious act, error or omission and provided further that any such payment made shall be reduced by the value of (a) the personal interests in the Named Insured of the individual **Insured** who was determined to have committed an intentionally dishonest, intentionally fraudulent or intentionally injurious act, error or omission, and (b) the personal interests and assets of such individual **Insured** transferred to, executed upon, or otherwise lawfully converted to satisfy **claims** against any **Insured**, or **claims** against such individual **Insured** by or on behalf of any other **Insured** (including the Named Insured).

(B) Bodily injury to, or sickness, disease or death of, any person, or any physical injury to or destruction of any tangible property, arising out of any act, error or omission of any **Insured**;

(C) Any **claim** by any Claimant **Insured** or by any individual employed by any such Claimant **Insured** made against any other **Insured** for any reason, unless the **claim** arises out of an act, error or omission in professional or notarial services committed by or alleged to have been committed by an **Insured** in his or her rendering or failing to render professional or notarial services for such Claimant **Insured**;

(D) Any liability arising out of any **Insured's** capacity as:

(1) An officer, director, partner, manager or employee of a business enterprise (not named in the Declarations) or charitable organization or a pension, welfare, profit sharing, mutual or investment fund or trust;

(2) A public official or an employee of a governmental body, subdivision or agency;

provided, however, that this Exclusion (D) shall not apply to any liability arising out of the actual or alleged performance of professional services on behalf of the Named Insured within the scope of coverage under Insuring Clauses I.(A) or I.(B) by any **Insured** for any such business enterprise (not named in the declarations) or charitable organization or a pension, welfare, profit sharing mutual or investment fund or trust;

(E) Any **claim** arising out of any act performed for or on behalf of any business enterprise, charitable organization, pension, welfare, profit sharing, mutual or investment fund or trust not named in the declarations which is substantially owned, controlled, managed or operated by any **Insured** or by any spouse of any **Insured**;

For purposes of this Exclusion (E), except as otherwise provided by endorsement to this Policy, the term "substantially owned" shall mean 5% of more of the issued and outstanding voting stock of a publicly-traded company or 20% or more of the ownership of any other businessenterprise. The holding by an Insured of a position on the board of directors, board of trustees or equivalent body (or a committee of such board or body) shall not in itself be deemed to constitute ownership, control, operation or management of such enterprise, organization, fund or trust.

(F) Any **claim** against any **Insured** arising out of any act, error, omission or **personal injury** by such **Insured** which occurred prior to the time that such **Insured** became a partner, employed lawyer or "of counsel" to the Named Insured or any **predecessor firm**;

(G) Any **claim** against an **Insured** who is a member of a group of (i) ten or more lawyers or legal corporations from a single source, who within any six-month period join with, or become a part of, the Named Insured, or (ii) five or more lawyers or legal corporations from a single source, who within any six-month period join with, or become part of, any single office location of the Named Insured if the effect thereof is to increase the number of lawyers or legal corporations at such single office location by 100% or more, unless there shall have been an underwriting with respect to such lawyers or legal corporations prepared and the coverage of such lawyers or legal corporations shall have been specifically approved by the Company; provided that such coverage shall not extend to any act, error, omission or **personal injury** by such **Insured** which occurred prior to the time that such **Insured** became a partner, employed lawyer, or "of counsel" to the Named Insured;

(H) Any **claim** which could have been reported during the **Policy Period** and any applicable reporting period permitted by the Policy and which is not so reported to

the Company until after all such permissible periods for giving notice of claim to the Company have expired;

(I) Any claim against any Insured to the extent arising or alleged to have arisen out of legal or other services performed for a client if any Insured was serving as an operating officer of that client and if the Insured serving as an operating officer personally performed legal services for that client or exercised direction, supervision or influence over any other Insured's legal or other services performed on behalf of that client.

For purposes of this Exclusion (I):

(1) The term "Operating Officer" shall mean the Chairman of the Board, Vice Chairman of the Board, President, chief executive officer, chief operating officer, General Counsel [other than an Insured who renders legal services to a client solely on behalf of the Named Insured and not as an officer (other than as secretary or assistant secretary) or employee of the client], chief financial officer, general partner or any other fiduciary with the power to direct the business decisions of a client.

(2) The term "client" shall mean a corporation, partnership, trust or other enterprise that is engaged in a business for profit but shall not include MPC Insurance, Ltd.;

or

(J) Any claim, or specific act, error or omission or personal injury which could reasonably be expected to give rise to a claim against the insured, tendered to the Company during the policy period of which the Insured, before the inception date stated in the Declarations has given notice to any insurer other than the Company.

## CONDITIONS

I. **EXTENDED REPORTING PERIOD**

If this Policy is terminated or non-renewed by the Company for any reason other than for the nonpayment of premium, the Named Insured shall have the right, upon payment of an additional premium of 100% of the last annual premium, to extend the insurance afforded by this Policy to apply to claims first made against the Insured during the period of one year following immediately upon the effective date of termination or non-renewal, but only in respect of any act, error, omission or personal injury committed before such termination or non-renewal date and otherwise covered by this insurance.

This right to purchase the extended reporting period must be exercised by notice in writing not later than ten (10) days after the termination or non-renewal date of this Policy and must include the additional premium required therefor. If such notice and premium payment are not given to the Company, the Insured shall not at a later date be able to exercise such right. This right to purchase the extended reporting endorsement

Primary Insuring Agmt '07-08.doc                    7

Case: 08-32514    Doc# 1101    Filed: 04/28/10    Entered: 04/28/10 11:03:36    Page 12 of 19

shall only be exercisable by an entity which represents at least 51% of the partners and employed lawyers of the Named Insured at the inception date of the Policy.

The Company's limit of liability hereunder shall not in any way be increased by virtue of this extended reporting period and the aggregate limit of liability provided in item 3 of the Declarations shall not be increased by reason of the purchase of an extended reporting period.

## II. LIMITATION ON EXTENDED REPORTING PERIOD

Any extended reporting period purchased by the Insured as provided for in this Policy shall not be cancelled by the Company. If any claim that would have been covered under the extended reporting period is also covered under any other valid and collectible insurance available to the Insured and which provides professional errors and omissions coverage to the Insured regardless of whether the amount of such other insurance provided is less than, the same or more than that provided by this Policy, this Policy shall apply in excess of the other insurance whether the other insurance is stated to be primary, pro rata, contributory, excess or otherwise. The entire premium of the extended reporting period is earned at the commencement of the extended reporting period and, in the event the Insured cancels such extended reporting period prior to its stated termination date, the Company will not return any premium to the Insured.

## III. NOTICE OF CLAIM OR SUIT

As a condition precedent to the application of all insurance afforded herein, the Insured shall, as soon as practicable, give to the Company written notice of any claim made against the Insured, when it is first made as defined in Definitions II. Claim, Claim First Made.

The Company and the Named Insured agree that the notice provisions provided for in Insuring Agreement I. Coverage – Professional Liability, Conditions III. Notice of Claim or Suit and Definitions II. Claim, Claim First Made provide a reasonable time to give notice of a claim. Any claim, notice of which is given to the Company after the period provided in the Notice Provisions expires, shall not be covered UNLESS with respect to such claim: (i) Notice of the claim was not timely given to the Company owing to administrative error or omission or inadvertence on the part of the Named Insured; (ii) the notice of claim is given to and received by the Company promptly upon discovery of such failure to give such notice; and (iii) such notice is received by the Company within 12 months after the expiration date of the policy period in which such claim was first made. The Company shall determine whether these criteria have been met. If the Company determines that these criteria have been met, then the Company may in its discretion waive the condition precedent set forth in this Condition III. — Notice of Claim or Suit, by written notice of such waiver to the Named Insured. Where such waiver is granted, the claim shall be deemed timely and not subject to Exclusion (H).

In the event suit is brought against the Insured, the Insured shall immediately forward to the Company copies of every demand, notice, summons or other process received by him or his representative.

## IV. DISCOVERY CLAUSE

If during the **Policy Period** or the extended reporting period purchased hereunder, the **Insured** shall give written notice to the Company of a specific act, error, omission or **personal injury** which occurred prior to expiration of the **Policy Period** and which could reasonably be expected to give rise to a **claim** against the **Insured** under this Policy, any **claim** which subsequently arises out of such act, error, omission, event, condition or **personal injury** shall be considered a **claim first made** against the **Insured** during the **Policy Period** or the extended reporting period purchased hereunder.

## V. ASSISTANCE AND COOPERATION OF THE INSURED

The **Insured** shall cooperate with the Company and upon the Company's request shall submit to examination and interrogation by a representative of the Company, under oath if required, and shall attend hearings, depositions and trials and shall assist in effecting settlement, giving evidence, obtaining the attendance of witnesses and in the conduct of suits, as well as in the giving of written statements to the Company's representatives and meeting with such representatives for the purpose of investigation and/or defense, all without charge to the Company. The **Insured** shall further cooperate with the Company and do whatever is necessary to secure and effect any rights of indemnity, contribution or apportionment which the **Insured** may have.

The **Insured** shall not, except at its own cost, make any payment, admit any liability, settle any **claim**, assume any obligation or incur any expense without the written consent of the Company.

## VI. ACTION AGAINST THE COMPANY

No action shall lie against the Company unless, as a condition precedent thereto, the **Insured** shall have fully complied with all of the terms of this Policy, nor until the amount of the **Insured's** obligation to pay a **claim** shall have been finally determined either by final judgment against the **Insured** and either affirmation of any final adjudication or arbitration award or the expiration of applicable rights to appeal, or by written agreement of the **Insured**, the Claimant and the Company.

Nothing contained in this Policy shall give any person or organization any right to join the Company as a co-defendant in any action against the **Insured** to determine the **Insured's** liability. Bankruptcy or insolvency of any **Insured** or any **Insured's** estate shall not relieve the Company of any of its obligations hereunder.

## VII. OTHER INSURANCE

This insurance shall be in excess of the amount of the applicable self insured retention of this Policy and any other valid and collectible insurance available to the **Insured**, whether the other insurance is stated to be primary, pro rata, contributory, excess or otherwise, unless such other insurance is written only as a specific excess insurance over the limits of liability provided in this Policy.

## VIII. SUBROGATION

In the event of any payment under this Policy, the Company shall be subrogated to any **Insured's** rights of recovery therefor against any person or organization and any **Insured** shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. No **Insured** shall do anything after the **claim** to prejudice such rights. Any recovery will be used to pay: first, subrogation expenses; second, payments made by the **Insured** in excess of its self insured retention; third, payments made by an excess insurer; fourth, payments made by a primary insurer; and last, reimbursement of the **Insured's** self insured retention.

The Company shall not exercise any such rights against any person or organization included within the definition of "**Insured**". Notwithstanding the foregoing, the Company reserves the right to exercise any rights of subrogation against an **Insured** in respect of any **personal injury** with deliberate purpose and intent or any dishonest, intentionally fraudulent, criminal or malicious act or omission of such **Insured.**

## IX. CHANGES

Notice to a broker or knowledge possessed by any broker or by any other persons shall not effect a waiver or change in any part of this Policy nor shall the terms of this Policy be waived or changed except by endorsement issued to form a part of this Policy.

## X. ASSIGNMENT

Assignment of interests under this Policy shall not bind the Company until its consent is endorsed thereon.

## XI. CANCELLATION

Since the premium for this Policy is fully earned at inception, this Policy may not be canceled by the Company except under the following conditions:

(a) Bankruptcy or insolvency of the Reinsuring Company or Companies, or

(b) Failure to pay, when due, the premium for this Policy or any capital contribution or assessment, as required by the Reinsurer(s), or

(c) Failure of any **Insured** to pay, when due, any self insured retention or portion thereof, or

(d) A dissolution, split off or other division which results in a greater than 49% decrease in the number of lawyers who are partners, "of counsel" and employees (excluding new hires) of the Named Insured immediately following the effective date thereof; or

Case: 08-32514    Doc# 1101    Filed: 04/28/10    Entered: 04/28/10 11:03:36    Page 15 of 19

(e) any consolidation, merger or other amalgamation or combination in which the Named Insured is not the majority successor in interest.

Under any of the foregoing circumstances, this Policy may be canceled by the Company by delivery of written notice, in person or by registered or certified mail, to the Named Insured at the address stated in the Declarations, stating when, not less than thirty days thereafter such cancellation shall be effective.

The Policy may be canceled by the Named Insured by surrender thereof to the Company or by delivery of written notice, in person or by registered or certified mail, to the Company stating when thereafter such cancellation shall be effective. If canceled by the Named Insured, the Company shall retain the premium in its entirety.

The effective date of cancellation stated in the notice shall become the end of the **Policy Period**. If the Company cancels, the earned premium shall be computed pro-rata.

The notice of cancellation shall be deemed to be received on the fifth calendar day after the mailing of the notice. Premium adjustment may be made at the time the cancellation is effected or as soon as practicable thereafter. The check of the Company or any of its representatives, mailed or delivered, shall be sufficient tender of any refund due the Named Insured.

## XII. FIRST NAMED INSURED

It is agreed by all **Insureds** that the **Insured** first named in Item 1 of the Declarations is deemed the agent to act on behalf of all Named Insureds and other **Insureds** with respect to all matters pertaining to this Insurance, including the giving and receiving of notice of cancellation and any other notices.

## XIII. APPLICATION

By acceptance of this Policy, each **Insured** reaffirms as of the inception date of this Policy that (a) the statements in the application, the census letter and any other representation made in writing as part of the application process for this policy, copies of which are incorporated herein by reference and made a part hereof, are the **Insureds'** agreements and representations; (b) that this Policy is issued in reliance upon the truth and accuracy of such representations; and (c) that this Policy embodies all agreements existing between the **Insureds** and the Company or any of its agents relating to this Insurance.

## XIV. ARBITRATION

(A) All disputes which may arise between one or more **Insureds** and the Company out of or in relation to this Policy (including disputes as to its validity, construction or enforcement ability), or for its breach, shall be finally settled by arbitration held according to the commercial arbitration rules of the American Arbitration Association, by which the **Insureds** and the Company agree to be bound. In addition to the rules governing such arbitration, the parties shall have at their disposal the broadest pretrial discovery rights as are then available under the laws and judicial rules of the jurisdiction in

which the arbitration is to be held, provided that any dispute between the parties relating to discovery shall be submitted to the arbitration panel for resolution.

 (B) Unless the parties consent in writing to a lesser number, the arbitration panel shall consist of three arbitrators, one to be a retired insurance executive appointed by the Company, one to be a retired partner of a major law firm which has coverage under a similar Policy of the Company appointed by the Insureds, and the third to be appointed by the two arbitrators so appointed. In the event the two arbitrators fail to agree upon a third arbitrator, such third arbitrator shall be chosen by the chief judge of the U.S. District Court for the Northern District of California or such other District judge as the chief judge shall designate and, in the event of the failure or refusal of the chief judge to make such designation with 30 days, the presiding judge of the Superior Court of the State of California for the County of San Francisco or such other judge of the court as he or she may designate, except that in a dispute solely regarding punitive or exemplary damages, the third arbitrator shall be chosen by the chief judge of the U.S. District Court for the District of Vermont or such other District judge as the chief judge shall designate and, in the event of the failure or refusal of the chief judge to make such designation within 30 days, the judge presiding in Chittenden Superior Court of the State of Vermont or such other judge of the court as he or she may designate.

 (C) The arbitration proceedings shall take place in San Francisco, California, or, solely in a dispute regarding punitive or exemplary damages, in Burlington, Vermont. The arbitration panel may, for the convenience of the parties and without changing the situs of the arbitration proceeding, take evidence outside of San Francisco or Burlington at any place or places within or without the State of California or the State of Vermont.

 (D) The award of the arbitration panel may be alternatively or cumulatively, for monetary damages, an order requiring the performance of the obligations under this Policy, or any other appropriate order or remedy. The award shall assign all costs of the arbitration, excluding attorneys' fees, to one or both parties. The arbitration panel may not award punitive damages. Judgment upon any award rendered in the arbitration may be entered by any court having proper jurisdiction.

 (E) The Company and each of the Insureds hereby submit themselves to the jurisdiction of the State and Federal District Courts located in the State of California, except that in a dispute solely regarding punitive or exemplary damages they submit themselves to the jurisdiction of the State and Federal Courts located in the State of Vermont.

## XV. <u>AMENDMENT</u>

 Any amendment of this Policy must be by endorsement in writing issued by the Company.

## XVI. <u>GOVERNING LAW</u>

 This Policy shall be governed by and construed in accordance with California law, with the sole exception that matters relating to punitive and exemplary damages shall

be construed in accordance with Vermont law or such other jurisdiction as the **Named Insured** may lawfully designate.

## XVII. NOTICE TO THE COMPANY

Any notices, reports, documents and other matters pertaining to **claims** under this Insurance shall be deemed sufficiently given or delivered to the Company when mailed or delivered to:

> **WELLS, HAUG & LEOPOLD, PC**
> Attn: James R. Haug, Esq.
> One Lawson Lane, Suite 220
> Burlington, Vermont 05401-8445

Any notices, reports, documents and other matters pertaining to this Insurance that do not relate to **claims** thereunder shall be deemed sufficiently given or delivered to the Company when mailed or delivered to:

> **Marsh Risk and Insurance Services, Inc.**
> Attn: Richard E. Cowan
> One California Street – 5th Floor
> San Francisco, California 94111

## XVIII. SERVICE OF SUIT CLAUSE

Subject to CONDITION XIV. ARBITRATION, in the event of failure of the Company to pay any amount claimed to be due hereunder, the Company, at the request of the **Insured**, will submit to the jurisdiction of a court of competent jurisdiction within the United States. Nothing in this condition constitutes or should be understood to constitute a waiver of the Company's rights to commence an action in any court of competent jurisdiction in the United States to remove an action to a United States District Court or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States. It is further agreed that service of process in such suit may be made upon

> Counsel, Legal Department
> Lexington Insurance Company
> 100 Summer Street
> Boston, Massachusetts 02110

or his representative, and that in any suit instituted against the Company upon this contract, the Company will abide by the final decision of such court or of any appellate court in the event of an appeal.

Further, pursuant to any statute of any state, territory, or district of the United States which makes provision therefor, the Company hereby designates the Superintendent, Commissioner or Director of Insurance, other officer specified for that purpose in the statute, or his successor or successors in office at its true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding

Case: 08-32514   Doc# 1101   Filed: 04/28/10   Entered: 04/28/10 11:03:36   Page 18 of 19

instituted by or on behalf of the **Insured** or any beneficiary hereunder arising out of this contract of Insurance, and hereby designates the above-named Counsel as the person to whom the said officer is authorized to mail such process or a true copy thereof.

IN WITNESS WHEREOF, we have caused this policy to be executed and attested, but this policy shall not be valid unless countersigned by one of our duly authorized representatives.

*Elizabeth M. Tuck*
_____
Secretary

*[signature]*
_____
President