John D. Fiero (CA Bar No. 136557)
Kenneth H. Brown (CA Bar No. 100396)
Teddy M. Kapur (CA Bar No. 242486)
PACHULSKI STANG ZIEHL & JONES LLP
150 California Street, 15th Floor
San Francisco, California 94111-4500
Telephone: 415/263-7000
Facsimile: 415/263-7010

E-mail: jfiero@pszjlaw.com
        kbrown@pszjlaw.com
        tkapur@pszjlaw.com

Attorneys for Heller Ehrman LLP,
Debtor and Debtor in Possession

Steven H. Felderstein (CA Bar No. 56978)
Thomas A. Willoughby (CA Bar No. 137597)
Christopher Crowell (CA Bar No. 253103 )
FELDERSTEIN FITZGERALD WILLOUGHBY &
PASCUZZI LLP
400 Capitol Mall, Suite 1450
Sacramento, CA 95814
Telephone: (916) 329-7400
Facsimile: (916) 329-7435

Attorneys for The Official Committee of Unsecured Creditors

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>**HELLER EHRMAN LLP**,<br><br>            Debtor. | Case No.: 08-32514<br><br>Chapter 11<br><br>**JOINT PLAN OF LIQUIDATION OF HELLER EHRMAN LLP (MAY 11, 2010)**<br><br>**Confirmation Hearing**<br><br>Date:    TBA<br>Time:    TBA<br>Place:   United States Bankruptcy Court<br>           235 Pine Street, 22nd Floor<br>           San Francisco, CA<br>Judge:  Honorable Dennis Montali |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

# TABLE OF CONTENTS

**Page**

ARTICLE I DEFINITIONS ................................................................................. 2

1.1 "Administrative Claim" .................................................................. 2
1.2 "Administrative Claims Bar Date" .................................................. 3
1.3 "Administrative Claims Bar Date Order" ........................................ 3
1.4 "Allowed" ...................................................................................... 3
1.5 "Allowed Secured Claim" ............................................................. 4
1.6 "Allowed Unsecured Claim" .......................................................... 4
1.7 "Amended Complaint" ................................................................... 4
1.8 "Assumed Contract" or "Assumed Contracts" ................................ 5
1.9 "Assumption and Cure Order" ....................................................... 5
1.10 "Available Cash" ........................................................................... 5
1.11 "Avoidance Actions" ...................................................................... 5
1.12 "Ballot" .......................................................................................... 5
1.13 "Bank of America" ......................................................................... 5
1.14 "Bank of America Preference Action" ............................................ 5
1.15 "Bankruptcy Code" ........................................................................ 6
1.16 "Bankruptcy Court" or "Court" ..................................................... 6
1.17 "Bankruptcy Rules" ....................................................................... 6
1.18 "Banks" .......................................................................................... 6
1.19 "Bar Date" ...................................................................................... 6
1.20 "Biggers Adversary" ...................................................................... 6
1.21 "Biggers Approval Order" .............................................................. 6
1.22 "Biggers Defendant Shareholder Class" ......................................... 7
1.23 "Biggers Class" .............................................................................. 7
1.24 "Biggers Priority Employee Claim" ............................................... 7
1.25 "Biggers Opt Out" .......................................................................... 7
1.26 "Biggers Opt Out Deadline" ........................................................... 7
1.27 "Biggers Settlement Agreement" ................................................... 7
1.28 "Biggers Subordinated Unsecured Claim" ...................................... 8
1.29 "Biggers Unsecured Claim" ........................................................... 8
1.30 "Business Day" ............................................................................... 8
1.31 "Cash" ............................................................................................ 8
1.32 "Cash Collateral Account" ............................................................. 8
1.33 "Chapter 11 Case" .......................................................................... 8
1.34 "Citibank" ...................................................................................... 9
1.35 "Claim" ........................................................................................... 9
1.36 "Claimant" ...................................................................................... 9
1.37 "Claims Reserve Account" ............................................................. 9
1.38 "Class" ............................................................................................ 9
1.39 "Class Counsel" .............................................................................. 9
1.40 "Class Proof of Claim" ................................................................... 9
1.41 "Committee" ................................................................................... 9
1.42 "Confirmation" ............................................................................... 9
1.43 "Confirmation Date" ...................................................................... 10
1.44 "Confirmation Hearing" ................................................................. 10
1.45 "Confirmation Order" ..................................................................... 10
1.46 "Continuing Employee Benefit Plans" ........................................... 10
1.47 "Creditor" ....................................................................................... 10
1.48 "Cure Obligation" ........................................................................... 10
1.49 "Debt" ............................................................................................. 10

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

| 1.50 | "Debtor" | 10 |
| 1.51 | "Disallowed Claim" | 11 |
| 1.52 | "Disclosure Statement" | 11 |
| 1.53 | "Dissolution Committee" | 11 |
| 1.54 | "Disputed Claim" | 11 |
| 1.55 | "Disputed Claims Amount" | 11 |
| 1.56 | "Effective Date" | 12 |
| 1.57 | "Employee Retention Orders" | 12 |
| 1.58 | "Estate" | 12 |
| 1.59 | "Estate Assets" | 12 |
| 1.60 | "Exculpated Parties" | 12 |
| 1.61 | "Executory Contracts" | 12 |
| 1.62 | "Exit Financing" | 12 |
| 1.63 | "Exit Financing Collateral" | 13 |
| 1.64 | "Exit Financing Lender" | 13 |
| 1.65 | "Final Order" | 13 |
| 1.66 | "Former Shareholders" | 13 |
| 1.67 | "Former Shareholder Settlement Letter" | 13 |
| 1.68 | "Former Shareholder Settlement Mechanism" | 13 |
| 1.69 | "Former Shareholder Settlement Payment" | 13 |
| 1.70 | "Heller Ehrman" | 13 |
| 1.71 | "Heller Ehrman PCs" | 14 |
| 1.72 | "Insured Malpractice Claim" | 14 |
| 1.73 | "Insured Portion" | 14 |
| 1.74 | "Interest Holder" | 14 |
| 1.75 | "Interests" | 14 |
| 1.76 | "Jewel Claims" | 14 |
| 1.77 | "Lien" | 14 |
| 1.78 | "Liquidating Debtor" | 14 |
| 1.79 | "Malpractice Claim" | 15 |
| 1.80 | "Malpractice Claim Expenses" | 15 |
| 1.81 | "Malpractice Policy" or "Policies" | 15 |
| 1.82 | "Main Special Counsel Agreement for Legal Services" | 15 |
| 1.83 | "Model Former Shareholder Settlement Agreement" | 15 |
| 1.84 | "MPC" | 15 |
| 1.85 | "MPC Equity" | 15 |
| 1.86 | "Net Available Cash" | 16 |
| 1.87 | "New Plan Documents" | 16 |
| 1.88 | "Non-Debtor Biggers Defendants" | 16 |
| 1.89 | "Petition Date" | 16 |
| 1.90 | "Plaintiff Class Members" | 16 |
| 1.91 | "Plaintiff Class Representatives" | 16 |
| 1.92 | "Plan" | 16 |
| 1.93 | "Plan Administrator" | 16 |
| 1.94 | "Plan Expenses" | 17 |
| 1.95 | "Plan of Dissolution" | 17 |
| 1.96 | "Post-Confirmation Budget" | 17 |
| 1.97 | "Post-Confirmation Motion and Opportunity for Hearing" | 17 |
| 1.98 | "Post-Confirmation Service List" | 18 |
| 1.99 | "Priority Employee Claim" | 18 |
| 1.100 | "Priority Employee Benefit Claim" | 18 |
| 1.101 | "Priority Tax Claim" | 18 |
| 1.102 | "Professional Fees" | 18 |
| 1.103 | "Professionals" | 18 |
| 1.104 | "Pro Rata" or "Pro Rata Share" | 18 |
| 1.105 | "Rejected Contract(s)" | 19 |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1.106 **"Rejection Claim"** ........................................................................... 19
1.107 **"Rejection Claim Bar Date"** ................................................................ 19
1.108 **"Reserved Claims Pool"** ..................................................................... 19
1.109 **"Reserved Claims Pool Account"** ....................................................... 19
1.110 **"Retained Claims and Defenses"** ........................................................ 19
1.111 **"Schedules"** ......................................................................................... 20
1.112 **"Secured Claim"** .................................................................................. 20
1.113 **"Self Insured Retention Amount"** ....................................................... 20
1.114 **"Settling Former Shareholder"** ........................................................... 20
1.115 **"SIR Amount"** ..................................................................................... 20
1.116 **"Subordinated Former Shareholders"** ................................................ 20
1.117 **"Subordinated Former Shareholder Notes"** ....................................... 21
1.118 **"Substantial Contribution Payment"** .................................................. 21
1.119 **"Top Thirty Former Shareholders"** .................................................... 21
1.120 **"Uninsured Malpractice Claim"** .......................................................... 21
1.121 **"Unliquidated Claim"** .......................................................................... 21
1.122 **"Unsecured Claim"** .............................................................................. 21
1.123 **"WARN Act"** ....................................................................................... 21

**ARTICLE II CLASSIFICATION OF CLAIMS AND INTERESTS** ..................... 22

2.1 **Criterion of Class.** ................................................................................. 22
2.2 **Classes of Claims and Interests.** ........................................................... 22
    2.2.1 **Class 1 Claims.** ............................................................................. 22
    2.2.2 **Class 2 Claims.** ............................................................................. 22
    2.2.3 **Class 3 Claims.** ............................................................................. 22
    2.2.4 **Class 4 Claims.** ............................................................................. 22
    2.2.5 **Class 5 Claims.** ............................................................................. 22
    2.2.6 **Class 6 Claims.** ............................................................................. 22
    2.2.7 **Class 7 Claims.** ............................................................................. 23
    2.2.8 **Class 8 Claims.** ............................................................................. 23
    2.2.9 **Class 9 Claims.** ............................................................................. 23
    2.2.10 **Class 10 Interests.** ...................................................................... 23

**ARTICLE III TREATMENT OF UNCLASSIFIED CLAIMS** .............................. 23

3.1 **Administrative Claims.** .......................................................................... 23
3.2 **Administrative Claim Bar Date.** ............................................................ 23
3.3 **Claims for Professional Fees.** ................................................................ 24
3.4 **Priority Tax Claims.** .............................................................................. 24

**ARTICLE IV TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS** ........ 24

4.1 **Class 1 (Priority Employee Claims).** ..................................................... 24
4.2 **Class 2 (Biggers Priority Employee Claims).** ....................................... 25
4.3 **Class 3 (Priority Employee Benefits Claims).** ...................................... 25
4.4 **Class 4 (Claims of Bank of America and Citibank).** ............................. 25
4.5 **Class 5 Claims (Secured Claim of MPC).** ............................................. 27
4.6 **Class 6 Claims (Insured Malpractice Claims).** ..................................... 27
4.7 **Class 7 (General Unsecured Claims).** .................................................... 27
4.8 **Class 8 (Biggers Subordinated Unsecured Claims).** ............................. 28
4.9 **Class 9 (Subordinated Former Shareholder Claims).** ........................... 29
4.10 **Class 10 (Interests).** .............................................................................. 29
4.11 **Nonconsensual Confirmation.** ............................................................... 30
    4.11.1 **Classes 1 through 9 Cramdown.** .................................................. 30
    4.11.2 **Class 10 Cramdown.** ................................................................... 30

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

**ARTICLE V MEANS FOR IMPLEMENTATION OF THE PLAN** ................................................ 30

5.1    **Effective Date Transactions.** ................................................................................ 30
5.2    **Revesting of Estate Assets.** ................................................................................ 31
5.3    **Replacement of Dissolution Committee/Continued Existence.** ........................ 31
5.4    **Management of Liquidating Debtor by Plan Administrator.** ............................ 32
5.5    **Continued Business of Liquidating Debtor.** ...................................................... 32
5.6    **Continued Administrative Support for the Heller Ehrman PCs.** ..................... 33
5.7    **Retained Claims and Defenses.** ......................................................................... 33
       5.7.1   **Small Claims and Defenses.** ............................................................. 33
       5.7.2   **Large Claims and Defenses.** ............................................................ 33
       5.7.3   **Bankruptcy Rule 2004.** ..................................................................... 34
       5.7.4   **Standing.** ............................................................................................ 34
5.8    **Avoidance Actions.** ............................................................................................. 34
5.9    **Claims Reserve Account.** ................................................................................... 34
5.10   **Liquidating Debtor Litigation.** ........................................................................... 35
5.11   **Liquidating Debtor Liquidation Budget.** .......................................................... 35
5.12   **Former Shareholder Settlement Mechanism.** ................................................... 35
5.13   **Limitation of Liability of Plan Administrator and the Committee.** ................. 36
5.14   **Continuation of and Powers of the Committee.** ............................................... 37
5.15   **Material Default Under the Plan.** ....................................................................... 38
5.16   **Cooperation.** ........................................................................................................ 38
5.17   **Payment of Plan Expenses.** ................................................................................ 38
5.18   **Biggers Settlement Mechanism.** ........................................................................ 39
5.19   **Distribution Procedures.** .................................................................................... 39
5.20   **Resolution of Disputed Claims** .......................................................................... 40
5.21   **Reserve Provisions for Disputed Claims.** ......................................................... 40
5.22   **Allocation of Distributions.** ............................................................................... 42
5.23   **Exit Financing and Exit Financing Collateral.** ................................................ 42
5.24   **Rounding.** ............................................................................................................. 43
5.25   **De Minimis Distributions.** .................................................................................. 43
5.26   **Disputed Payments.** ............................................................................................ 43
5.27   **Unclaimed Property.** .......................................................................................... 44
5.28   **Successor Plan Administrator.** ........................................................................... 44
5.29   **Setoffs.** ................................................................................................................. 45
5.30   **No Distributions on Late-Filed Claims.** ............................................................ 45
5.31   **Withholding Taxes.** ............................................................................................. 45
5.32   **Post-Effective Date Reports.** ............................................................................. 45
5.33   **Post-Effective Date Employment and Compensation of Professionals.** .......... 46
5.34   **Final Decree.** ....................................................................................................... 47
5.35   **Procedures for Post-Confirmation Motion and Opportunity for Hearing.** .... 47
5.36   **Certain Death Benefits.** ...................................................................................... 47

**ARTICLE VI EXECUTORY CONTRACTS** ................................................................................. 47

6.1    **Executory Contracts.** .......................................................................................... 47
       6.1.1   **Assumption.** ....................................................................................... 47
       6.1.2   **Rejection.** ........................................................................................... 48
6.2    **Satisfaction of Cure Obligations.** ...................................................................... 48
6.3    **Post-Petition Executory Contracts and Unexpired Leases.** ............................. 48
6.4    **Continuing Employee Benefit Plans.** ................................................................ 49
6.5    **Order Authorizing Assumption or Rejection.** .................................................. 49

**ARTICLE VII CONDITIONS PRECEDENT** ............................................................................... 49

7.1    **Conditions to Confirmation.** .............................................................................. 49

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

7.2      **Conditions to Effective Date.** ..................................................................50

**ARTICLE VIII EFFECTS OF CONFIRMATION** ...............................................50

8.1      **Binding Effect of Plan.** ........................................................................50
8.2      **Revesting of Property Free and Clear.** ..............................................50
8.3      **Injunction.** ............................................................................................51
8.4      **Limitation of Liability.** ........................................................................51

**ARTICLE IX RETENTION OF JURISDICTION** ...............................................52

**ARTICLE X MISCELLANEOUS** .........................................................................54

10.1    **Severability of Plan Provisions.** ........................................................54
10.2    **Governing Law.** ...................................................................................54
10.3    **Headings.** .............................................................................................54
10.4    **Language Interpretation.** ....................................................................55
10.5    **Exhibits.** ...............................................................................................55
10.6    **Exemption from Transfer Taxes:** ........................................................55
10.7    **Notices.** ................................................................................................55
10.8    **Computation of Time Periods.** ...........................................................56
10.9    **Defects, Omissions and Amendments.** ...............................................57
10.10  **Filing of Additional Documents.** .......................................................57
10.11  **Successors and Assigns.** .....................................................................57
10.12  **Implementation.** .................................................................................57
10.13  **Certain Actions.** .................................................................................57
10.14  **Waiver of Fourteen (14) Day Stay.** ...................................................58

**Exhibits**

| | |
|---|---|
| Exhibit A | Assumed Contracts |
| Exhibit B | Former Shareholders |
| Exhibit C | Subordinated Former Shareholder Notes |
| Exhibit D | Compromise and Settlement Agreement |
| Exhibit E | Subordinated Former Shareholders |
| Exhibit F | Top Thirty Former Shareholders |
| Exhibit G | Main Special Counsel Agreement for Legal Services |
| Exhibit H | Term Sheet for Exit Financing |
| Exhibit I | List of Malpractice Policies |
| Exhibit J | Burkart Bio |
| Exhibit K | Post Confirmation Budget |
| Exhibit L | Model Former Shareholder Settlement Agreement |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

# PRELIMINARY STATEMENT

Heller Ehrman LLP, the above-referenced debtor and debtor in possession (the "Debtor") and the Official Unsecured Creditors' Committee appointed in the Debtor's case (the "Committee") and together with the Debtor (the "Proponents"), hereby propose the following *Joint Plan of Liquidation* (the "Plan"). All Creditors should review the Disclosure Statement, and its accompanying exhibits and other information, before voting to accept or reject the Plan.

The Plan sets forth a proposal for the resolution of all Claims and Interests against the Debtor. In sum, the Plan provides for the Debtor to continue its wind-down efforts after confirmation with its administration to be handled by a professional wind-down manager (the "Plan Administrator") replacing the Dissolution Committee as the primarily responsible party. Confirmation of the Plan shall constitute and confirm the appointment of the Plan Administrator, including responsibility and authority to (a) exercise the rights, power, and authority of the Liquidating Debtor, under the applicable provisions of the Plan and bankruptcy and non-bankruptcy law, and (b) retain post-confirmation professionals to represent the Liquidating Debtor and assist the Plan Administrator in performing and implementing the Plan, including without limitation retaining professionals originally engaged by the Debtor and/or the Committee, and (c) otherwise implement the Plan, wind up the affairs of the Estate and close the Chapter 11 Case.

The Plan contemplates the liquidation of all Estate Assets for the benefit of the holders of Allowed Claims and Allowed Interests. The resulting funds, after payment of Plan Expenses, will be made available for distribution to holders of Allowed Claims and Allowed Interests in accordance with the terms of the Plan. The Plan Administrator's operation of the Liquidating Debtor will be for the purpose of liquidating and monetizing Estate Assets, which consist primarily of the Retained Claims and Defenses.

From and after the Effective Date, the Liquidating Debtor, acting through the Plan Administrator, shall expeditiously seek to collect, liquidate, sell and/or reduce to Cash all Estate Assets, including, without limitation, through pursuit of the Retained Claims and Defenses, and use the proceeds thereof to fund the Plan.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

As set forth in the Disclosure Statement, the Proponents believe that the Plan will allow the holders of Unsecured Claims to receive a meaningful return on account of their Allowed Claims against the Debtor, depending on the outcome of litigation and the allowance of Claims.

With the Plan, Creditors will receive a Ballot for voting on the Plan, and a Disclosure Statement that provides information concerning the Debtor and the Plan. The Disclosure Statement includes a summary of the assets and liabilities of the Debtor, a summary of what Creditors and Interest Holders will receive under the Plan, a discussion of certain alternatives to the Plan, and a summary of the procedures and voting requirements necessary for confirmation of the Plan. You should thoroughly review both the Plan and Disclosure Statement before deciding whether you will accept or reject the Plan.

As more fully described in the Disclosure Statement, the Plan must be approved by the requisite number of Creditors and the Bankruptcy Court must find that it meets the applicable legal standards before the Plan can be confirmed. If the Plan is not confirmed, the Bankruptcy Court may order the case dismissed, or converted to a liquidating case under Chapter 7 of the Bankruptcy Code, or the Debtor or other parties in interest may propose a different plan.

The Debtor and the Committee believe that the Plan provides the best mechanism available for maximizing returns to Creditors and urge Creditors to vote in favor of the Plan.

## ARTICLE I

## DEFINITIONS

For purposes of this Plan, all capitalized terms used herein and not otherwise defined shall have the meanings set forth below. A term not defined in the Plan, but defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to it in the Bankruptcy Code or the Bankruptcy Rules, unless the context clearly requires otherwise. The rules of construction used in section 102 of the Bankruptcy Code shall apply to construction of this Plan. The phrase "as soon as practicable" shall mean within ten (10) Business Days of the relevant date. Headings and captions are utilized in this Plan for convenient reference only, and shall not constitute a part of this Plan for any other purpose.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1.1 **"Administrative Claim"** shall mean a Claim for an expense of administration of the Debtor arising during the period commencing on the Petition Date and ending on the Effective Date under sections 503(b), 1114(e)(2) or 546(c)(2) of the Bankruptcy Code and entitled to priority under section 507(a)(1) of the Bankruptcy Code, including, but not limited to, (i) any actual and necessary cost or expense of preserving the Estate of the Debtor or conducting the business of the Debtor, (ii) administrative expenses previously allowed by the Bankruptcy Court, (iii) administrative claims that are timely filed prior to the applicable Administrative Claims Bar Date, (iv) any Tax Claims incurred by the Debtor after the Petition Date or relating to a tax year or period which occurs after the Petition Date, (v) any claim by a seller of goods for reclamation; (vi) Professional Fees, and (vii) all fees and charges assessed against the Debtor pursuant to 28 U.S.C. § 1930. For purposes of this Plan, Administrative Claims shall also include Cure Obligations.

1.2 **"Administrative Claims Bar Date"** shall mean (a) March 19, 2010 for claims arising prior to December 31, 2009, and (b) the first Business Day that is thirty (30) days after the Effective Date pursuant to which Claimants must file a request for payment of any Administrative Claim that arose between January 1, 2010 and the Effective Date, for which notice shall be provided in the Proponents' notice of the entry of the Confirmation Order.

1.3 **"Administrative Claims Bar Date Order"** shall mean, (a) for administrative claims arising prior to December 31, 2009 the Court's *Order (1) Establishing New General Bar Date for Affected Creditors, (2) Establishing Interim Administrative Claims Bar Date, and (3) Designating Form and Manner Of Notice Thereof*; and (b) for claims arising between January 1, 2010 and the Effective Date, an order setting an Administrative Claims Bar Date, which order could be the Confirmation Order.

1.4 **"Allowed"** shall mean, with respect to any Claim (other than an Administrative Claim as set forth below):

(i) a Claim that appears in the Schedules, except a Claim that is listed as disputed, contingent or unliquidated, or for which a contrary proof of Claim has been filed;

Case: 08-32514   Doc# 1129   Filed: 05/11/10   Entered: 05/11/10 21:59:11   Page 9 of 60
55689-001\DOCS_SF:70869.16

(ii)     a Claim for which a proof of Claim has been timely filed as of the Bar Date or Rejection Claim Bar Date, as applicable, and no objection thereto has been made on or before any applicable deadline; or

(iii)     a Claim that has been allowed, but only to the extent allowed (i) by a Final Order, (ii) under this Plan, or (iii) under any agreements entered into prior to the Effective Date (and approved by the Bankruptcy Court) or in connection with this Plan (and approved in accordance with the terms of this Plan) establishing the amount and nature of any Claim; and

With respect to an Administrative Claim, a request for payment that has been filed prior to the Administrative Claims Bar Date, and in accordance with either section 503(b) of the Bankruptcy Code or the procedures for filing requests for payment of an expense of administration set forth in the Administrative Claims Bar Date Order, and as to which either no objection has been made on or before any applicable deadline, or if an objection has been made, a claim has been allowed by Final Order.

1.5     **"Allowed Secured Claim"** shall mean that portion of an Allowed Claim (i) secured by a valid, perfected and enforceable Lien that is not subject to avoidance under bankruptcy or non-bankruptcy law, in an amount equal to the value, as determined by the Bankruptcy Court pursuant to sections 506(a) and 1129(b) of the Bankruptcy Code and Bankruptcy Rule 3012, of the interest of the holder of such Allowed Claim in the property of the Debtor, the Liquidating Debtor, or the Estate, securing such Allowed Claim, or (ii) in an amount equal to the amount subject to setoff by the holder of such Claim under section 553 of the Bankruptcy Code.

1.6     **"Allowed Unsecured Claim"** shall mean any Allowed Claim (including any Rejection Claim) that is not an Allowed Administrative Claim, an Allowed Professional Fee Claim, an Allowed Secured Claim, an Allowed Priority Employee Claim, an Allowed Biggers Priority Employee Claim, an Insured Malpractice Claim, an Allowed Priority Employee Benefit Claim, an Allowed Priority Tax Claim or an Assumed Obligation.

1.7     **"Amended Complaint"** means the amended complaint in the Biggers Adversary filed on or about April 23, 2009, which added as defendants the Biggers Defendant Shareholder Class and the Non-Debtor Defendants.  The Amended Complaint alleges (1) violation of the Federal

Worker Adjustment and Retraining Notification ("WARN") Act, 29 U.S.C. §§ 2101 *et seq.*;
(2) violation of the California WARN Act; (3) failure to pay vacation in violation of California law;
(4) waiting time penalties; (5) failure to pay wages under Washington law; (6) breach of contract as
to the Washington and New York putative vacation class; (7) promissory estoppel as to the
Washington and New York putative vacation class; (8) failure to pay wages under Washington, D.C.
and New York law; and (9) unfair business practices under California law.

1.8     **"Assumed Contract" or "Assumed Contracts"** shall mean each Executory Contract
assumed by the Debtor.

1.9     **"Assumption and Cure Order"** shall mean, with respect to any Assumed Contract,
an order of the Bankruptcy Court approving the assumption of such Executory Contract, and
determining any Cure Obligation with respect thereto.  The Confirmation Order may constitute an
Assumption and Cure Order.

1.10     **"Available Cash"** shall mean, with respect to any distribution contemplated herein,
the aggregate amount of all Cash held by the Liquidating Debtor immediately prior to such
distribution.

1.11     **"Avoidance Actions"** shall mean all claims or causes of action arising under
sections 547 and 548 of the Bankruptcy Code.

1.12     **"Ballot"** shall mean the form for acceptance or rejection of the Plan distributed to
those Creditors entitled to vote on the Plan, as such form may be approved by the Bankruptcy Court
and which shall otherwise comply with the requirements of Bankruptcy Rule 3018(c).

1.13     **"Bank of America"** shall mean Bank of America, N.A.

1.14     **"Bank of America Preference Action"** shall mean that certain adversary proceeding
styled as *Official Committee of Unsecured Creditors v. Bank of America, et al.*, Adv. No. 09-03071.

1.15     **"Bankruptcy Code"** shall mean Title 11 of the United States Code, §§ 101 et seq., as
in effect on the Petition Date, as the same thereafter has been and may be amended, provided such
amendments are in effect.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

55685-001\DOCS_SF:70609.16

1.16 **"Bankruptcy Court" or "Court"** shall mean the United States Bankruptcy Court for the Northern District of California (San Francisco Division), or such other court as may hereafter exercise jurisdiction over the Chapter 11 Case.

1.17 **"Bankruptcy Rules"** shall mean the Federal Rules of Bankruptcy Procedure, as in effect on the Filing Date, as the same thereafter has been and may be amended, and the Local Rules of the Bankruptcy Court to the extent applicable to the Chapter 11 Case.

1.18 **"Banks"** shall mean Bank of America, N.A. and Citibank, N.A..

1.19 **"Bar Date"** shall mean, as applicable, (i) April 27, 2009, which was the date set by the Bankruptcy Court as the last date for filing a proof of Claim for a Claim that arose before the Petition Date for non-Governmental Units, (ii) June 26, 2009 for Governmental Units; and (iii) March 19, 2010 for those creditors entitled to file a proof of claim under the Court's *Order (1) Establishing New General Bar Date for Affected Creditors, (2) Establishing Interim Administrative Claims Bar Date, and (3) Designating Form and Manner Of Notice Thereof.*

1.20 **"Biggers Adversary"** shall mean that certain adversary proceeding now pending in the Bankruptcy Court styled as *Biggers, et al, v. Heller Ehrman, LLP*, Adv. No. 09-03058.

1.21 **"Biggers Approval Order"** shall mean a Final Order of the Bankruptcy Court approving the Biggers Settlement Agreement under Bankruptcy Rule 9019, after notice and hearing to creditors and parties in interest, in accordance with applicable law and local rules, which shall be deemed to have occurred when 15 days have elapsed from the entry of the Bankruptcy Court's order approving the Biggers Settlement Agreement (i) which order has not been reversed, stayed, modified or amended, (ii) as to which the time to or the right to appeal or seek reconsideration, review, rehearing, or certiorari has expired or been waived, and (iii) as to which no appeal or petition for reconsideration, review, rehearing, or certiorari is pending.

1.22 **"Biggers Defendant Shareholder Class"** means individuals Matthew Larrabee, Robert Hubbell, Steven Koppel, Marie Fiala, Mark Weeks, Lynn Loacker, Barry Levin, Kenneth Chernof, Lawrence Keeshan, Robert Rosenfeld, Peter Benvenutti, and Jonathan Hayden, on behalf of themselves and on behalf of the individuals listed on Exhibit 2 to the Biggers Settlement

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Agreement. The Biggers Defendant Shareholder Class comprises all shareholders of Heller Ehrman PCs as of September 26, 2008.

1.23 **"Biggers Class"** shall mean each former employee of the Debtor who meets the description of the Plaintiff Class Members set forth in Recital D to the Biggers Settlement Agreement attached hereto as **Exhibit D**.

1.24 **"Biggers Priority Employee Claim"** shall mean that portion of an Allowed Claim held by a member of the Biggers Class who does not exercise the Biggers Opt Out that is unsecured and is entitled to priority under sections 507(a)(4) of the Bankruptcy Code. Such claims relate primarily to claims under the WARN Act.

1.25 **"Biggers Opt Out"** shall mean that certain right of a member of the Biggers Class to opt out of the Biggers Class as set forth in Section 17 of the Biggers Settlement Agreement attached hereto as **Exhibit D**.

1.26 **"Biggers Opt Out Deadline"** shall mean May 13, 2010.

1.27 **"Biggers Settlement Agreement"** means that certain *Compromise and Settlement Agreement*, dated as of October 8, 2009, as amended, entered into by and between certain Plaintiff Class Representatives on behalf of the Plaintiff Class Members, on the one hand and the Debtor, the Non-Debtor Biggers Defendants, the Biggers Defendant Shareholder Class, and the Committee, on the other hand, and attached hereto as **Exhibit D.**

1.28 **"Biggers Subordinated Unsecured Claim"** shall mean an Allowed Claim for that portion of a Biggers Unsecured Claim held by a member of the Biggers Class who does not exercise the Biggers Opt Out in an amount that is set forth in an exhibit to be sent to each member of the Biggers Class in connection with the solicitation of the member's vote on this Plan. Such claims relate primarily to waiting time penalties.

1.29 **"Biggers Unsecured Claim"** shall mean shall mean an Allowed Claim for that portion of a Claim held by a member of the Biggers Class who does not exercise the Biggers Opt Out that is unsecured and is not an Administrative Claim, a Priority Tax Claim, a Priority Employee Claim, a Biggers Priority Employee Claim, a Biggers Subordinated Unsecured Claim, a Secured Claim, or an Assumed Obligation. Such claims relate primarily to claims under the WARN Act.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1.30   **"Business Day"** shall mean any day that is not a Saturday, a Sunday or other day on which banks are required or authorized by any federal, state or local law to be closed in the City of San Francisco, California.

1.31   **"Cash"** shall mean cash and cash equivalents including, but not limited to, cash on deposit in the bank accounts of the Debtor or the Liquidating Debtor, as applicable, checks, wire transfers, money orders, certificates of deposit, money market or similar investments, and other similar readily marketable securities or instruments.

1.32   **"Cash Collateral Account"** shall mean the account numbers XXX3459559 and XXXX265976 both held in the name of Bank of America FBO Heller Ehrman LLP at Bank of America.

1.33   "**Chapter 11 Case**" shall mean the Chapter 11 Case commenced by the Debtor upon the filing with the Bankruptcy Court of a voluntary petition under chapter 11 of the Bankruptcy Code.

1.34   **"Citibank"** shall mean Citibank, N.A.

1.35   **"Claim"** shall mean a claim against the Debtor within the meaning of section 101(5) of the Bankruptcy Code.

1.36   **"Claimant"** shall mean the holder of a Claim.

1.37   **"Claims Reserve Account"** shall mean an interest bearing bank account or money market account to be established and held in trust for the benefit of holders of Allowed Unsecured Claims by the Liquidating Debtor on or after the Effective Date for the purpose of holding the funds to be distributed under the Plan to Unsecured Creditors and for Plan Expenses, and any interest, dividends or other income earned upon the investment of such Claims Reserve Account.

1.38   **"Class"** shall mean a category or group of Creditors or Interest Holders which are substantially similar to the Claims or Interests of the other Creditors or Interests Holders in such Class, as designated by this Plan pursuant to sections 1122 and 1123 of the Bankruptcy Code.

1.39   **"Class Counsel"** means Blum & Collins LLP.

1.40   **"Class Proof of Claim"** means the Class Proof of Claim filed on behalf of all purported Plaintiff Class Members in the Biggers Adversary on or about March 27, 2009 and the

Amended Class Proof of Claim filed on April 3, 2009 and alleging substantially the same claims as alleged in the Biggers Adversary.

1.41 **"Committee"** shall mean the Official Committee of Unsecured Creditors appointed by the United States Trustee in the Debtor's Chapter 11 Case.

1.42 **"Confirmation"** shall mean the approval of the Plan by and subject to the terms of the Confirmation Order.

1.43 **"Confirmation Date"** shall mean the date of Confirmation.

1.44 **"Confirmation Hearing"** shall mean the duly noticed hearing held by the Bankruptcy Court on confirmation of the Plan pursuant to section 1128 of the Bankruptcy Code. The Confirmation Hearing may be adjourned by the Bankruptcy Court from time to time without further notice other than the announcement of the adjourned date at the Confirmation Hearing.

1.45 **"Confirmation Order"** shall mean the order of the Bankruptcy Court, confirming this Plan and providing for the effectuation of the transactions contemplated by this Plan in accordance with the terms and provisions hereof and thereof.

1.46 **"Continuing Employee Benefit Plans"** shall mean the following programs that were established by the Debtor for the benefit of its employees, that have not been terminated and are still in effect as of the Effective Date, specifically, vacation, holiday and sick time, employee medical insurance coverage (either paid directly to the insurer or reimbursed to the employee), employee IRA contribution matching at 1%, vision insurance coverage, disability insurance coverage, life insurance coverage and commuter benefits.

1.47 **"Creditor"** shall mean any entity that holds a Claim.

1.48 **"Cure Obligation"** shall mean, individually, any monetary amount payable to the non-debtor party to an Assumed Contract pursuant to section 365(b)(1) of the Bankruptcy Code as a condition to the assumption of such contract or lease and, collectively, all monetary amounts payable to all non-debtor parties to all Assumed Contracts.

1.49 **"Debt"** shall mean liability on a Claim.

1.50 **"Debtor"** shall mean Heller Ehrman, LLP, as debtor and debtor in possession in its Chapter 11 Case.

1.51 **"Disallowed Claim"** shall mean (i) a Claim or any portion thereof, that has been disallowed by a Final Order of the Bankruptcy Court; (ii) a Claim that has been listed in the Schedules at zero or as contingent, disputed, or unliquidated and as to which no proof of Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to the Bankruptcy Code, any Final Order of the Court, or other applicable law; or (iii) a Claim that has not been listed in the Schedules and as to which no proof of Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to the Bankruptcy Code, any Final Order of the Court, or other applicable law.

1.52 **"Disclosure Statement"** shall mean the disclosure statement in support of the Plan, in the form approved by the Bankruptcy Court, disseminated by the Proponents to the holders of Claims against the Debtor in order to provide to such persons adequate information in accordance with section 1125 of the Bankruptcy Code, as such disclosure statement may be modified, amended or supplemented from time to time.

1.53 **"Dissolution Committee"** shall mean the Dissolution Committee formed under the Plan of Dissolution for the purpose of governing the affairs of the Debtor after September 26, 2008, currently comprised of Peter J. Benvenutti, Jonathan Hayden, Lynn Loacker, and Paul Sugarman.

1.54 **"Disputed Claim"** shall mean any Claim or portion of a Claim as to which an objection to the allowance thereof has been interposed (whether as a separate objection to claim or in connection with an adversary proceeding) as of the Effective Date or any later deadline fixed under the Plan or by order of the Bankruptcy Court, which objection has not been withdrawn or determined by Final Order. To the extent an objection relates to the allowance of only a part of a Claim, such Claim shall be a Disputed Claim only to the extent of the objection.

1.55 **"Disputed Claims Amount"** shall mean the aggregate amount of Disputed Claims that are fixed, absolute – and neither contingent nor unliquidated. For purposes of calculating distributions of Cash under the Plan, the amount of each Disputed Claim shall be based upon the face amount of such Creditor's Disputed Claim (or the disputed portion thereof) as set forth in the Creditor's filed proof of Claim.

1.56 **"Effective Date"** shall mean the first Business Day on which each of the conditions specified in Article VII of the Plan has been satisfied or duly waived.

1.57 **"Employee Retention Orders"** shall mean that certain *Order (1) Authorizing Debtor And Debtor In Possession To (A) Pay And Honor Pre-Petition Employee Wages And Other Employee Obligations In The Ordinary Course Of Business, And (B) Continue Honoring Employee Obligations, Including Wages, Benefits On A Post-Petition Basis; And (2) Providing Related Relief* entered on or about December 30, 2008, and the *Order Approving Revised Non-Insider Employee Retention And Incentive Bonus Plan* entered on or about March 3, 2009.

1.58 **"Estate"** shall mean the bankruptcy estate of the Debtor pursuant to Bankruptcy Code section 541.

1.59 **"Estate Assets"** shall mean all property of the estate of the Debtor under section 541 of the Bankruptcy Code including, all property, assets, equitable or legal rights or interests, contract rights, benefits, causes of action, claims, or any other thing tangible or intangible, of any kind whatsoever, owned or held by or on behalf of the Debtor in which the Debtor has any right, title or interest to the full extent provided under section 541 of the Bankruptcy Code including, without limitation, Available Cash, any Retained Claims and Defenses, the MPC Equity and MPC Equity Payments, and Avoidance Actions.

1.60 **"Exculpated Parties"** shall have the meaning assigned to it in Article 8.4 of this Plan.

1.61 **"Executory Contracts"** shall mean executory contracts and unexpired leases within the meaning of Bankruptcy Code section 365.

1.62 **"Exit Financing"** shall mean that certain secured exit financing under which the Debtor is the borrower and the Exit Financing Lender is the lender, the material terms of which are set forth on **Exhibit H** to this Plan.

1.63 **"Exit Financing Collateral"** shall mean the liens and security interests granted in connection with the Exit Financing.

1.64 **"Exit Financing Lender"** shall mean the Heller Ehrman PCs collectively.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1.65  **"Final Order"** shall mean an order or judgment of the Bankruptcy Court or other court of competent jurisdiction (i) which has not been reversed, stayed, modified or amended, (ii) as to which the time to or the right to appeal or seek reconsideration, review, rehearing, or certiorari has expired or been waived (without regard to whether the time to seek relief from a judgment under Bankruptcy Rule 9024 has expired), and (iii) as to which no appeal or petition for reconsideration, review, rehearing, or certiorari is pending.

1.66  **"Former Shareholders"** shall mean each of the individuals that held an equity interest in one of the Heller Ehrman PCs, each of whom is named on **Exhibit B**, attached hereto.

1.67  **"Former Shareholder Settlement Letter"** shall mean the individualized letters to be sent to each Former Shareholder who has not previously agreed to settlement terms with the Committee detailing the terms on which the Committee will settle the Estate's known and unknown claims against such Former Shareholder.

1.68  **"Former Shareholder Settlement Mechanism"** shall mean the process described in Article 5.12 of this Plan.

1.69  **"Former Shareholder Settlement Payment"** shall mean a timely payment in good funds made by a Former Shareholder of an amount fixed by the Committee, on terms agreed upon by the Committee in the Model Former Shareholder Settlement Agreement, or other settlement agreement between the parties.

1.70  **"Heller Ehrman"** shall mean Heller Ehrman, LLP.

1.71  **"Heller Ehrman PCs"** shall mean each of the six partners holding an equity interest in the Debtor, including but not limited to: Heller Ehrman (California), a Professional Corporation, Heller Ehrman White & McAuliffe (Washington), P.S., a Washington professional service corporation, Heller Ehrman White & McAuliffe (Oregon), P.C., an Oregon professional corporation, Heller Ehrman (Alaska), P.C., a professional corporation, Heller Ehrman (New York), a Professional Corporation, and Heller Ehrman (China), P.C., a District of Columbia professional corporation.

1.72  **"Insured Malpractice Claim"** shall mean the Insured Portion of any Claim subject to a Malpractice Policy.

Left margin: PACHULSKI STANG ZIEHL & JONES LLP / ATTORNEYS AT LAW / SAN FRANCISCO, CALIFORNIA

1.73  **"Insured Portion"** shall mean, with respect to any Malpractice Policy, the amount for which insurance coverage is available for Insured Malpractice Claims.

1.74  **"Interest Holder"** shall mean, individually, each of the Heller Ehrman PCs, or their successors and assigns.

1.75  **"Interests"** shall mean any interests in the Debtor owned by the Heller Ehrman PCs, or Julian N. Stern, P.C., or their successors and assigns.

1.76  **"Jewel Claims"** shall mean the Estate's claims arising under the California Court of Appeal decision in *Jewel v. Boxer,* 156 Cal.App.3d 171 (1984), or any related unfinished business doctrine claims, which have previously been assigned to the Committee for investigation and prosecution, and or any necessary Avoidance Action to recover the value of the foregoing.

1.77  **"Lien"** shall mean a charge against or interest in property to secure payment of a debt or performance of an obligation.

1.78  **"Liquidating Debtor"** shall mean the Debtor as reorganized and reconstituted on and after the Effective Date.

1.79  **"Malpractice Claim"** shall mean any unsecured non-priority claim against the Debtor or any Former Shareholder, or any former employee of the Debtor arising out of alleged acts, errors, or omissions in connection with the rendering or failing to render professional legal services by the Debtor or other potential or actual liability or costs arising in connection therewith, whether or not covered by a Malpractice Policy.

1.80  **"Malpractice Claim Expenses"** shall mean, as to any Malpractice Policy, all fees, costs and expenses in the investigation, adjustment, settlement, defense and appeal of any claim and shall include all fees, costs and expenses in the investigation, adjustment, settlement or defense of any claim which includes a request for fines, penalties or punitive damages, whether or not compensatory in nature; but does not include salaries nor office overhead expenses nor the costs of supervisory counsel retained by Liquidating Debtor or the Plan Administrator.  If paid, Malpractice Claim Expenses are applied to the SIR Amount.  However, the Liquidating Debtor and the Plan Administrator are not obligating themselves to incur any Malpractice Claim Expenses.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1.81    **"Malpractice Policy" or "Policies"** shall mean the policies of professional liability insurance issued to the Debtor, as such policies have been amended, modified, renewed or supplemented, from time to time set forth in **Exhibit I**.

1.82    **"Main Special Counsel Agreement for Legal Services"** shall mean the agreement attached hereto as **Exhibit G**.

1.83    **"Model Former Shareholder Settlement Agreement"** shall mean the form agreement enclosed with the Former Shareholder Settlement Letter pursuant to which the Estate's claims against Former Shareholders shall be settled under the Plan.

1.84    **"MPC"** shall mean MPC Insurance, Ltd.

1.85    **"MPC Equity"** shall mean the Debtor's equity interest in MPC.

1.86    **"Net Available Cash"** shall mean the aggregate amount of all Available Cash held by the Liquidating Debtors after the payment of (or appropriate reserve for) Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Professional Fee Claims and net of amounts reserved for Disputed Claims, Professional Fees and Plan Expenses.

1.87    **"New Plan Documents"** shall mean the First Amendment to Plan of Dissolution, and such other documents as are deemed necessary to confirmation, to be filed with the Bankruptcy Court and served upon each of party requesting special notice and the Office of the United States Trustee, no later than ten (10) days prior to the date the Bankruptcy Court sets for objections to Confirmation.

1.88    **"Non-Debtor Biggers Defendants"** means the Heller Ehrman PCs.

1.89    **"Petition Date"** shall mean December 28, 2008, which is the date when the Debtor filed its voluntary petition pursuant to chapter 11 of the Bankruptcy Code.

1.90    **"Plaintiff Class Members"** means the Class Representatives and the persons listed on Exhibit A to the Biggers Settlement Agreement.

1.91    **"Plaintiff Class Representatives"** means Debora K. Biggers, Carl Goodman, Anna Scarpa, and Marjorie Norris, on behalf of themselves and on behalf of the individuals named on Exhibit A to the Biggers Settlement Agreement.

1.92    **"Plan"** shall mean this joint chapter 11 plan of liquidation and any exhibits and schedules hereto and any documents incorporated herein by reference, as the same may from time to time be amended or modified as and to the extent permitted herein or by the Bankruptcy Code.

1.93    **"Plan Administrator"** shall mean Michael Burkart, whose curriculum vitae is set forth at **Exhibit J** hereto and who shall file a further statement setting forth his qualifications and affiliations, including a disclosure of any potential conflicts of interest, pursuant to Bankruptcy Code section 1129(a)(5(A)(i) not less than ten days prior than the last day to object to Confirmation.

1.94    **"Plan Expenses"** shall mean all actual and necessary costs and expenses incurred after the Effective Date in connection with the administration of the Plan, including, but not limited to, (i) costs, expenses and legal fees incurred related to filing and prosecuting objections to Claims, (ii) the costs, expenses and legal fees incurred to investigate, litigate, estimate and settle the Retained Claims and Defenses (which shall include the Avoidance Actions), including, but not limited to, attorneys' fees, accounting fees, expert witness fees, consultants' fees, and all costs relating to obtaining and distributing such recoveries, incurred by the Liquidating Debtor, (iii) the costs and expenses of administration of the Liquidating Debtor, including without limitation the fees and costs of the Plan Administrator; (iv) amounts necessary to compensate members of the Dissolution Committee and the Debtor's Professionals after Confirmation for services rendered at the request of the Plan Administrator regarding, *inter alia*, the Debtor's dissolution or the Bankruptcy Case; (v) all costs to manage, store, transport, transfer and destroy client and administrative records up to 150% of the budgeted amounts, and (vi) all fees payable pursuant to section 1930 of Title 28 of the United States Code.

1.95    **"Plan of Dissolution"** shall mean that certain Plan of Dissolution of Heller Ehrman LLP, dated as of September 26, 2008.

1.96    **"Post-Confirmation Budget"** shall mean the budget for Plan Expenses the Liquidating Debtor projects on the Effective Date to be necessary and appropriate, in the exercise of its business judgment, to carry out the provisions of this Plan. A copy of the Post Confirmation Budget is attached hereto as **Exhibit K**.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1.97 **"Post-Confirmation Motion and Opportunity for Hearing"** shall mean the procedures to be utilized after the Effective Date by any party seeking approval from the Court respecting matters requiring approval under this Plan which procedures are more fully described in Article 5.35 herein.

1.98 **"Post-Confirmation Service List"** shall mean a service list comprised of names and email addresses for all members of the Committee as of the Effective Date, the Office of the United States Trustee, counsel for Citibank and Bank of America, counsel for the Heller Ehrman PCs, and any other creditor or party in interest that files a request for post confirmation notice after the Effective Date with the Court and serves it on the Post Confirmation Service List.

1.99 **"Priority Employee Claim"** shall mean that portion of an Allowed Claim that is unsecured and that is entitled to priority under section 507(a)(4) of the Bankruptcy Code that is not a Biggers Priority Employee Claim.

1.100 **"Priority Employee Benefit Claim"** shall mean that portion of an Allowed Claim that is unsecured and that is entitled to priority under section 507(a)(5) of the Bankruptcy Code.

1.101 **"Priority Tax Claim"** shall mean that portion of a Tax Claim, if any, entitled to priority in payment under section 507(a)(8) of the Bankruptcy Code.

1.102 **"Professional Fees"** shall mean all amounts allowed and awarded by the Bankruptcy Court for compensation for services rendered and reimbursement of expenses incurred by Professionals pursuant to sections 330(a) and 503(b) of the Bankruptcy Code.

1.103 **"Professionals"** shall mean those attorneys, accountants and other financial advisors employed by the Debtor (pursuant to section 327 of the Bankruptcy Code) or the Committee (pursuant to section 1103 of Bankruptcy Code) in the Chapter 11 Case and to be compensated for services rendered and reimbursed for expenses incurred pursuant to sections 330(a) and 503(b) of the Bankruptcy Code.

1.104 **"Pro Rata" or "Pro Rata Share"** shall mean, with respect to distributions on account of Allowed Claims, in the same ratio of an Allowed Claim in a particular Class to the aggregate of all Allowed Claims in that Class.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1.105 **"Rejected Contract(s)"** shall mean those Executory Contracts which are rejected by the Debtor pursuant to section 365 or 1123(b)(2) of the Bankruptcy Code.

1.106 **"Rejection Claim"** shall mean any Allowed Claim under Bankruptcy Code section 502(g) that arises under Bankruptcy Code section 365(g)(1) in favor of the non-debtor party to any Executory Contract that is rejected by the Debtor pursuant to Bankruptcy Code sections 365(a) or 1123(b)(2).

1.107 **"Rejection Claim Bar Date"** shall mean the last date established by the Bankruptcy Court by which entities asserting a Rejection Claim against the Debtor must have filed a proof of Claim with respect to such Rejection Claim or be forever barred from asserting such Claim and/or sharing in any distribution hereunder in respect of such Claim. For contracts or leases for which no rejection claim bar date was previously established, or for contracts and leases rejected pursuant to the Plan, the Rejection Claims Bar Date shall be thirty (30) days following the date upon which the Confirmation Order is entered.

1.108 **"Reserved Claims Pool"** shall mean the amounts which shall be funded on or after the Effective Date pursuant to Article 5.1 of this Plan for the purpose of holding as reserves the amounts of Administrative Claims (including amounts due for Professional Fees) which have not become Allowed Claims.

1.109 **"Reserved Claims Pool Account"** shall mean the bank account established by the Liquidating Debtor into which the Plan Administrator shall deposit the amounts which constitute the Reserved Claims Pool.

1.110 **"Retained Claims and Defenses"** shall mean all claims, rights, interests, causes of action, defenses, counterclaims, cross-claims, third-party claims, or rights of offset, recoupment, subrogation or subordination held by the Debtor or its Estate against any party whether or not pending on the Effective Date, not otherwise released or settled before the Effective Date, including but not limited to those specifically set forth in Section III of the Disclosure Statement.

1.111 **"Schedules"** shall mean the schedules of assets and liabilities and the statement of financial affairs filed by the Debtor with the Bankruptcy Court pursuant to section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, as amended from time to time.

Case: 08-32514    Doc# 1129    Filed: 05/11/10    Entered: 05/11/10 21:59:11    Page 23 of 60

1.112 **"Secured Claim"** shall mean a Claim secured by a Lien on property of the Debtor, or the Estate, or secured by an amount subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of such Lien or right of setoff as determined under sections 506(a) or 1129(b) of the Bankruptcy Code, as applicable.

1.113 **"Self Insured Retention Amount"** shall mean the amount retained for the insured's own account in any applicable Malpractice Policy.

1.114 **"Settling Former Shareholder"** shall mean any Former Shareholder who timely executes the Model Former Shareholder Agreement (or other form of settlement agreement approved by the Bankruptcy Court), and makes the Former Shareholder Settlement Payment, or other payment agreed upon by the Committee.

1.115 **"SIR Amount"** shall mean the amount retained for the insured's own account in any applicable Malpractice Policy, with any amount greater than the SIR Amount triggering, for the applicable Malpractice Policy, the insurer's obligation to fund a defense of a malpractice claim or to pay the amount in excess of the SIR Amount which is agreed to or adjudged to be owing on account of an Insured Malpractice Claim.

1.116 **"Subordinated Former Shareholders"** shall mean (a) the payees under the Subordinated Former Shareholder Notes; (b) all Former Shareholders who did not retire, depart or withdraw from their respective Heller Ehrman PC prior to the adoption of the Plan of Dissolution on September 26, 2008, and (c) any Former Shareholder whose Claim is based (to the extent so based), in whole or in part, upon return of capital. The names of the Subordinated Former Shareholders are set forth on **Exhibit E** to this Plan.

1.117 **"Subordinated Former Shareholder Notes"** shall mean those certain Promissory Notes made by the Debtor in connection with the departure of shareholders from one of the Debtor's partners (which notes are described in **Exhibit C** to this Plan).

1.118 **"Substantial Contribution Payment"** shall mean those certain payments to Blum & Collins LLP to be made as contemplated in the Biggers Settlement Agreement attached hereto as **Exhibit D** in the event the Biggers Approval Order becomes a Final Order.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1.119 **"Top Thirty Former Shareholders"** shall mean each of the individuals named on **Exhibit F**, attached hereto.

1.120 **"Uninsured Malpractice Claim"** shall mean any timely filed Malpractice Claim which seeks an amount or is Allowed in an amount that is less than the SIR Amount of the applicable Malpractice Policy or Malpractice Policies.

1.121 **"Unliquidated Claim"** shall mean any Claim for which a proof of Claim has been filed with the Bankruptcy Court but was not filed in a sum certain, and which Claim has not been estimated, fixed or liquidated by the Bankruptcy Court at a sum certain as of the Effective Date.

1.122 **"Unsecured Claim"** shall mean any Claim that is neither secured nor entitled to priority or administrative status under sections 507 or 503, respectively, of the Bankruptcy Code.

1.123 **"WARN Act"** means Federal Worker Adjustment and Retraining Notification Act, 29 U.S.C. §§ 2101 *et seq.* and California Labor Code section 1400 *et seq.*

## ARTICLE II

## CLASSIFICATION OF CLAIMS AND INTERESTS

2.1     **Criterion of Class.** The following is a designation of Classes of Claims under the Plan. Administrative Claims and Priority Tax Claims have not been classified and are excluded from the following Classes in accordance with section 1123(a)(1) of the Bankruptcy Code. A Claim is classified in a particular Class only to the extent that (i) the Claim qualifies within the description of that Class, and is classified in a different Class to the extent that the remainder of the Claim qualifies within the description of that different Class, and (ii) the Claim, or any portion or Allowed amount of such Claim, is an Allowed Claim in that Class and has not been paid, released or otherwise satisfied prior to the Effective Date. In the event of a controversy as to whether (a) any Class of Claims is impaired, or (b) any Class of Claims is properly designated, the Bankruptcy Court shall, after notice and a hearing, determine such controversy pursuant to applicable provisions of the Bankruptcy Code and Bankruptcy Rule 3013.

2.2     **Classes of Claims and Interests.** All Claims and Interests are divided into the following Classes, which Classes shall be mutually exclusive:

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

2.2.1 **Class 1 Claims.** Class 1 shall consist of all Priority Employee Claims.

2.2.2 **Class 2 Claims.** Class 2 shall consist of all Biggers Priority Employee Claims.

2.2.3 **Class 3 Claims.** Class 3 shall consist of all Priority Employee Benefit Claims.

2.2.4 **Class 4 Claims.** Class 4 shall consist of the Secured Claims of Bank of America and Citibank.

2.2.5 **Class 5 Claims.** Class 5 shall consist of the Secured Claim of MPC.

2.2.6 **Class 6 Claims.** Class 6 shall consist of Insured Malpractice Claims.

2.2.7 **Class 7 Claims.** Class 7 shall consist of General Unsecured Claims.

2.2.8 **Class 8 Claims.** Class 8 shall consist of all Biggers Subordinated Unsecured Claims.

2.2.9 **Class 9 Claims.** Class 9 shall consist of the claims of Subordinated Former Shareholders.

2.2.10 **Class 10 Interests.** Class 10 shall consist of the Interests held by the Interest Holders.

## ARTICLE III

## TREATMENT OF UNCLASSIFIED CLAIMS

3.1 **Administrative Claims.** Each Allowed Administrative Claim, unless the holder of such Claim has agreed to a different treatment, shall be paid in full by the Liquidating Debtor from Available Cash or the Reserved Claims Pool Account (as applicable) on the latest of: (a) the Effective Date, or as soon thereafter as practicable; (b) such date as may be fixed by the Bankruptcy Court, or as soon thereafter as practicable; (c) the tenth Business Day after such Claim is Allowed, or as soon thereafter as practicable; and (d) such date as the holder of such Claim and the Liquidating Debtor may agree.

3.2 **Administrative Claim Bar Date.** All requests for payment of Administrative Claims, other than Claims for Professional Fees, must be filed by the applicable Administrative Claim Bar Date or the holders thereof shall be forever barred from asserting such Administrative Claims against the Debtor or the Liquidating Debtor or from sharing in any distribution under the Plan. Holders of Administrative Claims based on liabilities incurred in the ordinary course of the

35685-001\DOCS_SF:70609.16

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Debtor's business following the Petition Date shall not be required to comply with the Administrative Claim Bar Date, provided that, (i) such holders have otherwise submitted an invoice, billing statement or other evidence of indebtedness to the Debtor in the ordinary course of business, and (ii) such Claims are not past due according to their terms.

3.3     **Claims for Professional Fees.**  Each party seeking an award by the Bankruptcy Court of Professional Fees: (a) must file its final application for allowance of compensation for services rendered and reimbursement of expenses incurred through the Effective Date on or before the Administrative Claims Bar Date; and (b) if the Bankruptcy Court grants such an award, each such party will be paid in full in Cash by the Liquidating Debtor in such amounts as are allowed by the Bankruptcy Court as soon thereafter as practicable.  All final applications for allowance and disbursement of Professional Fees must be in compliance with all of the terms and provisions of any applicable order of the Bankruptcy Court, including the Confirmation Order, and the Bankruptcy Court's Guidelines for Compensation and Expense Reimbursement of Professionals and Trustees.

3.4     **Priority Tax Claims.**  Each Allowed Priority Tax Claim, unless the holder of such Claim has agreed to a different treatment, shall receive deferred cash payments to the extent permitted by section 1129(a)(9) of the Bankruptcy Code with interest on the unpaid portion of such Claim at the rate established by applicable nonbankruptcy law as of the calendar month in which the Plan is confirmed, or at such other rate as may be agreed upon between the Liquidating Debtor and the appropriate governmental unit, provided that the Liquidating Debtor may prepay any or all such Claims at any time, without premium or penalty.

## ARTICLE IV

## TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS

4.1     **Class 1 (Priority Employee Claims).**  Class 1 shall consist of Priority Employee Claims.  Class 1 Claims are unimpaired.  Each holder of an Allowed Priority Employee Claim who is not employed by the Debtor as of the Effective Date of the Plan shall receive full payment of the Allowed amount of such Claim from Available Cash on or as soon as practicable after the later of (i) the Effective Date, or (ii) the date upon which the Bankruptcy Court enters a Final Order determining or allowing such Claim. The Liquidating Debtor shall either pay on the Effective Date

or honor in the ordinary course of business, any Allowed Class 1 Priority Employee Claim for any employee who is employed by the Liquidating Debtor on the Effective Date of the Plan. Holders of Class 1 Claims who are members of the Biggers Class shall receive their distribution hereunder even if they Opt-Out of the Biggers Settlement.

4.2 **Class 2 (Biggers Priority Employee Claims).** Class 2 shall consist of Biggers Priority Employee Claims. Class 2 Claims are unimpaired. Each holder of an Allowed Biggers Priority Employee Claim who is not employed with the Debtor as of the Effective Date of the Plan shall receive full payment of the Allowed amount of such Claim from Available Cash only after the Biggers Approval Order becomes a Final Order. Holders of Class 2 Claims who Opt-Out of the Biggers Settlement will not receive any payment on account of such claim.

4.3 **Class 3 (Priority Employee Benefits Claims).** Class 3 shall consist of Priority Employee Benefits Claims. Class 3 Claims are unimpaired. After payment in full of the Allowed Claims of Classes 1 and 2, each holder of an Allowed Priority Employee Benefit Claim shall receive full payment of the Allowed amount of such Claim from Available Cash on or as soon as practicable after the later of (i) the Effective Date, or (ii) the date upon which the Bankruptcy Court enters a Final Order determining or allowing such Claim.

4.4 **Class 4 (Claims of Bank of America and Citibank).** Class 4 consists of the Disputed Secured Claims of Bank of America and Citibank. Class 4 Claims are impaired. On the Effective Date, and subject to the right of the Estate to recover the funds in the Bank of America Preference Action or in such other action as may subsequently be filed by the Estate, Bank of America and Citibank shall effect a payment of $1,609,752.26 (assuming a payment date of June 30, 2010, increasing or decreasing by $253.30 daily), which represents the undisputed amounts of principal and interest (but not attorneys' fees and costs) owing on the Class 4 Claim by applying funds from the Cash Collateral Account thereto. Bank of America and Citibank shall then return to the Liquidating Debtor the balance of the funds in the Cash Collateral Account, which as of June 30, 2010 are estimated to be $93,936.73. Funds returned to the Liquidating Debtor from the Cash Collateral Account shall not be segregated nor otherwise accounted for to Class 4 Creditors. Also on the Effective Date, the Liquidating Debtor shall grant Bank of America and Citibank a first-priority

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

security interest in any and all proceeds the Liquidating Debtor receives from the Retained Claims

and Defenses, provided, however, that the Liquidating Debtor shall first use any such proceeds to

pay its attorneys' fees and costs incurred in connection with the Retained Claims and Defenses. Any

such proceeds so used shall not be subject to any security interest of Bank of America or Citibank.

Such security interest shall secure payment of Bank of America and Citibank's attorneys' fees and

costs incurred in connection with the Bank of America Preference Action, in an amount (the

"Secured Amount") equal to the lesser of $4 million or the total attorneys' fees and costs Bank of

America and Citibank estimate (in good faith on the Effective Date) they will incur in connection

therewith. From proceeds of the Retained Claims and Defenses, and prior to making a distribution

to Creditors in Classes 7, 8 and 9 pursuant to the Plan, the Liquidating Debtor shall segregate the

Secured Amount until, and shall not disburse any portion thereof before, the release of the security

interest therein. Notwithstanding the preceding sentence, the Liquidating Debtor may pay Plan

Expenses from Available Cash (including Available Cash consisting of proceeds of the Retained

Claims and Defenses). Such security interest shall continue in full force and effect unless and until a

court of competent jurisdiction enters a final judgment in the Bank of America Preference Action

which does not require the Liquidating Debtor to pay Bank of America and Citibank's attorneys'

fees and costs incurred in connection therewith. Notwithstanding the preceding sentence, such

security interest shall continue in full force and effect after entry of such final judgment if Bank of

America and Citibank post, and for so long as Bank of America and Citibank maintain, a bond for

the benefit of the Liquidating Debtor (in a form acceptable to the Liquidating Debtor in its

reasonable discretion) in an amount equal to the Secured Amount. Such bond shall be in addition to

any other bond or security Bank of America and/or Citibank may be required to post under

applicable law, including but not limited to any bond required as a condition to the appeal of a final

judgment entered in the Bank of America Preference Action. The Liquidating Debtor, Bank of

America and Citibank shall make such customary arrangements and execute such customary

documents, as mutually agreed upon, to effectuate a release of Bank of America and Citibank's

security interests or liens in the Liquidating Debtor's assets upon receipt of the payments required

hereunder; and shall also make such customary arrangements and execute such customary

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

documents, as mutually agreed upon, to effectuate a release of the security interest described in the preceding paragraphs upon the termination of such security interest in accordance with the Plan. The Bankruptcy Court shall retain jurisdiction to resolve any disputes which may arise in connection with the foregoing matters. Notwithstanding the foregoing, nothing in the Plan shall affect or diminish the Retained Claims and Defenses against Bank of America or Citibank, nor shall anything in the Plan affect or diminish the Debtor's rights in the Bank of America Preference Action. Because the Secured Claim of the Banks is the subject of a pending dispute, Class 4 is not entitled to vote on the Plan.

      4.5      **Class 5 Claims (Secured Claim of MPC).** Class 5 shall consist of the secured claim of MPC. MPC filed proof of claim number 604 in the amount of $57,881.94 plus contingent amounts, which is allegedly secured by a right of offset and perfected by a filed UCC-1. Class 5 is a Disputed Claim. To the extent that the Claim of MPC is an Allowed Secured Claim, MPC shall be entitled to its legal and contractual rights as a secured claimant. MPC's Secured Claim is not impaired and, therefore, not entitled to vote.

      4.6      **Class 6 Claims (Insured Malpractice Claims).** Class 6 shall consist of Insured Malpractice Claims. Such claims are impaired. The Insured Portion of any such claim shall be treated as a Class 6 Claim and paid solely from the proceeds of any applicable Malpractice Policy. No holder of an Allowed Class 6 Claim shall receive any distribution from Available Cash on account of such Class 6 Claim. Any Malpractice Claim that seeks or is Allowed in an amount that is less than the SIR Amount shall not fall within Class 6, but shall be instead a Class 7 Uninsured Malpractice Claim. If the Allowed amount of a Malpractice Claim is greater than the SIR Amount, the Claim will be bifurcated and treated in two different classes as follows: (a) the amount of the Allowed Claim that is greater than the SIR Amount will be a Class 6 Insured Malpractice Claim; and (b) the amount of the Allowed Claim that is less than or equal to the SIR Amount will be a Class 7 Uninsured Malpractice Claim.

      4.7      **Class 7 (General Unsecured Claims).** Class 7 shall consist of Unsecured Claims, including but not limited to Biggers Unsecured Claims and Uninsured Malpractice Claims. Class 7 does not include Biggers Subordinated Unsecured Claims (Class 8) or the Subordinated Former

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Shareholder Claims (Class 9). Class 7 Claims are impaired. Each holder of an Allowed Class 7 Claim shall receive, a Pro Rata Share of Net Available Cash after deductions for the payment (or appropriate reserve for) the Allowed Claims of senior classes of Claims and reserves for Disputed Claims, Professional Fees and/or Plan Expenses. Notwithstanding the preceding sentence, in the event Bank of America and Citibank become holders of Allowed Unsecured Claims by virtue of Bankruptcy Code section 502(h), the Liquidating Debtor shall not make any further disbursements to any other holder of an Allowed Unsecured Claim until Bank of America and Citibank receive the Cash they would have received in the Chapter 11 Case had they held Allowed Unsecured Claims on the Effective Date. For example, if Class 7 creditors have received distributions totaling 20% of their Allowed Claims at the time that the Banks' Allowed Unsecured Claim arises, the Banks will be paid 20% of their Allowed Unsecured Claims before any futher distributions to the other members of Class 7. To the extent that all Allowed Class 7 Claims have been paid in full, including post-petition interest at the annual rate of five per cent (5%) simple interest per annum, any remaining funds in the Claims Reserve Account shall be used by the Liquidating Debtor to fund the expense of claims in Class 8, as described below. Holders of Class 7 Claims who are also members of the Biggers Class shall receive their distribution hereunder for the portion of such Claim that is not a Biggers Unsecured Claim even if they Opt-Out of the Biggers Settlement.

        4.8     **Class 8 (Biggers Subordinated Unsecured Claims).** Class 8 shall consist of all Biggers Subordinated Unsecured Claims. Class 8 Claims are impaired. Once Allowed Class 7 Claims are satisfied in full with interest as described above, each holder of an Allowed Class 8 Claim shall receive a Pro Rata Share of Net Available Cash after deductions for the payment (or appropriate reserve for) the Allowed Claims of senior classes and reserves for Disputed Claims, Professional Fees and/or Plan Expenses. To the extent that all Allowed Class 8 Biggers Subordinated Unsecured Claims have been paid in full, including post-petition interest at the annual rate of five per cent (5%) simple interest per annum, and funds remain in the Claims Reserve Account, such funds shall be used by the Liquidating Debtor to fund the expense of claims in Class 9, as described below.

4.9     **Class 9 (Subordinated Former Shareholder Claims).**  Class 9 shall consist of all Subordinated Former Shareholder Claims.  Class 9 Claims are impaired.  The Claims in this Class are subordinated pursuant to the express subordination provision contained in the Subordinated Former Shareholders Notes, which provides, "Payment of principal of and interest on this note is subordinate to the prior payment of indebtedness of the [Debtor] for borrowed money; provided however that the payments hereunder shall be payable when due if at such time the [Debtor] is not in default with respect to any such indebtedness." The Claims in this Class are also subordinated pursuant to the express subordination provision in the Debtor's Plan of Dissolution, which provides, "There will be no return of capital to any Shareholder, recently departed Shareholder, or former or retired Shareholder and no payment of any kind made to former and/or retired Shareholders until such time as all of the legal obligations of the [Debtor] to third party creditors have been satisfied, except if permitted by the [Debtor's] senior secured lenders, Shareholders may pursue claims for compensation for services rendered prior to their departure or other expenses of contractual rights arising from or related to their employment." Plan of Dissolution at XI(E).  Claims of Former Shareholders that are the subject of an agreement with the Debtor and/or the Committee to allow such Claims are not in this Class, nor are Claims for compensation held by members of the Dissolution Committee.

Once Allowed Class 7 and 8 Claims are satisfied in full with interest, as described above, each holder of an Allowed Subordinated Former Shareholder Claim shall receive a Pro Rata Share of Net Available Cash after deductions for the payment (or appropriate reserve for) the Allowed Claims of senior classes and reserves for Disputed Claims, Professional Fees and/or Plan Expenses.  To the extent that all Allowed Class 9 Subordinated Shareholder Claims have been paid in full, including post-petition interest at the annual rate of five per cent (5%) simple interest per annum, and funds remain in the Claims Reserve Account, such funds shall be distributed to the Holders of Class 10 Interests, as described below.

4.10     **Class 10 (Interests).** Class 10 consists of the Interests held by the Interest Holders. On the Effective Date, the Interest Holders shall have no ability to direct or control the affairs of the Liquidating Debtor, but shall retain their status as partners of the Liquidating Debtor.  Interest

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Holders shall receive nothing under the Plan until the Allowed Claims of Classes 1 through 9 are paid in full, with interest at the rate of five per cent (5%) simple interest per annum, at which point all Net Available Cash, net of amounts reserved for Disputed Claims, Professional Fees and/or Plan Expenses, shall be paid to the Interests Holders consistent with the extent of their Interests.

4.11 **Nonconsensual Confirmation.**

4.11.1 **Classes 1 through 9 Cramdown.** The Proponents hereby request confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code on the basis that the Plan is fair and equitable and does not discriminate unfairly as to the holders of Class 1 through 9 Claims.

4.11.2 **Class 10 Cramdown.** The Proponents hereby request confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code on the basis that the Plan is fair and equitable and does not discriminate unfairly as to the holders of Class 10 Interests.

# ARTICLE V

# MEANS FOR IMPLEMENTATION OF THE PLAN

The Plan shall be implemented on the Effective Date. In addition to the provisions set forth elsewhere in this Plan regarding means of execution, the following shall constitute the principal means for implementation of the Plan.

5.1 **Effective Date Transactions.** Without limiting the generality of the foregoing, and without altering or amending the terms of the Plan in any manner, on (or, where appropriate, after) the Effective Date, the following actions shall occur:

(i) The transactions contemplated under the Plan shall be consummated;

(ii) The Liquidating Debtor shall be capitalized with the Former Shareholder Settlement Payments and the proceeds of the Exit Financing, subject to the terms of the Former Shareholder Settlement Mechanism;

(iii) The Liquidating Debtor shall fund the Reserved Claims Pool Account with the funds necessary to establish the Reserved Claims Pool;

(iv) The Liquidating Debtor shall reserve such funds as are necessary to fund all anticipated Plan Expenses, including without limitation any anticipated litigation costs, prior to making any distributions pursuant to this Plan;

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

(v)     The Liquidating Debtor shall assume the Assumed Contracts and, when required under the terms of this Plan, satisfy any Cure Obligations, subject to any contract, legal and other rights and defenses;

(vi)     To the extent that Cash is available, the Liquidating Debtor will make the Substantial Contribution Payment, to the extent the same has previously been authorized by the Bankruptcy Court; and

(vii)     Upon Confirmation, the Debtor shall execute the New Plan Documents, and the Plan Administrator shall assume his responsibilities under the Plan.

5.2     **Revesting of Estate Assets.**  Upon the Effective Date, the Liquidating Debtor shall be vested with all right, title and interest in the Estate Assets free and clear of all Claims and Liens, other than any obligations under this Plan.

5.3     **Replacement of Dissolution Committee/Continued Existence.**  Upon the Effective Date, the Plan of Dissolution shall be deemed amended to replace the Dissolution Committee with the Plan Administrator, and the Dissolution Committee shall be relieved of its responsibilities for the Debtor.  Nothing contained herein shall affect the Dissolution Committee's responsibility to administer the affairs of the Heller Ehrman PCs or their successors and assigns, which shall maintain their separate existence for all purposes under this Plan.  The Liquidating Debtor, as represented by the Plan Administrator, shall be authorized to execute such other documents as are necessary and appropriate to carry out the provisions of this Plan, without the necessity of filing such documents with the Bankruptcy Court.  In the event the Liquidating Debtor seeks and obtains the assistance of any member of the Dissolution Committee or the Debtor's Professionals after Confirmation, regarding, *inter alia*, the Debtor's dissolution or the Bankruptcy Case, the Liquidating Debtor shall pay for such assistance at the regular hourly rates of the member of the Dissolution Committee or the Debtor's Professionals.

5.4     **Management of Liquidating Debtor by Plan Administrator.** Subject to the oversight and consent of the Committee which is required for certain Plan Administrator actions or decisions that are set forth in Article 5.14, on and after the Effective Date, the Plan Administrator shall be responsible for the implementation of the Plan, including with respect to the management,

35685-001\DOCS_SF:70609.16

JOINT PLAN OF LIQUIDATION

28

control and operation of the Liquidating Debtor. The Liquidating Debtor and its counsel will succeed to the Debtor's attorney-client privilege with the Debtor's former clients. The Plan Administrator shall post a bond in favor of the Liquidating Debtor in an amount equal to not less than 125% of the amount of Estate Assets which are held in Cash at any time, and the bond may be proportionately reduced or increased from time to time, as required by the circumstances. The cost of such bond shall be paid from Estate Assets. The Plan Administrator shall be compensated on an interim basis at the rate of $250 per hour, plus reasonable out of pocket expenses, including reimbursement of the premium for a professional E&O policy, paid monthly from Estate Assets without further order of the Bankruptcy Court. For time incurred prior to Confirmation in preparation for a transfer of control, the Plan Administrator may be compensated Post-Confirmation up to forty (40) hours of time. The Plan Administrator may petition the Court to modify the hourly rate two years after the Effective Date. Upon completion of all duties and concurrent with a Post Confirmation Motion and Opportunity for Hearing seeking closure of the Chapter 11 Case, the Plan Administrator shall file a Post Confirmation Motion and Opportunity for Hearing seeking approval of all fees and expenses previously paid as compensation by the Liquidating Debtor after the Effective Date.

   **5.5  Continued Business of Liquidating Debtor.** On and after the Effective Date, the Liquidating Debtor shall continue to engage in its wind-down operations and may use, acquire, dispose of and/or abandon Estate Assets without supervision by the Bankruptcy Court and free of any restrictions under the Bankruptcy Code or the Bankruptcy Rules, except as set forth in this Plan. The Liquidating Debtor will not continue or engage in the conduct of any trade or business, except to the limited extent necessary to accomplish the liquidation and distribution of the Estate Assets. With regard to the Debtor's client files, the Liquidating Debtor shall not abandon them and shall take all measures necessary (and expend as Plan Expenses the amounts necessary) to abide by the Debtor's obligations under all applicable ethical rules to preserve the confidentiality of client-related materials as and until such files are destroyed, so long as the Debtor's cost to destroy the client files does not exceed 150% of the budgeted amounts for file destruction.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

55685-001\DOCS_SF:70609.16          29          JOINT PLAN OF LIQUIDATION

Case: 08-32514  Doc# 1129  Filed: 05/11/10  Entered: 05/11/10 21:59:11  Page 35 of 60

5.6    **Continued Administrative Support for the Heller Ehrman PCs.**  On and after the Effective Date, the Liquidating Debtor shall continue to provide administrative services to the Heller Ehrman PCs similar in kind and to the same extent as those provided prior to the Effective Date at no cost to the Heller Ehrman PCs.

5.7    **Retained Claims and Defenses.**  Except as otherwise limited by Article 5.14, on and after the Effective Date, pursuant to section 1123(b)(3) of the Bankruptcy Code, the Liquidating Debtor, acting through the Plan Administrator, shall retain and may enforce the Retained Claims and Defenses with all powers and authority of a debtor in possession or trustee under the Bankruptcy Code.

5.7.1    **Small Claims and Defenses.**  With respect to any of the following having a net value equal to or less than $100,000.00: (a) Retained Claims and Defenses, (b) any accounts receivable (whether or not contingent), or (c) any claims objections, the Plan Administrator may investigate such claims, objections or defenses and may assert, settle or enforce any such claims, objections or defenses without supervision by the Bankruptcy Court and free of any restrictions under the Bankruptcy Code or the Bankruptcy Rules.

5.7.2    **Large Claims and Defenses.**  With respect to any of the following having a net value over $100,000.00: (a) Retained Claims and Defenses, (b) any accounts receivable (whether or not contingent), or (c) any claims objections, the Plan Administrator shall file and serve a Post Confirmation Motion and Opportunity for seeking Court approval to settle or abandon any such claims or defenses, as a condition to taking such action.

5.7.3    **Bankruptcy Rule 2004.**  In the course of any ongoing investigations, the Plan Administrator shall have the right post-confirmation to utilize Bankruptcy Rule 2004 examinations, to be enforced pursuant to Bankruptcy Rule 2005.

5.7.4    **Standing.**  To the extent any Retained Claims and Defenses are already pending on the Effective Date, the Plan Administrator as successor to the Debtor may continue the prosecution of such Retained Claims and Defenses.  Without limiting the foregoing, the Plan Administrator, acting on behalf of the Liquidating Debtor, shall accede to and become the holder of all rights in and to any confidentiality agreements, joint defense agreements, and privilege

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

agreements, as well as rights pursuant to attorney-client privilege, attorney work product and any other or similar doctrine, of the Debtor and the Committee. Any proceeds received from or on account of the Retained Claims and Defenses shall constitute Estate Assets and shall vest entirely in the Liquidating Debtor.

5.8 **Avoidance Actions.** On and after the Effective Date, the Liquidating Debtor, acting through the Plan Administrator, shall retain and may enforce the Avoidance Actions with all powers and authority of a debtor in possession or trustee under the Bankruptcy Code. The Plan Administrator may investigate Avoidance Actions and may assert, settle or enforce any such claims or defenses. To the extent any Avoidance Actions (including the Bank of America Preference Action) are already pending on the Effective Date, the Plan Administrator as successor to both the Debtor and the Committee, may continue the prosecution of such Avoidance Actions. Any proceeds received from or on account of the Avoidance Actions shall constitute Estate Assets and shall vest entirely in the Liquidating Debtor.

5.9 **Claims Reserve Account.** On or as soon as practical following the Effective Date, the Claims Reserve Account shall be opened by the Plan Administrator and held by the Liquidating Debtor and funded by all Cash not deposited in the Reserved Claims Pool Account, which funds (minus Plan Expenses) shall be held for the benefit of holders of Claims in Classes 2, 7, 8 and 9. Unless otherwise provided in the Confirmation Order, the Claims Reserve Account shall be invested by the Plan Administrator in a manner consistent with the objectives of section 345(a) of the Bankruptcy Code. All duties and obligations associated with the maintenance of the Claims Reserve Account, including but not limited to, any fees, taxes, tax reporting or filings with any governmental authority, shall be the sole responsibility of the Plan Administrator.

5.10 **Liquidating Debtor Litigation.** Upon the Effective Date, the Plan Administrator shall fund the amounts required by counsel under the Main Special Counsel Agreement for Legal Services. Confirmation of the Plan shall constitute Bankruptcy Court approval of the Main Special Counsel Agreement for Legal Services. The Plan Administrator may or may not reserve additional funds after Confirmation, in his discretion, as contemplated by the Main Special Counsel Agreement for Legal Services.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1      **5.11  Liquidating Debtor Liquidation Budget.** Upon the Effective Date, the Plan

2  Administrator shall exercise his business judgment and reserve the estimated amount of two years'

3  U.S. Trustee fees and may reserve additional funds post confirmation based on information available

4  at the time in the exercise of his or her business judgment.

5      **5.12  Former Shareholder Settlement Mechanism.** The Committee (and not the Debtor)

6  has adopted the following two prong procedure for the resolution of certain claims against Former

7  Shareholders assigned to the Committee during the Chapter 11 case:

8      (a) As and when the Proponents solicit votes on the Plan, and excepting the Top

9  Thirty Former Shareholders, those Former Shareholders who have not previously agreed to

10  terms with the Committee may receive, at the Committee's discretion, a Former Shareholder

11  Settlement Letter outlining the terms (including the amount that must be paid to the Estate as

12  a Former Shareholder Settlement Payment) under which the Committee is prepared to settle

13  all of the estate's known and unknown claims against such Former Shareholder (except Jewel

14  Claims, for which the Settling Former Shareholder shall receive a conditional covenant not to

15  sue and excepting other specifically non-released claims).  In order to participate in the

16  settlement process under section 5.12(a), a Settling Former Shareholder must: (i) Execute the

17  Model Former Shareholder Settlement Agreement (a copy of which is attached to the Plan as

18  **Exhibit L**, and (ii) Pay the Estate the Former Shareholder Settlement Payment -- such

19  payment to be received by the Estate on or before ten business days prior to the date first set

20  for a Plan Confirmation Hearing.

21      (b) The Top Thirty Former Shareholders shall receive a grouped settlement offer nine

22  business days prior to the date that the Plan is first set for a Confirmation Hearing, and this

23  offer shall be subject to an overall participation requirement of 90% in dollar amount of all

24  other Former Shareholders who received offers pursuant to section 5.12(a) above before any

25  Top Thirty Former Shareholder settlement will be deemed accepted and approved under the

26  Plan.  Notwithstanding the foregoing, the Committee shall maintain the right to waive such

27  participation requirement on a blanket basis and/or negotiate individual settlements with

28

specific Former Shareholders in the Top Thirty. This participation requirement will not affect those Former Shareholders who are not Top Thirty Former Shareholders.

5.13 **Limitation of Liability of Plan Administrator and the Committee.** The Plan Administrator, the Committee (including its members individually) and their attorneys, accountants, consultants, employees, agents and assignees, heirs, successors, and assigns, shall have no liability for any error of judgment made in good faith other than as a result of gross negligence or willful misconduct. The Plan Administrator and the Committee (including its members individually) shall not be liable for any action taken or omitted in good faith and believed by *them* to be authorized within the discretion or rights or powers conferred upon them by this Plan or the New Plan Documents. In performing his duties hereunder, the Plan Administrator may consult with counsel selected by him, at the expense of the Liquidating Debtor. No provisions of this Plan shall require any employee, officer or director of the Plan Administrator or the Committee (including its members individually) to expend or risk their own funds or otherwise incur personal financial liability in the performance of any of duties under this Plan or in the exercise of any of the Plan Administrator's rights and powers. The Liquidating Debtor shall indemnify and hold the Plan Administrator and the Committee (including its members individually) harmless, from and against any damages, costs, claims and other liabilities incurred in connection with their respective duties and responsibilities hereunder, other than those damages, costs, claims and other liabilities that result from such party's gross negligence or willful misconduct. Notwithstanding the above, nothing in this paragraph shall shield a Professional employed by the Plan Administrator and/or the Committee from injuries caused by his negligence in the performance of his or her duties.

5.14 **Continuation of and Powers of the Committee.** From and after the Effective Date, the Committee shall remain in existence as currently constituted for as long as the Committee has at least one active member. The Liquidating Debtor shall pay for post-confirmation liability insurance as requested by the Committee. Any member may resign from the Committee by serving written notice to all members of the Committee and to the Plan Administrator. Such written notice may specify the date of resignation. The Plan shall amend the existing Committee bylaws to provide: (a) in the event that there is a tie vote on a motion presented to the Committee, the motion shall be

55685-001\DOCS_SF:70609.16

33

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

decided based on the aggregate claim amounts of the voting members, and (b) to make the minimum number of Committee members one (1). The Committee may utilize the Professionals of the Liquidating Debtor or retain their own Professionals in the Committee's discretion. The Plan Administrator shall send the Committee members monthly status reports regarding the status of the Retained Claims and Defenses and quarterly reports on the status of the Liquidating Debtor's budget to actual performance regarding the Post-Confirmation Budget. The Plan Administrator shall work with the Chair of the Committee to schedule Committee meetings as needed.

As long as the Committee has one or more members remaining, the Plan Administrator may not take the following actions without the written approval of the Committee:

(a) Settle asserted claims against third parties and/or Claims against the estate, where the claim asserted exceeds $250,000.00. For example, if Creditor A asserts a claim for $100,000.00 in the Chapter 11 Case, the Plan Administrator may settle the amount of Creditor's A's claim against the estate without Committee approval. If the Estate asserts a claim against Defendant X for $260,000.00 and wishes to settle for a cash payment of $200,000, Committee approval is required.

(b) Fund the second payment of $3,000,000.00 pursuant to the Main Special Litigation Counsel Agreement for Legal Services to McGrane Greenfield LLP;

(c) Expend funds in excess of 10% of the budgeted line items on the Post-Confirmation Budget; or

(d) Hold Net Available Cash in excess of reasonably projected Plan Expenses that would otherwise be available for distribution to Class 7, 8 or 9 Creditors for more than a six (6) month period without distributing such funds pursuant to the provisions of the Plan.

The restrictions on the powers of the Plan Administrator set forth above in this Article 5.14 shall terminate when the Committee no longer has any members and ceases to exist. The Committee may seek Court approval to remove the Plan Administrator if he or she fails to obtain Committee approval for one or more of the foregoing described actions and/or for cause. The Plan Administrator may only defend such a motion on the ground that (i) he or she did not take any actions that were restricted by Article 5.14(a)-(e) above or (ii) if the motion is made for cause, that no cause exists for removal. If the Plan Administrator is removed by the Bankruptcy Court or is no

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

longer able or willing to complete his or her duties, the Committee shall appoint a successor Plan Administrator.

5.15  **Material Default Under the Plan.**  Failure to make any payment required to be made under the Plan by the Liquidating Debtor shall be considered a default under the Plan.  If any default is not cured within 30 days after service of written notice of such default to the Liquidating Debtor, the U.S. Trustee, any affected Creditor, or any affected party in interest asserting such default may seek to enforce its rights under the Plan.

5.16  **Cooperation.**  Proponents of the Plan shall cooperate with one another in connection with any matter related to the consummation or implementation of this Plan.

5.17  **Payment of Plan Expenses.**  All Plan Expenses may be paid by the Liquidating Debtor.

5.18  **Biggers Settlement Mechanism.**  Pursuant to the Biggers Settlement Agreement, holders of Biggers Priority Claims and Biggers Unsecured Claims who do not Opt Out will have their Claims Allowed once the Biggers Settlement Order becomes a Final Order and a judgment is entered and becomes final.  The Proponents expect this will occur some time shortly after the Effective Date.

Even if a member of the Biggers Class elects to Opt Out of the Biggers Settlement by the Biggers Opt Out Deadline, such member shall still receive the treatment provided in the Plan for their Class 1 and Class 7 Claims that are not related to the WARN Act or waiting time penalties. Once the Biggers Settlement Order becomes a Final Order, the Substantial Contribution Payment shall become owing, as set forth in the Biggers Settlement Agreement.

5.19  **Distribution Procedures.**  Distributions to holders of Allowed Claims in Classes 7 through 9 shall be made as soon as practicable as determined by the business judgment of the Plan Administrator based upon the amount of funds to be distributed relative to the administrative costs of making a distribution.  Because both the timing and the amount of distributions to Unsecured Creditors are dependent on the proceeds from the prosecution of the Retained Claims and Defenses and Avoidance Actions, it would be imprudent to provide an estimate as to when distributions will be made under the Plan. To the extent not accomplished previously, the Plan Administrator shall

promptly move to file objections to Claims with the goal being that all objections be filed and served not later than one hundred and eighty (180) days following the Effective Date, <u>provided that</u> such date shall not bar later objections. Notwithstanding the preceding sentence, no distributions shall be made on account of Class 7, 8, 9 or 10 Claims or Interests until all objections to Claims have been filed. No payments or distributions shall be made by the Liquidating Debtor on account of Disputed Claims unless and to the extent such Claims become Allowed Claims. The funds allocated to Disputed Claims will not be distributed, but will be held in the Claims Reserve Account by the Liquidating Debtor in accordance with this Plan pending resolution of such Disputed Claims. Except as otherwise agreed by the holder of a particular Claim, or as provided in this Plan, all amounts to be paid by the Liquidating Debtor under the Plan shall be distributed in such amounts and at such times as is reasonably prudent, in the form of interim and/or final distributions, with sufficient reserves established to satisfy the reserve requirements for Disputed Unsecured Claims, Professional Fees and anticipated Plan Expenses. Unless otherwise provided in this Plan, all distributions to Creditors shall be: (i) in U.S. dollars by check, draft or warrant, drawn on a domestic bank, or by wire transfer from a domestic bank, and (ii) by first-class mail (or by other equivalent or superior means as appropriate).

       5.20   **Resolution of Disputed Claims**   The Plan Administrator shall promptly move to file objections to Claims that have not been previously objected to with the goal being that all objections be filed and served not later than one hundred and eighty (180) days following the Effective Date, <u>provided that</u> such date shall not bar later objections. Except as otherwise provided in the Confirmation Order, the Liquidating Debtor shall be authorized to settle, or withdraw any objections to, any Disputed Claim (including Malpractice Claims) following the Confirmation Date in accordance with Articles 5.7.1 or 5.7.2 of the Plan, as applicable, and the Bankruptcy Court shall retain jurisdiction to hear and adjudicate the allowance or disallowance of Claims, as provided for in Article IX of this Plan. Settled Claims shall be deemed to be Allowed Claims in the amount compromised for purposes of this Plan. Under no circumstances will any distributions be made on account of Disallowed Claims.

PACHULSKI STANG ZIEHL & JONES LLP

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1    5.21    **Reserve Provisions for Disputed Claims.**  The Liquidating Debtor shall implement

2  the following procedures with respect to the allocation and distribution of Cash held in reserve for

3  the benefit of holders of Disputed Claims that may become Allowed Claims:

4        (i)    Cash respecting Disputed Claims shall not be distributed, but shall be

5  withheld by the Liquidating Debtor, in an amount equal to the amount of the distributions that would

6  otherwise be made to the holders of such Claims if such Claims had been Allowed Claims;

7        (ii)    All holders of Allowed Claims shall be entitled to receive, if available, interim

8  distributions under the Plan.  No distributions may be made to the holders of Allowed Claims unless

9  adequate reserves are established for the payment of Disputed Claims and sufficient funds are also

10  reserved for expected Professional Fees and Plan Expenses;

11        (iii)    For the purposes of effectuating the provisions of this Article 5.21, the

12  Bankruptcy Court may estimate the amount of any contingent or unliquidated Claim pursuant to

13  section 502(c) of the Bankruptcy Code, which provides, "There shall be estimated for the purpose of

14  allowance under this section—(1) any contingent or unliquidated claim, the fixing or liquidation of

15  which, as the case may be, would unduly delay the administration of the case; or (2) any right to

16  payment arising from a right to an equitable remedy for breach of performance."  The amounts so

17  fixed or liquidated by the Bankruptcy Court shall be deemed to be Allowed Claims for purposes of

18  distribution under this Plan, or alternatively, until such time as the Claim becomes Allowed, the

19  amount so fixed by the Bankruptcy Court shall serve as the basis to calculate the appropriate

20  Disputed Claim reserve;

21        (iv)    When a Disputed Claim becomes an Allowed Claim, there shall be distributed

22  to the holder of such Allowed Claim, in accordance with the provisions of this Plan, Cash equal to

23  the holder's Pro Rata Share of the Distributions that have previously been made on account of the

24  Claims in the same class.  In no event shall such holder be paid more than the amount that would

25  otherwise have been paid to such holder if the Disputed Claim (or the Allowed portion of the

26  Disputed Claim) had not been a Disputed Claim;

27        (v)    Interim distributions may be made from time to time to the holders of

28  Allowed Claims prior to the resolution by Final Order or otherwise of all Disputed Claims, <u>provided</u>

that, such distributions are otherwise consistent with the terms of this Plan and the aggregate amount of Cash to be distributed at such time is practicable in comparison to the anticipated costs of such interim distributions;

(vi)     No holder of a Disputed Claim shall have any Claim against the Cash reserved with respect to such Claim until such Disputed Claim shall become an Allowed Claim.  In no event shall any holder of any Disputed Claim be entitled to receive (under the Plan or otherwise) any payment (x) which is greater than the amount reserved for such Claim pursuant to this Article 5.21 (unless the Claim is otherwise allowed in a greater amount by the Bankruptcy Court) or (y) except as otherwise permitted under this Plan, of interest or other compensation for delays in distribution.  In no event shall the Plan Administrator have any responsibility or liability for any loss to or of any amount reserved under these provisions of this Plan unless the loss is caused by the Plan Administrator's gross negligence or willful misconduct;

(vii)     To the extent a Disputed Claim ultimately becomes an Allowed Claim in an amount less than the Disputed Claims Amount reserved for such Disputed Claim, then the resulting surplus of cash shall be made available for redistribution to other holders of Allowed Claims of like class until such time as each holder of an Allowed Claim has been paid the Allowed amount of its Claim.

5.22    **Allocation of Distributions.**  Distributions to any holder of an Allowed Claim shall be allocated first to the principal amount of any such Allowed Claim, as determined for federal income tax purposes, and then, to the extent the consideration exceeds such amount, to the remainder of such Claim comprising interest, if any (but solely to the extent that interest is an allowable portion of such Allowed Claim).

5.23    **Exit Financing and Exit Financing Collateral.**  Provided that the Plan is confirmed, Heller Ehrman (California), on its own behalf and as agent on behalf of the other Heller Ehrman PCs, shall lend to the Debtor $3,000,000.00 as Exit Financing, plus additional amounts as the parties may thereafter agree based on the needs of the Debtor's Estate and the resources of the Exit Financing Lender.  The Exit Financing shall accrue interest at 5% per annum, simple, and will be secured by a first priority security interest in the Debtor's claims against Bank of America and

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Citibank.  Payment of principal and interest shall be deferred for a period of three years, and the entire obligation may be cancelled upon the occurrence of certain conditions.  Repayment of the Exit Financing is subordinate to: (a) the pre-existing liens of Bank of America and Citibank; (b) Administrative Claims in the Chapter 11 Case; and (c) the attorneys' fee lien or claims of attorneys retained to pursue the Debtor's claims against Bank of America and Citibank to the extent of attorneys' fees attributable to the recovery on such claims (but not on claims against entities other than Bank of America or Citibank).  Notwithstanding any other terms, the Exit Financing shall become due and payable upon the occurrence of any of the following: (a) conversion of the Debtor's Chapter 11 Case to a case under Chapter 7 of the Bankruptcy Code; (b) the appointment of a trustee; (c) dismissal of the Chapter 11 Case; or (d) the filing of a motion or adversary proceeding challenging the validity of the lien granted to the Exit Financing Lender which is not dismissed or withdrawn within 20 days of its filing. Additional terms are set forth in the term sheet attached to the Plan as **Exhibit H**.[1]

Upon the Effective Date, the Exit Financing shall become an obligation of the Liquidating Debtor, subject to the exact same terms and conditions as those imposed upon the Debtor and its property by the Exit Financing documents, without altering or affecting the Exit Financing Collateral.  Notwithstanding Confirmation, no further steps need be taken by the Exit Financing Lender to maintain the perfection or priority of its lien position with respect to the Exit Financing Collateral after the Effective Date.

5.24    **Rounding.**  Whenever any payment of a fraction of a cent would otherwise be called for the actual distribution shall reflect a rounding of such fraction down to the nearest cent.

5.25    **De Minimis Distributions.**  Notwithstanding any other provision of this Plan, distributions of less than $50.00 need not be made by the Liquidating Debtor on account of any Allowed Claim, provided that, distributions that would otherwise be made but for this provision shall carry over until the next date of a distribution until the cumulative amount to which any holder of an Allowed Claim is entitled is more than $50.00, at which time the cumulative amount of such

---

[1]  The Debtor shall provide copies of the Exit Financing documents to the Bankruptcy Court, counsel to Bank of America and Citibank, the Office of the United States Trustee and counsel to the Creditors' Committee prior to the Confirmation Hearing.

distributions shall be paid to such holder.  Distributions that will not be made as of the date of a final distribution shall be treated as unclaimed distributions as provided in Article 5.27 of this Plan.

Notwithstanding any other provision of this Plan, at the point when the remaining funds in the Claims Reserve Account consist of an amount impracticable to distribute, the Liquidating Debtor may donate (or authorize the Plan Administrator to donate) such Cash to a nonprofit organization or organizations in this judicial district that are exempt pursuant to section 501(c) of the Internal Revenue Code (Title 26 of the United States Code).

5.26    **Disputed Payments.**  In the event of any dispute between and among Creditors as to the right of any entity to receive or retain any payment or distribution to be made to such entity under the Plan, the Liquidating Debtor may, in lieu of making such payment or distribution to such entity, instead hold such payment or distribution until the disposition thereof shall be determined by the Bankruptcy Court.

5.27    **Unclaimed Property.**  Creditors have the obligation to file change of address forms with the Court and to serve such changes of address on the Plan Administrator and his counsel.  If a Claimant fails for the second consecutive time to claim any Cash within 90 days from the date upon which a distribution is made, such Claimant shall be subject to having its claim excluded from future distributions.  The Plan Administrator shall file an omnibus Post Confirmation Motion and Opportunity for Hearing seeking to exclude such Claimants from future distributions and shall serve such Claimants at the address on Claimants proof of claim, if any, on the address scheduled by the Debtor for such Claimants, on any addresses supplied by Claimants in any and all change of address filings filed with the Court, and if available on any agents for service of process addresses that are available from the California Secretary of State and any other states in which the Debtor did business (but only to the extent that such agents for service of process are available from the Secretary of State's web sites without charge).  Upon Court approval of the subject Claimants' forfeiture, such Cash (including interest thereon) shall be made available for re-distribution to other holders of Allowed Claims of like Class.  Entities which fail to claim Cash shall forfeit their rights thereto and shall have no claim whatsoever against the Liquidating Debtor or the Plan Administrator, as applicable, or any holder of an Allowed Claim to whom distributions are made under this Plan,

provided, however, that the Plan Administrator may but is not required to undertake reasonable efforts, in his business judgment, to locate creditors whose distributions are returned.

5.28 **Successor Plan Administrator.** If the Plan Administrator resigns, dies, is removed by the Committee pursuant to Article 5.14 of the Plan, or is otherwise unable or unwilling to perform his or her duties under this Plan, the Committee shall name the successor Plan Administrator. If the Committee no longer exists, the successor Plan Administrator shall be Paul D. Menzies. If Mr. Menzies is unable or unwilling to serve, the successor Plan Administrator shall be selected by the Creditor holding the largest undisputed Allowed Claim, after consultation with parties in interest, including Unsecured Creditors and Interest Holders or their successors, as appropriate.

5.29 **Setoffs.** Nothing contained in this Plan shall constitute a waiver or release by the Debtor of any right of setoff or recoupment that the Debtor or the Liquidating Debtor may have against any Creditor or Interest Holder.

5.30 **No Distributions on Late-Filed Claims.** Except as otherwise provided in a Final Order of the Bankruptcy Court, any Claim as to which a proof of Claim was first filed after the Bar Date shall be a Disallowed Claim, and no distribution shall be made to a holder of such a Claim, provided that, to the extent such Claim was listed in the Schedules (other than as contingent, disputed, or unliquidated), such Claim shall be treated as an Allowed Claim in the amount in which it was so listed.

5.31 **Withholding Taxes.** Pursuant to section 346(f) of the Bankruptcy Code, the Liquidating Debtor shall be entitled to deduct any federal, state or local withholding taxes from any Cash payments made with respect to Allowed Claims, as appropriate. The Liquidating Debtor shall comply with all reporting obligations imposed on it by any governmental unit.

5.32 **Post-Effective Date Reports.** Following the Effective Date, the Liquidating Debtor shall prepare and submit to the Bankruptcy Court and the Office of the United States Trustee, post-confirmation reports for a revested debtor in the form suggested by the Office of the United States Trustee for Region 17. The first post-confirmation report shall be due within thirty (30) days following the end of the first calendar quarter from the Effective Date and shall be filed on a quarterly basis thereafter, unless otherwise agreed by the Liquidating Debtor and the Office of the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

United States Trustee. Twice yearly, the Plan Administrator shall also provide oral reports to Claimants to be held at a convenient location in San Francisco (the "Plan Administrator Meetings with Claimants"), or by conference call. Claimants can participate in the Plan Administrator Meetings with Claimants by executing a disclosure of potential conflicts form, and a confidentiality and common interest agreement and returning it to the Plan Administrator or his Counsel at or prior to the commencement of any meeting. The Plan Administrator in the exercise of his business judgment may exclude any Claimant who presents a conflict that makes participation in such meeting inappropriate from any relevant portion of such meeting. The Plan Administrator shall serve on all members of the Post Confirmation Service List a notice of each meeting at least thirty days prior to each Plan Administrator Meetings with Claimants. Claimants that elect to participate in these meetings, shall have no fiduciary duty to any other Claimant to act on or respond to any information provided by the Plan Administrator at the meetings, and shall have no liability to any Claimant or party for any opinions expressed by a Claimant at any Plan Administrator Meetings with Claimants.

5.33    **Post-Effective Date Employment and Compensation of Professionals.** After the Effective Date, the Plan Administrator may retain any existing Professionals of the Committee or the Debtor without further employment agreements or orders. Additionally, after the Effective Date, the Plan Administrator may hire other professionals without the requirement that such professionals file employment applications for Bankruptcy Court approval of their employment, whether on an hourly, contingency fee or other basis, and without requirement that such professionals file applications for payment of post-Effective Date fees and expenses on an interim basis; provided, however, that no less frequently than every 180 days, such post-confirmation professionals, and the Plan Administrator shall file Post Confirmation Motions and Opportunity for Hearings seeking final approval of their respective fees and expenses as previously invoiced or paid on an interim basis, as the case may be. Such applications need not be in the format required by the Local Rules of the Bankruptcy Court or the United States Trustee's Guidelines, but shall be sufficiently detailed to identify the hours worked, the rates charged and the work performed. In the case of fees or expenses paid on a basis which is not by billable hours, the application shall include such other, sufficiently

specific information so that the Bankruptcy Court can otherwise determine the reasonableness of such fees and expenses. The Court may *sua sponte* make determinations and rulings with respect to the reasonableness of any specific fee request whether an objection is filed and/or a hearing is held or not.

5.34 **Final Decree.** Upon substantial consummation of the Plan, the Plan Administrator shall be authorized to file a motion for the entry of a final decree closing the Chapter 11 case pursuant to section 350 of the Bankruptcy Code. Concurrently with the motion for entry of final decree, the Plan Administrator shall also file a report with the Court and the Office of the United States Trustee that sets forth the distributions made by the Liquidating Debtor pursuant to the Plan.

5.35 **Procedures for Post-Confirmation Motion and Opportunity for Hearing.** A Post-Confirmation Motion and Opportunity for Hearing shall be served on the Post-Confirmation Service List and shall: (i) detail the requested relief; (ii) provide evidentiary support; and (iii) give any and all parties in interest fourteen (14) calendar days to file written opposition with the Court and to request a hearing. If no opposition is filed, the Court may act on the Post Confirmation Motion and Opportunity for Hearing without hearing.

5.36 **Certain Death Benefits.** Seventeen retired Former Shareholders allege Claims for benefits in connection with their allegedly vested rights under the Heller Ehrman Retirement System, including a Claim for a death benefit of $75,000 payable upon the death of such Former Shareholders. The seventeen retired Former Shareholders have further alleged that their death benefit Claims must be honored and ride through the bankruptcy due to the operation of Bankruptcy Code Section 1114. The Debtor disputes these Claims and, in particular, whether the death benefit claims must ride through.

## ARTICLE VI

## EXECUTORY CONTRACTS

6.1 **Executory Contracts.**

6.1.1 **Assumption.** Upon the Effective Date, the Debtor will reject each and all of its Executory Contracts except for any Assumed Contracts identified on **Exhibit A**, which shall be assumed. The Debtor reserves the right to make additions to Exhibit A up to 10 days prior to the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

date on which objections must be filed to the Plan with respect to the Confirmation Hearing. The Liquidating Debtor shall be responsible for all Cure Obligations with respect to the Assumed Contracts as set forth in **Exhibit A** or as determined by the Bankruptcy Court.

      6.1.2 **Rejection.** Nothing contained herein shall constitute a waiver by the Debtor or the Liquidating Debtor of the right to contend that some or all of a Rejected Contract is not executory, or that it was not terminated earlier by agreement or operation of law. Any Rejection Claim arising from the rejection of an Executory Contract pursuant to the Plan shall be filed within thirty (30) days of entry of the Confirmation Order, provided that such deadline is not applicable to any Executory Contract rejected prior to the Effective Date and for which a different Rejection Claim Bar Date was previously fixed by the Bankruptcy Court pursuant to Bankruptcy Rule 3002(c)(4). The notice of entry of the Confirmation Order shall provide the Rejection Claim Bar Date for agreements rejected pursuant to the Plan. Any Rejection Claim not filed by the applicable Rejection Claims Bar Date shall be a Disallowed Claim and shall be forever barred as a Claim against the Debtor, the Liquidating Debtor, the Committee or any property of the Debtor and from sharing in any distribution under this Plan.

      6.2 **Satisfaction of Cure Obligations.** The Liquidating Debtor shall satisfy any Cure Obligations for the Assumed Contracts by making a Cash payment equal to the lesser of the amount: (a) set forth on Exhibit A hereto, (b) set forth in any other notice, motion or supplement to the Plan filed and served in connection with the Confirmation Hearing or as may be determined in an Assumption and Cure Order, or (c) agreed to in writing between the Liquidating Debtor and the non-debtor parties to such contracts or leases. The Debtor has attached a schedule of proposed Cure Obligations to the Disclosure Statement approved by the Court pursuant to section 1125 of the Bankruptcy Code. Objections, if any, to the Cure Obligations must be filed fourteen (14) days prior to the Confirmation Hearing. The Liquidating Debtor shall satisfy the Cure Obligations within ten (10) days from the date from which an Assumed Contract is assumed pursuant to section 365(b) of the Bankruptcy Code.

      6.3 **Post-Petition Executory Contracts and Unexpired Leases.** Except as may be provided otherwise by the Confirmation Order, all agreements and stipulations entered into by the

PACHULSKI STANG ZIEHL & JONES LLP / ATTORNEYS AT LAW / SAN FRANCISCO, CALIFORNIA

44

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Debtor on or after the Petition Date, and all Executory Contracts previously assumed by the Debtor on or after the Petition Date, shall remain in full force and effect following Confirmation to the extent and in the manner set forth in such agreements, stipulations and Assumed Contracts or leases, in each case as approved and authorized by the Bankruptcy Court, and as the same may have been amended, modified or transferred.

6.4 **Continuing Employee Benefit Plans.** Except as otherwise provided in the Plan, all Continuing Employee Benefit Programs for existing employees of the Debtor on the Effective Date shall be treated as "executory contracts" and shall be assumed pursuant to sections 365 and 1123(b)(2) of the Bankruptcy Code by operation of the Plan.

6.5 **Order Authorizing Assumption or Rejection.** The Confirmation Order (or if set forth in a separate order from the Confirmation Order, the Assumption and Cure Order applicable to such Assumed Contract) shall constitute an order of the Bankruptcy Court approving (effective only upon the occurrence of the Effective Date) the assumption or rejection, as the case may be, pursuant to sections 365 and 1123(b)(2) of the Bankruptcy Code of all Executory Contracts under this Article of the Plan. The contracts and leases under this Article VI will be assumed or rejected, respectively, only to the extent that any such contracts or leases constitute Executory Contracts.

# ARTICLE VII

## CONDITIONS PRECEDENT

7.1 **Conditions to Confirmation.** Confirmation of this Plan is conditioned upon the entry of an order confirming the Plan which shall, among other things, (1) decree that the Plan and the Confirmation Order shall supersede any Bankruptcy Court orders issued prior to the Effective Date that are inconsistent therewith; (2) authorize the implementation of the Plan in accordance with its terms; (3) contain findings supported by evidence adduced at the Confirmation Hearing that upon the occurrence of the Effective Date, that the Plan is proposed in good faith, that all actions contemplated by the Plan necessary to implement the restructuring contemplated by the Plan are authorized by all corporate action; (4) issue the injunction set forth in the Plan, effective as of the Effective Date; (5) decree that on the Effective Date, the revesting of assets in the Debtor contemplated by the Plan is or will be legal, valid and effective, and vest or will vest in the

Liquidating Debtor good and marketable title to such property free and clear of all Liens, Claims, and Interests except as provided in the Plan; and (6) confirm the Plan and authorize implementation in accordance with its terms.  If any of the foregoing terms and conditions is not met, the Proponents may, at their option, withdraw this Plan and, if withdrawn, this Plan shall be of no further force or effect.

7.2     **Conditions to Effective Date.**  At any time after the Confirmation Order is entered (and provided no stay is then in effect), the Plan Proponents shall have the power and authority to cause the Plan to become effective, and the Effective Date shall occur upon the closing of the transactions contemplated herein.

**ARTICLE VIII**

**EFFECTS OF CONFIRMATION**

8.1     **Binding Effect of Plan.**  The provisions of the confirmed Plan shall bind the Debtor, the Liquidating Debtor, the Committee, and any Creditor or Interest Holder, whether or not such Creditor or Interest Holder has filed a proof of Claim or Interest in the Chapter 11 Case, whether or not the Claim of such Creditor or the Interest of such Interest Holder is impaired under the Plan, and whether or not such Creditor or Interest Holder has accepted or rejected the Plan.  All Claims and Debts shall be as fixed and adjusted pursuant to this Plan.

8.2     **Revesting of Property Free and Clear.**  Upon the Effective Date, title to all Estate Assets shall vest in the Liquidating Debtor for the purposes contemplated under the Plan.  All Unsecured Claims against the Debtor or the Estate shall be of no further force or effect except with respect to the rights of holders of Allowed Claims to received payments or distributions as set forth herein.  Following the Effective Date, the Liquidating Debtor may use, acquire or dispose of any such property free of any restrictions imposed by the Bankruptcy Court, the Bankruptcy Code or the Bankruptcy Rules and without further approval of the Bankruptcy Court or notice to Creditors, except as may otherwise be required under the Plan or the Confirmation Order.  Except as otherwise expressly provided in the Plan or Confirmation Order, all rights or causes of action are hereby preserved and retained for enforcement solely and exclusively by and at the discretion of the Liquidating Debtor.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

8.3     **Injunction.** On the Effective Date, and except as otherwise provided by the Plan, all entities who have held, hold or may hold Claims against or Interests in the Debtor or the Debtor's estate that arose prior to the Effective Date are permanently enjoined from taking legal action against the Debtor or the Liquidating Debtor for the purpose of directly or indirectly collecting, recovering, or receiving payment or recovery with respect to any Claim or demand against the Debtor or the Liquidating Debtor. In addition to the foregoing, on the Effective Date, and except as otherwise provided by the Plan, Bank of America and Citibank and their successors and assigns shall be temporarily enjoined pursuant to Bankruptcy Code section 105 from taking legal action against any Settling Former Shareholder for the purpose of directly or indirectly collecting, recovering, or receiving payment or recovery with respect to any claim or demand against Settling Former Shareholder predicated in whole or in part on Settling Former Shareholder's former employment or shareholder status with the Debtor or any of the Heller Ehrman PCs, with such injunction to remain in effect until the final resolution of the Bank of America Preference Action, whether by settlement or judgment no longer subject to any pending or possible appeal.

8.4     **Limitation of Liability.** The Debtor, the Liquidating Debtor, the Dissolution Committee and each of its members, and the Committee and each of its past and present members, and their respective officers, directors, managers, employees, agents, and representatives (collectively, the "Exculpated Parties"), will neither have nor incur any liability to any entity for any action in good faith taken or omitted to be taken in connection with or related to the Chapter 11 Case, the investigations of potential claims or the formulation, preparation, dissemination, implementation, Confirmation or consummation of the Plan, the Disclosure Statement, or any agreement created or entered into in connection with the Plan or incident to the Chapter 11 Case, provided that, this limitation will not affect or modify the rights of any holder of an Allowed Claim to enforce its rights under the Plan or the non-debtor party to an Assumed Contract to enforce its rights under the Assumed Contract, nor shall the foregoing exonerate any of the Exculpated Parties from any liability that results from an act or omission to the extent such act or omission is determined by Final Order to have constituted gross negligence or willful misconduct. In addition, notwithstanding any other provision of this Plan, no holder of a Claim or Interest, no other party in

interest, none of their respective agents, employees, representatives, financial advisors, attorneys or affiliates, and no successors or assigns of the foregoing, shall have any right of action against any Exculpated Party for any act or omission from and after the Petition Date in connection with, relating to or arising out of the Chapter 11 Case or the consideration, formulation, preparation, dissemination, implementation, Confirmation or consummation of the Plan, the Disclosure Statement, or any transaction or document created or entered into, or any other act taken or omitted to be taken, in connection therewith, except for: (a) the liability of any entity that would otherwise result from the failure to perform or pay any obligation or liability under the Plan or any contract, instrument, release or other agreement or document to be entered into or delivered in connection with the Plan, or (b) the liability of any entity that would otherwise result from any such act or omission to the extent that such act or omission is determined in a Final Order to have constituted gross negligence or willful misconduct. The Exculpated Parties do not include any Professionals.

## ARTICLE IX

## RETENTION OF JURISDICTION

From and after the Confirmation Date, the Bankruptcy Court shall retain such jurisdiction as is legally permissible, including, but not limited to, for the following purposes:

(i)  To hear and determine any and all objections to the allowance of a Claim, actions to equitably subordinate a Claim, or any controversy as to the classification of a Claim in a particular Class under the Plan;

(ii)  To administer or enforce the Plan;

(iii)  To liquidate any Disputed Claims;

(iv)  To hear and determine any and all adversary proceedings, contested matters or applications pending on the Effective Date;

(v)  To hear and determine any and all motions for the rejection of Executory Contracts and to fix and allow any Claims arising therefrom;

(vi)  To hear and determine any and all applications by Professionals for an award of pre-Effective Date Professional Fees, and to consider and rule upon the periodic and final fee applications of the Plan Administrator, Professionals, or other professionals retained Post

Confirmation post-Confirmation as provided in this Plan, and/or to resolve any disputes concerning payment of such post-Effective Date fee requests.

(vii)　To interpret and/or enforce the provisions of the Plan, and the injunction provided for in the Plan and to determine any and all disputes arising under or regarding interpretation of the Plan, or any other agreement, document or instrument contemplated by the Plan, including, without limitation, and claims asserted against the Plan Administrator or against any professionals engaged by him or claims asserted against the Committee, the Dissolution Committee and either of their members and/or professionals;

(viii)　To enter and implement such orders as may be appropriate in the event Confirmation is for any reason stayed, reversed, revoked, modified or vacated;

(ix)　To modify any provision of the Plan to the extent permitted by the Bankruptcy Code and to correct any defect, cure any omission, or reconcile any inconsistency in the Plan or in the Confirmation Order as may be necessary to carry out the purposes and intent of the Plan;

(x)　To approve applications for Bankruptcy Rule 2004 Examinations and any enforcement orders necessary, including but not limited to pursuant to Bankruptcy Rule 2005;

(xi)　To approve any compromise and settlements and/or abandonments of claims against third parties, and/or the abandonment of any Asset of the Estate, which either the Plan Administrator in his sole discretion believes should be noticed to creditors, or which is the subject of an objection by the Committee;

(xii)　To approve any sales of assets or claims pursuant to section 363 of the Bankruptcy Code, which the Plan Administrator in his sole discretion believes should be noticed to creditors;

(xiii)　To approve interim and/or final distributions to creditors, including the approval of any publication notices, which the Plan Administrator in his sole discretion believes should be noticed to creditors;

(xiv)　To issue an injunction or injunctions post-confirmation pursuant to Bankruptcy Code section 105 upon a proper showing; and

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

(xv)     To close the Chapter 11 Case when administration of the case has been completed.

## ARTICLE X

## **MISCELLANEOUS**

10.1     **Severability of Plan Provisions.**  In the event that, prior to the Confirmation Date, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court shall, have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions hereof shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision hereof, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

10.2     **Governing Law.**  Except to the extent that the Bankruptcy Code or other federal law is applicable, the rights, duties and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of California.

10.3     **Headings.**  The headings contained in this Plan are for convenience of reference only and shall not limit or otherwise affect in any way the meaning or interpretation of this Plan.

10.4     **Language Interpretation.**  In the interpretation of this Plan, unless the context otherwise requires, references in this Plan to the singular shall be construed to include references to the plural and vice versa; words importing the singular shall be deemed to import the plural and vice versa; words denoting gender shall include all genders; references to sections, schedules, and exhibits shall mean sections, schedules, and exhibits of and to this Plan; references to part includes the whole, except where the context clearly requires otherwise "or" has the inclusive meaning represented by the phrase "and/or," and the words "hereof," "herein," "hereunder," and similar terms in this Plan refer to this Plan as a whole and not to any particular provision of this Plan.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

10.5 **Exhibits.** All exhibits attached to this Plan or the Disclosure Statement are, by this reference, hereby incorporated into the Plan. The final version of all exhibits to the Plan and the Disclosure Statement will be substantially in the forms attached hereto or thereto. The Proponents reserve the right to make non-substantive changes and corrections to such exhibits in advance of the Confirmation Hearing. If any exhibits are changed or corrected, the replacement exhibits will be filed with the Bankruptcy Court prior to the commencement of the Confirmation Hearing.

10.6 **Exemption from Transfer Taxes:** The Debtor and the Liquidating Debtor shall have all the rights and benefits granted pursuant to Bankruptcy Code section 1146(c) under this Plan.

10.7 **Notices.** All notices required or permitted to be made in accordance with the Plan shall be in writing and shall be delivered personally or by nationally recognized overnight or next-day courier service, first class mail or via facsimile with electronic confirmation of receipt as follows:

If to the Debtor:
(By Mail or Facsimile)

Shelley Salinero
Heller Ehrman LLP
333 Bush Street, 10th Floor
San Francisco, CA 94104
(415) 772-6463
(415) 772 6268 (Facsimile)

With a copy to:

John D. Fiero, Esq.
Teddy M. Kapur, Esq.
Pachulski Stang Ziehl & Jones LLP
1509 California Street, Suite 1500
San Francisco, CA 94111
(415) 263-7000
(415) 263-7010 (Facsimile)

If to the Committee:

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Theresa Hoyt
BREF 333, LLC
Three World Financial Center
New York, New York 10281
(212) 417 7286
Email: thoyt@brookfield.com

With a copy to:

(By Mail or Facsimile)
Steven H. Felderstein, Esq.
Thomas A. Willoughby, Esq.
Felderstein, Fitzgerald, Willoughby & Pascuzzi, LLP
400 Capital Mall, Suite 1450
Sacramento, CA 95814
(916) 329-7400
(916) 329-7435 (Facsimile)
Email: twilloughby@ffwplaw.com

    **10.8**    **Computation of Time Periods.**  In computing any period of time prescribed or allowed by the Plan, the day of the act, event, or default from which the designated period of time begins to run shall not be included.  The last day of the period so computed shall be included unless it is a Saturday, a Sunday, or a legal holiday, or, when the act to be done is the filing of a paper in the Bankruptcy Court, a day on which weather or other conditions have made the clerk's office inaccessible, in which event the period runs until the end of the next day which is not one of the aforementioned days.

    **10.9**    **Defects, Omissions and Amendments.**  The Proponents, with the approval of the Bankruptcy Court and without notice to all holders of Claims or Interests, insofar as it does not materially and adversely affect holders of Claims, may correct any defect, omission or inconsistency in the Plan in such manner and to such extent as may be necessary or desirable to expedite the execution of the Plan.  The Plan may be altered or amended before or after Confirmation as provided in section 1127 of the Bankruptcy Code.

    **10.10**    **Filing of Additional Documents.**  The Proponents shall file with the Bankruptcy Court such agreements or other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

10.11 **Successors and Assigns.** The rights, benefits and obligations of any entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors and/or assigns of such entity.

10.12 **Implementation.** Upon Confirmation, the Debtor and the Committee shall be authorized to take all steps and execute all documents necessary to effectuate the provisions contained in the Plan.

10.13 **Certain Actions.** By reason of entry of the Confirmation Order, prior to, on or after the Effective Date (as appropriate), all matters provided for under the Plan that would otherwise require approval of the owners, stockholders, shareholders, members, directors, managers, or officers of the Debtor under the Plan, including, without limitation, (i) the distribution of Cash pursuant to the Plan, (ii) the adoption, execution, delivery, and implementation of all contracts, leases, instruments, releases, and other agreements or documents related to the Plan, and (iii) the adoption, execution, and implementation of other matters provided for under the Plan involving the company or organizational structure of the Debtor, shall be deemed to have occurred and shall be in effect prior to, on or after the Effective Date (as appropriate), pursuant to the applicable general corporation, limited liability, or partnership law of the state in which the Debtor or the Liquidating Debtor is chartered, organized or incorporated, without any requirement of further action by the owners, stockholders, shareholders, members, directors, managers, or officers of the Debtor.

10.14 **Waiver of Fourteen (14) Day Stay.** The Proponents request as part of the Confirmation Order a waiver from the Bankruptcy Court of the fourteen (14) day stay of Bankruptcy Rule 3020(e) and, to the extent applicable, a waiver of the fourteen (14) day stay of Bankruptcy Rule 6004(h).

Dated: May 14, 2010                HELLER EHRMAN LLP

                                   By      /s/ Peter J. Benvenutti
                                           Peter J. Benvenutti
                                           Chair of the Dissolution Committee

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Dated: May 14, 2010

THE OFFICIAL COMMITTEE OF
    UNSECURED CREDITORS

BY:  BREF 333, LLC

By    _/s/ Theresa A. Hoyt_____
      Theresa A. Hoyt, its Authorized Signatory,
      as the Chair of the Committee

Dated: May 14, 2010

PACHULSKI STANG ZIEHL & JONES LLP

By    _/s/ John D. Fiero_____
      John D. Fiero (CA Bar No. 136557)
      Kenneth H. Brown (CA Bar No. 100396)
      Teddy M. Kapur (CA Bar No. 242486)
      Attorneys for Heller Ehrman LLP, Debtor and
      Debtor in Possession

Dated: May 14, 2010

FELDERSTEIN FITZGERALD WILLOUGHBY &
    PASCUZZI LLP

By    _/s/ Steven H. Felderstein_____
      Steven H. Felderstein (CA Bar No. 56978)
      Thomas A. Willoughby (CA Bar No. 137579)
      Christopher Crowell (CA Bar No. 253103)
      Attorneys for The Official Committee of
      Unsecured Creditors

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA