# SETTLEMENT AGREEMENT AND MUTUAL GENERAL RELEASE

This Settlement Agreement ("Agreement") is made as of May __, 2010 between debtor Heller Ehrman LLP, debtor and debtor in possession, the Official Committee of Unsecured Creditors of Heller Ehrman LLP (the "Committee") ( the Debtor and the Committee are collectively referred to as the "Estate"), the individual Committee members (the "Committee Members"), and the various professional corporations, that are the general partners of Heller LLP (collectively referred to as the "Heller PCs"), on the one hand, and [name of settling shareholder] (the "Settling Shareholder"), on the other hand. (The universe of all Settling Shareholders who attain such status at any time by entering into a settlement with the Estate, whether before or after the execution of this Agreement, is hereafter referred to as "Settling Shareholders.") The Estate, the Committee Members, the Heller PCs and the Settling Shareholder are referred to collectively as the "Parties" and individually as a "Party."

Whereas the Debtor commenced a voluntary bankruptcy case under chapter 11 of Title 11 of the United States Code (the "Code") in the United States Bankruptcy Court for the Northern District of California, San Francisco Division (the "Bankruptcy Court") as case number 08-32514 (the "Bankruptcy Case");

Whereas the Estate believes it has valid claims for Estate Claims (defined below) against him or her for money paid to Settling Shareholder and arising from his or her association with Heller LLP and the Heller PCs, or any of the following entities: Heller Ehrman (Europe) LLP, Heller Ehrman, a Hong Kong general partnership, or Heller Ehrman (Hong Kong) Limited (with the Heller PCs, the "Heller Affiliates");

Whereas, Settling Shareholder vigorously disputes all such Estate Claims;

Whereas, Estate and Settling Shareholder desire to settle all Estate Claims and Shareholder Claims (as those terms are defined below) on the terms set forth below;

NOW, THEREFORE, IN CONSIDERATION OF THE FOREGOING AND THE MUTUAL PROMISES AND RELEASES GIVEN HEREIN and for good and valuable consideration the receipt, sufficiency and adequacy of which is hereby acknowledged, the Parties do hereby agree and release as follows:

1. "Estate Claim(s)" means any and all claims, demands, actions, causes of action, suits, proceedings, contracts, agreements, guaranties, debts, duties, compensation, costs, expenses, sums of money, liabilities and damages, whether compensatory, statutory, consequential or punitive, however originating or existing, under any legal theory, whether sounding in contract, quasi-contract or tort, whether legal or equitable, whether known or unknown, whether existing as of the date of this Agreement, related to or arising from any employment by or relationship between Heller LLP, the Heller Affiliates or their respective

predecessor entities and the Settling Shareholder in his or her capacity as one of the above named entities' partners, shareholders, agents, employees, or Retired Participants under Heller LLP's Retirement Plan (but expressly excluding the Jewel Claims, as defined below and the Estate's right to object to Non-Released Claims as also defined below).  Such Estate Claims include, but are not limited to, any claim in one or more of the following categories: (i) for which Settling Shareholder was or allegedly was a guarantor, obligor, or co-obligor of any of the above named entities or of any obligation or liability of any of the above-named entities; (ii) in which Settling Shareholder was or allegedly was liable directly or indirectly for any obligation or liability of any of the above named entities; (iii) arising from Settling Shareholder having received an allegedly voidable or unlawful transfer or fraudulent conveyance from any of the above named entities; (iv) claims under Cal. Corp. Code § 16957 of RUPA for the return of distributions made by Heller LLP or the Heller Affiliates and/or other monies received from Heller LLP or the Heller Affiliates (including monies paid as return of capital); (v) arising out of Settling Shareholder's service or status as an officer, director, manager, shareholder, partner, member or employee of any of Heller LLP or the Heller Affiliates, as a member of any committee of any of them or as a managing shareholder of any office thereof; (vi) arising out of Settling Shareholder's service as a member of the Dissolution Committee of Heller LLP created and appointed by the Heller Ehrman LLP Plan of Dissolution effective September 26, 2008 (the "Dissolution Committee") or the Heller Affiliates.  The "Estate Claims" do not include claims or rights (y) to object to any claims filed in the Bankruptcy Case for amounts due on account of any Non-Released Claim (defined below) and this Settlement Agreement and Mutual Release shall not be asserted as a bar to any objection except for an objection based on section 502(d) of the Bankruptcy Code ("Preserved Estate Objections") (w) for any payments to the Settling Shareholder and/or any law firm for work performed for former Heller LLP clients after Settling Shareholder ceased practicing law for the Debtor; (x) subject to the provisions of paragraph 8B herein, under the decision in *Jewel v. Boxer*, 156 Cal. App. 3d 171, 203 Cal. Rptr. 13 (Cal. App. 1984) and related case law in California and other jurisdictions; (y) under the "unfinished business doctrine" (collectively (w-y), the "Unfinished Business Claims"); and (z) any and all other causes of action or legal theories that might be invoked or asserted to set aside the asserted waiver of the Unfinished Business Claims that was contained in the Debtor's plan of dissolution. (collectively (w-z), "Jewel Claims").

  2. "Shareholder Claims" means any and all claims, demands, actions, causes of action, suits, proceedings, contracts, agreements, guaranties, debts, duties, compensation, costs, expenses, sums of money, liabilities and damages, whether compensatory, statutory, consequential or punitive belonging to Settling Shareholder, however originating or existing, under any legal theory, whether sounding in contract, quasi-contract or tort, whether legal or equitable, whether known or unknown, whether existing as of the date of this Agreement, related to or arising from any employment by or relationship between any of Heller LLP, the Heller Affiliates or their respective predecessor entities and the Settling Shareholder in his or her capacity as one of the above named entities' partners,

shareholders, agents, employees, or Retired Participants under Heller LLP's Retirement Plan (but expressly excluding the Non-Released Claims, defined below). Such Shareholder Claims include, but are not limited to: (i) claims for indemnity and/or contribution from Heller LLP or the Heller Affiliates unrelated to obligations created under this Agreement (other than the Non-Released Claims defined below); (ii) claims against any person or entity obtaining a release under this Agreement for indemnity, contribution or reimbursement in respect of any liability for or payments made by Settling Shareholder under this Agreement or in respect of such person's or entity's former employment by or shareholder relationship with Heller LLP, any of the Heller Affiliates or any of their predecessor entities, provided, however, that nothing contained herein shall be construed to limit recourse to insurance otherwise available to Heller LLP or any other party, which claims are reserved to the Settling Shareholder; (iii) claims for compensation or benefits due or owing from Heller LLP or the Heller Affiliates other than the Non-Released Claims defined below; (iv) claims arising under section 502(h) of the Code; (v) claims against any other Settling Shareholder arising out of such Settling Shareholder's service or status as an officer, director, manager, shareholder, partner, member or employee of any of Heller LLP or the Heller Affiliates, as a member of any committee of any of them or as a managing shareholder of any office thereof; or (vi) claims against any other Settling Shareholder arising out of such Settling Shareholder's service as a member of the Dissolution Committee; and (vii) any claim for substantial contribution in the Bankruptcy Case under any theory of recovery. "Shareholder Claims" specifically excludes (x) claims for compensation, benefits or expense reimbursement accrued while the Settling Shareholder was an associate attorney of Heller LLP (if applicable); (y) any obligations of the Estate, the Committee Members and the Heller Affiliates to Settling Shareholder as set forth in this Agreement; and (z) the claims against the Estate identified on Attachment A to this Agreement, if any (collectively, (x-z) the "Non-Released Claims").

   3. "Termination Date for Payments" shall mean the earlier of (a) the date that any and all potential claims against Settling Shareholder, under any legal theory, by Bank of America, N.A. and its affiliates and Citibank, N.A. and its affiliates (collectively, the "Banks"), are conclusively barred by the passage of any and all applicable federal or state statutes of limitation or entry of a Bankruptcy Court order, (b) the delivery to Settling Shareholder of releases executed by the Banks of all claims against Settling Shareholder relating in any way to or arising from Settling Shareholder's employment by or relationship with Heller LLP and/or the Heller Affiliates, or any loans, debts, contracts, agreements, obligations or liabilities or any kind, or alleged loans, debts, contracts, agreements, obligations or liabilities of any kind, owing to the Banks by Heller LLP and/or the Heller Affiliates, or (c) the conclusion of the Estate's preference litigation and the payment in full of the Banks claims, which payment (i) eliminates any potential claims of the Banks against any third parties, and (ii) is no longer subject to avoidance in the Heller LLP Bankruptcy Case.

   4. The "Approval and Release Date" shall occur immediately upon the satisfaction of the later of the following express conditions precedent:

A. The entry of an order in the Bankruptcy Case approving the settlement set forth in this Agreement, which order shall include a "good faith" finding pursuant to section 877.6 of the California Code of Civil Procedure and shall have become final in the sense that either of the following have occurred: (i) no appeal, certiorari proceeding or other review reconsideration or rehearing has been requested or is still pending, and the time for filing a notice of appeal or petition for certiorari or further review, reconsideration or rehearing has expired; or (ii) if an appeal has been filed as to such order, no stay of the effectiveness of such order has been issued by a court of competent jurisdiction.

B. The entry of an order in the Bankruptcy Case confirming the joint plan of liquidation filed on or about March 31, 2010, as such may be amended (the "Plan"), which Plan includes terms substantially as set forth in paragraph 9 below, which order shall include a "good faith" finding pursuant to section 877.6 of the California Code of Civil Procedure and shall have become final in the sense that (i) the Effective Date (as that term is defined in the Plan) shall have occurred; and (ii) no stay of the effectiveness of such order has been issued by a court of competent jurisdiction.

The Estate shall use its best efforts to satisfy the foregoing conditions prior to July 1, 2010. In the event an order approving the settlement set forth in this Agreement is reversed on appeal, then the Settling Shareholder shall be entitled to an immediate return of all consideration previously paid to the Estate hereunder, which right to repayment shall be a reasonable and necessary expense of administration under section 503(b) of the Code, or a Plan Expense (as that term is defined under the Plan), as applicable.

5. No less than ten (10) business days prior to the date that the Plan is first set for a confirmation hearing (the "Initial Payment Date"), Settling Shareholder will pay and Heller LLP shall have received at Settling Shareholder's election either (a) 95% or (b) 67%, of the agreed settlement amount of $_____ (the "Settlement Amount") by check drawn on good funds made payable to Heller Ehrman LLP. Settling Shareholder and Estate agree that the Settlement Amount constitutes repayment of compensation previously paid to Settling Shareholder in 2007 (unless Settling Shareholder first became a shareholder of one of the Heller Affiliates in 2008, in which case it shall constitute repayment of compensation paid during 2008). The amount paid to Heller LLP on the Initial Payment Date shall be deposited by the Debtor into a segregated account and shall be released from such account only upon the occurrence of the Approval and Release Date. If the Approval and Release Date has not occurred by December 31, 2010, then Heller LLP or its successor, as applicable, shall immediately return the Settlement Amount to Settling Shareholder unless Settling Shareholder elects in writing to extend that date. An election to extend the date shall not require the consent of any other Party or order of the Bankruptcy Court.

6. If Settling Shareholder elects to pay 67% of the Settlement Amount on the Initial Payment Date, then,

A. On the later of the Termination Date for Payments or May 30, 2012, Settling Shareholder shall pay Heller LLP an additional 16.5% of the Settlement Amount, together with simple interest thereon from the Approval and Release Date for Payments to the date of payment calculated at the rate of 3% per annum; and

B. On the later of the Termination Date for Payments or October 15, 2012, Settling Shareholder shall pay Heller LLP an additional 16.5% of the Settlement Amount, together with simple interest thereon from the Approval and Release Date to the date of payment calculated at the rate of 3% per annum.

C. If at any time payment would otherwise be due from Settling Shareholder under either clause A or clause B of this paragraph 6 (including as such time for payment is extended under this clause C) there is pending a bankruptcy case for any of the Heller PCs, Settling Shareholder's payment obligation shall be deferred until the earliest to occur of

1) Sixty (60) days after the last in time dismissal by final order of all such bankruptcy cases without any claims being asserted against Settling Shareholder in any such cases, with no appeal from such order having been timely filed, or, in the event of a timely appeal from such order, any such appeal shall have been finally resolved resulting in the affirmance of such dismissal, and in that case the 60 day period specified in this clause 1 shall be deemed to run from the date of final resolution of such appeal;

2) The expiration of any and all statutes of limitation applicable to claims (including any period of tolling by law or agreement) that might be asserted by the estate representative in any of such bankruptcy cases against the Settling Shareholder for (a) payments by Heller LLP or any Heller PC to or for the benefit of such Settling Shareholder, or (b) by virtue of such Settling Shareholder's relationship to Heller LLP or any Heller PC, without such claim having been filed against the Settling Shareholder; or

3) Sixty (60) days after the final disposition, by settlement or judgment (including final resolution of any appeals) of any claim brought against the Settling Shareholder of the kind described in clause C(2) immediately above.

D. If the payments required by this paragraph 6 come due before the Approval and Release Date has occurred then the payments will be made and held by the Debtor in a segregated account as described in paragraph 5.

7. Effective upon the Approval and Release Date, this Agreement shall constitute a release by Settling Shareholder of all known and unknown Shareholder Claims as follows:

A. In consideration of the compromise and releases described in this Agreement, and of other good and valuable consideration the receipt,

sufficiency and adequacy of which is hereby acknowledged, Settling Shareholder, on behalf of (a) himself or herself, (b) his or her spouse, (c) the marital community of which he or she forms a part and (d) his or her heirs, does hereby release, remise, forgive, acquit, and forever discharge the Estate, the Committee Members, each of the Heller Affiliates, the Dissolution Committee and each of its members, the respective employees, and agents, and attorneys of each of the foregoing, and each of the other Settling Shareholders from any and all Shareholder Claims, whether foreseen or unforeseen, now existing or which may hereafter arise (hereafter, "Released Shareholder Claims"). By their acceptance of this release, the Estate, Committee Members, the Heller PCs, the Dissolution Committee and its members acknowledge and agree that Settling Shareholder has not released, remised, forgiven, acquitted or discharged the Non-Released Claims.

    B. The release provided by Settling Shareholder hereunder in favor of any of the Heller PCs is subject to the following additional conditions and limitations:

    1) In the event there is any (a) challenge in the future to the effectiveness of any release given by a Heller PC under this Agreement which challenge, if successful, would operate to the detriment, directly or indirectly, of Settling Shareholder, or (b) a claim is brought against Settling Shareholder by any creditor or successor of a Heller PC (including without limitation a trustee in bankruptcy or other representative of the estate of such Heller PC), notwithstanding the release given hereunder such Settling Shareholder shall be entitled to assert against such Heller PC or its estate any and all claims, rights and defenses that would be available to Settling Shareholder but for the release hereunder.

    2) The release given hereunder does not apply to any right of Settling Shareholder against the Heller PC of which Settling Shareholder was a shareholder for recovery or return of amounts paid to such Heller PC by or on behalf of such Settling Shareholder as capital contributions or for the purchase of preferred or common stock; but such right shall be subordinated to the rights of any and all creditors of such Heller PC, and Settling Shareholder may not take any action whatsoever based upon or to enforce such right until all creditors of such Heller PC have been paid in full. As used in this subparagraph B(2), the term "creditors" does not refer to or encompass the rights of any former shareholder against a Heller PC for recovery or return of amounts paid to a Heller PC by or on behalf of such shareholder as capital contributions for the purchase of preferred or common stock.

    C. Except with respect to Non-Released Claims, and the rights preserved under paragraph B immediately above (subject to the limitations stated therein), Settling Shareholder expressly waives any and all rights he or she may have under any statute, code, regulation, ordinance or the common law, which may limit or restrict the effect of a general release as to claims which Settling Shareholder does not know or suspect to exist in his or her favor at the time of the

execution of this release.  Settling Shareholder further expressly represents and warrants that he or she is familiar with California Civil Code Section 1542 and that the effect and import of that provision has been fully explained to him or her and that, after consultation with counsel, he or she expressly waives the provisions of California Civil Code Section 1542, and other state and federal statutes to similar effect, which Section provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR EXPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE WHICH, IF KNOWN TO HIM, MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.

Settling Shareholder expressly acknowledges that he or she may in the future discover facts in addition to or different from those he or she now knows or believes to be true with respect to the subject matter of the Agreement of which this release is a part.  Nevertheless, Settling Shareholder agrees fully, finally, and forever to release the Released Shareholder Claims as set forth in this Agreement, whether or not hidden or excluded, known or unknown, without regard to the subsequent discovery or existence of different or additional facts.  Settling Shareholder acknowledges that this waiver was separately bargained for and is a key element of the settlement of which this release is a part.

        8.      Effective upon the Approval and Release Date, this Agreement shall constitute a release by Debtor, Estate, Committee, Committee Members and the Heller PCs of the Estate Claim(s) as follows:

        A.      In consideration of the compromise and releases described in this Agreement, and of other good and valuable consideration the receipt, sufficiency and adequacy of which is hereby acknowledged, the Debtor, the Estate, the Committee, the Committee Members and the Heller PCs, each on behalf of himself or herself or itself and his or her or its respective agents, partners, representatives, predecessors, successors, heirs and assigns (collectively, "Releasors") do hereby release, remise, forgive, acquit, and forever discharge Settling Shareholder, and his or her spouse, marital community, children, heirs and assigns (collectively, "Shareholder Releasees") from any and all Estate Claim(s), foreseen or unforeseen, now existing or which may hereafter arise (hereafter, "Released Estate Claims"), provided, however, that the Released Estate Claims do not encompass the Jewel Claims, the Preserved Estate Objections or any obligation of Settling Shareholder as set forth in this Agreement.

        B.      Releasors further covenant not to sue (or assist any third party in suing) Shareholder Releasees on account of any Jewel Claims, provided however, that in the event a Settling Shareholder's former, current or future law firm asserts as a bar to any claim brought by the Estate under any theory relating to the Jewel Claims based on the existence of the foregoing covenant not to sue, then this covenant not to sue shall be deemed to have been of no force or effect and

any applicable statute of limitation will be tolled during the period in which this covenant not to sue was in effect. To the extent that there is any bar to the length of a tolling agreement under California law, including but not limited to section 360.5 of the California Code of Civil Procedure, the Settling Shareholder agrees to execute such extensions of this tolling period as are reasonably requested by the Estate.

        C.     Excepting the Jewel Claims, the Preserved Estate Objections or any obligation of Settling Shareholder as set forth in this Agreement , Releasors expressly waive any and all rights he or she or it may have under any statute, code, regulation, ordinance or the common law, which may limit or restrict the effect of a general release as to claims which Releasors do not know or suspect to exist in his or her or its favor at the time of the execution of this release. Releasors further expressly represent and warrant that he or she or it is familiar with California Civil Code Section 1542 and that the effect and import of that provision has been fully explained to him or her or it and that, after consultation with counsel, he or she or it expressly waives the provisions of California Civil Code Section 1542, and other state and federal statutes to similar effect, which Section provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR EXPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE WHICH, IF KNOWN TO HIM, MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.

Releasors expressly acknowledge that he or she or it may in the future discover facts in addition to or different from those he or she or it now knows or believes to be true with respect to the subject matter of the Agreement of which this Release is a part. Nevertheless, Releasors agree fully, finally, and forever to release the Released Estate Claims as set forth in this Agreement, whether or not hidden or excluded, known or unknown, without regard to the subsequent discovery or existence of different or additional facts. Releasors acknowledge that this waiver was separately bargained for and is a key element of the settlement of which this release is a part.

        D.     The Parties acknowledge that under no circumstances do the Released Estate Claims include any Jewel Claims that the Estate may have against Settling Shareholder's current, former or future law firm(s).

        9.     So long as Settling Shareholder is not in default of any obligations due to the Estate or its successor under this Agreement, then beginning on the Approval and Release Date:

        A.     As part of any settlement of the Estate's claims against the Banks or either of them the Estate shall obtain contemporaneously therewith an unqualified general release by the Banks of all claims that the settling Banks may have related to or arising from any relationship between the Banks and Heller

LLP and/or the Heller Affiliates or their respective predecessor entities against (i) Settling Shareholder and (ii) each of the Heller Affiliates.

        B.    As part of any settlement of (i) any claim against Heller LLP in the amount of $250,000 or more asserted by any person or entity ("Claimant") other than the Banks; (ii) any claim asserted by the Estate in the amount of $250,000 or more against any third party ("Defendant") which claim is resolved by execution of an agreement containing an exchange of releases; or (iii) any claim by a former employee of Heller LLP who opts out of the Biggers settlement class ("Biggers Opt Out"), (iv) lessors of office space occupied by the Estate on September 15, 2008 and (v) each of the retired shareholders who was represented by Michael St. James on November 12, 2009, the Estate shall obtain a release by the Claimant or Defendant of any and all claims that such Claimant or Defendant might have against (1) Settling Shareholder to the extent such claims are predicated on (a) Settling Shareholder's former employment or shareholder relationship with Heller LLP or any of the Heller Affiliates, or (b) the transaction or payment which is the subject of the Estate Claim(s) settled with Heller LLP, and (2) each of the Heller Affiliates, on whatever basis such claim is founded.

        C.    In the event Settling Shareholder breaches his or her payment obligations as set forth in this Agreement, then such breaching Settling Shareholder shall have ten (10) days to cure such breach after the mailing of written notice to Settling Shareholder at the address set forth in paragraph 15 by U.S. Mail, with a cc by email if an email address is included in paragraph 15. If Settling Shareholder fails to timely cure the default, this Agreement shall serve as a confession to judgment, and the Estate may move by Motion in the Bankruptcy Case for entry of Judgment in the amount of any outstanding obligations due under this Agreement, including interest at the applicable legal rate.

        D.    If any person or entity not a party to this Agreement asserts a claim against Settling Shareholder related to or arising from any employment by or relationship between Heller LLP, the Heller Affiliates or their respective predecessor entities and the Settling Shareholder in his or her capacity as one of the above named entities' partner, shareholder, manager, agent or employee, prior to the time he or she is obligated to pay the portion of the Settlement Amount described in paragraphs 6A and 6B, above, Settling Shareholder may use the amount of the Settlement Payment not yet paid to Heller LLP or its successor under the Plan, together with all accrued interest thereon, to defend such claim if Heller LLP or its successor under the Plan has not assumed the defense of such claim or to settle such claim; provided, however, that Settling Shareholder need not tender his or her claim hereunder unless such Settling Shareholder has received a writing giving him or her adequate assurance that the claim will be handled appropriately under the circumstances, which assurance will include the identification of counsel to handle the claim, an approximate budget for counsel, and identification of all actual or potential conflicts as between counsel and any other parties represented by counsel. Amounts used by Settling Shareholder to defend and/or settle such third party claim shall offset, dollar for dollar, and

thereby reduce, any remaining payment obligation of Settling Shareholder to Estate under paragraphs 6A and 6B, above, including interest thereon. Prior to any defense or settlement of such third party claim, Settling Shareholder shall serve notice on the Estate or its successor under the Plan of the third party claim against Settling Shareholder and shall provide a reasonable opportunity to Estate or its successor under the Plan to assume the defense and settlement of the third party claim on behalf of Settling Shareholder, or to seek and obtain a temporary injunction under Bankruptcy Code §105 to stay such litigation.

      E.    Estate shall seek and use its best efforts to include in the Plan a temporary injunction under Bankruptcy Code §105 to prevent the filing of any action (or to stay any then pending action) filed by the Banks against Settling Shareholder predicated in whole or in part on Settling Shareholder's former employment by or shareholder status with Heller LLP or any of the Heller Affiliates, with such injunction to remain in effect until the final resolution of the pending preference action brought by the Estate against the Banks, whether by settlement or entry of judgment no longer subject to any pending or possible appeal; provided, however, that should the Plan confirmed by the Bankruptcy Court not include such temporary injunction, then, in the event the Banks file an action against Settling Shareholder prior to the Termination Date for Payments predicated in whole or in part on Settling Shareholder's former employment by or shareholder status with Heller LLP or any of the Heller Affiliates, the Estate, upon receipt of written demand by Settling Shareholder, shall promptly move the Bankruptcy Court for issuance of such temporary injunction, to remain in effect until the final resolution of the pending preference action brought by the Estate against the Banks, whether by settlement or entry of judgment no longer subject to any pending or possible appeal.

      F.    To the extent that Heller LLP and/or any Heller PC defends a claim asserted against it, which claim is also asserted against Settling Shareholder, Heller LLP and/or the Heller PC, as the case may be, shall defend Settling Shareholder with respect to such claim at no cost to Settling Shareholder, provided that (a) such defense does not materially increase the cost to Heller LLP and/or the Heller PC of defending against or resolving the claim; and (b) Settling Shareholder executes such waivers of conflict of interest as may be required to assure that Heller LLP and/or Heller PC will not be deprived of its or their future choice of defense counsel. This obligation exists only so long as the defense does not materially increase the cost to Heller LLP and/or the Heller PC of defending such claim or claims.

      G.    If the Estate or its successor under the Plan obtains a recovery (by settlement, trial or otherwise) from the Banks (net of attorneys' fees, costs and then due Plan Expenses as that term is defined under the Plan) (the "Bank Proceeds"), then, within 30 days of receipt of the Bank Proceeds, Estate or its successor under the Plan shall deposit into the Defense Fund the lesser of (a) the Bank Proceeds, (b) the total amount paid in settlement to the Estate by Settling Shareholders, or (c) $6,000,000, provided, however, that no such deposit shall be

required if the recovery of Bank Proceeds is accompanied by the delivery of releases as described in paragraph 9A of this Agreement.

    H. The Defense Fund shall be used only to defend Settling Shareholders against claims by the Banks (x) based on or arising from allegations that the Heller LLP or the Heller Affiliates were insolvent throughout the period beginning no later than December 31, 2007 and ending no earlier than August 1, 2008, or on any date during that period that is relevant to a claim that is made against any Settling Shareholder; (y) based on allegations that some or all aspects of the structure of the Heller LLP or any of the Heller Affiliates should be disregarded or collapsed such that former shareholders are personally liable for debts of the LLP or the PCs; (z) other claims arising out of any Settling Shareholder's involvement with Heller LLP, the Heller Affiliates, or their predecessors, but only to the extent that those other claims do not materially increase the cost of defense beyond the cost of defending claims defined in (x) and (y), all such claims (x), (y) and (z) referred to, collectively, hereafter as "Covered Claims."

    I. The Defense Fund shall be held by the Estate for the potential defense of Settling Shareholders under the provisions of this Agreement until the Termination Date for Payments. After the occurrence of the Defense Fund Relinquishment Date (as defined in paragraph 9J), the Plan Administrator shall serve notice to the Fund Steering Committee of its intent to assume control over and close the Defense Fund and shall give the Fund Steering Committee 30 days' notice to file a motion objecting to such action. The Parties agree to submit to the Bankruptcy Court by motion any dispute regarding whether or not the Defense Fund Relinquishment Date has occurred.

    J. The Fund Steering Committee shall consist of one representative of the group of former shareholders represented as of the Initial Payment Date by Wendel Rosen Black & Dean, LLP, one from the group of former shareholders represented as of the Initial Payment Date by Friedman, Dumas & Springwater, and one from the group of former shareholders represented as of the Initial Payment Date by Jones Day. The Fund Steering Committee shall act by unanimous vote and shall select one law firm to represent all Settling Shareholders against all such claims and shall offer that representation to all Settling Shareholders. Nothing shall prevent any Settling Shareholder from retaining separate counsel, at his or her own expense (but subject to such Settling Shareholder's rights, if any under paragraph 9E, above), in the sole discretion of such Settling Shareholder. Upon the later to occur of (a) the Termination Date for Payments or (b) October 15, 2012 (hereafter, the "Defense Fund Relinquishment Date"), the Fund Steering Committee shall immediately relinquish control over the Defense Fund to the Plan Administrator, provided, however, that if any litigation is pending against Settling Shareholder as of such date arising out of or related to a Covered Claim, then the Defense Fund Relinquishment Date shall not occur until final resolution of such litigation, whether by settlement or entry of judgment no longer subject to any pending or possible appeal. The Fund Steering Committee

shall submit an account with invoices of all payments from the Defense Fund to the Plan Administrator to assist the Plan Administrator in filing taxes for the periods that the Fund Steering Committee has control over the Defense Fund.

   K. If Settling Shareholder incurs costs to defend against a Covered Claim before the Defense Fund is funded ("pre-funding Defense Expenses") then, upon funding of the Defense Fund, the Estate or its successor under the Plan shall promptly reimburse Settling Shareholder for Settling Shareholder's pre-funding Defense Expenses. In the event the Defense Fund contains insufficient funds to reimburse all Settling Shareholders for their pre-funding Defense Expenses, then all Settling Shareholders entitled to reimbursement of such defense expenses shall receive reimbursement in proportion to the pre-funding Defense Expenses each incurred.

   10. If the Estate settles with any former shareholder of any of the Heller Affiliates (a "Former Shareholder") and, as part of such settlement, provides such Former Shareholder with more expansive or more favorable releases than are provided to Settling Shareholder as described in paragraph 8, or more expansive or more favorable defense, indemnity or other protective provisions than are provided to Settling Shareholder in paragraph 9, then the Estate shall automatically be obligated to extend, and shall be deemed to have extended, such more expansive or more favorable release and/or defense, indemnity and other protective provisions to Settling Shareholder without need for amendment of this Settlement Agreement or further approval by the Bankruptcy Court. As part of any settlement with any Former Shareholder, the Estate shall obtain from such Former Shareholder releases in favor of Settling Shareholders and each of the Heller PCs on the terms provided in this Agreement.

   11. The Parties acknowledge that this Settlement Agreement represents a consensual resolution of pending or threatened litigation. Entry by any Party into this Settlement Agreement does not constitute an admission of liability of any material facts.

   12. Each Party to this Agreement represents and warrants to each other Party as follows: (i) it has full right, power and authority, and has taken all corporate action necessary, to execute, deliver and perform this Agreement in accordance with its terms; (ii) execution and delivery of this Agreement by such Party does not, and performance by it of its obligations hereunder will not, constitute a breach of, or conflict with, any agreement, order, law, judgment, decree or other arrangement, whether written or oral, to which it is a party or by which it is bound as of the date of this Agreement; (iii) this Agreement is such Party's legal, valid and binding obligation, enforceable in accordance with the terms and conditions hereof; (iv) except only as expressly provided herein, no consent, permit or authorization of any court, governmental agency or third party is legally required for it to execute, deliver and perform its obligations under this Agreement except such as have already been obtained; and (v) it is not aware of any impediment that would in any material respect adversely affect its ability to perform its obligations

hereunder; and (vi) it has been given a full and fair opportunity to seek advice of independent counsel and, where the Party elected to seek legal advice regarding this Agreement is proceeding solely upon such advice, with reliance on the representations of any other Party.

13.     This Agreement shall be governed by California law as applicable to contracts made and to be performed entirely within California by California residents.  The Bankruptcy Court retains exclusive jurisdiction to interpret and enforce this Agreement (including any action to recover amounts due hereunder or as damages arising from any breach hereof), and all parties consent to jurisdiction in the Bankruptcy Court for that purpose.  Further, this Agreement is enforceable against the Estate regardless of any future conversion of the Estate into another chapter of Title 11 of the United States Code.

14.     The provisions of this Agreement, specifically including but not limited to the release contained in paragraph 8 and the protections contained in paragraph 9, above, shall be binding on all successors and assigns of the Estate, including but not limited to any plan administrator under the Plan and any bankruptcy trustee, whether under chapter 7 or 11 of the Code and whether appointed in the Bankruptcy Case or any subsequent bankruptcy case.

15.     Should litigation be required to interpret or enforce this Agreement or to seek damages for breach of this Agreement, the prevailing party shall be entitled to recover all reasonable costs and attorneys' fees including expert fees and any and all reasonable costs incurred in a bankruptcy case of the Settling Shareholder.

16.     This Agreement and the exhibits attached hereto contain the entire agreement of the parties with respect to the subject matter of this Agreement, and supersede all prior negotiations, agreements and understandings with respect thereto. This Agreement may only be amended by a written document duly executed by all parties.

17.     Any Notice to be given pursuant to this Agreement shall be sent by First Class Mail or by recognized commercial courier (e.g., FedEx) cc to email address if provided to:

If to Estate or the Official Committee of Unsecured Creditors of the LLP Estate prior to Plan Confirmation:

       Thomas Willoughby, Esq.
       Felderstein Fitzgerald Willoughby & Pascuzzi
       400 Capital Mall, Suite 1450
       Sacramento, CA 95814-4434
       twilloughby@ffwplaw.com

       With a cc to:

> John D. Fiero, Esq.
> Pachulski Stang Ziehl & Jones LLP
> 150 California Street, 15th Floor
> San Francisco, CA 94111
> jfiero@pszjlaw.com

If to Estate or the Official Committee of Unsecured Creditors of the LLP Estate after Plan Confirmation:

**PLAN ADMINISTRATOR**

> Michael Burkart
> 5150 Fair Oaks Blvd., #101-185
> Carmichael, CA 95608
> Burkart@cwo.com
>
> Christopher D. Sullivan, Esq.
> McGrane Greenfield LLP
> 1 Ferry Building, Suite 220
> San Francisco, CA 94111
> csullivan@mcgranegreenfield.com

**COMMITTEE**

> Thomas A. Willoughby
> Felderstein Fitzgerald Willoughby & Pascuzzi LLP
> 400 Capitol Mall, Suite 1450
> Sacramento, CA 95814
> twilloughby@ffwplaw.com

> If to The Settling Shareholder, or any one or more of them:

**[INSERT ADDRESS FOR SERVICE]**


> ACCEPTED AND AGREED


> SETTLING SHAREHOLDER


> _____
> [name]

ESTATE

_____
John D. Fiero, Esq.
Pachulski Stang Ziehl & Jones LLP


HELLER PC'S

_____
[Name of Authorized Representative]
[Address]


COMMITTEE


_____
Thomas A. Willoughby, Esq.
Felderstein Fitzgerald Willoughby & Pascuzzi LLP


Committee Member
BREF 333, LLC


_____
Theresa Hoyt, Sr. VP
Brookfield Real Estate Financial Partners LLP

Committee Member
Monika Lee

_____
Monika Lee


Committee Member
Williams Lea, Inc.


_____
Deena Williamson

Committee Member
Wondie Russell

_____
Wondie Russell