James N. Czaban
1776 K Street, NW
Washington, DC 20006
Phone: 202-719-7411
Fax: 202-719-7049
Pro Per Creditor

FILED

JUN 21 2010

UNITED STATES BANKRUPTCY COURT
SAN FRANCISCO, CA

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

In re

HELLER EHRMAN LLP,

        Debtor.

CASE NO. 08-32514

Chapter: 11

**OBJECTION OF
OCTOBER 2006 NOTE-HOLDER
TO JOINT PLAN OF LIQUIDATION**

    The undersigned (hereinafter referred to as "2006 Note-Holder") hereby objects to the JOINT PLAN OF LIQUIDATION OF HELLER EHRMAN LLP filed by the Debtor and Debtor in Possession (collectively, "the Debtor") and Committee of Unsecured Creditors ("the Committee"), and dated May 14, 2010 ("the Plan"). The Debtor and Committee are collectively referred to as "the Plan Proponents."

    The Plan impermissibly classifies the claim of the 2006 Note-Holder in a separate class, Class 9, and purports to subordinate this claim to all other unsecured debt. The 2006 Note-Holder should be treated *pari passu* with members of Class 7, general unsecured creditors.

## I. INTRODUCTION

The undersigned was a shareholder at Heller Ehrman in the Washington D.C. office from 2001 until his departure in October 2006 – two years prior to the firm's dissolution at the end of 2008. Immediately upon his resignation from the firm in October 2006, the shares of the 2006 Note-Holder in Heller Ehrman were immediately repurchased according to the Shareholders Agreement, Section 3 ("Termination of Employment."). The repurchase price was paid 25% in cash in November 2006 and 75% by means of an interest-bearing promissory note from the Firm, dated October 31, 2006, that was assigned to the 2006 Note-Holder (the "Promissory Note") (A copy of the Promissory Note is attached as Exhibit 1 and was also attached to the undersigned 2006 Note-Holder's Proof of Claim in this case). The Promissory Note prominently states that it was issued "FOR VALUE RECEIVED". After the repurchase of shares and assignment of the note, the 2006 Note-Holder retained no legal or equitable ownership interest in the Firm or in any shares of the firm, and the firm was free to distribute those shares to others, who would be compensated and receive profits from the Firm in ensuing years.

At the time of issuance of the Promissory Note to the undersigned 2006 Note-Holder Heller Ehrman was solvent and profitable, having reported to *American Lawyer* that in 2006 the firm achieved a 6.7% increase in total revenue and a 16.9% increase in profits per partner over its 2005 performance.

## II. THE PLAN IMPROPERLY ATTEMPTS TO SUBORDINATE THE 2006 NOTE-HOLDER'S CLAIM TO THE CLAIMS OF GENERAL UNSECURED CREDITORS

The Plan proposes to create Class 9 ("Subordinated Former Shareholder Claims") comprised of those who hold what are referred to as "Subordinated Former Shareholder Notes." The note held by the undersigned is in fact entitled "PROMISSORY NOTE", and was expressly issued in exchange "FOR VALUE RECEIVED" (all caps in original, *see* Exhibit 1). The note was issued according to the Shareholder Agreement and in the ordinary course of business.

Proposed Class 9 is purportedly subordinated to claims of general unsecured creditors and is estimated to recover 0% of claims – in contrast to Class 7 ("General Unsecured Creditors"), which is projected to recover 22%-68% of claim amounts. *See* Disclosure Statement page 13,

line 28 and page 15, line 14. The Plan Proponents contend that Class 9 is subordinated for two reasons: (1) the Note contains a provision stating that it is subordinate to prior payment of indebtedness of the Firm "for borrowed money;" and (2) the Debtor's Plan of Dissolution (at section XI(E)), seeks to prohibit payments of any kind to former Shareholders until legal obligations to third party creditors are satisfied. Neither of these stated reasons, nor any other reason, provides a proper basis to subordinate the undersigned 2006 Note-Holder's claim to the Class 7 General Unsecured Creditors' claims.

### A. The 2006 Promissory Note Is A Debt Instrument

The Plan improperly seeks to lump the installment debt payments due to the undersigned 2006 Note-Holder under the 2006 Promissory Note into the factually and legally distinct category of compensation, profit payments and capital return potentially owing to other differently situated individuals whose claims arose in 2007 and 2008 when the Debtor was allegedly insolvent or inadequately capitalized. As explained above, the undersigned 2006 Note-Holder received the 2006 Promissory Note when the financially-solvent and highly profitable firm repurchased his shares in October 2006, and thus did not at any time thereafter hold any equity interest in the firm.

The 2006 Promissory Note has all the hallmarks of, and is in fact, a debt instrument. It was issued for value received and consideration was exchanged and acknowledged. Principal was to be paid in three equal annual installments, with interest on the outstanding principal. In the event of proceedings to enforcement payment under the note, the note holder is entitled to receive costs of collection, including reasonable attorneys' fees. Thus, the Plan Proponents' effort to treat the 2006 Note-Holder as something other than a Class 7 Unsecured Creditor is impermissible.

### B. The 2006 Promissory Note Is Not Properly Subordinated To Unsecured Creditors

The undersigned 2006 Note-Holder's Promissory Note contains a provision subordinating payment to "indebtedness of the Firm <u>for borrowed money</u>," but the note is nevertheless payable when the Firm is not in default as to such specified indebtedness. This subordination provision

Case: 08-32514    Doc# 1236    Filed: 06/21/10    Entered: 06/22/10 15:26:02    Page 3 of 9

does not permit the subordination of the 2006 Promissory Note to the claims of Class 7 General Unsecured Creditors.

### C. Debtor Did Not Receive "Borrowed Money" From General Unsecured Creditors

As a thriving major law firm, Heller Ehrman enjoyed increasing revenues and profits in 2006 at the time the Promissory Note was issued to the undersigned 2006 Note-Holder. However, as with virtually every major law firm, due to the nature of the large law firm business model, the firm at times relied upon borrowed money from banks to fund cash flow needs, especially during the early parts of each calendar year. The subordination clause in the 2006 Promissory Note is thus clearly limited in scope such that the Note is only potentially subordinated to claims of entities from which the Debtor "borrowed money" – in this case, Bank of America and Citibank. There is no basis to conclude, and the undersigned 2006 Note-Holder is not aware that the Debtor or Plan Proponents have ever alleged that any one (much less all) of the General Unsecured Creditors in Class 7 ever loaned money to Debtor. Thus, under the terms of the 2006 Promissory Note, the undersigned 2006 Note-Holder's claim is not and cannot be subordinated to the claims of Class 7 General Unsecured Creditors.

### D. The Plan of Dissolution Does Not Create a Binding Subordination of the 2006 Note

As noted above, the Plan Proponents argue that Class 9 claims are subordinated to Class 7 General Unsecured Creditors because the Debtor's 2008 Plan of Dissolution, at section XI(E), seeks to prohibit payments of any kind to former Shareholders. However, section XI(E) makes no provision for Promissory Notes and fails to even mention the Promissory Notes. The Plan of Dissolution was established on September 26, 2008 by the continuing shareholders at the time, nearly two years after the undersigned's Promissory Note was issued. The Plan of Dissolution and its purported subordination provision is not contractually binding upon the undersigned 2006 Note-Holder because the undersigned (1) was not a shareholder at the time of the Plan of Dissolution, (2) was not a party to the Plan of Dissolution, (3) was not entitled to vote on the Plan of Dissolution, and (4) has not agreed to be bound by the Plan of Dissolution. The undersigned

-4-

2006 Note-Holder had departed the firm nearly two years before the adoption of the Plan of Dissolution, and was (and remains) a creditor of the firm at all times subsequent to the execution of the 2006 Promissory Note.

### E. There is no Other Basis to Subordinate the 2006 Note-Holder's Claim To the Claims of Class 7 General Unsecured Creditors

Section 510 of the Bankruptcy Code provides no basis to subordinate the undersigned 2006 Note-Holder's claim to the claims of Class 7 General Unsecured Creditors. Section 510(a) covers contractual subordination and is the only basis asserted in the Plan or Disclosure Statement for the proposed subordination of the Class 9 claims. As explained above, nothing in the 2006 Promissory Note results in its subordination to the unsecured creditors of Class 7. Moreover, the September 2008 Dissolution Plan is inapplicable against the undersigned because (1) it pertains only to capital, and not to debt; (2) it is not applicable to and does not mention the 2006 Promissory Note, and (3) the undersigned was not permitted to participate in, did not agree to, and was not entitled to vote on, the September 2008 Dissolution Plan. Thus, the Dissolution Plan does not form a contractual basis for subordination.

Moreover, neither section 510(b) nor section 510(c) have been asserted as bases for the proposed subordination of the undersigned 2006 Note-Holder's claim, and neither such section would be applicable if asserted.

### III. A CRAMDOWN IS UNWARRANTED

The Plan Proponents have sought to avail themselves of cramdown provisions regardless of a vote by Class 9. This is inappropriate because the Plan Proponents have failed to demonstrate that the Joint Plan is fair and equitable and does not discriminate unfairly as to holders of claims. While there may be other former shareholders (for example, those who were shareholders at the time of dissolution or alleged insolvency) who belong in a separate Class 9, as shown herein, it is improper, unfair, and inequitable, and thus in violation of Section 1129(a)(7)(A) (best interests of creditors test) to subordinate the claim of the undersigned 2006 Note-Holder to the claims of Class 7 General Unsecured Creditors.

-5-

# IV. CONCLUSION

The claim of the undersigned 2006 Note-Holder should be treated and paid as a claim of a Class 7 General Unsecured Creditor.

Dated: June 18, 2010

                                                Respectfully submitted,

                                                */s/ James N. Czaban*
                                                James N. Czaban

# CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of OBJECTION OF OCTOBER 2006 NOTE-HOLDER TO JOINT PLAN OF LIQUIDATION and cited exhibit were caused to be served by overnight delivery on the following this 18th day of June, 2010 as follows:

John D. Fiero
Kenneth H. Brown
Teddy M. Kapur
PACHULSKI STANG ZIEHL & JONES LLP
150 California Street, 15th Floor
San Francisco, California 94111-4500
Tel: 415-263-7000

Steven H. Felderstein
Thomas A. Willoughby
Jason Rios
Christopher Crowell
FELDERSTEIN FITZGERALD WILLOUGHBY & PASCUZZI LLP
400 Capitol Mall, Suite 1450
Sacramento, California 95814
Tel: 916-329-7400

Minnie Loo
OFFICE OF THE UNITED STATES TRUSTEE
235 Pine Street
7th Floor
San Francisco, California 94104
Tel: (415) 705-3333

Debtor
HELLER EHRMAN LLP
c/o Shelley Salinero
333 Bush Street
10th Floor
San Francisco, California 94104
Tel: (415) 772-6000

James N. Czaban

-7-

Case: 08-32514    Doc# 1236    Filed: 06/21/10    Entered: 06/22/10 15:26:02    Page 7 of 9

# EXHIBIT 1

# PROMISSORY NOTE

$106,354.31                                                          San Francisco, California
                                                                     October 31, 2006

     FOR VALUE RECEIVED, Heller Ehrman LLP, a California limited liability partnership (the "<u>Firm</u>") hereby promises to pay to Heller Ehrman (California), A Professional Corporation (the "<u>Partner</u>"), in connection with the withdrawal of James Czaban (the "<u>Former Shareholder</u>"), as a Member of the Firm, the principal sum of $106,354.31 with interest on unpaid principal at the rate of five and thirteen one-hundredths percent (5.13%) per annum. Principal, together with accrued interest, shall be due and payable in three equal installments paid annually on the anniversary date of this Note (October 31, 2007, October 31, 2008 and October 31, 2009). In the Firm's sole discretion, amounts due hereunder may be paid in cash, or, by assignment of accounts receivable or unbilled fees as provided in the Shareholders' Agreement among the Partner and the holders of its capital stock dated January 1, 1994, as amended.

     This note may be prepaid at any time without premium or penalty. Payment of principal of and interest on this note is subordinate to the prior payment of indebtedness of the Firm for borrowed money; provided, however, that payments hereunder shall be payable when due if at such time the Firm is not in default with respect to any such indebtedness. In the event of proceedings to enforce payment of this note, the holder shall be entitled to receive costs of collection, including reasonable attorneys fees, as awarded by the court having jurisdiction of such proceedings. This note may be assigned by the Partner to the Former Shareholder but is otherwise not assignable by Partner or, if assigned, by the Former Shareholder (except pursuant to the laws of descent and distribution).

Heller Ehrman LLP,
a California limited liability partnership

By Heller Ehrman (California), A Professional Corporation
Managing General Partner

By: *David Jargiello* (signature)
David M. Jargiello
Vice President and Secretary

     Heller Ehrman (California), A Professional Corporation, hereby assigns, without recourse, its rights to payment under the foregoing note to James Czaban.

Heller Ehrman (California), A Professional Corporation

By: *David Jargiello* (signature)
David M. Jargiello
Vice President and Secretary