Entered on Docket
July 02, 2010
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA



**Signed and Filed: July 01, 2010**

_____
**DENNIS MONTALI
U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re                              ) Bankruptcy Case
                                   ) No. 08-32514DM
HELLER EHRMAN LLP, fka Heller,     )
Ehrman, White & McAuliffe, LLP,    ) Chapter 11
                                   )
                        Debtor.    )
_____)

MEMORANDUM DECISION REGARDING ABATED RENT
(OBJECTION TO CLAIM OF COLUMBIA CENTER PROPERTY LLC)

Columbia Center Property, LLC ("Columbia") filed a proof of claim in the amount of "at least $9,369,453.51." Heller Ehrman LLP ("Debtor") filed an objection to the claim. The objection presented two questions of law and several questions of fact. At a status conference on June 25, the court set the factual matters for further evidentiary hearing and reconfirmed its ruling on one of the issues of law (regarding how to calculate the statutory cap on a landlord's claim under 11 U.S.C. § 502(b)(6)).[1] The court took under submission an issue involving the interpretation of a rent abatement clause contained in an amendment to the governing

---

[1] The identical issue was presented in Debtor's objection to the claim of another landlord, and at a hearing on June 18, 2010, the court sustained Debtor's objection. Counsel for Columbia participated in that hearing. At the June 25 status conference, the parties stipulated that the argument, discussion and ruling on the record at the June 18 hearing would apply to the present dispute between Debtor and Columbia.

-1-

lease.[2] For the reasons set forth below, the court will overrule Debtor's objection to Columbia's claim for abated rent in the approximate amount of $2.1 million.

On December 18, 2001, Columbia's predecessor-in-interest and Debtor entered into an amended and restated lease agreement ("Original Lease") for office space in Seattle, Washington (the "Premises"). The Original Lease was amended several times; for purposes of this Memorandum Decision, the relevant amendment is the Fourth Amendment entered on October 9, 2006.

The Fourth Amendment extended the expiration term of the Original Lease (as amended) from August 31, 2008, to August 2018. Section 3 of the Fourth Amendment provides that "so long as Tenant [Debtor] is not in default under the Lease[3] beyond any applicable notice and cure or grace period," Debtor would be entitled to an abatement of base rent and storage space rent

---

[2] Debtor conceded in its reply that the interpretation of the rent abatement clause "presented a question of law" and the Ninth Circuit has held that "[c]ontract interpretation is a question of law[.]" Doe 1 v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009). While interpretation of an ambiguous contract term may involve questions of fact regarding the parties' intent, the contract term at issue here is unambiguous, and the court can resolve the dispute without an evidentiary hearing. See B.L.R. 3007-1(b).

[3] Recital A of the Fourth Amendment defines "Lease" as the Original Lease, together with amendments dated April 18, 2002, December 20, 2003. Section 18.02 provides that "[e]xcept as herein modified or amended, the provisions, conditions and terms of the Lease shall remain unchanged and in full force and effect." Section 1 of the Fourth Amendment extends the Lease by 120 months and Section 2 sets forth a schedule for the payment of the base rent, with installments due in advance on the first day of each calendar month during the extended term. Section 32(a) of the Original Lease states that the failure to pay rent when due constitutes an event of default, if the failure to pay continues for ten days after notice of default is given.

Case: 08-32514    Doc# 1296    Filed: 07/01/10    Entered: 07/02/10 10:36:54    Page 2 of 5

"during the period beginning (retroactively) on July 1, 2006, and ending on December 31, 2006."[4]  Debtor concedes that it stopped paying rent under the Lease on October 1, 2008 (see paragraph 4 of Debtor's objection to Columbia's claim), that Columbia filed a state court action in November 2008 based on Debtor's default on the Lease, and that the state court entered a prepetition order directing Debtor to restore possession of the Premises to Columbia.

Debtor construes Section 3 of the Fourth Amendment as providing that as long as it did not default in its performance of its obligations under the Lease between July 1 and December 31,

---

[4]Section 3 of the Fourth Amendment provides:

<u>Abated Base Rent</u>.  Notwithstanding anything in the Lease to the contrary, so long as Tenant is not in default under the Lease beyond any applicable notice and cure or grace period, Tenant shall be entitled to an abatement of Base Rent applicable to the Premises and Storage Space Base Rent during the period beginning (retroactively) on July 1, 2006, and ending on December 31, 2006 (the "Base Rent Abatement Period") in the amount of $350,460.83 per month for the period beginning July 1, 2006 and ending August 31, 2006, and $359,741.67 per month for the period beginning September 1, 2006, and ending December 31, 2006.  The total amount of Base Rent abated in accordance with the foregoing shall equal $2,139,888.33 (the "Abated Base Rent").  During the Base Rent Abatement Period, only Base Rent for the Premises and Storage Space shall be abated, and all Additional Rent and other costs and charges specified in the Lease shall remain as due and payment pursuant to the provisions of the Lease.

If, due to the retroactive abatement of Base Rent set forth in the preceding paragraph, Tenant has overpaid Base Rent for the Premises and the Storage Space, Landlord shall refund the same to Tenant within 30 days following the date of full execution and delivery of this Amendment.  Notwithstanding the foregoing, Landlord shall have no obligation to refund such sum during any period in which Tenant is in default under the Lease beyond any applicable notice and cure or grace period, but such obligation shall resume at such time as Tenant is no longer in default.

-3-

2006, it was entitled to a cancellation of any base rent and storage rent that accrued during that time period. Columbia, however, contends that Debtor was entitled to an abatement of the rent accruing during that time period (equaling $2,139,888.33) only if Debtor did not default in its performance of the Lease as extended.

The court agrees with Columbia's interpretation. Section 3 unambiguously entitles Debtor to an abatement of rent so long as Debtor was not in default under the Lease. Debtor admittedly defaulted in its performance of the Lease in October 2008. Section 3 of the Lease does not state or provide that the default must occur between July 1, 2006 and December 31, 2006. The reference to those dates describes what base and storage rent was abated; it does not modify the term "default" in the prior clause. Debtor's interpretation is inconsistent with the language and construction of the contract.

Moreover, Debtor's interpretation is not reasonable, as it renders the default provision in the first sentence of Section 3 meaningless. Debtor was not obligated to pay base rent or storage rent during the abatement period, and Debtor was given retroactive credit for three months (July-October 2006). Thus, an interpretation that grants an abatement of rent if the Debtor performs during the abatement period is essentially a cancellation of rent altogether. But Section 3 does not provide for such a cancellation, and conditions the abatement on Debtor's non-default under the Lease.

Following resolution of the factual issues (currently set for hearing on October 18, 2010), the court will enter an order

-4-

finally disposing of both legal issues already decided and the presently unresolved factual issues.

**END OF MEMORANDUM DECISION**