John D. Fiero (CA Bar No. 136557)
Kenneth H. Brown (CA Bar No. 100396)
Teddy M. Kapur (CA Bar No. 242486)
PACHULSKI STANG ZIEHL & JONES LLP
150 California Street, 15th Floor
San Francisco, California 94111-4500
Telephone: 415/263-7000
Facsimile: 415/263-7010

E-mail: jfiero@pszjlaw.com
        kbrown@pszjlaw.com
        tkapur@pszjlaw.com

Attorneys for Heller Ehrman LLP,
Debtor and Debtor in Possession

Steven H. Felderstein (CA Bar No. 56978)
Thomas A. Willoughby (CA Bar No. 137597)
Jason Rios (CA Bar No. 190086)
Christopher Crowell (CA Bar No. 253103)
FELDERSTEIN FITZGERALD WILLOUGHBY &
PASCUZZI LLP
400 Capitol Mall, Suite 1450
Sacramento, CA 95814
Telephone: (916) 329-7400
Facsimile: (916) 329-7435

Attorneys for The Committee of Unsecured Creditors

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re: | Case No.: 08-32514 |
| Heller Ehrman LLP, | Chapter 11 |
| Debtor. | **OMNIBUS REPLY TO OBJECTIONS TO JOINT PLAN OF LIQUIDATION OF HELLER EHRMAN LLP (MAY 14, 2010)** |
| | Date: July 19, 2010 |
| | Time: 1:30 p.m. |
| | Place: United States Bankruptcy Court |
| | 235 Pine Street, 22nd Floor |
| | San Francisco, CA |
| | Judge: Honorable Dennis Montali |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# TABLE OF CONTENTS

**Page**

I. STATEMENT OF FACTS .................................................................................................... 1
    A.   Class 9 Subordinated Former Shareholder Claims ...................................................... 1
    B.   Former Shareholder Equity Investments ...................................................................... 2
    C.   The Objecting Shareholders ......................................................................................... 2
        1.   Michael Shepard Objection ................................................................................ 2
        2.   Class of 2006 Objecting Shareholders .............................................................. 3

II. DISCUSSION ................................................................................................................... 4
    A.   The Objections must be Overruled if the Liquidation Plan is Fair and Equitable to Class 9 and Does Not Discriminate Unfairly .............................................................. 4
    B.   The Objecting Shareholders' Claims are Subject to Contractual Subordination ......... 5
        1.   The Subordination Provision in the Notes Subordinates the Objecting Shareholders Claims 6
        2.   The Plan of Dissolution Subordinates the Objecting Shareholders Claims ........ 7
    C.   The Objecting Shareholders' Claims are Subject to Statutory Subordination ............. 8
        1.   Ninth Circuit Standard Under Bankruptcy Code Section 510(b) ....................... 9
        2.   Section 510(b) Subordinates the Claims of all Former Shareholders ................. 9
        3.   Section 510(b) Subordinates the Claims of the Objecting Shareholders ............ 11
    D.   California Corporations Code § 16957 Subordinates the Objecting Shareholders' Claims ... 12

III. CONCLUSION ............................................................................................................... 13

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*American Wagering*
  493 F.3d 1072 (2007) ................................................................................................ 9, 10
*Baldwin Contracting Co. v. Carl M. Buck Bldg. Co.*
  206 Cal. App. 2d 171 (1962) ............................................................................................ 12
*Dugan v. Pettijohn*
  134 Cal. App. 2d 133 (1955) ............................................................................................ 12
*In re Acequia*
  787 F.2d 1352 (9th Cir. 1986) ............................................................................................ 4
*In re Alta+Cast, LLC*
  301 B.R. 150 (Bankr. D. Del. 2003) .................................................................................. 6
*In re Am. Wagering, Inc.*
  493 F. 3d 1067 (9th Cir. 2007) ........................................................................................... 9
*In re Betacom of Phoenix, Inc.*
  240 F.3d 823 (9th Cir. 2001) ................................................................................... 9, 10, 11
*In re Granite Partners, L.P.*
  208 B.R. 332 (Bankr. S.D.N.Y. 1997) ............................................................................. 8, 9
*In re Greate Bay Hotel & Casino, Inc.*
  251 B.R. 213 (Bankr. D.N.J. 2000) .................................................................................... 7
*In re JTS Corp.*
  305 B.R. 529 (Bankr. N.D. Cal. 2003) ......................................................................... 9, 11
*In re Micro-Acoustics Corp.*
  34 B.R. 279 (Bankr. S.D.N.Y. 1983) ................................................................................. 5
*In re Montgomery Ward Holding Corp.*
  272 B.R. 836 (Bankr. D. Del. 2001) ................................................................................ 6, 7
*In re Southeast Banking Corp.*
  156 F.3d 1114 (11th Cir. 1998) .......................................................................................... 5
*In re Western Distrib. Ctrs.*
  1994 U.S. App. LEXIS 26221 (9th Cir. Sept. 16, 1994) ................................................... 5
*Newton National Bank v. Newbegin*
  74 F. 135 (8th Cir. 1896) .................................................................................................... 5
*Shackelford v. Metricom, Inc.*
  2006 U.S. Dist. LEXIS 73133 (N.D. Cal. Sept. 22, 2006) ................................................ 9

## Statutes
11 U.S.C. § 1129(a) ............................................................................................................ 4
11 U.S.C. § 1129(a)(10) ...................................................................................................... 4
11 U.S.C. § 510(b) .............................................................................................. 8, 9, 10, 11
Bankruptcy Code section 510(a) ...................................................................................... 5, 9
Bankruptcy Code section 502(h) .......................................................................................... 3
California Corporations Code § 16957 ........................................................................... 11, 12
California Uniform Commercial Code § 1310 ...................................................................... 5
Uniform Commercial Code § 9-339 ..................................................................................... 6

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1   Heller Ehrman LLP, the debtor and debtor in possession in the above-titled chapter 11 case

2   (the "Debtor"), and the Official Committee of Unsecured Creditors (the "Committee," and together

3   with the Debtor, the "Proponents") submit this reply to the formal objections made to the *Joint Plan*

4   *of Liquidation of Heller Ehrman LLP (May 14, 2010)* (the "Liquidation Plan") [Docket No. 1152]

5   that was filed by the Debtor and the Committee on or about May 25, 2010.  Six former shareholders

6   of the Debtor's corporate partners (the "Heller PCs") filed objections to the Liquidation Plan.  Paul

7   M. Booth, John P. Isacson, David W. Laub and Colin G. Sandercock joined to file the *Objections of*

8   *Year 2006 Departed Former Shareholders to Joint Plan of Liquidation* [Docket No. 1225]; James N.

9   Czaban filed the *Objection of October 2006 Note-Holder to Joint Plan of Liquidation* [Docket No.

10  1236]; and Michael J. Shepard filed the *Objection of Creditor and Former Shareholder Michael J.*

11  *Shepard to Joint Plan of Liquidation of Heller Ehrman LLP* [Docket No. 1274] (collectively, the

12  "Objecting Shareholders").

13  The Objecting Shareholders contend that the Liquidation Plan impermissibly distinguishes

14  their claims from general unsecured claims and unlawfully subordinates them to the payment of all

15  other unsecured debt.  In response, the Proponents will explain that the Bankruptcy Code, the

16  promissory notes issued to the Objecting Shareholders, the Debtor's Plan of Dissolution, and the

17  California Corporations Code each provide independent bases for subordination.  The Liquidation

18  Plan therefore can be confirmed because it is fair and equitable and it does not discriminate unfairly.

19  **I.**

20  **STATEMENT OF FACTS**

21  **A.      Class 9 Subordinated Former Shareholder Claims**

22  The Liquidation Plan classifies certain claims of former shareholders of the Heller PCs (the

23  "Former Shareholders") as Class 9 Subordinated Former Shareholder Claims.  Class 9 includes

24  claims based on promissory notes issued by the Debtor to the relevant Heller PC (and then assigned

25  to an individual shareholder) in connection with the redemption of the shareholder's equity interest

26  in one of the Heller PCs upon their departure from the firm (the "Notes").  These claims are

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

subordinate to the payment of all other Classes[1] of Claims under the Liquidation Plan. Liquidation Plan, Articles 2.2.9 and 4.9.

**B.      Former Shareholder Equity Investments**

The Former Shareholders made equity investments in the Debtor when they purchased preferred shares of a Heller PC. The Former Shareholders bargained for their positions as owners of the Heller PCs and expected to participate in the Debtor's profits. As equity investors in the Heller PCs, whose interests were tied to the Former Shareholders' legal practice on behalf of the Debtor, the Former Shareholders assumed the risk associated with the Debtor's business success or failure and held expectations that are similar to investors rather than creditors. The Debtor's creditors presumably understood that the Former Shareholders had made investments in the Debtor before they decided to extend credit to the Debtor or the Heller PCs, and relied on those contributions in assessing the risk of their loans and business dealings with the Debtor.

**C.      The Objecting Shareholders**

The Objecting Shareholders assert three primary arguments against the subordination of their claims. First, the Objecting Shareholders maintain that their claims should not be subject to subordination because their Notes are debt instruments and they did not own any equity in or receive capital or profits from the Debtor after their resignation from the firm in 2006. Second, the Objecting Shareholders argue that the subordination provision in the Notes does not affect their claims because the provision only relates to bank loans, which have been or will be paid in full. Third, Objecting Shareholders state that the various types of subordination recognized under section 510 of the Bankruptcy Code do not apply to their claims. In particular, the Objecting Shareholders argue that section 510(b) does not pertain to their claims because they do not own stock in the Debtor and do not seek rescission of or damages from a purchase or sale of a security.

1.      Michael Shepard Objection

With regard to objecting party Michael Shepard, the Debtor's records show that he voted in favor the Debtor's Plan of Dissolution, which was adopted by the Debtor on or about September 26, 2008 (the "Plan of Dissolution"). A true and correct copy of the Plan of Dissolution is attached as

---

[1] Undefined capitalized terms used herein shall have the meaning ascribed to them in the Liquidation Plan.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1  Exhibit A to the *Declaration of Shelley Salinero in Support of Confirmation of Joint Plan of*

2  *Liquidation* (the "Salinero Declaration").  The Plan of Dissolution makes clear at Section XI.E that

3  "[t]here will be nor return of capital . . . and no payment of any kind made to former or retired

4  Shareholders until such time as all of the legal obligations of the Firm-in-Dissolution to third party

5  creditors are satisfied, except if permitted by the Firm's senior secured lenders Shareholders' [sic]

6  may pursue claims for compensation for services rendered prior to their departure or contractual

7  rights arising from or related to their employment."  Salinero Declaration, ¶ 3.

8         The Debtor's obligations to third party creditors have not been satisfied.  Although the claims

9  reconciliation and litigation process is not complete, it is fair to say that, excluding any claims

10  arising under Bankruptcy Code section 502(h), the allowed general unsecured claims in this case

11  will exceed $70 million.  Also, the Debtor's senior secured lenders (Bank of America, N.A. and

12  Citibank, N.A. (collectively, the "Banks")) have not agreed to allow shareholders to pursue claims

13  for compensation.  Salinero Declaration, ¶ 4.

14         Mr. Shepard also seeks to ensure that any right to indemnity that he might have from the

15  Debtor is not affected by the Liquidation Plan.  The Debtor's pending settlement with MPC

16  Insurance, Ltd. should resolve all of Mr. Shepherd's concerns with regard to defense of any actions

17  against him.  *See Motion Pursuant to Bankruptcy Rule 9019(a) for Approval of Settlement and*

18  *Compromise with MPC Insurance, Ltd.* [Docket No. 1307].

19         2.     Class of 2006 Objecting Shareholders

20         The Objecting Shareholders contest their inclusion in Class 9 under the Liquidation Plan

21  based on their claims arising from the Notes they were issued upon their resignation from the firm.

22  Based upon its review of their Notes, the Debtor believes they were issued by the Debtor pursuant to

23  the terms of a Shareholders Agreement substantially in the form the document attached as Exhibit B

24  to the Salinero Declaration.  Section 3 (entitled "Effect of Termination of Employment") dictates

25  that the form of note to be given to a departing shareholder who does not retire is described as "an

26  unsecured subordinated promissory note . . ." (Section 3.4(b)).  Salinero Declaration, ¶ 5.

27         The form of such Notes recites that "[p]ayment of principal of and interest on this note is

28  subordinate to the prior payment of indebtedness of the Firm for borrowed money; provided

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    however that payments hereunder shall be payable when due if at such time the Firm is not in default

2    with respect to any such indebtedness."  The Debtor has been since at least September 2008 (and

3    remains now) in default of its obligations to the Banks because the debt owed to the Banks has not

4    been fully repaid.  Additionally, in the event the Banks repay the monies which are the subject of the

5    pending preference lawsuit, the Banks will have a very substantial unsecured claim in the

6    bankruptcy case.  Finally, the Banks take the position that their claim in the bankruptcy case also

7    includes several million dollars worth of unpaid attorneys' fees.  Salinero Declaration, ¶ 6.

8                                                    **II.**

9                                              **DISCUSSION**

10   **A.    The Objections must be Overruled if the Liquidation Plan is Fair and Equitable to Class 9 and Does Not Discriminate Unfairly**

11

12          In this case, the only impaired class that did not accept the Liquidation Plan is Class 9.

13   Under Bankruptcy Code section 1129(a), the Court may confirm a plan of reorganization if each

14   class of impaired claims accepts the plan, or at least one class of claims that is impaired under the

15   plan accepts the plan, "without including any acceptance of the plan by any insider."  11 U.S.C. §

16   1129(a)(10).  In such an instance (which is the case here as Class 7 has overwhelming accepted the

17   Liquidation Plan), Section 1129(b)(1) provides for a "cramdown" that allows confirmation over the

18   objection of a dissenting class provided the plan is fair and equitable and does not unfairly

19   discriminate against any impaired claims, and the plan meets all the statutory requirements of §

20   1129(a).  Here, as discussed below, there can be no question that the Liquidation Plan's adoption of

21   a subordinated Class 9 is permissible under the Bankruptcy Code and, as a result, the Liquidation

22   Plan can be confirmed because it is fair and equitable and it does not discriminate unfairly.

23          For a class of unsecured claims, a plan will be considered "fair and equitable" if the plan

24   provides that each holder of a claim of such class receive or retain property of a value, as of the

25   effective date of the plan, equal to the allowed amount of such claim, or the holder of any claim or

26   interest that is junior to the claims of such class will not receive any property under the plan.

27   1129(b)(2)(B)(i) and (ii).  That is undeniably the case here.  As for unfair discrimination, as

28   explained by the Ninth Circuit in *In re Acequia*, 787 F.2d 1352 (9th Cir. 1986), "the concept of

unfair discrimination applies to plans in which claims or interests have been subordinated. *See* Sponsors' Remarks, 124 Cong.Rec. H11, 104 (daily ed. Sept. 28, 1978) (statement of Rep. Edwards); 124 Cong.Rec. S17, 420 (daily ed. Oct. 6, 1978) (statement of Sen. DeConcini). The Collier treatise states that this provision requires that a plan 'allocate[ ] value to the class in a manner consistent with the treatment afforded to other classes with similar legal claims against the debtor.'" *Id.* at 1364 (citations omitted). Here, Class 9 is not being treated unfairly because there is no other class with "similar legal claims against the debtor" that is being treated differently. As discussed below, only Former Shareholders have claims addressed specifically by the Plan of Dissolution or the promissory notes they received in connection with the repurchase of their equity.

Moreover, it goes without saying that the separate classification of (and subordination of) stock repurchase-based claims is neither novel nor controversial. In *In re Micro-Acoustics Corp.*, 34 B.R. 279 (Bankr. S.D.N.Y. 1983), a shareholder filed a proof of claim based upon the debtor's pre-bankruptcy election to repurchase his stock. The shareholder's claim was classified separately under the plan, and subordinated to general unsecured claims. The shareholder/creditor objected to the plan on the basis that the separate classification of his equity interest-based claim prevented cram down. The Bankruptcy Court prefaced its remarks with the observation that "[i]n scrutinizing claims by stockholders in bankruptcy cases, courts must view with suspicion the temptation on the part of stockholders to lay aside their garb as equity owners and assume the role of creditors." 34 B.R. at 282 (*citing Newton National Bank v. Newbegin*, 74 F. 135, 140 (8th Cir. 1896). The *Micro-Acoustics* court disagreed with the notion that cram down was not available because Bankruptcy Code section 1129(b)(1) only requires that a plan be "fair and equitable with respect to a class" and then concluded that "[t]he debtor's plan of reorganization may separately designate the objectant's $700,000 claim arising out of the debtor's stock repurchase election in a class that is subordinate to the claims of the debtor's general creditors." *Id.*

**B.** **The Objecting Shareholders' Claims are Subject to Contractual Subordination**

Section 510(a) of the Bankruptcy Code provides that "a subordination agreement is enforceable in a case under this title to the same extent that such agreement is enforceable under applicable nonbankruptcy law." Typically state law governs disputes concerning the enforceability

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

of a subordination agreement. *See In re Southeast Banking Corp.*, 156 F.3d 1114, 1121 (11th Cir. 1998); *In re Western Distrib. Ctrs.*, 1994 U.S. App. LEXIS 26221 (9th Cir. Sept. 16, 1994). Subordination agreements are enforceable under California law. *See In re Western Distrib. Ctrs.* at *6 ("Subordination agreements are enforceable under California law"); California Uniform Commercial Code § 1310 ("An obligation may be issued as subordinated to performance of another obligation of the person obligated"); U.C.C. § 9-339 ("This article does not preclude subordination by agreement by a person entitled to priority").

Courts have enforced contractual subordination provisions in the context of claims brought by a debtor's former employees such as those asserted here. *In re Alta+Cast, LLC*, 301 B.R. 150 (Bankr. D. Del. 2003); *In re Montgomery Ward Holding Corp.*, 272 B.R. 836 (Bankr. D. Del. 2001). In *In re Alta+Cast*, for instance, a former employee filed a claim based on a jury verdict that Alta+Cast, LLC breached his employment agreement. The employment agreement provided that Alta+Cast would repurchase the claimant's membership interest in the company pursuant to a promissory note that would be subordinated to any debt owed by the company. *In re Alta+Cast, LLC*, 301 B.R. at 153. The court upheld the subordination provision in the claimant's employment agreement and ruled that the claim was subordinated under section 510(a) of the Bankruptcy Code. *Id.*

Similarly here, the Notes issued to the Objecting Shareholders and the Plan of Dissolution contain explicit subordination provisions that are enforceable under section 510(a) and California state law.

1.  The Subordination Provision in the Notes Subordinates the Objecting Shareholders Claims

The Notes contain an express subordination provision that subordinates distributions thereunder to the payment of the Debtor's loans and prohibits payments to noteholders as long as the Debtor remains in default under such indebtedness. Each Note issued to the Objecting Shareholders includes the following subordination provision (the "Subordination Provision"):

> Payment of principal of and interest on this note is subordinate to the prior payment of indebtedness of the Firm for borrowed money; provided, however, that payments hereunder shall be payable when due if at such time the Firm is not in default with respect to any such indebtedness.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

The Notes were issued by the Debtor pursuant to the terms of the Shareholders Agreement, which explicitly provides that each Note must be "an unsecured subordinated promissory note." Salinero Declaration, ¶ 5. The Subordination Provision was authorized by the Shareholders Agreement and is a binding contractual provision. *See In re Montgomery Ward Holding Corp.*, 272 B.R. at 841; *In re Greate Bay Hotel & Casino, Inc.*, 251 B.R. 213, 226 (Bankr. D.N.J. 2000) (both cases recognize the enforceability of subordination provisions in promissory notes).

The Subordination Provision applies to the Objecting Shareholders' claims because the Debtor has not fully repaid its debt owed to the Banks and remains in default of its obligations. Salinero Declaration, ¶ 6. Even if the Committee prevails in the Bank of America Preference Action and the Banks repay sums received from the Debtor during the preference period, the Banks would retain a substantial unsecured claim in the bankruptcy case that could include several million dollars worth of unpaid attorneys' fees. *Id.* In addition, the Banks would be entitled to a Class 7 General Unsecured Claim under Bankruptcy Code section 502(h). Liquidation Plan, Article 4.7. The Subordination Provision would remain binding because the Debtor still would be indebted to the Banks, and consequently the Objecting Shareholders would not be permitted to receive distributions until the Banks' Class 7 General Unsecured Claims were paid in full. Under these circumstances, the outcome of the Bank of America Preference Action would not alter the subordination of the Objecting Shareholders' claims.

2.    The Plan of Dissolution Subordinates the Objecting Shareholders Claims

The Debtor's Plan of Dissolution also contractually subordinates the claims of the Objecting Shareholders to third party creditors. Section XI, Paragraph E of the Plan of Dissolution, states:

> There will be no return of capital to any Shareholder, recently departed Shareholder, or former or retired Shareholder and no payment of any kind made to former and/or retired Shareholders until such time as all of the legal obligations of the [Debtor] to third party creditors are satisfied, except if permitted by the [Debtor's] senior secured lenders Shareholders' may pursue claims for compensation for services rendered prior to their departure or other expenses or contractual rights arising from or related to their employment.

The Plan of Dissolution unambiguously prohibits the Debtor from making a "payment of any kind" to Former Shareholders until all of the Debtor's legal obligations to third party creditors have been satisfied. The Debtor has outstanding obligations to third party creditors. Although the claims

DOCS_LA:224975.7

1  reconciliation and litigation process is not complete, it is fair to say that, excluding any claims

2  arising under Bankruptcy Code section 502(h), the allowed general unsecured claims in this case

3  will exceed $70 million.  Also, the Banks have not agreed to allow Former Shareholders to pursue

4  claims for compensation.  Salinero Declaration, ¶ 4.

5        Contrary to the Objecting Shareholders' assertions, the Plan of Dissolution's restrictions

6  encompass the Debtor's return of capital as well as other forms of distribution.  Even if the

7  subordination provision was limited to payments of return of capital, it would restrict payment of the

8  Objecting Shareholders' claims because the Notes were issued to allow the Debtor to repay capital

9  contributions over several years.  In effect, payments under the Notes serve as a return of capital to

10  Former Shareholders.

11        Furthermore, the Objecting Shareholders' contention that they are not bound by the Plan of

12  Dissolution is unpersuasive.  The Plan of Dissolution regulates the Debtor's actions and does not

13  require the Objecting Shareholders' consent to be enforceable against the Debtor.  The Plan of

14  Dissolution was duly enacted by the Debtor prepetition.  It governs the Debtor's actions and applies

15  to payments to any Former Shareholder, including each of the Objecting Shareholders.

16  **C.        The Objecting Shareholders' Claims are Subject to Statutory Subordination**

17        Bankruptcy Code section 510(b) mandates the subordination of claims such as the ones held

18  by the Objecting Shareholders that arise from obligations to repay equity investments in a

19  partnership.  Section 510(b) effectuates the fundamental tenet of bankruptcy law that a debtor's

20  creditors should be paid ahead of equity holders in the distribution of corporate assets.

21        Specifically, section 510(b) of the Bankruptcy Code provides:

22        [A] claim arising from rescission of a purchase or sale of a security of the
        debtor or of an affiliate of the debtor, for damages arising from the
23        purchase or sale of such a security, or for reimbursement or contribution
        allowed under section 502 on account of such a claim, shall be
24        subordinated to all claims or interests that are senior to or equal the claim
        or interest represented by such security.

25  11 U.S.C. § 510(b).

26        Statutory subordination of equity claims is premised upon the allocation of certain risks

27  between investors and creditors.  "Both investors and creditors accept the risk of enterprise

28  insolvency," but to differing degrees, as reflected in the absolute priority rule.  *In re Granite*

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

*Partners, L.P.,* 208 B.R. 332, 336 (Bankr. S.D.N.Y. 1997). Whereas creditors only expect repayment of a fixed debt, shareholders expect to take more risk than creditors in return for the right to participate in firm profits. Therefore, "[i]t is unfair to shift all of the risk to the creditor class since the creditors extend credit in reliance on the cushion of investment provided by shareholders." *In re Betacom of Phoenix, Inc.*, 240 F.3d 823, 829 (9th Cir. 2001); *see In re Granite Partners, L.P.,* 208 B.R. at 336-37.

    1.  <u>Ninth Circuit Standard Under Bankruptcy Code Section 510(b)</u>

    The different expectations between creditors and investors underlie the analytical framework Ninth Circuit courts employ to determine whether claims should be subject to statutory subordination. *In re Betacom of Phoenix, Inc.* ("*Betacom*") set forth the Ninth Circuit standard for statutory subordination pursuant to section 510(b) of the Bankruptcy Code. *In re Am. Wagering, Inc.*, 493 F. 3d 1067, 1072 (9th Cir. 2007); *Shackelford v. Metricom, Inc.*, 2006 U.S. Dist. LEXIS 73133 (N.D. Cal. Sept. 22, 2006). *Betacom* emphasized that investors expect to take more risks than creditors when they deal with a corporate entity. Accordingly, mandatory subordination pursuant section 510(b) is appropriate when (1) dissimilar risk and return expectations exist between creditors and shareholders, and (2) creditors have relied on the equity cushion provided by shareholder investment. *Betacom*, 240 F.3d at 830. *Betacom* calls upon courts to assess whether the policies and goals underlying section 510(b) support subordination in the circumstances before them. *Id.*; *American Wagering*, 493 F.3d at 1072 ("section 510(b) should be interpreted broadly in order to effectuate the intent of Congress. This principle was recognized in our earlier opinion, [*Betacom*], which examined the scope of section 510(b) and is the governing precedent on section 510(b) in the Circuit"); *In re JTS Corp.*, 305 B.R. 529, 545 (Bankr. N.D. Cal. 2003).

    2.  <u>Section 510(b) Subordinates the Claims of all Former Shareholders</u>

    Here, the claims of the Former Shareholders, including the Objecting Shareholders, are statutorily subordinated pursuant to section 510(b) under the *Betacom* standard because (i) the Former Shareholders were equity investors in the Heller PCs (and, by extension, in the Debtor), and (ii) creditors presumably understood that the Former Shareholders had made investments in the Debtor before they decided to extend credit to the Debtor or the Heller PCs.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    Although the Former Shareholders made capital contributions to the firm through the

2    purchase of preferred shares in a particular Heller PC rather than the Debtor, this structural

3    distinction should not shield them from mandatory subordination because they enjoyed the benefits

4    of equity ownership in the Debtor. First, section 510(b) subordinates equity investments in a debtor,

5    as well as investments in "an affiliate of the debtor" such as the Heller PCs. Second, as equity

6    investors in the Heller PCs, whose interests were tied to the Former Shareholders' legal practice on

7    behalf of the Debtor, the Former Shareholders assumed the risk associated with the Debtor's

8    business success or failure. The Former Shareholders bargained for their positions as owners of the

9    Heller PCs and expected to participate in the Debtor's profits. *Cf. American Wagering*, 493 F.3d at

10   1072 (ruling that section 510(b) did not apply to a claimant because he had never been or sought to

11   be a shareholder of the debtors). Indeed, *Betacom* recognized that the rationale regarding investment

12   expectations can apply even if a claimant does not receive stock in the debtor. The Ninth Circuit

13   reasoned, "[e]ven if an investor never receives her promised shares, she entered into the investment

14   with greater financial expectations than the creditor. The creditor can only recoup her investment;

15   the investor expects to participate in firm profits." *Betacom*, 240 F.3d at 830. The House Report on

16   section 510 also emphasized that potential equity investors enjoy the opportunity for investment

17   appreciation that is not shared by creditors. The report observed, "the general creditors have not had

18   the potential benefit of the proceeds of the enterprise deriving from ownership of the securities and it

19   is inequitable to permit shareholders that have had this potential benefit to shift the loss to general

20   creditors." H. Rep. 95-595 at 195, cited in *Betacom*, 240 F.3d at 830.

21        Moreover, subordination of the Former Shareholders' claims is appropriate because the

22   Debtor's creditors relied on contributions of the Former Shareholders in assessing the risk of their

23   loans and business dealings with the Debtor. *See Betacom*, 240 F.3d at 830. The Debtor's creditors

24   presumably took note of the Former Shareholders' capital contributions before they decided to

25   extend credit to the Debtor. Consequently, Ninth Circuit case law holds that the Former

26   Shareholders do not have the same rights to recover their capital as creditors who relied on the

27   equity cushion provided by the Former Shareholders' investments. *See id.* at 831.

28

DOCS_LA:224975.7

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

3.    Section 510(b) Subordinates the Claims of the Objecting Shareholders

Although the Objecting Shareholders seek to characterize their claims as debt obligations because their preferred shares in a Heller PC were exchanged for Notes, the Ninth Circuit has not deviated from employing the *Betacom* standard in this context. In *Betacom*, the court subordinated claims based on promissory notes the claimants received from the debtor as well as claims stemming from breach of a merger agreement. The court observed, "[i]f the promissory note claims are linked to the Merger Agreement, they should be subordinated along with the breach of contract claim." *Betacom*, 240 F.3d at 831, 832. Similarly in *JTS Corp.*, 305 B.R. 529, the Bankruptcy Court for the Northern District of California applied *Betacom* to determine section 510(b)'s applicability to a potential debt servicing arrangement. *JTS Corp.* warned that "[i]f an equity investor is allowed to re-characterize investment losses, the investor could effectively circumvent the absolute priority rule's risk allocation provisions that require a debtor to pay creditors ahead of equity." *Id.* at 545. The court assessed the parties' expectations at the time of the original transaction and evaluated whether the claim attempted to recoup lost investment value. *Id.*

Here, the Objecting Shareholders seek to recoup lost investment value for their capital contributions to the Heller PCs in a manner that contravenes Ninth Circuit case law. The Objecting Shareholders made equity investments in the Debtor when they purchased preferred shares of a Heller PC. At the time of that transaction, the Objecting Shareholders held expectations that are similar to investors rather than creditors. Accordingly, the Objecting Shareholders should remain in Class 9 as Former Shareholder Claims and should not be permitted to circumvent the absolute priority rule and receive payments pro rata with unsecured creditors. Given the policies and goals underlying statutory subordination, section 510(b) therefore subordinates the Objecting Shareholders' claims to the payment of all other classes of claims.[2]

---

[2] A couple of Delaware decisions have held that section 510(b) does not require subordination when a claimant's equity has been exchanged for promissory notes (*i.e. In re Mobile Tool Int'l, Inc.*, 306 B.R. 778 (Bankr. D. Del. 2004)). These rulings are not controlling and have been criticized by the Ninth Circuit Bankruptcy Appellate Panel as "unpersuasive" and contrary to the Supreme Court's decision in *Archer v. Warner*, 538 U.S. 314 (2003). *American Wagering.*, 326 B.R. 449, 456 (B.A.P. 9th Cir. 2005), *rev'd on other grounds,* 465 F.3d 1048 (9th Cir. 2006). In accordance with Ninth Circuit and Supreme Court precedent, the Objecting Shareholders' exchange of preferred shares for Notes does not alter the underlying equity nature of their capital contribution to the firm. *See Archer*, 538 U.S. at 320.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**D.     California Corporations Code § 16957 Subordinates the Objecting Shareholders' Claims**

Lastly, the Objecting Shareholders' claims are subordinated under California Corporations Code section 16957, which forbids an insolvent limited liability partnership from making distributions for no consideration.

Section 16957 provides:

> (a) No distribution shall be made by a registered limited liability partnership if, after giving effect to the distribution:
>
>> (1) The registered limited liability partnership would not be able to pay its debts as they become due in the usual course of business.
>>
>> (2) The registered limited liability partnership's total assets would be less than the sum of its total liabilities plus the amount that would be needed, if the registered limited liability partnership were to be dissolved at the time of the distribution, to satisfy the preferential rights of other partners upon dissolution that are superior to the rights of the partners receiving the distribution.
>
> (b) A cause of action with respect to an obligation to return a distribution is extinguished unless the action is brought within four years after the distribution is made.
>
> (c) A distribution for purposes of this section means the transfer of money or property by a registered limited liability partnership to its partners without consideration.

Cal. Corp. Code § 16957.

Given the Debtor's insolvency and ongoing liquidation, California Corporations Code section 16957 prohibits the Debtor from making distributions to the Former Shareholders.  Any distribution to the Heller PCs or the Former Shareholders at this time would not be supported by consideration because the Former Shareholders have ceased rendering services to the Debtor and the Heller PCs obligations arise from a preexisting duty that was fixed as of the Petition Date. *Dugan v. Pettijohn*, 134 Cal. App. 2d 133, 138 (1955) (ruling that past consideration is insufficient to support a contract); *Baldwin Contracting Co. v. Carl M. Buck Bldg. Co.*, 206 Cal. App. 2d 171, 173 (1962) ("when a party merely agrees to do what he was already obligated by contract to do he cannot demand an additional compensation therefor").

# III.

# CONCLUSION

Based on the foregoing, the Plan Proponents respectfully submit that Bankruptcy Code, the California Corporations Code, the Notes, and the Plan of Dissolution each provide independent bases for subordination of the Objecting Shareholders' claims.  Accordingly, Plan Proponents request that the court overrule the Objecting Shareholders objections and approve the classification of their claims as Class 9 Subordinated Former Shareholder Claims.

Dated: July 8, 2010                     PACHULSKI STANG ZIEHL & JONES LLP

                                        By    */s/ John D. Fiero*
                                              John D. Fiero
                                              Attorneys for Heller Ehrman LLP,
                                              Debtor and Debtor in Possession


Dated: July 8, 2010                     FELDERSTEIN FITZGERALD WILLOUGHBY &
                                        PASCUZZI LLP

                                        By    */s/ Thomas A. Willoughby*
                                              Thomas A. Willoughby
                                              Attorneys for The Official Committee of
                                              Unsecured Creditors

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

DOCS_LA:221975.7