1   Alan D. Smith, Cal. Bar No. 89112
    ADSmith@perkinscoie.com
2   PERKINS COIE LLP
    1201 Third Avenue, Suite 4800
3   Seattle, WA  98101-3099
    Telephone:  206.359.8000
4   Facsimile:  206.359.9000

5   Attorneys for Class of 2006
    Noteholders
6

7

8               UNITED STATES BANKRUPTCY COURT

9               NORTHERN DISTRICT OF CALIFORNIA

10                 SAN FRANCISCO DIVISION

11

12  In re                          CASE NO. 08-32514

13  HELLER EHRMAN LLP,             Chapter: 11

14              Debtor.            DECLARATION OF JOHN ISACSON

15                                 Hearing:

16                                 Date:   July 19, 2010
                                   Time:  1:30 p.m.
17                                 Place:  United States Bankruptcy Court
                                           235 Pine Street, 22nd floor
18                                         San Francisco, CA
                                   Judge:  Honorable Dennis Montali
19

20

21

22

23

24

25

26

27

28

# DECLARATION OF JOHN ISACSON

I, John Isacson, declare as follows:

1.    I was an employee and shareholder at Heller Ehrman until March 10, 2006.  I have personal knowledge of the facts set forth below.

2.    I have reviewed the ballot tabulation prepared by Kyle Everett, Vice-President of Development Specialists, Inc. and dated June 18, 2010, one day after our objection was filed.

3.    The ballot tabulation identified five Former Employees/Shareholders under "Class 7 Claims: Entitled to Vote" ("Class 7 Former Shareholders").  As per the tabulation, the Class 7 Former Shareholders who were entitled to vote were:

> 33.    Robert Borton, Esq. (Claim Nos. 135 and 718)
>
> 72.    Curtis Caton, Esq. (Claim No. 136)
>
> 86.    Robert Epsen, Esq. (Claim No. 681)
>
> 185.    Weyman Lundquist, Esq. (Claim No. 609)
>
> 247.    M. Laurence Popofsky, Esq.(Claim No. 140)

4.    According to the tabulation, each Class 7 Former Shareholder voted to accept the Joint Plan.

5.    Upon information and belief, the Class 7 Former Shareholders were employees and shareholders of Heller Ehrman in the 2007 – 08 time frame.  I attach copies of web bios that indicate that the Class 7 Former Shareholders held this status.

6.    The web bios of Mr. Caton and Mr. Popofsky were found using the advanced search function of the Google Internet Search engine.  The web bios were obtained from the 2008 Heller Ehrman web site from Heller Ehrman server address 216.98.223.78.  See the footer of each web bio page.  The web bios of Mr. Borton, Mr. Epsen and Mr. Lundquist were obtained using

1

the "Way Back Machine".  The Way Back Machine is a non-profit internet archive that has been in operation since 1996.  The Way Back Machine archives web sites at various periods in time. According to the footer, the aforementioned web bios were from the Heller Ehrman web site as it existed in 2007.

7.      I also provide a copy of my employment agreement with a Heller Ehrman PC. Upon information and belief, all employees and shareholders at Heller Ehrman had similar agreements.  I note that I was missing page 15 of my agreement, and I obtained another page 15 from another copy of the agreement at some time in the past.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this Declaration was executed on July 16, 2010, at Kitty Hawk, North Carolina.


*/s/   John Isacson*
John Isacson

1

2

3          EXHIBIT A
           (See attached)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3

# Heller Ehrman LLP

## Attorneys/Professionals



**Robert E. Borton**
*Shareholder*
Consumer Litigation

**San Francisco**
Direct: +1 (415) 772-6498
Fax: +1 (415) 772-6268
robert.borton@hellerehrman.com

Robert Borton joined the firm in 1972 and practices commercial litigation.

## EXPERIENCE

Mr. Borton's commercial litigation practice has emphasized the representation of banks and other financial institutions in consumer cases, trust and probate litigation and real estate issues, including construction defect, broker commission and standard of care cases, easement disputes, lease and license litigation. He has represented commercial banks and other major corporations in complex litigation, including class actions involving bank service charges, consumer services, consumer products advertising, and price/contract unconscionability. He has tried numerous jury and court cases, in both state and federal court, including cases involving commercial real estate sale and broker disputes, construction defects, banking practices and retail operations, negotiable instruments, and civil rights claims. Mr. Borton has devoted a significant part of his practice to managing the firm's Pro Bono practice, including the mentoring and supervision of the firm's associates on numerous small cases. He also oversees the training of litigation attorneys.

Mr. Borton has won a number of pro bono awards, including the State Bar President's Pro Bono Service Award (1987), the Lawyers Committee for Civil Rights Robert Sproul Pro Bono Award (1990), The San Francisco Bar Association Award of Merit (1992), the San Francisco Legal Aid Society's Roll Call for Justice Award (2002), the Opening Doors to Justice Award from the Public Interest Clearinghouse (2004) and the Immigrant Legal Resource Center's Phillip Burton Civil Rights Lawyering Award (2006). He was recognized by the San Francisco Bar Association as an Outstanding Volunteer in Public Service in 1997, 2002, 2004 and 2006. In 1997, he was the recipient of the Richard E. Guggenhime Award (Heller Ehrman's award for Pro Bono service to the community). He is the past Chair of Heller Ehrman's firm-wide Pro Bono Committee, and a member of the San Francisco Lawyers' Committee for Civil Rights. He serves on the Board of the San Francisco Legal Aid Society and he is a past member of the Board of Legal Services for Prisoners With Children. Mr. Borton is an Adjunct Professor at the Boalt Hall School of Law, teaching a course on litigation practice.

At Heller Ehrman, Mr. Borton has mentored associates throughout his career, both through the firm's pro bono practice and as the Shareholder responsible for training of litigation associates at the firm. He has supervised young lawyers in hundreds of cases, including over 500 cases through the Lawyers Committee for Civil Rights. In the course of his training work he has also taught and mentored legal services lawyers, including them in all aspects of his firm's litigation and trial advocacy training.

## EDUCATION

University of Kansas (B.A., 1964); University of Michigan (J.D., *magna cum laude*, 1972).

## ADMISSIONS & COURTS

California state and federal courts, United States Supreme Court, U.S. Court of Appeals for the Ninth Circuit.

## MEMBERSHIPS

American Bar Association (Litigation Section); State Bar of California (Litigation Section); Bar Association of San Francisco.

## REPRESENTATIVE ENGAGEMENTS

- Represented title insurance company in jury trial involving contract breach/fraud in sale of winery. *Alary v. Stimson Lane, Ltd.*
- Represented Plaintiff in Civil Rights/Deliberate Indifference to serious medical need jury trial. *Burns v. City and County of San Francisco.*
- Represented major residential developer in five month jury trial on construction defect and fraud claims. *Sturm, et al. v. Ahmanson, Home Savings of America.*
- Represented Plaintiff in civil rights and excessive force case; prison inmate shot by guards. *Garcia v. Gomez, et al.* This jury case, tried with Associate Joel Jacobs before District Court Judge Thelton Henderson, resulted in a punitive damages judgment against the Warden of the Pelican Bay State Prison.
- Represented manufacturer of lighting and electronic products in defending price discrimination (Robinson -Patman) claims. *Chroma Lighting v. Sylvania.*
- Represented several car rental companies in age discrimination class action. Clients: National Car Rental System and Alamo. *Lazar v. Hertz, et al.*
- Represented manufacturer of lighting and electronic products defending class action claims involving alleged fraudulent advertising of consumer products. *Whelan v. GTE Sylvania/Robarge v. GTE Sylvania.*
- Represented university owner of cogeneration power plant in energy pricing dispute. *Cardinal Cogen v. Stanford University.*
- Represented bank defendants in numerous consumer class action cases, including challenges to the level of check overdraft charges, to the level of credit card late charges, to stop payment charges and to limitations on product availability, and in cases alleging price fixing/unconscionability in credit card and other bank charges. *Rebney v. Wells Fargo Bank* and other bank class action defense cases.
- Represented rental car company defendants in consumer class actions attacking rental car collision damage waiver fees. *Truta v. Avis, et al.*
- Represented plaintiffs in federal civil rights class action challenging government restrictions on access to counsel for refugees applying for political asylum. *Committee of Central American Refugees v. INS.*
- Represented plaintiff in federal action to enforce the Marine Mammal Protection Act and prevent the destruction of dolphins by tuna fishermen using gill nets. *Earth Island Institute v. Mosbacher.* Mr. Borton handled the early stages of this case, with colleague Josh Floum, also before United States District Judge Thelton Henderson.

Contact Us | About This Site | Disclaimer & Privacy | Unsubscribe | Employee Login | **Attorney Advertising** | © Heller Ehrman LLP 2007

Case: 08-32514    Doc# 1327    Filed: 07/16/10    Entered: 07/16/10 09:58:30    Page 6 of 29

**Heller Ehrman** LLP

## Attorneys/Professionals



**Curtis M. Caton**
*Shareholder*

Consumer Litigation
Insurance Recovery
Product Liability

**San Francisco**
Direct: +1 (415) 772-6092
Fax: +1 (415) 772-6268
curt.caton@hellerehrman.com

Curtis M. Caton, former Co-Chair of the firm's Product Liability Practice Group, joined the firm in 1964. He is also the founder and senior member of the firm's Insurance Recovery Practice Group.

### EXPERIENCE

Mr. Caton has had four decades of experience in all aspects of the litigation process including jury and non-jury trials in state and federal courts, appellate advocacy, arbitrations and other alternative dispute resolution techniques. His prior professional engagements have included successful representations across a wide spectrum of subject areas ranging from intellectual property to sports law. More recently, he has concentrated on product liability and insurance coverage matters. He acted as national litigation counsel for the world's largest manufacturer of asbestos-containing insulation products, and currently serves in the same capacity for the leading domestic manufacturer of cigarettes in the tobacco health litigation. He is the senior member of a group of Heller Ehrman attorneys who offer insurance coverage counseling, negotiation and litigation services to policyholder clients. Under his leadership, the coverage practice group has recovered billions of dollars from insurers who had denied defense and indemnity protection to their insureds.

Mr. Caton has been a frequent speaker in programs sponsored by the Practicing Law Institute, Law and Business, Inc., the Defense Research Institute and similar continuing education organizations. Besides insurance-related issues, the subjects of his teaching and writing have included class actions and multi-district litigation; attorney/client and work product privileges in the corporate context; management and coordination of the defense of mass tort claims; enterprise liability and market share theories; and doctrines for imposing tort liability against the U.S. Government.

Mr. Caton has served the profession in a variety of bar-related activities, most recently as Co-Chair of the American Bar Association's Commission on Loan Repayment and Forgiveness. He was formerly National Chair of the ABA Law Firm Pro Bono Project. He has also led various community organizations in Northern California devoted to social service and cultural objectives.

### EDUCATION

University of Santa Clara (A.B., 1961); Harvard Law School (LL.B., 1964).

### ADMISSIONS & COURTS

California.

### MEMBERSHIPS

American Bar Association; State Bar of California; Bar Association of San Francisco.

Contact Us | About This Site | Disclaimer & Privacy | Unsubscribe | Employee Login | **Attorney Advertising** | © Heller Ehrman LLP 2008

Heller Ehrman LLP

## Attorney Biography



### Robert A. Epsen
*Shareholder*

**San Francisco**
Direct: +1 (415) 772-6042
Fax: +1 (415) 772-6268
robert.epsen@hellerehrman.com

Robert Epsen joined the firm in 1971. For over twenty-five years he practiced corporate securities, finance and mergers and acquisitions. He is now the firm's General Counsel.

### EDUCATION

Princeton University (A.B., 1961); Stanford Law School (J.D., 1971).

### ADMISSIONS & COURTS

California.

### MEMBERSHIPS

American Bar Association; State Bar of California; Bar Association of San Francisco.

Contact Us | About This Site | Disclaimer & Privacy | Unsubscribe | Employee Login | **Attorney Advertising** | © Heller Ehrman LLP 2007



## Heller Ehrman LLP

## Attorney Biography

### Weyman I. Lundquist
*Shareholder*

**San Francisco**
Direct: +1 (603) 643-8610
Fax: +1 (603) 643-8615
weyman.lundquist@hellerehrman.com

Weyman I. Lundquist joined the firm in 1963 and has a litigation practice emphasizing financial, consumer and derivative shareholder litigation and insurance defense matters.

### EXPERIENCE

Mr. Lundquist's work has emphasized financial, consumer class actions and derivative shareholder litigation involving major businesses. His practice has also emphasized alternative dispute resolution for both domestic and international matters. Since the 1980s, he has been substantially involved with legal developments in the U.S.S.R./Russia. He has written and lectured extensively on legal malpractice matters.

Mr. Lundquist was recently an Adjunct Professor at Dartmouth College's Amos Tuck Business School, where he teaches a course on "Managing Legal Crises." Currently ,he is the Associate Director of Dartmouth College's Institute of Arctic Studies.

Mr. Lundquist has served on the editorial advisory boards of the University of Texas Law School Review of Litigation, Matthew Bender's *Federal Litigation Guide*, and the American Bar Association Litigation Section Publications Committee. He has twice taught a course on the History of Environmental Law at Dartmouth College. Mr. Lundquist is the author of *The Promised Land and Other Courthouse Adventures*, a fictional work, and *The Art of Shaping the Case; Advocacy in and out of the Courtroom* (Glasser Legal Works, 1998). He has authored numerous articles involving trial practice. Mr. Lundquist is a Director of West Coast Magnetics Company and The American Antiquarian Society and serves as an Advisory Board Member of The University Press of New England.

### EDUCATION

Dartmouth College (A.B., *magna cum laude*, 1952); Phi Beta Kappa; Harvard Law School (J.D., 1955).

### ADMISSIONS & COURTS

California; Massachusetts; Alaska.

### MEMBERSHIPS

Fellow, founder and former Chair, Litigation Section; advisory committees on civil discovery, tort and legislative reform, American Bar Association; State Bar of California; Bar Association of San Francisco; Alaska State Bar Association; Massachusetts Bar Association, Worcester County Bar Association; American College of Trial Lawyers, Fellow.

## REPRESENTATIVE ENGAGEMENTS

- Worked as lead counsel in a number of consumer class actions involving banking charges. He negotiated the pattern settlement for the industry.
- Represented independent directors in the resolution of a major derivative shareholder litigation.
- Lender liability and consumer deceptive practice trials on behalf of banks and other business institutions.
- Negotiated first Russian Far East/American oil company joint venture.
- Former chairman, claims committee of legal malpractice insurance company, working with hundreds of substantial malpractice claims.

Contact Us | About This Site | Disclaimer & Privacy | Unsubscribe | Employee Login | **Attorney Advertising** | © Heller Ehrman LLP 2007



**HellerEhrman** LLP

## Attorneys/Professionals

**M. Laurence Popofsky**
*Shareholder*

Antitrust & Trade Regulation
Appeals & Strategy
Securities Litigation
Corporate Governance

**San Francisco**
Direct: +1 (415) 772-6310
Fax: +1 (415) 772-6268
larry.popofsky@hellerehrman.com

Laurence Popofsky joined the firm in 1962 and practices litigation. He is a member of the Antitrust & Trade Regulation Practice Group. He served as Firm Co-chair from 1988 to 1993.

## EXPERIENCE

Mr. Popofsky has participated in a variety of antitrust and intellectual property matters. He has argued two cases in the U.S. Supreme Court and numerous cases before the California Supreme Court and various state and federal appellate courts. Mr. Popofsky is a member of the American College of Trial Lawyers and was elected to the California Academy of Appellate Lawyers.

Mr. Popofsky is best known for his antitrust practice, including his landmark victory in the United States Supreme Court in *Continental T.V., Inc., et al. v. GTE Sylvania Inc.* More recently, he has led the Heller Ehrman litigation teams representing Visa U.S.A. in litigation involving Dean Witter, Discover and American Express, and served as appellate counsel in *LePage's v. 3M, McKenzie v. PeaceHealth,* and *Masimo v. Tyco* bundling pricing cases. His practice has encompassed all aspects of antitrust jurisprudence, both state and federal, court and agency alike.

Mr. Popofsky was named Antitrust Senior Statesman by Chambers Global and USA 2007 and 2008 (having been placed in its top category in prior years); named Senior Statesman in California litigation in Chambers 2008; named in Best Lawyers of America for over ten consecutive years for antitrust and commercial litigation as well as Bet-the-Company-Litigation 2006-2007; included in Super Lawyer listings each year of its publication as well as in Who's Who in America and Who's Who in American Law, and other honorific listings. Mr. Popofsky was selected as the California Antitrust Lawyer of the Year (1999) by the State Bar Antitrust Section. Mr. Popofsky has lectured extensively on antitrust and related issues, including, most recently, at the Sedona Antitrust Conference in 2006-2007. He has co-chaired the Advanced Antitrust Course on several occasions and is currently on the Antitrust Advisory Committee of the Practising Law Institute. He has written numerous articles in the field of antitrust. He has also served on the Trade Regulation Advisory Board of the Bureau of National Affairs for over 20 years. He was recently invited to testify before the Department of Justice's Antitrust Modernization Commission.

## EDUCATION

State University of Iowa (B.A., *summa cum laude*, 1958), Phi Beta Kappa; Oxford University (B.A., First Class Honors, 1960), Rhodes Scholarship; Harvard Law School (L.L.B., *cum laude*, 1962).

## ADMISSIONS & COURTS

U.S. Supreme Court, U.S. District Courts (Northern, Central and Southern Districts of California; Eastern District of New York), U.S. Courts of Appeals (Federal, 2nd, 3rd, 9th, 10th and 11th Circuits), and all California Courts

## MEMBERSHIPS

American Bar Association; State Bar of California; Bar Association of San Francisco; Fellow, American College of Trial Lawyers; American Bar Foundation; California Historical Society.

Contact Us | About This Site | Disclaimer & Privacy | Unsubscribe | Employee Login | **Attorney Advertising** | © Heller
Ehrman LLP 2008

Case: 08-32514   Doc# 1327   Filed: 07/16/10   Entered: 07/16/10 09:58:30   Page 12
of 29

1
2
3                                    EXHIBIT B
                                    (See attached)
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

4

# EMPLOYMENT AGREEMENT

## (Revised, As Amended Effective April 1, 1998)

THIS IS AN EMPLOYMENT AGREEMENT, dated as of December 28, 2000

(the "Agreement") between HELLER, EHRMAN, WHITE & McAULIFFE, A

PROFESSIONAL CORPORATION, a California professional corporation (the

"Company"), and JOHN P. ISACSON ("Employee").

## BACKGROUND

The Company is a California professional corporation and partner of Heller

Ehrman White & McAuliffe LLP, a California limited liability partnership engaged in the ~~pr~~ 12/21/00

practice of law. Employee is admitted to practice law in ~~California.~~ Maryland, District of Columbia & Illinois This document

describes the agreement of the Company and Employee about Employee's employment

by the Company.

THE PARTIES AGREE AS FOLLOWS:

## 1. Definitions; Glossary

Certain terms used in this Agreement have the meanings given them in the

"Glossary" that accompanies this Agreement. Those definitions are intended to be and

are included as provisions of this Agreement.

## 2.    Employment and Duties

The Company shall employ Employee to perform, and Employee shall perform, legal services, and such other services as may reasonably be requested by the Company. This Agreement and Employee's employment shall continue until this Agreement is terminated in accordance with its Section 9. The precise services of Employee may be extended or curtailed from time to time at the discretion of the Company and shall, in all events, be under the direction and control of the Company. Employee shall not perform legal services as an employee of, or partner with, any person or entity other than the Company. Employee shall follow all policies adopted by the Company.

## 3.    Extent of Service

3.1    Full Time Employment. Employee shall devote substantially all of his or her working time to the business of the Company. The preceding sentence shall not be construed as preventing Employee from investing Employee's personal assets in such form or manner as will not require substantial services of Employee in the operation of the affairs of the companies in which those investments are made. Employee's devotion of reasonable amounts of time for personal business and charitable activities shall not be deemed a breach of this Agreement, provided that those activities do not materially interfere with the services required to be rendered to the Company by Employee under this Agreement.

3.2     Income Related to Practice of Law.  Upon request, Employee shall report to the Company all outside income related to the practice of law, including fiduciary fees, honoraria, arbitrator's fees and compensation for teaching, lecturing or publishing on legal subjects.  That outside income may be considered in determining Employee's compensation as contemplated by Section 4 of this Agreement.

3.3     Activity as Director or Officer.  Employee shall not become or continue as a director or officer of a corporation (whether or not publicly held) without the approval of the Company and the Policy Committee.  Any request for approval shall include the name of the corporation, the proposed position, any compensation which is payable in connection with such position, whether there is director's and officer's insurance coverage and any additional information that may be required under the Company's risk management policies.  Employee shall promptly report any change in this information as required under those policies.

## 4.     Compensation

4.1     Base Salary.  For all services rendered by Employee under this Agreement, the Company shall pay to Employee a salary payable from that portion of the Company's draw under the Partnership Agreement which is attributable to Employee, in such amounts and at such times as are determined by the Company.

4.2    Annual Bonus

(a)    In addition to the Base Salary, the Company may pay to Employee compensation in the form of an annual bonus (the "Annual Bonus").  The Annual Bonus, if any, shall be paid in December of the Fiscal Year in question, or at such other time as the Company may determine.  The amount of the Annual Bonus, if any, and all of its terms and conditions, shall be set by the Company in its discretion; provided, however, that, subject to Section 9.4 of this Agreement: (i) the Annual Bonus shall bear a relationship to the Company's success, to Employee's abilities, and to Employee's contributions to the profitable professional practice of the Company affecting such period and (ii) the sum for the Fiscal Year in question of (A) the Annual Bonus, (B) the Base Salary, (C) all contributions by the Company to any pension or profit sharing plans qualified under the Employee Retirement Income Security Act of 1974 ("ERISA") for the benefit of Employee for that Fiscal Year, (D) contributions to cafeteria and 401(k) employee benefit plans and (E) such expenses of the Company related to Employee as are not expenses of the Partnership related to Members, such as health insurance premiums (the aggregate of such amounts plus any additional bonuses paid by the Company pursuant to Section 4.3 constituting "Total Compensation"), shall at least equal the lesser of:  (x) Employee's Total Compensation for the immediately preceding Fiscal Year, and (y) an amount in dollars determined by multiplying Allocated Profits for the Fiscal Year in question by the then-Attributed Percentage of the Employee as determined by the Compensation Committee.

(b)     The Company shall notify Employee of each change in Employee's Attributed Percentage by delivery of a statement as contemplated by Section 2 of the Shareholders Agreement.  The Attributed Percentage of Employee is for the purpose of voting on certain matters to be voted upon by the Partners and Members of the Partnership and for the purpose of making calculations under this Agreement but shall not involve or imply any actual allocation to Employee of the Company's interest in the Partnership.

4.3     <u>Other Bonuses</u>.  The Company may, from time to time, and in its sole discretion, pay to Employee bonus compensation, in addition to the Base Salary and the Annual Bonus.

4.4     <u>Withholding</u>.  All compensation shall be subject to the customary withholding tax and other employment taxes as required by law with respect to compensation paid by a corporation to an employee.  In addition, Employee confirms his or her agreement and acknowledgment that the Company may withhold from or credit additional amounts to distributions of his or her compensation in connection with the purchase and sale of shares under the Shareholders Agreement (including, without limitation, purchases of Preferred Stock at a faster rate than that contemplated by the Shareholders Agreement), or with the making or anticipated making of charitable contributions by the Company on behalf of Employee, as authorized by the Policy Committee.

Case: 08-32514    Doc# 1327    Filed: 07/16/10    Entered: 07/16/10 09:58:30    Page 18 of 29

4.5     Exclusive Basis for Compensation.  Employee's compensation shall be determined only as provided in this Agreement and shall not be based upon Employee's holdings of capital stock of the Company.

4.6     Limitation.  Employee's entitlements to compensation established under this Section 4 are, in all events, subject to the provisions of Section 9.4 of this Agreement.

5.     **Expenses**

The Company shall, at the request of Employee, pay those expenses of a nature approved by the Company reasonably required by Employee for his or her continuing legal education, professional license fees and dues to professional societies and for reasonable expenses for expanding and enhancing the professional practice and business of the Company, including expenses for entertainment, travel and similar items as may, in all such cases, be approved by the Company under its expense reimbursement policy.  The Company shall either pay those expenses directly or reimburse Employee upon the presentation by Employee of an itemized account of those expenditures, together with such information and evidence as may be required by taxing authorities for the substantiation of such expenses as income tax deductions.  To the extent not paid or reimbursed by the Company, Employee is expected to and shall incur and pay for reasonable expenses for entertainment, travel and similar items related to Employee's practice of law and to Employee's duties as an employee of the Company.  Unless

otherwise approved by the Company, Employee shall provide furniture and furnishings for Employee's office.

6. **Vacations; Leaves of Absence**

Employee shall be entitled to reasonable vacation, sabbaticals and leaves of absence for such periods and at such times as may be permitted under the Company's policies or as separately agreed upon by the Company and Employee. There shall be no accrual of a specific number of vacation days. Employee's compensation shall be paid in full during vacations and sabbaticals but not during leaves of absence.

7. **Employee Benefits**

Employee shall be entitled to all health insurance and other benefit programs generally available to Members (collectively, "Employee Benefit Plans"). The Company shall provide Employee, at the Company's sole cost, with term group life insurance providing death benefits of at least $50,000, the beneficiary of such insurance to be specified by Employee. Employee is designated a Participant under the Retirement System. The Company agrees to pay, or to use its best efforts to cause to be paid by the Partnership, to Employee, all benefits to which Employee may become entitled by virtue of being a Participant in the Retirement System.

Case: 08-32514   Doc# 1327   Filed: 07/16/10   Entered: 07/16/10 09:58:30   Page 20 of 29

## 8.    Professional Liability Insurance

The Company shall arrange for legal malpractice insurance naming Employee as an additional insured with coverage in amounts determined by the Company.  That insurance shall be subject to the limitations, conditions and exclusions contained in the policy or policies.

## 9.    Termination

9.1    Termination After Certain Events.  Employee's employment by the Company shall terminate:

(a)    automatically upon the death of employee;

(b)    at the discretion of the Company if Employee becomes a Disabled Participant as defined in the Retirement System;

(c)    at the discretion of the Company if Employee becomes a Retired Participant as defined in the Retirement System and is determined by the Compensation Committee to have in fact retired as an employee of the Company;

(d)    at the discretion of the Company upon suspension or retraction of the Employee's professional license by final action of a duly constituted licensing authority;

(e)    at the discretion of the Company upon Employee's conviction of a federal or state felony offense;

8

(f)     at the discretion of the Company upon Employee's attempted sale or transfer of any shares of capital stock of the Company held by Employee.

Termination under this Section 9.1 shall be effective upon the delivery by the Company to Employee of a written notice to that effect. It is understood and agreed that a decision to terminate this Agreement under this Section 9.1 does not require the approval of the Members contemplated by Section 9.2 but may be made by the Company upon direction from the Compensation Committee, it being understood that determinations of disability shall be made by the Compensation Committee in its sole discretion.

9.2     _Termination Upon Special Approval_. The Company may terminate this Agreement and Employee's employment by the Company in the absence of the events described in Section 9.1 if that action is approved, through (i) the affirmative vote of Members holding at least 85% of the Attributed Percentages of all Members, or (ii) the affirmative vote, through a Quorum Vote, of Members holding at least 85% of the Attributed Percentages of all Members voting in that Quorum Vote. Such a termination shall be effective on the 30th day after delivery by the Company to Employee of a notice to that effect or on such other date as may be agreed by Employee and the Company.

9.3     _Termination by Employee_. Employee may terminate this Agreement at any time by giving written notice to that effect to the Company. Such a termination shall be effective on the 15th day after delivery of that notice or on such other date as may be agreed by Employee and the Company.

9

9.4    Compensation upon Termination.  It is expressly understood and agreed that, following the effective date of a termination of this Agreement, and subject to the last sentence of this Section 9.4, Employee shall not be entitled to any compensation or any other monies or property from the Company, any of the other Partners, the Partnership, or any Member, other than: (i) payment of any Base Salary accrued but remaining unpaid as of that effective date, and (ii) reimbursement of expenses incurred prior to the effective date, to the extent reimbursable under the Company's expense reimbursement policy.  By way of example and not of limitation, Employee shall not be entitled to: (i) payment of Base Salary for the balance of the Fiscal Year in which the termination became effective, (ii) any Annual Bonus in respect of the Fiscal Year in which the termination became effective, (iii) any other bonus, or (iv) any payments in respect of vacation or unused sabbaticals.  If at any time the Total Compensation for the Fiscal Year in question paid to Employee for some reason exceeds the amount to which Employee is entitled under this Section 9.4, Employee shall pay to the Company the amount of that difference within 30 days of demand by the Company.  Compensation rules applicable to cases involving termination by reason of death or permanent disability are treated in and governed by the Retirement System.

9.5    Post-Termination Obligations.  Notwithstanding the termination of this Agreement, Employee shall thereafter remain obligated, upon request by the Partnership or the Company, to assist with the billing of unbilled fees and costs and the collection of accounts receivable arising from legal services rendered before termination of this

Agreement for clients of the Partnership as to whom Employee had billing responsibility. Employee shall also remain obligated (i) to comply with established policies and procedures relating to the orderly departure of attorneys and transfer of responsibility for pending client work and (ii) to cooperate and assist with the defense of any professional liability or other claims involving Employee. Without limiting the generality of Section 9.4 of this Agreement and Section 5.4 of the Shareholders Agreement, Employee shall not be entitled to any share of future income from client work existing at the effective date of termination of this Agreement. Employee understands and agrees that, so long as Employee remains employed by the Company, Employee's solicitation of clients to terminate their client relationship with the Partnership in whole or in part involves fiduciary principles on the part of Employee and requires the prior consent of the Company.

## 10.  **Other Matters**

10.1  <u>Entire Agreement</u>.  This Agreement, together with the other Basic Documents, contain all of the terms and conditions agreed upon by Employee, the Company, the other Partners and the Partnership relating to their subject matters, represent the final, complete and exclusive statement of those parties, and supersede any and all prior or contemporaneous agreements, negotiations, correspondence, understandings and communications of the parties, whether oral or written (including, without limitation, the Partnership Agreement made as of April 1, 1988 among the

Partners, and any shareholders and employment agreements to which the Company and Employee may have been parties immediately before the date of this Agreement).

10.2 <u>Notices</u>. Any notice required or permitted to be given under this Agreement shall be in writing and shall be delivered by postpaid, first class, registered or certified mail, or by personal or courier delivery or facsimile transmission, to Employee at Employee's office at the Company or at his or her residence address on file with the Company, and to the Company at:

> Heller, Ehrman, White & McAuliffe,
> A Professional Corporation
> 333 Bush Street
> San Francisco, California 98104-2878
> Attention: President

> <u>with copy to</u>:

> Managing Partner

Those addresses may be changed by delivery of a notice to that effect to the other party. Notices given in the manner contemplated by this Section 10.2 shall be considered "given" two business days after deposit in the mail, the day of delivery if personally delivered or the first business day after the date of delivery to a courier or facsimile transmission, as the case may be.

10.3 <u>Severability and Waiver</u>. If any provision of this Agreement is held to be invalid or unenforceable, that decision shall not affect the validity of or impair the other

Case: 08-32514   Doc# 1327   Filed: 07/16/10   Entered: 07/16/10 09:58:30   Page 25 of 29

provisions of this Agreement. No waiver of any breach or failure to perform shall be considered a waiver of any future or similar breach or failure to perform.

10.4 <u>No Entitlement</u>. Employee shall have no direct or indirect interest in the Partnership or in the Company's interest in the Partnership, nor shall Employee have any direct or indirect right, power or entitlement under the Partnership Agreement other than as a Participant in the Retirement System. Employee accepts the stock of the Company and the provisions of this Agreement and the Shareholders Agreement in lieu of, and relinquishes and waives any and all rights, interest or power in the Partnership which Employee or the spouse, issue, estate, successor or assign of Employee has under any prior partnership agreement or might have under law, including, without limitation, the right to receive any payment for goodwill, the right to receive interest on any Partnership account balance, the right to demand an accounting of any Partnership business or an interest in the Partnership capital, assets or earnings, or the right to demand an interest in or access to Partnership files, records or clientele, existing at the time of death, disability, withdrawal, expulsion, dissolution, merger or retirement.

10.5 <u>Binding Effect</u>. Except as expressly provided in this Agreement, the rights and obligations of the parties under this Agreement shall be binding upon and inure to the benefit of their respective spouses, companions, successors, assigns, executors, administrators and heirs. Employee may not assign his or her rights or delegate his or her duties under this Agreement without the express prior written consent of the Company.

Case: 08-32514   Doc# 1327   Filed: 07/16/10   Entered: 07/16/10 09:58:30   Page 26 of 29

The Company may refuse its consent in its absolute discretion. The Company may freely

assign its rights and delegate its obligations to any affiliate of the Company or in

connection with a merger, reorganization or similar transaction involving the Company.

10.6    Amendment.  This Agreement may be amended or modified only as stated

in and by a writing approved by the Company and holders of at least 66 2/3% of the

outstanding shares of Common Stock of the Company; provided, however, that Section

9.2 may not be amended without the favorable vote of the respective Attributed

Percentages required for approvals under that Section 9.2, and provided further, that this

Agreement may not be amended in any respect unless all other Employment Agreements

to which the Company is a party and which are then in effect are amended in identical

respects or unless the Company, upon specific direction from the Compensation

Committee in a particular case, determines otherwise.

10.7    Governing Law; Consent to Jurisdiction.  This Agreement shall be

governed by and construed in accordance with the laws of the State of California.  The

exclusive jurisdiction and venue for any action relating to this Agreement shall be in the

Superior Court of California for the County of San Francisco.  Service of process in any

such action may be effected in the manner provided for in this Agreement for the delivery

of notices.

10.8    Further Assurances.  Employee agrees to sign such other documents and to

take such further actions as the Company may request in order to effect the transactions

and implement and maintain the relationships contemplated by this Agreement and the other Basic Documents.

10.9 <u>Relation to Partnership Agreement</u>. The Company is a Partner and has no other operations other than its activities as a Partner and as the Managing General Partner. As such, it has agreed in the Partnership Agreement to a set of rules and procedures (including the delegation of authority to various committees and officers) that are to govern the management of the Partnership and, necessarily, the operations and affairs of the Company. It is understood and agreed that references in this Agreement to decisions or actions of or by "the Company" (for example, the setting of an expense reimbursement policy or the determination of employee compensation or of a termination under Section 9.1) should be understood to mean decisions or actions taken or approved under those rules and procedures (for example, by decision of the Policy Committee or Compensation Committee) and, by virtue of the Partnership Agreement, shall be considered adopted (without need for specific action of the Company's Board of Directors) and implemented by the Company. Any actions taken by the Company (including with respect to Employee) that violate or otherwise are inconsistent with the Partnership Agreement or the rules and procedures of the Partnership shall not be binding on the Partnership or any Partner or any Member.

10.10 <u>Counterparts</u>. This Agreement may be signed in any number of counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument.

10.10  Counterparts.  This Agreement may be signed in any number of counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument.

IN WITNESS WHEREOF, Employee and the Company have executed this Agreement as of the date appearing in its first paragraph.

THE COMPANY:          HELLER, EHRMAN, WHITE &
                      McAULIFFE, A PROFESSIONAL
                      CORPORATION


                      By:  _____
                           Barry S. Levin,
                           President


EMPLOYEE:             _____
                      John P. Isacson


368273 v01.SF (7W5T01!.DOC) (#368273 v1 - Employment Agreement (Cal) revised)
12/18/00 2:51 PM

16