Alan D. Smith, Cal. Bar No. 89112
ADSmith@perkinscoie.com
PERKINS COIE LLP
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Telephone: 206.359.8000
Facsimile: 206.359.9000

Attorneys for Class of 2006 Noteholders

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re<br><br>HELLER EHRMAN LLP,<br><br>Debtor. | CASE NO. 08-32514<br><br>Chapter: 11<br><br>SUPPLEMENTAL BRIEF OF CLASS OF 2006 NOTEHOLDERS RE CALIFORNIA CORPORATIONS CODE ISSUES<br><br>Prior Hearing:<br><br>Date: July 19, 2010<br>Time: 1:30 p.m.<br>Place: United States Bankruptcy Court<br>235 Pine Street, 22nd floor<br>San Francisco, CA<br>Judge: Honorable Dennis Montali |

Paul Booth, John Isacson, David Laub, and Colin Sandercock (collectively, the "*Class of 2006 Noteholders*" or "*Noteholders*") hereby submit their supplemental briefing regarding certain California Corporations Code issues raised by the Court at the July 19, 2010 hearing on the Noteholders' objections to the Debtor's and Committee's ("*Debtor*" and collectively "*Plan Proponents*") proposed classification and treatment of the Noteholders under the proposed Joint

Plan of Liquidation herein (the "***Plan***"). Capitalized terms not otherwise defined herein are used as defined in the Noteholders' Reply Memorandum filed July 16, 2010 as Docket No. 1326. References in this Supplemental Brief to Sections or to the Code are to the California Corporations Code.

**California Corporation Code Section 500 Would Not Result in Disallowance of the Noteholders' Claims Even if the Debtor were a Corporation**

The Class of 2006 Noteholders acknowledge that there is case law suggesting that payments on a stock redemption note from a corporation to a shareholder are prohibited in some circumstances when the corporation becomes insolvent. However, Section 500 contains an exception making it inapplicable to the Noteholders' claims even if the Debtor were a corporation subject to Section 500 (which it is not, see below).

Section 500 incorporates Section 166 and its definition of "distribution to its shareholders." Section 166 provides in part:

> "Distribution to its shareholders" shall not include . . . (c) the repurchase by a corporation of its shares issued by it pursuant to Section 408, if the board determines (with any director who is, or would be, a party to the transaction not being entitled to vote) that (1) the repurchase is in the best interests of the corporation and that (2) the corporation is likely to be able to meet its liabilities (except those for which payment is otherwise adequately provided) as they mature.

Section 408 is the Section of the Corporations Code that authorizes establishment and implementation of employee stock purchase plans, option plans, and the like.

The intent of that exception is clear: insulating from attack, in the event of subsequent insolvency, payments made on account of promissory notes issued to repurchase stock from former employee shareholders who obtained the stock in an employee stock plan or similar arrangement. The structure of the Heller Partnership Agreement, Shareholder Agreement, and Employment Agreement, taken together, is somewhat different from a conventional stock plan one would see in a corporation; that is to be expected given the different nature of the entities.

Case: 08-32514    Doc# 1387    Filed: 07/30/10    Entered: 07/30/10 12:40:02    Page 2 of 8

(See below.) But 'law partners' of Heller (the shareholders of Heller PCs)[1] were required to purchase shares as a condition to their employment, and were obligated to resell those shares to the PCs upon their leaving the firm. The Heller "stock purchase plan" was an integral part of each law partner's employment by Heller. It served precisely the same purpose as a conventional corporate stock purchase plan described in Section 166, although reflecting the different forms of entities involved. There is no dispute over Heller's solvency and ability to meet its obligations at the time of issuance of the Notes. Were it applicable, Section 500 would not bar the payments to the shareholders under the Notes.

Further support for this analysis may be found in two other exceptions to Section 500's and Section 166's arguable prohibition on payments from an insolvent corporation:

> provided, that where a debt obligation that is a security (as defined in Section 8102 of the Commercial Code) is issued in exchange for shares the time of the distribution is the date when the corporation acquires the shares in the exchange.[2]

> "Distribution to its shareholders" shall not include . . . (b) the rescission by a corporation of the issuance of its shares, if the board determines (with any director who is, or would be, a party to the transaction not being entitled to vote) that (1) it is reasonably likely that the holder or holders of the shares in question could legally enforce a claim for the rescission, (2) that the rescission is in the best interests of the corporation, and (3) the corporation is likely to be able to meet its liabilities (except those for which payment is otherwise adequately provided) as they mature . . . .

There has already been considerable discussion in the briefs and at the July 19th hearing over the applicability or nonapplicability of Bankruptcy Code Section 510(b) to the Noteholders' claims. Noteholders do not intend to revisit that discussion, but appreciate the Court's noting the difference between payments on a note and "damages" as used in that section. It is relevant that the California legislature has in these respects adopted the "transformation" concept applied in the *Montgomery Ward* and *Mobile Tool* cases: a credible rescission claim, acknowledged at a time of

---

[1] "Law partner" is used here in the colloquial sense, as distinct from the Heller PCs' status as partners in the LLP.
[2] Noteholders acknowledge that if Heller LLP were a corporation this exception would not directly apply to them, as the Notes are not securities within the meaning of Article 8. But the exception is instructive respecting the relatively narrow scope of Section 166.

Case: 08-32514   Doc# 1387   Filed: 07/30/10   Entered: 07/30/10 12:40:02   Page 3 of 8

solvency, and payments on some deferred redemption notes, can be enforced even after insolvency. It would be anomalous to interpret California law to allow deferred payments on rescission claims (which are within the core policy sphere of Section 510(b)) and not allow deferred payments on note claims (which Noteholders believe are clearly NOT subordinated under Section 510(b)).

In short, however broadly one may want to read Sections 500 and 166 in some circumstances, were those sections applicable they would not bar payments to Noteholders in the circumstances present in this case.

**Sections 500 and 166 Are Not Applicable to This Case**

The above analysis, of course, assumes that the debtor in question is a corporation. Heller Ehrman LLP is not a corporation; it is a registered limited liability partnership. The remainder of this section merely restates the obvious: Sections 500 and 166 do not apply to this case.

Sections 166 and 500 are part of Title I, Division 1 of the Corporations Code, referred to as the General Corporation Law. Section 100(a). Division 1 includes Sections 100 through 2319. The term "corporation" refers only to corporations formed under Division 1 or otherwise governed by Division 1 pursuant to Section 102(a). Section 162. Nothing in Section 102(a) brings limited liability partnerships within the scope of Division 1 or the definition set forth in Section 162.

Instead, as all acknowledge Debtor Heller Ehrman LLP is a registered limited liability partnership within the meaning of Sections 16953 and 16957 of the Corporations Code. The LLP provisions are all found in Title II of the Code, a separate Title that governs partnerships. Title II nowhere incorporates Title I or Division 1 or their provisions respecting corporations.

Sections 500 and 166 simply do not apply to Debtor Heller Ehrman LLP.

Case: 08-32514    Doc# 1387    Filed: 07/30/10    Entered: 07/30/10 12:40:02    Page 4 of 8

### Section 16957 Does Not Preclude Allowance of the Noteholders' Claims

Section 16957 has already been the subject of considerable briefing and argument; that will not be repeated here. The critical points for purposes of this Supplemental Brief are:

- Section 16957 contains a definition of "distribution" for purposes of determining what LLP distributions are prohibited.

- The definition of distribution in Section 16957[3] bears no relation whatsoever to the definition of "distribution to its shareholders" found in Section 166.

- Unlike Section 166, Section 16957 does not say anything about timing and cash payments; instead it focuses on consideration.

- In 2006, when the Notes were issued, Heller was having the best year in its history and was without question authorized to pay cash or otherwise do anything it wanted to satisfy its obligations to the Class of 2006. If issuance of the Notes was a distribution, it was not prohibited under Section 16957.

- Once the Notes were issued as part of the repurchase of all shares, they reflected obligations of the firm to the Noteholders. Each payment made by the LLP on a Note reduced the firm's obligation to each respective former shareholder (now Noteholder) to return the funds previously deducted from their pay[4]. Accordingly, each such payment was supported by consideration.

Debtor may contend that because the Notes were originally issued in connection with a stock repurchase, subsequent payments are without consideration. That is simply not the case. A corporation's repurchase of its own stock is an exchange of consideration, particularly where, as

---

[3] "A distribution for purposes of this section means the transfer of money or property by a registered limited liability partnership to its partners without consideration."

[4] The funds from the purchase of shares ultimately funded the LLP's Reserve account, and portions thereof were attributed to each shareholder based upon their contributions from the pay deductions. Partnership Agreement, Sections 3.1, 3.5(b).

here, the stock carries with it innumerable other benefits to the shareholder that go well beyond the equity value the shareholder held in the enterprise. By transferring all of their shares back to the firm, the Noteholders gave up much more than just their right to future appreciation in enterprise value and future profits.

The Ninth Circuit has recognized this important point. In *In re Qintex Entertainment, Inc.*, 8 F.3d 1353 (9th Cir. 1993), the debtor was a Delaware corporation. While the holding in *Qintex* is inapposite,[5] the reasoning of the *Qintex* court is directly relevant to the case at bar. In *Qintex*, the analysis properly focused on the fact that when a corporation repurchases its own shares there has been an exchange of consideration:

> [W]hen a corporation gives a note or other obligation as consideration for its stock, "[p]rior creditors [are] not defrauded by the transaction, since the corporation had adequate capital; and all future creditors [are] on notice that [the corporation's] assets [are] encumbered...."

8 F.3d at 1356-57 (citations omitted). When issued, the Notes were supported by consideration; subsequent payments on the Notes were similarly supported by consideration by reducing the company's obligations to the Noteholders. There is no more reason to disallow note claims under Section 16957 than there is to subordinate them under Bankruptcy Code Section 510(b), and as the Court has apparently noted, Section 510(b) does not serve as a basis for subordination of the Noteholders' claims.

A review of the contractual relationships among Heller Ehrman LLP, the Heller PCs, and the shareholder/employees evidences such consideration. Each Noteholder was an employee holding common shares and preferred shares according to paragraph 2 of the Shareholders Agreement. Shares were paid for by automatic deduction of five to seven percent of Total

---

[5] *Qintex* involved an option to put the creditor/shareholder's stock back to the corporation, which as the Court noted is much different from a note resulting from a prior stock repurchase. Further, the Delaware General Corporation Law, arguably unlike Section 500, makes it clear that agreements to repurchase stock are enforceable if the agreements are made when the corporation has adequate capital, notwithstanding a later capital deficit.

Compensation (Base Salary and Annual Bonus). See paragraphs 2.2 and 2.3 of the Shareholders Agreement and paragraph 4.4 of the Employment Agreement.

When each Noteholder departed Heller in March 2006, common stock was automatically transferred back to the Heller PC according to paragraph 3.1 of the Shareholders Agreement and preferred stock was automatically repurchased according to paragraph 3.2 of the Shareholders Agreement. The repurchase price was determined under paragraph 3.4(b) of the Shareholders Agreement by reference to the amount contributed by the departing shareholder/employee: it bore no relation either to the actual value of Heller as a firm or to the value of the relevant Heller PC. The repurchase price was paid 25% in cash and 75% through Notes which were then assigned by the PC to the departing shareholder/employee. Paragraph 3.5(b) of the Partnership Agreement contains parallel provisions between the Heller LLP and the Heller PCs.[6]

Each Note recites that it is "FOR VALUE RECEIVED" – a patently true recital, as in the transaction each departed shareholder gave up all right to any future earnings from employment as well as any future profits of Heller LLP or the Heller PCs. The only remaining relationship each Noteholder had with Heller was as an unsecured creditor, entitled to payment on the Notes with nominal interest. There would be no further salary, bonus, or anything else.

The Ninth Circuit has described the nature of this sort of transaction:

> Stockholders who **sell all of their shares**...cannot be said to have taken "the risk out of risk capital." If they **sell out completely**, they give up their equity interest, and thus give up the capital involvement. They should not, without good reason, be forced to continue to bear the risk of capital when they are **no longer eligible for the rewards or in control of voting stock**.

*In re National Tile & Terrazzo Co.*, 537 F.2d 329, 332 (9th Cir. 1976) (emphasis added). In *National Tile*, the Ninth Circuit refused to extend the Corporations Code or prior case law to

---

[6] It does not appear there is any issue over the solvency of the Heller PCs. They are not debtors in chapter proceedings and indeed are funding a significant portion of the consideration needed to confirm the Plan, as set forth in the recent pleadings requesting approval of the settlement with the secured lenders, other former shareholders and the PCs. Among other things, the PCs are providing $200,000 to a group of 17 former shareholders who have retired.

Case: 08-32514   Doc# 1387   Filed: 07/30/10   Entered: 07/30/10 12:40:02   Page 7 of 8

invalidate a lien securing an obligation to repurchase stock. Similarly, the Ninth Circuit and California courts are unlikely to attempt to extend the reach of Section 166 to areas covered by other statutory provisions that on their face do not serve to invalidate stock repurchase claims.

The bottom line is that the California legislature could have adopted the broad definition of "distribution" found in Section 166 and applied it to LLPs. For the reasons noted in the first section of this Supplemental Brief, even with that broad definition payments on the Notes would not be prohibited. But the legislature did NOT apply Section 166 to LLPs; and it did not leave open to the courts the ability to apply Section 166 to LLPs. It provided a separate definition of distribution applicable to LLPs, and under the definition of distribution found in Section 16957, as determined via a fair reading of the statute and as interpreted in analogous situations by the Ninth Circuit, payments on the Notes are perfectly appropriate.

**Conclusion**

For the reasons set forth above, nothing in the California Corporations Code serves to disallow the Noteholders' claims. For the reasons set forth in the Noteholders' Objection, none of the legal arguments identified by Debtor results in subordination of the claims.

Accordingly, in order to be confirmed, the Plan must be modified to treat the Class of 2006 Noteholders like the general unsecured creditors that they are.

DATED: July 30, 2010

**PERKINS COIE LLP**

By: _____
Alan D. Smith, Cal. Bar No. 89112
ADSmith@perkinscoie.com

Attorneys for Class of 2006 Noteholders

91004-2317/LEGAL18504245.1                    -8-

Case: 08-32514    Doc# 1387    Filed: 07/30/10    Entered: 07/30/10 12:40:02    Page 8 of 8