1  STEVEN H. FELDERSTEIN, State Bar No. 056978
   THOMAS A. WILLOUGHBY, State Bar No. 137597
2  TANIA M. MOYRON, State Bar No. 235736
   FELDERSTEIN FITZGERALD
3  WILLOUGHBY & PASCUZZI LLP
   400 Capitol Mall, Suite 1450
4  Sacramento, CA 95814
   Telephone: (916) 329-7400
5  Facsimile: (916) 329-7435
   E-mail: sfelderstein@ffwplaw.com
6  E-mail: twilloughby@ffwplaw.com
   E-mail: tmoyron@ffwplaw.com
7
   Attorneys for the Post-Confirmation Liquidating Debtor
8
9              UNITED STATES BANKRUPTCY COURT

10             NORTHERN DISTRICT OF CALIFORNIA

11                 SAN FRANCISCO DIVISON

12  In re:                              Case No.: 08-32514

13  HELLER EHRMAN LLP,                  Chapter 11

14          Liquidating Debtor.         DECLARATION OF JAMES R.
                                        HAUG, JR.
15  .                                   Date:   July 7, 2011
                                        Time:   1:30 p.m.
16                                      Crtrm: 235 Pine Street, 22nd Floor
       I, James R. Haug, Jr., hereby declare that:      San Francisco, California
17                                      Judge:  Honorable Dennis Montali

18      1.     I am an attorney licensed to practice in all courts of the states of Vermont and

19  Pennsylvania. I am of counsel to the law firm Downs Rachlin Martin, PLCC in Burlington,

20  Vermont. In 2009 I was a shareholder in Wells, Haug & Leopold, PC. At all times referred to

    herein, I was Claims Counsel for MPC Insurance Company, Ltd. (MPC).
21
        2.     MPC administers claims for primary and excess insurers who provide malpractice
22
    insurance for several law firms, including Heller Ehrman, LLP (Heller) in 2008-2009.
23
        3.     During the policy period from April 15, 2008 to April 15, 2009, Lexington
24
    Insurance Company provided malpractice insurance for Heller in excess of a self-insured retention
25
    (SIR) of $2 million, with a per claim and aggregate limit of $10 million. Exhibit A hereto is a true
26
    and correct copy of the Lexington policy.
27
        4.     During the policy period from April 15, 2008 to April 15, 2009, Lexington and
28

                                        1
                        DECLARATION OF JAMES R. HAUG, JR.

1   other insurers provided Heller with malpractice insurance coverage in excess of $10 million with a

2   total per claim and aggregate limit of $190 million. Exhibit B hereto is a true and correct copy of

3   the schedule of Heller's excess insurance in effect from April 15, 2008 to April 15, 2009.

4          5.      Each excess insurer provided coverage under the same terms and conditions set

5   forth in the Lexington policy, except for policy limits. A report of a "Claim or Incident" to MPC

6   in care of me satisfied the reporting requirements specified in the Lexington policy and each

7   excess policy.

8          6.      Exhibit C hereto is a true and correct copy of a report of a Claim or Incident

9   involving "Ronald A. Katz Technology Licensing, L.P. and its affiliate A2D, LP." (Collectively,

10   RAKTL) dated May 18, 2009, that I received from Paul W. Sugarman of Heller.

11         7.      Exhibit D hereto is a true and correct copy of a supplemental report of the RAKTL

12   Claim or Incident dated May 28, 2009, that I received from Mr. Sugarman.

13         8.      Exhibit E hereto is a true and correct copy of a letter I sent to Mr. Sugarman dated

14   June 4, 2009, acknowledging receipt of the report of the RAKTL Claim or Incident dated May 18,

15   2009, and advising MPC Claim No. 2568 had been assigned to the matter.

16         9.      Exhibit F hereto is a true and correct copy of a letter I sent to Mr. Sugarman dated

17   June 9, 2009, ████████████████████████████████████████████████

18   ████████████████████████████████████████████████████████████

19   ████████████████████████████████████████████████████████████

20   ████████████████████████████████████████████████████████████

21   ███████████████████████████

22         10.     I sent the ██████████████ letter to Mr. Sugarman before I reviewed his

23   supplemental report of the RAKTL Claim or Incident (Ex. D hereto). ████████████████

24   ████████████████████████████████████████████████████████████

25   ██████████████████████████████████████████ Therefore, after I read

26   Mr. Sugarman's supplemental report, ████████████████ was withdrawn.

27         11.     On March 18, 2011, I received a copy of the counterclaim RAKTL filed against

28   Heller in Case No. 08-32514 pending in United States Bankruptcy Court Northern District of

DECLARATION OF JAMES R. HAUG, JR.

California.

12.   The claims alleged against Heller in RAKTL's counterclaim are covered under the Lexington policy and the excess policies, because they seek damages by reason of an "act, error or omission in professional services rendered, or that should have been rendered," the claims were first made during the policy period, and were reported to MPC within sixty days after the policy period expired.

I declare under penalty of perjury under the laws of the United States and the state of Vermont that the foregoing is true and correct, that I have personal knowledge of the matters stated herein, and if called as a witness I could and would testify competently thereto.

Executed at _Burlington VT_ on May _16_, 2011.

_James R. Haug, Jr._

3

DECLARATION OF JAMES R. HAUG, JR.

# EXHIBIT A

LAWYER'S PROFESSIONAL LIABILITY INSURANCE  **COPY**

LEXINGTON INSURANCE COMPANY, (hereinafter called the "Company"), in consideration of the payment of the premium and in reliance upon the statements in the application, the census letter and any other representation made in writing as part of the application process for this policy, copies of which are incorporated herein by reference and made a part hereof, and subject to the limits of liability, exclusions, conditions and all other terms of this Policy, agrees with the Named Insured as follows:

### INSURING AGREEMENTS

I.   COVERAGE - PROFESSIONAL LIABILITY

Subject to the limitations in Section II hereof the Company will pay on behalf of the Insured all sums in excess of the self insured retention stated in the Declarations which the Insured shall become legally obligated to pay as damages and claim expenses on account of claims first made against the Insured during the Policy Period, and reported to the Company during the Policy Period or within sixty (60) days thereafter:

(A)   By reason of any act, error or omission in professional or notarial services rendered, or that should have been rendered, by the Insured or by any person for whose acts the Insured is responsible, and arising out of the conduct of the Insured's profession as a lawyer or notary public, including services rendered by the Insured as an arbitrator, mediator, conciliator, judge pro tem, or in a similar capacity; and

(B)   Because of personal injury arising out of professional services rendered or that should have been rendered by the Insured as a lawyer or notary public;

provided always that such act, error, omission or personal injury giving rise to the claim took place or happened on or after the retroactive date in item 6 of the Declarations.

Subject to all other policy terms and conditions, when the Insured in conjunction with rendering legal services also renders services as an administrator, conservator, executor, guardian, trustee, or in any similar fiduciary capacity, his acts, errors or omissions in such capacity shall be deemed for the purpose of this insurance to be the performance of professional services arising out of the conduct of the Insured's profession as a lawyer; provided that this Policy shall not apply to any loss sustained by the Insured as the beneficiary or distributee of any trust or estate.

II.   LIMIT OF LIABILITY

(A)   The liability of the Company for damages and claim expenses for each claim first made against the Insured during the Policy Period shall not exceed the amount stated in the declarations for "each claim" and subject to that limit for each claim, the total limit of the Company's liability for damages and claim expenses for all claims first made during the Policy Period shall never in the aggregate

HE_BAC00026972
**23**
Case: 08-32514   Doc# 2178-2   Filed: 05/19/11   Entered: 05/19/11 14:47:10   Page 5 of 43

exceed the amount stated in the declarations as "aggregate". <u>NOTE: THE LIMITS OF LIABILITY INCLUDE, AND ARE NOT IN ADDITION TO, CLAIMS EXPENSES.</u>

(B)  The inclusion herein of more than one Insured or the making of claims or the bringing of suits by more than one person or organization shall not operate to increase the limit of the Company's liability for each claim and in the aggregate. Two or more claims arising out of a single act, error or omission or series of related acts, errors or omissions shall be treated as a single claim, and such claim shall be deemed made during the policy year or any Extended Reporting Period, if purchased, in which such claim is first made.

## III.  <u>SELF INSURED RETENTION (SIR)</u>

That amount designated as the self-insured retention in the declarations shall apply to damages and claims expenses and shall be retained for the Insured's own account, except that if the Insured purchases any separate primary Lawyers Professional Liability insurance, with respect to the provision of legal services, that is required by law in any jurisdiction, then this Policy, subject to its terms, conditions and limitations, shall pay excess of either of the following, whichever is greater:

A) the self-insured retention stated in the declarations, or
B) the amount of any payments under such required separate insurance.

The amount of any payments under such required separate insurance shall apply to either reduce or wholly satisfy the Insured's financial obligations under the self-insured retention in the Declarations dependent upon whether the amount of such payments is either less than, equal to or greater than the self-insured retention stated in the Declarations. If such payments are equal to or greater than the Insured's self-insured retention in the Declarations, the Insured's financial obligations under the self-insured retention will be deemed to have been fully satisfied as to that claim.

## IV.  <u>DEFENSE AND SETTLEMENT</u>

(A)  Subject to item (B) below, the Company shall at any time during the pendency of a claim against an Insured under this Policy have the right to associate with the Insured in the investigation and defense of any claim, and shall assume the whole cost and control of the defense when the self insured retention is exhausted, irrespective of the jurisdiction in which suit or other proceedings is commenced and of whether or not the claim upon which such suit or other proceeding is based is groundless, false or fraudulent. The Company's obligation hereunder shall terminate when the aggregate limit of liability has been exhausted by payment of claim expenses, settlements, judgments or a combination thereof.

(B)  Notwithstanding item (A) above, selection of defense counsel will be agreed upon by the Company and the Insured.

(C)  The Company shall not settle any claim without the consent of the Insured. If, however, the Insured shall refuse to consent to any settlement recommended

HE_BAC00026973  24

Case: 08-32514    Doc# 2178-2    Filed: 05/19/11    Entered: 05/19/11 14:47:10    Page 6 of 43

by the Company and acceptable to the Claimant and shall elect to contest or continue any proceedings in connection with such claim, then the Company's liability for the claim shall not exceed the amount for which the claim could have been settled plus claim expenses incurred up to the date of such refusal. In the event that the Company shall refuse to consent to or participate in the consummation of any settlement of any claim acceptable to the Insured and the Claimant, which settlement demand is within policy limits, or as to which the Company's requested contribution is within policy limits, and if the Company shall elect to contest or continue any proceedings in connection with such claim, then the Company will assume full and complete liability (other than the self insured retention and other than any and all amounts of insurance available to the Insured and collectable) for all damages assessed against the Insured. No action taken by the Company pursuant to its rights under this clause (C) shall be deemed to waive any policy defenses against any claim.

## DEFINITIONS

I. **INSURED**

The term "Insured" means"

(A) The "Named Insured" stated in item 1 of the declarations and any predecessor firm thereof that was identified in the initial application to the Company or thereafter underwritten and endorsed to this policy or to any previous policy of which this policy is one in a succession of renewal policies;

(B) Any lawyer or professional legal corporation that is or was a partner, officer, director, "of counsel" or employee of the Named Insured solely while acting, or claimed by any person to be acting, in a professional capacity within the scope of his, her or its duties for, or claimed by any person to be acting with apparent authority for, the Named Insured or any **predecessor firm** thereof;

(C) Any lawyer who is or was an employee of a professional legal corporation otherwise defined above as an Insured, solely while acting in a professional capacity within the scope of his, her or its duties for or claimed by any person to be acting with apparent authority for, the Named Insured or any **predecessor firm** thereof;

(D) Any other employee of the Named Insured solely while acting at the direction of the Named Insured or any **predecessor firm** thereof;

(E) Any other lawyer for whose acts the Insured is legally responsible, but only for those acts performed at the direction of the Insured;

(F) As respects the liability of each Insured as otherwise covered herein the heirs, executors, estate, administrators and legal representatives of each Insured in the event of his death, incapacity or bankruptcy.

HE_BAC00026974
25
Case: 08-32514    Doc# 2178-2    Filed: 05/19/11    Entered: 05/19/11 14:47:10    Page 7 of 43

## II.  CLAIM, CLAIM FIRST MADE

(A)  For the purpose of this. Policy, the term "claim" means a demand received by the Insured for money or services, including the service of suit or institution of arbitration proceedings.

(B)  The term "claim first made" shall be the first in time of the following:

In the event of a suit or action against the Insured, the date the Insured receives notice of said suit or action by service of process or otherwise; or absent a suit or action, the date the Management Committee or other governing body of the Insured receives any written or oral statement, or has knowledge of any act, error, omission, event, condition or personal injury, which it determines is likely to result in a claim; provided, however, that when there is a claim first made as defined herein, written notice of such claim must also be given to the Company in accordance with CONDITIONS III. of this policy ("NOTICE OF CLAIM OR SUIT").


## III.  CLAIM EXPENSES

The term "claim expenses" means all fees, costs and expenses in the investigation, adjustment, settlement, defense and appeal of any claim and shall include all fees, costs and expenses in the investigation, adjustment, settlement or defense of any claim which includes a request for fines, penalties or punitive damages, whether or not compensatory in nature. The term does not include salaries of regular employees of either the Company or the Insured, nor office overhead expenses of either. Likewise, the costs of supervisory or monitoring counsel retained by the Company are not included and are to be paid by the Company.


## IV.  DAMAGES

The term "damages" means monetary judgments or settlements, including punitive or exemplary damages, provided however that "damages" does not include fines, penalties or sanctions. "Damages" also means multiples of compensatory damages pursuant to any statute or law, except that such multiples of damages shall only be deemed covered if the act, error or omission giving rise to a claim is otherwise covered and the "damages" are deemed insurable under the law under which this Policy provision shall be construed.


## V.  PERSONAL INJURY

The term "personal injury" means:

(A)  False arrest, humiliation, detention or imprisonment, wrongful entry or eviction or invasion of private occupancy, malicious prosecution or abuse of process or the infliction of emotional distress;

HE_BAC00026975    26

Case: 08-32514    Doc# 2178-2    Filed: 05/19/11    Entered: 05/19/11 14:47:10    Page 8 of 43

(B)    The publication or utterance of a libel or slander or other defamatory or disparaging material or a publication or an utterance in violation of an individual's right of privacy or interference with economic relations or contract.

## VI.    POLICY PERIOD

The term "Policy Period" means the period of time between the inception date stated in the Declarations and the effective date of termination, expiration or cancellation of coverage and specifically excludes any extended reporting period hereunder.

## VII.    PREDECESSOR FIRM

The term "predecessor firm" means any lawyer, law firm or professional legal corporation engaged in the practice of law to whose financial assets and liabilities the Named Insured was the majority successor in interest.

## EXCLUSIONS

It is the intent of both parties to this contract that this Policy does not apply to, nor provide insurance coverage for

(A)    A settlement on behalf of or a judgment or award against any Insured who has been determined, either by adjudication, admission or by arbitration between such Insured and the Company conducted in accordance with Section XIV of this Policy, to have committed an  intentionally dishonest, intentionally fraudulent or intentionally injurious act, error or omission which gives rise to such settlement, judgment or award; provided, however, that nothing contained in the foregoing shall exclude coverage to the Named Insured or to any other Insured who has not been determined to have committed such intentionally dishonest, intentionally fraudulent or intentionally injurious act, error or omission and provided further that any such payment made in respect of such Named Insured or other Insured shall be reduced by the value of (a) the personal interests in the Named Insured of the individual Insured who was determined to have committed an intentionally dishonest, intentionally fraudulent or intentionally injurious act, error or omission, and (b) the personal interests and assets of such individual Insured transferred to, executed upon, or otherwise lawfully converted to satisfy claims against any Insured, or claims against such individual Insured by or on behalf of any other Insured (including the Named Insured).

(B)    Bodily injury to, or sickness, disease or death of,  any  person, or any physical injury to or destruction of any tangible property, arising out of any act, error or omission of any Insured;

(C)    Any claim  by any Claimant Insured or by any individual employed by any such Claimant Insured made against any other Insured for any reason, unless the claim arises out of an act, error or omission in professional or notarial services committed by or alleged to have been committed by an Insured in his or her rendering or failing to render professional or notarial services for such Claimant Insured;

HE_BAC00026976
27
Case: 08-32514    Doc# 2178-2    Filed: 05/19/11    Entered: 05/19/11 14:47:10    Page 9 of 43

(D)     Any liability arising out of any Insured's capacity as:

(1)     An officer, director, partner, manager or employee of a business enterprise (not named in the Declarations) or charitable organization or a pension, welfare, profit sharing, mutual or investment fund or trust;

(2)     A public official or an employee of a governmental body, subdivision or agency;

provided, however, that this Exclusion (D) shall not apply to any liability arising out of the actual or alleged performance of professional services on behalf of the Named Insured within the scope of coverage under Insuring Clauses I.(A) or I.(B) by any Insured for any such business enterprise (not named in the declarations) or charitable organization or a pension, welfare, profit sharing mutual or investment fund or trust;

(E)     Any claim arising out of any act performed for or on behalf of any business enterprise, charitable organization, pension, welfare, profit sharing, mutual or investment fund or trust not named in the declarations which is substantially owned, controlled, managed or operated by any Insured or by any spouse of any Insured;

For purposes of this Exclusion (E), except as otherwise provided by endorsement to this Policy, the term "substantially owned" shall mean 5% or more of the issued and outstanding voting stock of a publicly-traded company or 20% or more of the ownership of any other business enterprise. The holding by an Insured of a position on the board of directors, board of trustees or equivalent body (or a committee of such board or body) shall not in itself be deemed to constitute ownership, control, operation or management of such enterprise, organization, fund or trust.

(F)     Any claim against any Insured arising out of any act, error, omission or personal injury by such Insured which occurred prior to the time that such Insured became a partner, employed lawyer or "of counsel" to the Named Insured or any predecessor firm;

(G)     Any claim against an Insured who is a member of a group of (i) ten or more lawyers or legal corporations from a single source, who within any six-month period join with, or become a part of, the Named Insured, or (ii) five or more lawyers or legal corporations from a single source, who within any six-month period join with, or become part of, any single office location of the Named Insured if the effect thereof is to increase the number of lawyers or legal corporations at such single office location by 100% or more, unless there shall have been an underwriting with respect to such lawyers or legal corporations prepared and the coverage of such lawyers or legal corporations shall have been specifically approved by the Company; provided that such coverage shall not extend to any act, error, omission or personal injury by such Insured which occurred prior to the time that such Insured became a partner, employed lawyer, or "of counsel" to the Named Insured;

(H)     Any claim which was required by this Policy to be reported during the Policy Period and any applicable reporting period permitted by the Policy and which is not

HE_BAC00026977
Case: 08-32514    Doc# 2178-2    Filed: 05/19/11    Entered: 05/19/11 14:47:10    Page 10
of 43

28

so reported to the Company until after all such permissible periods for giving notice of claim to the Company have expired;

(I) Any claim against any Insured to the extent arising or alleged to have arisen out of legal or other services performed for a client if any Insured was serving as an operating officer of that client and if the Insured serving as an operating officer personally performed legal services for that client or exercised direction, supervision or influence over any other Insured's legal or other services performed on behalf of that client.

For purposes of this Exclusion (I):

(1) The term "Operating Officer" shall mean the Chairman of the Board, Vice Chairman of the Board, President, chief executive officer, chief operating officer, General Counsel [other than an Insured who renders legal services to a client solely on behalf of the Named Insured and not as an officer (other than as secretary or assistant secretary) or employee of the client], chief financial officer, general partner or any other fiduciary with the power to direct the business decisions of a client.

(2) The term "client" shall mean a corporation, partnership, trust or other enterprise that is engaged in a business for profit but shall not include MPC Insurance, Ltd.;

or

(J) Any claim, or specific act, error or omission or personal injury which could reasonably be expected to give rise to a claim against the Insured, tendered to the Company during the policy period of which the Insured, before the inception date stated in the Declarations has given notice to any insurer other than the Company.

<u>CONDITIONS</u>

I. <u>EXTENDED REPORTING PERIOD</u>

If this Policy is terminated or non-renewed by the Company for any reason other than for the nonpayment of premium, the Named Insured shall have the right, upon payment of an additional premium of 100% of the last annual premium, to extend the insurance afforded by this Policy to apply to claims first made against the Insured during the period of one year following immediately upon the effective date of termination or non-renewal, but only in respect of any act, error, omission or personal injury committed before such termination or non-renewal date and otherwise covered by this insurance.

This right to purchase the extended reporting period must be exercised by notice in writing not later than ten (10) days after the termination or non-renewal date of this Policy and must include the additional premium required therefor. If such notice and premium payment are not given to the Company, the Insured shall not at a later date be able to exercise such right. This right to purchase the extended reporting endorsement

HE_BAC00026978

Case: 08-32514   Doc# 2178-2   Filed: 05/19/11   Entered: 05/19/11 14:47:10   Page 11 of 43

shall only be exercisable by an entity which represents at least 51% of the partners and employed lawyers of the Named Insured at the inception date of the Policy.

The Company's limit of liability hereunder shall not in any way be increased by virtue of this extended reporting period and the aggregate limit of liability provided in item 3 of the Declarations shall not be increased by reason of the purchase of an extended reporting period.

## II.   LIMITATION ON EXTENDED REPORTING PERIOD

Any extended reporting period purchased by the Insured as provided for in this Policy shall not be cancelled by the Company. If any claim that would have been covered under the extended reporting period is also covered under any other valid and collectible insurance available to the Insured and which provides professional errors and omissions coverage to the Insured regardless of whether the amount of such other insurance provided is less than, the same or more than that provided by this Policy, this Policy shall apply in excess of the other insurance whether the other insurance is stated to be primary, pro rata, contributory, excess or otherwise. The entire premium of the extended reporting period is earned at the commencement of the extended reporting period and, in the event the Insured cancels such extended reporting period prior to its stated termination date, the Company will not return any premium to the Insured.

## III.   NOTICE OF CLAIM OR SUIT

As a condition precedent to the application of all insurance afforded herein, the Insured shall, as soon as practicable, give to the Company written notice of any claim made against the Insured, when it is first made as defined in Definitions II. (B.) Claim First Made.

The Company and the Named Insured agree that the notice provisions provided for in Insuring Agreement I. Coverage – Professional Liability, Conditions III. Notice of Claim or Suit and Definitions II. Claim, Claim First Made provide a reasonable time to give notice of a claim.   Any claim, notice of which is given to the Company after the period provided in the Notice Provisions expires, shall not be covered UNLESS with respect to such claim: (i) Notice of the claim was not timely given to the Company owing to administrative error or omission or inadvertence on the part of the Named Insured; (ii) the notice of claim is given to and received by the Company promptly upon discovery of such failure to give such notice; and (iii) such notice is received by the Company within 12 months after the expiration date of the policy period in which such claim was first made. The Company shall determine whether these criteria have been met.  If the Company determines that these criteria have been met, then the Company may in its discretion waive the condition precedent set forth in this Condition III. — Notice of Claim or Suit, by written notice of such waiver to the Named Insured.  Where such waiver is granted, the claim shall be deemed timely and not subject to Exclusion (H).

In the event suit is brought against the Insured, the Insured shall immediately forward to the Company copies of every demand, notice, summons or other process received by him or his representative.

HE_BAC00026979

30

Case: 08-32514    Doc# 2178-2    Filed: 05/19/11    Entered: 05/19/11 14:47:10    Page 12 of 43

## IV.   DISCOVERY CLAUSE

If during the Policy Period or the extended reporting period purchased hereunder, the Insured shall give written notice to the Company of a specific act, error, omission or personal injury which occurred prior to expiration of the Policy Period and which could reasonably be expected to give rise to a claim against the Insured under this Policy, any claim which subsequently arises out of such act, error, omission, event, condition or personal injury shall be considered a claim first made against the Insured during the Policy Period or the extended reporting period purchased hereunder.

## V.   ASSISTANCE AND COOPERATION OF THE INSURED

The Insured shall cooperate with the Company and upon the Company's request shall submit to examination and interrogation by a representative of the Company, under oath if required, and shall attend hearings, depositions and trials and shall assist in effecting settlement, giving evidence, obtaining the attendance of witnesses and in the conduct of suits, as well as in the giving of written statements to the Company's representatives and meeting with such representatives for the purpose of investigation and/or defense, all without charge to the Company. The Insured shall further cooperate with the Company and do whatever is necessary to secure and effect any rights of indemnity, contribution or apportionment which the Insured may have.

The Insured shall not, except at its own cost, make any payment, admit any liability, settle any claim, assume any obligation or incur any expense without the written consent of the Company.

## VI.   ACTION AGAINST THE COMPANY

No action shall lie against the Company unless, as a condition precedent thereto, the Insured shall have fully complied with all of the terms of this Policy, nor until the amount of the Insured's obligation to pay a claim shall have been finally determined either by final judgment against the Insured and either affirmation of any final adjudication or arbitration award or the expiration of applicable rights to appeal, or by written agreement of the Insured, the Claimant and the Company.

Nothing contained in this Policy shall give any person or organization any right to join the Company as a co-defendant in any action against the Insured to determine the Insured's liability. Bankruptcy or insolvency of any Insured or any Insured's estate shall not relieve the Company of any of its obligations hereunder.

## VII.   OTHER INSURANCE

This insurance shall be in excess of the amount of the applicable self insured retention of this Policy and any other valid and collectible insurance available to the Insured, whether the other insurance is stated to be primary, pro rata, contributory, excess or otherwise, unless such other insurance is written only as a specific excess insurance over the limits of liability provided in this Policy.

HE_BAC00026980    31
Case: 08-32514    Doc# 2178-2    Filed: 05/19/11    Entered: 05/19/11 14:47:10    Page 13 of 43

VIII.   SUBROGATION

In the event of any payment under this Policy, the Company shall be subrogated to any Insured's rights of recovery therefor against any person or organization and any Insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. No Insured shall do anything after the claim to prejudice such rights. Any recovery will be used to pay: first, subrogation expenses; second, payments made by the Insured in excess of its self insured retention; third, payments made by an excess insurer; fourth, payments made by a primary insurer; and last, reimbursement of the Insured's self insured retention.

The Company shall not exercise any such rights against any person or organization included within the definition of "Insured". Notwithstanding the foregoing, the Company reserves the right to exercise any rights of subrogation against an Insured in respect of any personal injury with deliberate purpose and intent or any dishonest, intentionally fraudulent, criminal or malicious act or omission of such Insured.

IX.   CHANGES

Notice to a broker or knowledge possessed by any broker or by any other persons shall not effect a waiver or change in any part of this Policy nor shall the terms of this Policy be waived or changed except by endorsement issued to form a part of this Policy.

X.   ASSIGNMENT

Assignment of interests under this Policy shall not bind the Company until its consent is endorsed thereon.

XI.   CANCELLATION

Since the premium for this Policy is fully earned at inception, this Policy may not be canceled by the Company except under the following conditions:

(a)   Bankruptcy or insolvency of the Reinsuring Company or Companies, or

(b)   Failure to pay, when due, the premium for this Policy or any capital contribution or assessment, as required by the Reinsurer(s), or

(c)   Failure of any Insured to pay, when due, any self insured retention or portion thereof, or

(d)   A dissolution, split off or other division which results in a greater than 49% decrease in the number of lawyers who are partners, "of counsel" and employees (excluding new hires) of the Named Insured immediately following the effective date thereof; or

HE_BAC00026981  32
Case: 08-32514    Doc# 2178-2    Filed: 05/19/11    Entered: 05/19/11 14:47:10    Page 14 of 43

(e)  any consolidation, merger or other amalgamation or combination in which the Named Insured is not the majority successor in interest.

Under any of the foregoing circumstances, this Policy may be canceled by the Company by delivery of written notice, in person or by registered or certified mail, to the Named Insured at the address stated in the Declarations, stating when, not less than thirty days thereafter, such cancellation shall be effective.

The Policy may be canceled by the Named Insured by surrender thereof to the Company or by delivery of written notice, in person or by registered or certified mail, to the Company stating when thereafter such cancellation shall be effective. If canceled by the Named Insured, the Company shall retain the premium in its entirety.

The effective date of cancellation stated in the notice shall become the end of the Policy Period. If the Company cancels, the earned premium shall be computed pro-rata.

The notice of cancellation shall be deemed to be received on the fifth calendar day after the mailing of the notice. Premium adjustment may be made at the time the cancellation is effected or as soon as practicable thereafter. The check of the Company or any of its representatives, mailed or delivered, shall be sufficient tender of any refund due the Named Insured.

## XII.  FIRST NAMED INSURED

It is agreed by all Insureds that the Insured first named in Item 1 of the Declarations is deemed the agent to act on behalf of all Named Insureds and other Insureds with respect to all matters pertaining to this Insurance, including the giving and receiving of notice of cancellation and any other notices.

## XIII.  APPLICATION

By acceptance of this Policy, each Insured reaffirms as of the inception date of this Policy that (a) the statements in the application, the census letter and any other representation made in writing as part of the application process for this policy, copies of which are incorporated herein by reference and made a part hereof, are the Insureds' agreements and representations; (b) that this Policy is issued in reliance upon the truth and accuracy of such representations; and (c) that this Policy embodies all agreements existing between the Insureds and the Company or any of its agents relating to this Insurance.

## XIV.  ARBITRATION

(A)  All disputes which may arise between one or more Insureds and the Company out of or in relation to this Policy (including disputes as to its validity, construction or enforcement ability), or for its breach, shall be finally settled by arbitration held according to the commercial arbitration rules of the American Arbitration Association, by which the Insureds and the Company agree to be bound. In addition to the rules governing such arbitration, the parties shall have at their disposal the broadest pretrial discovery rights as are then available under the laws and judicial rules of the jurisdiction in

HE_BAC00026982  33

Case: 08-32514    Doc# 2178-2    Filed: 05/19/11    Entered: 05/19/11 14:47:10    Page 15 of 43

which the arbitration is to be held, provided that any dispute between the parties relating to discovery shall be submitted to the arbitration panel for resolution.

(B)     Unless the parties consent in writing to a lesser number, the arbitration panel shall consist of three arbitrators, one to be a retired insurance executive appointed by the Company, one to be a retired partner of a major law firm which has coverage under a similar Policy of the Company appointed by the Insureds, and the third to be appointed by the two arbitrators so appointed. In the event the two arbitrators fail to agree upon a third arbitrator, such third arbitrator shall be chosen by the chief judge of the U.S. District Court for the Northern District of California or such other District judge as the chief judge shall designate and, in the event of the failure or refusal of the chief judge to make such designation with 30 days, the presiding judge of the Superior Court of the State of California for the County of San Francisco or such other judge of the court as he or she may designate, except that in a dispute solely regarding punitive or exemplary damages, the third arbitrator shall be chosen by the chief judge  of the U.S. District Court for the District of Vermont or such other District judge as the chief judge shall designate and, in the event of the failure or refusal of the chief judge to make such designation within 30 days, the judge presiding in Chittenden Superior Court of the State of Vermont or such other judge of the court as he or she may designate.

(C)     The arbitration proceedings shall take place in San Francisco, California, or, solely in a dispute regarding punitive or exemplary damages, in Burlington, Vermont.   The arbitration panel may, for the convenience of the parties and without changing the situs of the arbitration proceeding, take evidence outside of San Francisco or Burlington at any place or places within or without the State of California or the State of Vermont.

(D)     The award of the arbitration panel may be alternatively or cumulatively, for monetary damages, an order requiring the performance of the obligations under this Policy, or any other appropriate order or remedy.  The award shall assign all costs of the arbitration, excluding attorneys' fees, to one or both parties.  The arbitration panel may not award punitive damages.  Judgment upon any award rendered in the arbitration may be entered by any court having proper jurisdiction.

(E)     The Company and each of the Insureds hereby submit themselves to the jurisdiction of the State and Federal District Courts located in the State of California, except that in a dispute solely regarding punitive or exemplary damages they submit themselves to the jurisdiction of the State and Federal Courts located in the State of Vermont.

## XV.   AMENDMENT

Any amendment of this Policy must be by endorsement in writing issued by the Company.

## XVI.   GOVERNING LAW

This Policy shall be governed by and construed in accordance with California law, with the sole exception that matters relating to punitive and exemplary damages shall

HE_BAC00026983  34

Case: 08-32514    Doc# 2178-2    Filed: 05/19/11    Entered: 05/19/11 14:47:10    Page 16 of 43

be construed in accordance with Vermont law or such other jurisdiction as the Named Insured may lawfully designate.

XVII.   NOTICE TO THE COMPANY

      Any notices, reports, documents and other matters pertaining to claims under this Insurance shall be deemed sufficiently given or delivered to the Company when mailed or delivered to:

> WELLS, HAUG & LEOPOLD, PC
> Attn:  James R. Haug, Esq.
> 95 St. Paul Street, Suite 440
> Burlington, Vermont 05401-8445

      Any notices, reports, documents and other matters pertaining to this Insurance that do not relate to claims thereunder shall be deemed sufficiently given or delivered to the Company when mailed or delivered to:

> Marsh Risk and Insurance Services, Inc.
> Attn: Laura A. Dempsey
> One California Street – 5th Floor
> San Francisco, California 94111

XVIII.   SERVICE OF SUIT CLAUSE

      Subject to CONDITION XIV.  ARBITRATION, in the event of failure of the Company to pay any amount claimed to be due hereunder, the Company, at the request of the Insured, will submit to the jurisdiction of a court of competent jurisdiction within the United States.  Nothing in this condition constitutes or should be understood to constitute a waiver of the Company's rights to commence an action in any court of competent jurisdiction in the United States to remove an action to a United States District Court or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States.  It is further agreed that service of process in such suit may be made upon

> Counsel, Legal Department
> Lexington Insurance Company
> 100 Summer Street
> Boston, Massachusetts 02110

or his representative, and that in any suit instituted against the Company upon this contract, the Company will abide by the final decision of such court or of any appellate court in the event of an appeal.

      Further, pursuant to any statute of any state, territory, or district of the United States which makes provision therefor, the Company hereby designates the Superintendent, Commissioner or Director of Insurance, other officer specified for that purpose in the statute, or his successor or successors in office as its true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding

Primary policy 08_09                              13

Primary policy 08_09                              13

be construed in accordance with Vermont law or such other jurisdiction as the Named Insured may lawfully designate.

XVII.   NOTICE TO THE COMPANY

    Any notices, reports, documents and other matters pertaining to claims under this Insurance shall be deemed sufficiently given or delivered to the Company when mailed or delivered to:

> WELLS, HAUG & LEOPOLD, PC
> Attn:  James R. Haug, Esq.
> 95 St. Paul Street, Suite 440
> Burlington, Vermont 05401-8445

    Any notices, reports, documents and other matters pertaining to this Insurance that do not relate to claims thereunder shall be deemed sufficiently given or delivered to the Company when mailed or delivered to:

> Marsh Risk and Insurance Services, Inc.
> Attn: Laura A. Dempsey
> One California Street – 5th Floor
> San Francisco, California 94111

XVIII.   SERVICE OF SUIT CLAUSE

    Subject to CONDITION XIV.  ARBITRATION, in the event of failure of the Company to pay any amount claimed to be due hereunder, the Company, at the request of the Insured, will submit to the jurisdiction of a court of competent jurisdiction within the United States.  Nothing in this condition constitutes or should be understood to constitute a waiver of the Company's rights to commence an action in any court of competent jurisdiction in the United States to remove an action to a United States District Court or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States.  It is further agreed that service of process in such suit may be made upon

> Counsel, Legal Department
> Lexington Insurance Company
> 100 Summer Street
> Boston, Massachusetts 02110

or his representative, and that in any suit instituted against the Company upon this contract, the Company will abide by the final decision of such court or of any appellate court in the event of an appeal.

    Further, pursuant to any statute of any state, territory, or district of the United States which makes provision therefor, the Company hereby designates the Superintendent, Commissioner or Director of Insurance, other officer specified for that purpose in the statute, or his successor or successors in office as its true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding

Primary policy 08_09                              13

HE_BAC00026984

35

Case: 08-32514    Doc# 2178-2    Filed: 05/19/11    Entered: 05/19/11 14:47:10    Page 17 of 43

instituted by or on behalf of the Insured or any beneficiary hereunder arising out of this contract of Insurance, and hereby designates the above-named Counsel as the person to whom the said officer is authorized to mail such process or a true copy thereof.

IN WITNESS WHEREOF, we have caused this policy to be executed and attested, but this policy shall not be valid unless countersigned by one of our duly authorized representatives.

_Elizabeth M. Tuck_
_____
Secretary

_Shan E Kelly_
_____
President

HE_BAC00026985

36

## ENDORSEMENT #1

This endorsement effective April 15, 2008, is attached to and forms part of Policy No. 087-2474 issued to **Heller Ehrman LLP** by Lexington Insurance Company.

### ASBESTOS EXCLUSION

It is hereby understood and agreed that this policy does not apply to any **claim** for bodily injury, property damage or economic loss arising from asbestos or any other materials containing asbestos or attributed to or contributed to by asbestos in any way.

This exclusion does not apply to **damages** caused by any error or omission in the rendering of professional services in connection with the representation of a party by an **insured** in connection with any **claim** by or against such party alleging bodily injury, property damage or economic loss resulting an act or event described above.

All other terms remain unchanged.


_____
Authorized Representative of
Lexington Insurance Company

2

HE_BAC00026951

## ENDORSEMENT #2

This endorsement effective April 15, 2008, is attached to and forms part of Policy No. 087-2474 issued to Heller Ehrman LLP by Lexington Insurance Company.

## POLLUTION EXCLUSION

It is agreed that this insurance does not apply to any **claim** for or award of **damages** for bodily injury, property damage or economic loss or any loss or **claim** arising out of the actual, alleged or threatened discharge, dispersion, migration or seepage, of pollutants or contaminants caused or alleged to have been caused or contributed to by an insured or by anyone for whom any **Insured** is liable or legally responsible:

(1) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any **Insured**;

(2) At or from any premises, site or location which is or was at any time used by or for any **Insured** or others for the handling, storage, disposal, processing or treatment of waste;

(3) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for an **Insured** or any person or organization for whom an **Insured** may be legally responsible; or

(4) At or from any premises, site or location on which any **Insured** or any contractors or subcontractors working directly or indirectly on any **Insured's** behalf are performing operations;

    (a) If the pollutants are brought on or to the premises, site or location in connection with such operations by such **Insured**, contractor or subcontractor; or

    (b) If the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants.

(5) Any loss, cost or expense arising out of any:

    (a) Request, demand or order that any **Insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

    (b) **Claim** by or on behalf of a governmental authority for **damages** because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants. Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be

HE_BAC00026952

recycled, reconditioned or reclaimed.

However, this exclusion does not apply to **damages** caused by any error or omission in the rendering of professional services in connection with the representation of a party by an **Insured** in connection with any **claim** by or against such party alleging bodily injury, property damage or economic loss resulting an act or event described above.

All other terms remain unchanged.

_Sajay Sheth_

Authorized Representative of
Lexington Insurance Company

4

HE_BAC00026953

4

## ENDORSEMENT #3

This endorsement effective April 15, 2008, is attached to and forms part of Policy No. 087-2474 issued to Heller Ehrman LLP by Lexington Insurance Company.

### WAR and TERRORISM EXCLUSION

Notwithstanding any provision to the contrary within this insurance or any endorsement thereto it is agreed that this insurance excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any of the following regardless of any other cause or event contributing concurrently or in any other sequence to the loss;

(1)     war, invasion, acts of foreign enemies, hostilities or warlike operations (whether war be declared or not), civil war, rebellion, revolution, insurrection, civil commotion assuming the proportions of or amounting to an uprising, military or usurped power; or

(2)  any act of terrorism.

For the purpose of this endorsement an act of terrorism means an act, including but not limited to the use of force or violence and/or the threat thereof, of any person or group(s) of persons, whether acting alone or on behalf of or in connection with any organization(s) or government(s), committed for political, religious, ideological or similar purposes including the intention to influence any government and/or to put the public, or any section of the public, in fear.

This endorsement also excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any action taken in controlling, preventing, suppressing or in any way relating to (1) and/or (2) above.

If the Underwriters allege that by reason of this exclusion, any loss, damage, cost or expense is not covered by this insurance the burden of proving the contrary shall be upon the Assured.

In the event any portion of this endorsement is found to be invalid or unenforceable, the remainder shall remain in full force and effect.

This Exclusion does not apply to damages caused by any error or omission in the rendering of professional services in connection with the representation of a party by an Insured in connection with any claim by or against such party alleging bodily injury, property damage or economic loss resulting from an act or event described above.

All other terms remain unchanged.

Authorized Representative of
Lexington Insurance Company

5

HE_BAC00026954

ENDORSEMENT #4

This endorsement effective April 15, 2008, is attached to and forms part of Policy No. 087-2474 issued to Heller Ehrman LLP by Lexington Insurance Company.

## MOLD EXCLUSION

It is agreed that this insurance does not apply to any claim for or award of damages for bodily injury, property damage or economic loss or any loss or claim arising out of the actual, alleged or threatened consequences, including but not limited to clean-up, remediation, containment, removal or abatement, caused directly or indirectly, in whole or in part, by:

   a) any fungus(I), mold(s), mildew or yeast, or
   b) any spore(s) or toxins created or produced by or emanating from such fungus(I), mold(s), mildew or yeast, or
   c) any substance, vapor, gas, or other emission or organic or inorganic body or substance produced by or arising out of any fungus(I), mold(s), mildew or yeast, or
   d) or any material, product, building component, building or structure, or any concentration of moisture, water or other liquid within such material, product, building component, building or structure, that contains, harbors, nurtures or acts as a medium for any fungus(I), mold(s), mildew, yeast or spore(s) or toxins emanating there from,

regardless of any other cause, event, material, product and/or building component that contributed concurrently or in any sequence to that loss, injury, damage, cost or expense.

For purposes of this Exclusion, the following definitions are added to this Policy:

   "Fungus(I)" includes, but is not limited to, any plants or organisms belonging to the major group Fungi, lacking chlorophyll, and including mold(s), rusts, mildews, smuts and mushrooms.
   "Mold(s)" includes, but is not limited to, any superficial growth produced on damp or decaying organic matter or on living organisms, and Fungi that produced mold(s).
   "Spore(s) means any dormant or reproductive body produced by or arising or emanating out of any fungus(I), mold(s), mildew, plants, organisms or microorganisms.

This exclusion does not apply to damages caused by any error or omission in the rendering of professional services in connection with the representation of a party by an insured in connection with any claim by or against such party alleging bodily injury, property damage or economic loss resulting from an act or event described above.

All other endorsements, terms and conditions of this Policy remain unchanged.

_Sajay Shah_

Authorized Representative of
Lexington Insurance Company

6

HE_BAC00026955

## ENDORSEMENT #5

This endorsement effective April 15, 2008, is attached to and forms part of Policy No. 087-2474 issued to Heller Ehrman LLP by Lexington Insurance Company.

### REINSTATEMENT OF LIMIT

If the aggregate limit of liability in Item 3 of the Declarations of this Policy and the aggregate limits insured excess of this Policy are fully exhausted (whether by payment of damages and/or claims expenses by the insurers thereon, the Insured or another party on behalf of the Insured, or the insurers thereon having admitted liability for such payment, or the insurers thereon having been held liable for such payment), then the aggregate limit of this Policy will be automatically reinstated, subject to the terms of this endorsement, and the reinstated aggregate limit will be subject to the same terms, conditions and limitations as this Policy. The reinstated aggregate limit will apply regardless of whether the limits excess of this Policy are collectible but will not make up for any uncollectible or unavailable limits excess of this Policy.

All claims arising out of the same act, error or omission or series of interrelated acts, errors or omissions will constitute a single claim, and a maximum of one aggregate limit will apply to the total amount of such claim. The Company's liability for damages and claims expenses under this Policy, including any reinstated aggregate limit, arising from any single claim will not exceed the amount stated in Item 3 of the Declarations for "each claim".

The Company's maximum liability for all claims made during the Policy Period and, if purchased, the Extended Reporting Period combined, including the amount reinstated, will be limited to an amount equal to twice the aggregate limit as stated in Item 3 of the Declarations.

All other terms remain unchanged.

_[signature]_

Authorized Representative of
Lexington Insurance Company

7

HE_BAC00026956

**ENDORSEMENT #6**

This endorsement effective April 15, 2008, is attached to and forms part of Policy No. 087-2474 issued to Heller Ehrman LLP by Lexington Insurance Company.

## COVERAGE TERRITORY - OFAC

Payment of loss under this policy shall only be made in full compliance with all United States of America economic or trade sanction laws or regulations, including, but not limited to, sanctions, laws and regulations administered and enforced by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC").

All other terms and conditions remain unchanged.


_Sanjay Shah_
_____
Authorized Representative of
Lexington Insurance Company

8

HE_BAC00026957

ENDORSEMENT #7

This endorsement effective April 15, 2008, is attached to and forms part of Policy No. 087-2474 issued to **Heller Ehrman LLP** by Lexington Insurance Company.

<u>Exclusion (I)</u>

The Insured and the Company agree that the position Deputy Chairman of the Board of Directors of London Pacific Group Limited (as described in a Resolution of the Board of Directors of London Pacific Group Limited at a meeting held February 16, 1996 and furnished to the Company), shall not be deemed to be an "Operating Officer" position for the purpose of the application of Exclusion (I).

All other terms, conditions and endorsements of the Policy remain unchanged.

Authorized Representative of
Lexington Insurance Company

9

HE_BAC00026958

9

Case: 08-32514    Doc# 2178-2    Filed: 05/19/11    Entered: 05/19/11 14:47:10    Page 26 of 43

ENDORSEMENT #8

This endorsement effective April 15, 2008, is attached to and forms part of Policy No. 087-2474 issued to Heller Ehrman LLP by Lexington Insurance Company.

## LATERAL HIRE PRIOR ACTS

1. Coverage

   This Policy is amended to provide coverage, subject to the terms, conditions, exclusions and limitations stated below and elsewhere in this Policy, to Brett R. Dick in a capacity which would be covered by Insuring Agreement I. COVERAGE – PROFESSIONAL LIABILITY of this Policy in respect to any claim made against him during the Policy Period by reason of any act, error or omission or personal injury committed or alleged to have been committed prior to July 13, 1993 and on behalf of Pettit & Martin. For the limited purpose described above, Exclusion (F) is deleted.

2. Other Insurance

   Only as respects coverage provided Brett R. Dick pursuant to this Endorsement, Condition VII (Other Insurance) is deleted in its entirety and replaced by the following:

   VII.    Other Insurance

   Any covered claims arising out of acts, errors or omissions or personal injuries attributable to Brett R. Dick and occurring prior to July 13, 1993 shall be covered by and assigned to any other insurance policy issued to Pettit & Martin covering claims arising out of acts, errors or omissions or personal injuries committed or alleged to have been committed prior to May 15, 1995. In the event the Limit of Liability of such policy has been diminished by payment of Damages and/or Claim Expenses, and Damages and Claim Expenses attributable to Brett R. Dick for covered claims exceed the Limit of Liability still remaining under such policy, such Damages and Claim Expenses shall be covered under this Policy after application of the Self Insured Retention but, in no event, shall the Company's liability for such Damages and Claim Expenses arising out of any single claim exceed $10,000,000 whether paid under such policy issued to Pettit & Martin, this Policy, or a combination of the two policies.

   As respects acts, errors or omissions attributable to Brett R. Dick occurring after July 13, 1993, Condition VII. (Other Insurance) shall apply as stated in the Policy.

3. Additional Exclusions

   The coverage provided by this Endorsement does not apply to Damages or Claim Expenses incurred with respect to:

10

HE_BAC00026959

a) any Claim arising out of any act, error or omission or personal injury committed or alleged to have been committed by any other person or entity (including another Insured) or for which Brett R. Dick is or may be vicariously liable (whether by operation of law or as a result of agreement); or

b) any Claim that at the time coverage under this Endorsement became effective either (i) already had been made against Brett R. Dick or (ii) arose out of any circumstance which, at the time coverage under this Endorsement became effective, Brett R. Dick had any reasonable basis to believe might lead to a claim being made against him during the Policy Period.

4. **Automatic Termination of Coverage**

Coverage under this Endorsement will automatically terminate on the date Brett R. Dick withdraws from or terminates his affiliation with the Named Insured. Brett R. Dick will not be deemed to have withdrawn from or terminated his affiliation with the Named Insured in the event of (i) his death or (ii) his retirement from the practice of law or his total disability so long as he remains so retired or totally disabled.

All other terms and conditions of the Policy remain unchanged.

_____
Authorized Representative of
Lexington Insurance Company

11

## ENDORSEMENT #9

This endorsement effective April 15, 2008, is attached to and forms part of Policy No. 087-2474 issued to Heller Ehrman LLP by Lexington Insurance Company.

## LATERAL HIRE PRIOR ACTS

1. **Coverage**

   This Policy is amended to provide coverage, subject to the terms, conditions, exclusions and limitations stated below and elsewhere in this Policy, to Brian D. Smith in a capacity which would be covered by Insuring Agreement I. COVERAGE – PROFESSIONAL LIABILITY of this Policy in respect to any claim made against him during the Policy Period by reason of any act, error or omission or personal injury committed or alleged to have been committed prior to September 23, 1991 and on behalf of Pettit & Martin. For the limited purpose described above, Exclusion (F) is deleted.

2. **Other Insurance**

   Only as respects coverage provided Brian D. Smith pursuant to this Endorsement, Condition VII (Other Insurance) is deleted in its entirety and replaced by the following:

   VIII.    Other Insurance

   Any covered claims arising out of acts, errors or omissions or personal injuries attributable to Brian D. Smith and occurring prior to September 23, 1991 shall be covered by and assigned to any other insurance policy issued to Pettit & Martin covering claims arising out of acts, errors or omissions or personal injuries committed or alleged to have been committed prior to May 15, 1995. In the event the Limit of Liability of such policy has been diminished by payment of Damages and/or Claim Expenses, and Damages and Claim Expenses attributable to Brian D. Smith for covered claims exceed the Limit of Liability still remaining under such policy, such Damages and Claim Expenses shall be covered under this Policy after application of the Self Insured Retention but, in no event, shall the Company's liability for such Damages and Claim Expenses arising out of any single claim exceed $10,000,000 whether paid under such policy issued to Pettit & Martin, this Policy, or a combination of the two policies.

   As respects acts, errors or omissions attributable to Brian D. Smith occurring after September 23, 1991, Condition VII. (Other Insurance) shall apply as stated in the Policy.

3. **Additional Exclusions**
   The coverage provided by this Endorsement does not apply to Damages or Claim Expenses incurred with respect to:

i2

HE_BAC00026961

Case: 08-32514    Doc# 2178-2    Filed: 05/19/11    Entered: 05/19/11 14:47:10    Page 29 of 43

c) any Claim arising out of any act, error or omission or personal injury committed or alleged to have been committed by any other person or entity (including another Insured) or for which Brian D. Smith is or may be vicariously liable (whether by operation of law or as a result of agreement); or

d) any Claim that at the time coverage under this Endorsement became effective either (i) already had been made against Brian D. Smith or (ii) arose out of any circumstance which, at the time coverage under this Endorsement became effective, Brian D. Smith had any reasonable basis to believe might lead to a claim being made against him during the Policy Period.

4. **Automatic Termination of Coverage**

Coverage under this Endorsement will automatically terminate on the date Brian D. Smith withdraws from or terminates his affiliation with the Named Insured. Brian D. Smith will not be deemed to have withdrawn from or terminated his affiliation with the Named Insured in the event of (i) his death or (ii) his retirement from the practice of law or his total disability so long as he remains so retired or totally disabled.

All other terms and conditions of the Policy remain unchanged.


_____
Authorized Representative of
Lexington Insurance Company

13

## ENDORSEMENT #10

This endorsement effective April 15, 2008, is attached to and forms part of Policy No. 087-2474 issued to Heller Ehrman LLP by Lexington Insurance Company.

## LATERAL HIRE PRIOR ACTS

1. **Coverage**

   This Policy is amended to provide coverage, subject to the terms, conditions, exclusions and limitations stated below and elsewhere in this Policy, to Judith C. Miles in a capacity which would be covered by Insuring Agreement I. COVERAGE – PROFESSIONAL LIABILITY of this Policy in respect to any claim made against her during the Policy Period by reason of any act, error or omission or personal injury committed or alleged to have been committed prior to September 23, 1991 and on behalf of Pettit & Martin. For the limited purpose described above, Exclusion (F) is deleted.

2. **Other Insurance**

   Only as respects coverage provided Judith C. Miles pursuant to this Endorsement, Condition VII (Other Insurance) is deleted in its entirety and replaced by the following:

   IX.     Other Insurance

   Any covered claims arising out of acts, errors or omissions or personal injuries attributable to Judith C. Miles and occurring prior to September 23, 1991 shall be covered by and assigned to any other insurance policy issued to Pettit & Martin covering claims arising out of acts, errors or omissions or personal injuries committed or alleged to have been committed prior to May 15, 1995. In the event the Limit of Liability of such policy has been diminished by payment of Damages and/or Claim Expenses, and Damages and Claim Expenses attributable to Judith C. Miles for covered claims exceed the Limit of Liability still remaining under such policy, such Damages and Claim Expenses shall be covered under this Policy after application of the Self Insured Retention but, in no event, shall the Company's liability for such Damages and Claim Expenses arising out of any single claim exceed $10,000,000 whether paid under such policy issued to Pettit & Martin, this Policy, or a combination of the two policies.

   As respects acts, errors or omissions attributable to Judith C. Miles occurring after September 23, 1991, Condition VII. (Other Insurance) shall apply as stated in the Policy.

3. **Additional Exclusions**

   The coverage provided by this Endorsement does not apply to Damages or Claim Expenses incurred with respect to:

14

HE_BAC00026963

e) any Claim arising out of any act, error or omission or personal injury committed or alleged to have been committed by any other person or entity (including another Insured) or for which Judith C. Miles is or may be vicariously liable (whether by operation of law or as a result of agreement); or

f) any Claim that at the time coverage under this Endorsement became effective either (i) already had been made against Judith C. Miles or (ii) arose out of any circumstance which, at the time coverage under this Endorsement became effective, Judith C. Miles had any reasonable basis to believe might lead to a claim being made against her during the Policy Period.

4. Automatic Termination of Coverage

Coverage under this Endorsement will automatically terminate on the date Judith C. Miles withdraws from or terminates her affiliation with the Named Insured. Judith C. Miles will not be deemed to have withdrawn from or terminated her affiliation with the Named Insured in the event of (i) her death or (ii) her retirement from the practice of law or her total disability so long as she remains so retired or totally disabled.

All other terms and conditions of the Policy remain unchanged.

_Sanjay Gulh_
_____
Authorized Representative of
Lexington Insurance Company

15

HE_BAC00026964

_15_

ENDORSEMENT #11

This endorsement effective April 15, 2008, is attached to and forms part of Policy No. 087-2474 issued to **Heller Ehrman LLP** by Lexington Insurance Company.

## LATERAL HIRE PRIOR ACTS

1. **Coverage**

   This Policy is amended to provide coverage, subject to the terms, conditions, exclusions and limitations stated below and elsewhere in this Policy, to Simon Luk in a capacity which would be covered by Insuring Agreement I. COVERAGE – PROFESSIONAL LIABILITY of this Policy in respect to any claim made against him during the Policy Period by reason of any act, error or omission or personal injury committed or alleged to have been committed prior to September 1, 1993 and on behalf of Pettit & Martin. For the limited purpose described above, Exclusion (F) is deleted.

2. **Other Insurance**

   Only as respects coverage provided Simon Luk pursuant to this Endorsement, Condition VII (Other Insurance) is deleted in its entirety and replaced by the following:

   X.     Other Insurance

   Any covered claims arising out of acts, errors or omissions or personal injuries attributable to Simon Luk and occurring prior to September 1, 1993 shall be covered by and assigned to any other insurance policy issued to Pettit & Martin covering claims arising out of acts, errors or omissions or personal injuries committed or alleged to have been committed prior to May 15, 1995. In the event the Limit of Liability of such policy has been diminished by payment of Damages and/or Claim Expenses, and Damages and Claim Expenses attributable to Simon Luk for covered claims exceed the Limit of Liability still remaining under such policy, such Damages and Claim Expenses shall be covered under this Policy after application of the Self Insured Retention but, in no event, shall the Company's liability for such Damages and Claim Expenses arising out of any single claim exceed $10,000,000 whether paid under such policy issued to Pettit & Martin, this Policy, or a combination of the two policies.

   As respects acts, errors or omissions attributable to Simon Luk occurring after September 1, 1993, Condition VII. (Other Insurance) shall apply as stated in the Policy.

HE_BAC00026965

3. **Additional Exclusions**

The coverage provided by this Endorsement does not apply to Damages or Claim Expenses incurred with respect to:

g) any Claim arising out of any act, error or omission or personal injury committed or alleged to have been committed by any other person or entity (including another Insured) or for which Simon Luk is or may be vicariously liable (whether by operation of law or as a result of agreement); or

h) any Claim that at the time coverage under this Endorsement became effective either (i) already had been made against Simon Luk or (ii) arose out of any circumstance which, at the time coverage under this Endorsement became effective, Simon Luk had any reasonable basis to believe might lead to a claim being made against him during the Policy Period.

4. **Automatic Termination of Coverage**

Coverage under this Endorsement will automatically terminate on the date Simon Luk withdraws from or terminates his affiliation with the Named Insured. Simon Luk will not be deemed to have withdrawn from or terminated his affiliation with the Named Insured in the event of (i) his death or (ii) his retirement from the practice of law or his total disability so long as he remains so retired or totally disabled.

All other terms and conditions of the Policy remain unchanged.

_Sanjay Lalh_
_____
Authorized Representative of
Lexington Insurance Company

17

HE_BAC00026966

ENDORSEMENT #12

This endorsement effective April 15, 2008, is attached to and forms part of Policy No. 087-2474 issued to **Heller Ehrman LLP** by Lexington Insurance Company.

## Exclusion (E)

The Named Insured has advised the Company that client CodeSourcery LLC (CodeSourcery) is owned 50/50 by Mark Mitchell, the husband of one of the Named Insured's associates, and another individual. Mr. Mitchell proposes to purchase the interest of the other individual, so that Mr. Mitchell would ultimately own 100%. Mr. Mitchell's wife, Beth Mitchell, is a 4th year associate in the Named Insured's Silicon Valley office. She is primarily an IP litigator, but she has done some licensing work as well. As respects legal services the Named Insured intends to render to CodeSourcery, an experienced Shareholder or Of Counsel will be assigned to supervise each matter and Ms. Mitchell will not perform legal services for or relating to CodeSourcery and will have no direct supervision over any attorneys working on matters for CodeSourcery.

In reliance upon the above representations by the Named Insured, the Company confirms and agrees that Exclusion (E) shall not apply to legal services provided by the Named Insured to CodeSourcery; provided, however, this endorsement does not apply to any legal services Ms. Mitchell renders to CodeSourcery on behalf of the Named Insured.

This endorsement shall not affect coverage for the Named Insured or Ms. Mitchell when Ms. Mitchell renders legal services on behalf of the Named Insured for clients other than CodeSourcery.

All other Policy terms, conditions and endorsements remain unchanged.

_Sayjay Llelh_
_____
Authorized Representative of
Lexington Insurance Company

18

HE_BAC00026967

ENDORSEMENT #13

This endorsement effective April 15, 2008, is attached to and forms part of Policy No. 087-2474 issued to **Heller Ehrman LLP** by Lexington Insurance Company.

## ADDITIONAL NAMED INSUREDS

It is understood and agreed that the following entities are additional Named Insureds on this Policy:

Heller Ehrman White & McAuliffe, a Hong Kong partnership, Heller Ehrman White & McAuliffe (Hong Kong) Limited and Heller Ehrman (Europe) LLP.

All other Policy terms, conditions and endorsements remain unchanged.

_Sanjay Gulh_

Authorized Representative of
Lexington Insurance Company

19

HE_BAC00026968

19

ENDORSEMENT #14

This endorsement effective April 15, 2008, is attached to and forms part of Policy No. 087-2474 issued to Heller Ehrman LLP by Lexington Insurance Company.

## PREDECESSOR FIRM

It is understood and agreed that Venture Law Group, a Professional Corporation is a predecessor firm within the context of DEFINITIONS, VII. **Predecessor Firm** of the Policy.

All other terms and conditions remain unchanged.

_____
Authorized Representative of
Lexington Insurance Company

20

HE_BAC00026969

## ENDORSEMENT #15

This endorsement effective April 15, 2008, is attached to and forms part of Policy No. 087-2474 issued to Heller Ehrman LLP by Lexington Insurance Company.

## Exclusions (E) and (I)

The Named Insured has advised the Company of the following –

Josh Green, a corporate "special counsel" in its Menlo Park office, has incorporated an entity named "Legal Architects." Legal Architects is a Subchapter S corporation wholly-owned by Mr. Green. Legal Architects has been formed to provide strategic business advice ("Consulting Services") to start-up and newly emerging companies. Legal Architects is not a law firm and provides no legal services. The Named Insured has no ownership interest in or other control over Legal Architects.

As part of the Consulting Services, Mr. Green may be elected to the board of directors and/or appointed a vice president or other officer of Legal Architects' clients (such clients being referred to herein as "LA Client(s)"). LA Clients will compensate Mr. Green for his work on behalf of Legal Architects through such combinations of cash and opportunities to acquire equity interests therein as they may negotiate from time-to-time. However, neither Mr. Green nor Legal Architects will own, individually or in the aggregate, more than five percent (5%) of the then outstanding shares of capital stock of any particular LA Client. In calculating Mr. Green's and Legal Architects' aggregate ownership interest in an LA Client, if the denominator is the total number of shares of the LA Client's capital stock then outstanding, the numerator shall include shares beneficially owned by Mr. Green and Legal Architects, but (for purposes of this endorsement only) shall not include securities held by (1) any other attorney employed by the Named Insured, (2) HEWM/VLG Investments LLC, or (3) any other investment fund affiliated with the Named Insured.

Although LA Clients may also be clients or potential clients of the Named Insured, they are not required to be clients of the Named Insured. Mr. Green will provide Consulting Services to LA Clients regardless of their status as clients or non-clients of the Named Insured.

Although Mr. Green may manage an LA Client's relationship with its outside legal counsel, he will not (1) directly supervise any legal services provided to any LA Clients by attorneys of either the Named Insured or any other law firm, or (2) perform any legal services himself on behalf of such clients.

When the Named Insured provides legal services to LA Clients:

    a.    All such arrangements will be approved in advance by the Named Insured's Shareholders Robert A. Epsen and David M. Jargiello and reported to the Company as soon as practical;

21

b. The Named Insured will not bill LA Clients for time spent by Mr. Green preparing for or attending their Board meetings, or providing Consulting Services;

c. When it is desirable to have an attorney present to provide legal advice at an LA Client's Board meeting, another attorney of the Named Insured will attend the meeting and record his or her time for billing purposes;

d. A shareholder of the Named Insured, other than Mr. Green, will always serve as the client manager if the LA Client is also a client of the Named Insured;

e. All LA Clients who elect the Named Insured for legal representation will sign both the Named Insured's standard engagement letter for legal services, and, Legal Architects' separate engagement letter for Consulting Services; and

f. The Named Insured will not advertise the Consulting Services available from Legal Architects in its own promotional or marketing materials.

In reliance upon the above representations by the Named Insured, the Company confirms and agrees that Exclusions (E) and (I) shall not apply to any Claim made under this Policy if (1) such Claim arises out of legal services provided to an LA Client by any Insured other than Mr. Green, and (2) Mr. Green has not provided legal services to that client.

This endorsement shall not affect coverage, provided under this Policy, for the Named Insured or Mr. Green when Mr. Green renders legal services to clients other than LA Clients.

All other Policy terms, conditions and endorsements remain unchanged.


_Sanjay Shah_
_____
Authorized Representative of
Lexington Insurance Company


22

HE_BAC00026971

# EXHIBIT B

Client #: 1002673
Att. Entry #: 1002367

# HELLER EHRMAN LLP

**Errors & Omissions**
**4/15/08 to 4/15/09**
**Schedule of Limits, Premiums and Taxes**

| Part. | POLICY # | Insurer Name | Premiums | 2020AA AK Taxes | 1337AA AK Fees | 1216AA CA Taxes | 1772AA CA Fees | 2619AA WA Taxes | 1379AA WA Fees |
|---|---|---|---|---|---|---|---|---|---|
| **A  $10 Million each claim/ALL** | | | | | | | | | |
| XS SIR -- $2,000,000 | | | | | | | | | |
| 100.0000% Lexington/MPC | 0872474 | LEXINGTON INSURANCE CO. | $3,094,397.00 | 539.04 | 199.65 | 48,133.33 | 2,023.89 | 7,586.53 | 948.32 |
| **B  $15 Million XS $10 Million** | | | | | | | | | |
| 23.3333% A. Lexington/MPC | 0872475 | LEXINGTON INSURANCE CO. | 110,666.84 | 19.27 | 7.14 | 1,745.80 | 72.74 | 271.33 | 33.92 |
| 53.3334% B. Lexington/Western Risk | 650-2204 | LEXINGTON INSURANCE CO. | 253,960.32 | 44.07 | 16.31 | 3,990.36 | 166.27 | 620.18 | 77.52 |
| 23.3333% C. Interstate Fire & Casualty | MPC-1000005 | INTERSTATE FIRE & CASUALTY | 110,666.84 | 19.38 | 7.14 | 1,745.86 | 72.74 | 271.33 | 33.92 |
| 100.0000% SUB-TOTALS | | | 474,000.00 | 82.62 | 30.60 | 7,481.96 | 311.75 | 1,162.84 | 145.36 |
| **C  $25 Million XS $25 Million** | | | | | | | | | |
| 38.5000% A. Lexington/MPC | 0872475 | LEXINGTON INSURANCE CO. | 111,234.20 | 19.38 | 7.18 | 1,754.69 | 73.11 | 272.71 | 34.09 |
| 38.0000% B. Lexington - Western Risk | 650-2204 | LEXINGTON INSURANCE CO. | 109,788.60 | 19.13 | 7.08 | 1,731.90 | 72.16 | 269.17 | 33.65 |
| 10.5000% C. Interstate Fire & Casualty | MPC-1000005 | INTERSTATE FIRE & CASUALTY | 30,336.60 | 5.28 | 1.96 | 478.55 | 19.94 | 74.38 | 9.30 |
| 10.0000% D. Illinois Union/ACE USA | XEO G21643877 005 | ILLINOIS UNION INSURANCE CO | 28,892.00 | 5.03 | 1.86 | 455.76 | 18.99 | 70.83 | 8.85 |
| 3.0000% E. Lloyd's/BAR1555 | 0701670B (6) | LLOYD'S OF LONDON | 8,667.60 | 1.52 | 0.56 | 136.74 | 5.70 | 21.25 | 2.65 |
| 100.0000% SUB-TOTALS | | | 288,920.00 | 50.33 | 18.64 | 4,557.64 | 189.90 | 708.34 | 88.54 |
| **D  $25 Million XS $50 Million** | | | | | | | | | |
| 70.0000% A. Lexington/MPC | 0872475 | LEXINGTON INSURANCE CO. | 167,958.00 | 29.26 | 10.83 | 2,649.49 | 110.40 | 411.78 | 51.18 |
| 10.0000% B. Interstate Fire & Casualty | MPC-1000005 | INTERSTATE FIRE & CASUALTY | 23,994.00 | 4.18 | 1.55 | 378.50 | 15.77 | 58.83 | 7.35 |
| 20.0000% C. Executive Risk Indemnity/Chubb | 6804-7822 | CHUBB Group of Ins. Co. | 47,988.00 | | | | | | |
| 100.0000% SUB-TOTALS | | | 239,940.00 | 33.44 | 12.38 | 3,027.99 | 126.17 | 470.61 | 58.83 |
| **E  $25 Million XS $75 Million** | | | | | | | | | |
| 7.0000% A. Lexington/MPC | 0872475 | LEXINGTON INSURANCE CO. | 11,935.00 | 2.08 | 0.77 | 186.27 | 7.85 | 29.26 | 3.65 |
| 40.0000% B. Nutmeg Insurance Co. | PF 0224433 | NUTMEG INSURANCE CO. | 68,200.00 | 11.84 | 4.40 | 1,059.82 | 44.83 | 167.21 | 20.90 |
| 35.0000% C. Swiss Re International SE | 393911 | SWISS RE INTERNATIONAL SE | 59,675.00 | 10.40 | 3.86 | 941.36 | 39.25 | 146.89 | 18.29 |
| 16.0000% D. Lexington/Western Risk | 650-2204 | LEXINGTON INSURANCE CO. | 27,280.00 | 4.75 | 1.76 | 430.34 | 17.93 | 66.89 | 8.36 |
| 2.0000% E. Navillus Insurance Company | PLX-1000204 | NAVILLUS INSURANCE COMPANY | 3,410.00 | 0.59 | 0.22 | 53.79 | 2.24 | 8.36 | 1.05 |
| 100.0000% SUB-TOTALS | | | 170,500.00 | 29.70 | 11.00 | 2,689.59 | 112.07 | 418.01 | 52.25 |
| **F  $50 Million XS $100 Million** | | | | | | | | | |
| 35.0000% A. Lexington/MPC | 0872475 | LEXINGTON INSURANCE CO. | 10,633.00 | 1.85 | 0.69 | 167.71 | 6.98 | 26.07 | 3.26 |
| 20.0000% B. Lloyd's/ACE | 0701680B (10) | LLOYD'S OF LONDON | 6,038.00 | | 0.92 | 958.47 | 39.94 | 148.97 | 18.62 |
| 4.0000% C. General Security Ins of AZ | 2008 10/1200889 (10) | GEN SECURITY IND. CO. OF ARI | 12,152.00 | 0.58 | 0.21 | 191.66 | 7.99 | 29.79 | 3.72 |
| 20.0000% D. ACE (BERMUDA) | MPC-11906DB | ACE BERMUDA INS. LTD | 60,760.00 | DO NOT INVOICE | | | | | |
| 26.0000% E. XWAC (BERMUDA) | C003409/708 | ALLIED WORLD ASSURANCE | 76,960.00 | DO NOT INVOICE | | | | | |
| 27.6000% F. AIG XS UAB INS LTD | 7336312 | AIG XS UAB INS INTL LTD | 83,545.00 | DO NOT INVOICE | | | | | |
| 100.0000% SUB-TOTALS | | | 303,800.00 | 14.55 | 5.39 | 1,317.90 | 54.91 | 204.83 | 25.60 |

HELLER_E&O Schedule 2008-09 REVISED 8-8-08.xls

1/13/2009

| | Part. | Policy # | Insurer Name | Premiums | AK Taxes | AK Fees | CA Taxes | CA Fees | WA Taxes | WA Fees |
|---|---|---|---|---|---|---|---|---|---|---|
| G $25 Million X5 $150 Million | | | | | | | | | | |
| A. Swiss Re International SE | 35.0000% | 39036.1 | SWISS RE INTERNATIONAL SE | $ 47,740.00 | $ | $ | $ | $ | $ | |
| B. BRIT Ins. Syndicate 2987 | 20.0000% | 0F016908(4) | MARSH LTD. | $ 27,280.00 | $ 8.73 | $ 3.08 | $ 753.10 | $ 31.38 | $ 117.05 | 14.63 |
| C. Liberty Mutual Ins. Europe Ltd. | 20.0000% | 0F016908(4) | MARSH LTD. | $ 27,280.00 | $ 4.75 | $ 1.76 | $ 430.33 | $ 17.93 | $ 66.88 | 8.36 |
| D. ACE (BERMUDA) | 5.0000% | MPC-11041D8 | | $ 6,820.00 | DO NOT INVOICE | | | | | |
| E. Executive Risk Indemnity | 20.0000% | 8208-2562 | CHUBB GROUP | $ 27,280.00 | $ 4.75 | $ 1.76 | $ 430.33 | $ 17.93 | $ 66.88 | 8.36 |
| SUB-TOTALS: | 100.0000% | | | $ 136,400.00 | $ 17.82 | $ 6.60 | $ 1,613.76 | $ 67.24 | $ 250.81 | 31.35 |
| H $25 Million X5 $175 Million | | | | | | | | | | |
| A. Gen. Security Indemnity Co. of AZ (GS INDA/SCOR) | 92.0000% | 2008 16F1300B8 (1D) | GEN. SECURITY IND. CO. OF AR | $ 108,376.00 | $ 18.88 | $ 6.99 | $ 1,709.60 | $ 71.24 | $ 265.71 | 33.21 |
| B. St Paul Surplus Lines Ins. Co. | 8.0000% | LK00600465 | ST PAUL SURPLUS LINES INS C | $ 9,424.00 | $ 1.64 | $ 0.61 | $ 148.67 | $ 6.19 | $ 23.10 | 2.89 |
| SUB-TOTALS: | 100.0000% | | | $ 117,800.00 | $ 20.52 | $ 7.60 | $ 1,858.27 | $ 77.43 | $ 288.81 | 36.10 |
| | | | | $ 4,826,057.00 | $ 788.02 | $ 291.86 | $ 71,360.43 | $ 2,973.35 | $ 11,090.79 | $ 1,386.36 |
| | | | GRAND TOTAL INCLUDING BERMUDA PREMIUMS | $ 4,914,276.69 | | | | | | |

EXHIBITS C, D, E AND F HAVE
BEEN REDACTED AND HAVE NOT
BEEN FILED

THE POST-CONFIRMATION
DEBTOR WILL FILE THESE
EXHIBITS UNDER SEAL IN
ACCORDANCE WITH ITS
CONCURRENTLY FILED *EXPARTE*
APPLICATION TO FILE THE
UNREDACTED DOCUMENTS
UNDER SEAL