133.   The Jewel Waiver stated:

As the firm is no longer in a position to continue to service its clients efficiently and as an inducement to encourage Shareholders to move their clients to other law firms and to move Associates and Staff with them, the effect of which will be to reduce expenses to the Firm-in-Dissolution, and to assure that client matters are attended to in the most efficient and effective manner possible, and to help ensure collection of existing accounts receivable and unbilled time with respect to such clients, the Firm-in-Dissolution will waive any rights and claims under the doctrine of *Jewel v. Boxer*, 156 Cal. App. 3d 171 (1984) to seek payment of legal fees generated after the departure date of any lawyer or group of lawyers with respect to non-contingency/non-success fee matters only and the Dissolution Committee is authorized to provide appropriate assurances to law firms that Shareholders may choose to join regarding this issue …

134.   The Jewel Waiver was not contingent upon receipt of any payment or other consideration.

135.   No payment or other consideration was ever given Debtor by anyone in exchange for the Jewel Waiver.

136.   The Jewel Waiver expressly excluded the RAKTL engagement as the waiver did not encompass contingency matters as it applied only "with respect to con-contingency/non-success fees only."

**Debtor's Chapter 11 Case And The RAKTL Claim**

137.   Three months after the Heller Shareholders voted to dissolve Debtor, Debtor commenced its Chapter 11 case.  In Debtor's Chapter 11 case, the RAKTL Defendants filed Proof of Claim No. 709 (the "RAKTL Claim") on April 24, 2009, claiming more than $50 million against Debtor's estate.  The RAKTL Claim consists of the one-page proof of claim, an Attachment to Proof of Claim (the "Attachment"), and was supplemented by the Declaration of James Tramontana Regarding Sealed Documents in Support of Claim Number 709 of Ronald A. Katz Technology Licensing, L.P. and its affiliate A2D, L.P. (the "Tramontana Declaration" or "Tramontana Decl."), and the Declaration of James E. Malackowski Regarding Sealed Documents in Support of Claim Number 709 of Ronald A. Katz Technology Licensing, L.P. and its affiliate A2D, L.P.

(the "Malackowski Declaration" or Malackowski Decl."), filed with the Court on September 1, 2010.

138. In the RAKTL Claim, the RAKTL Defendants allege Debtor "breached" the RAKTL Fee Agreement by dissolving, thereby allegedly becoming unable to perform. The RAKTL Defendants claim they incurred a variety of losses (totaling more than $50 million) when the RAKTL Defendants were "required" to engage substitute counsel to complete the Cases.

139. The RAKTL Claim is meritless. The RAKTL Defendants terminated their representation by Debtor – and continued to be represented by the IP Shareholder Defendants, their successor firm Covington and eventually by Cooley LLP ("Cooley") (RAKTL's choice of firms). The RAKTL Defendants engaged in secret communications with the IP Shareholder Defendants, which the RAKTL Defendants knew were hostile to the interests of Debtor and which would lead to a termination of Debtor's representation of RAKTL. The RAKTL Defendants at no time requested that Debtor seek a way to continue to represent the RAKTL Defendants after the IP Shareholder Defendants departed.

140. To the extent communications and other actions of the IP Shareholder Defendants caused the RAKTL Defendants to misapprehend the consequences of their termination of representation by Debtor under the RAKTL Fee Agreement, and upon the RAKTL Defendants and upon Debtor, the RAKTL Defendants knew that such communications were not made on behalf of Debtor, and were contrary to the interests of Debtor.

## FIRST CLAIM FOR RELIEF
### (Breach of Contract
### Against The RAKTL Defendants)

141. Plaintiff incorporates herein by reference the allegations set forth in Paragraphs 1 through 140, inclusive, as though fully set forth herein.

142. The RAKTL Fee Agreement constitutes a binding contract between Debtor

1 | and the RAKTL Defendants.

2 |     143.    Debtor performed all of its duties under the RAKTL Fee Agreement except to

3 | the extent that its performance was waived, excused or discharged by the RAKTL

4 | Defendants by, without limitation, the RAKTL Defendants' termination of Debtor's

5 | engagement as the RAKTL Defendants' counsel and transfer of the Cases to Covington and

6 | other counsel.

7 |     144.    The RAKTL Defendants breached the RAKTL Fee Agreement by, <u>inter</u>

8 | <u>alia</u>:

9 |     (a) Failing and refusing, without legal order, excuse or justification, to pay

10 |     Debtor the Contingent Fee due under the RAKTL Fee Agreement on

11 |     November 1, 2010, estimated by Debtor to exceed $10,700,000; and

12 |     (b) Failing and refusing to account to Debtor for its share of fees on Cases

13 |     resolved after November 1, 2010, and pay such fees to Debtor as required

14 |     by law.

15 |     145.    Without prejudice to Debtor's position that, by filing the RAKTL Claim, the

16 | RAKTL Defendants have invoked the judicial process and waived any right they

17 | otherwise may have had to arbitrate this dispute, Debtor has complied with California

18 | Business and Professions Code § 6201(a), California's Mandatory Fee Arbitration Act, by

19 | serving with this Complaint a completed copy of the form required by the State Bar of

20 | California.

21 |     146.    Debtor has been damaged in an amount to be proven at trial but believed to

22 | exceed $10,700,000 as a direct and proximate result of this breach of the RAKTL Fee

23 | Agreement.

24 | **SECOND CLAIM FOR RELIEF**

**(Quantum Meruit**

25 | **Against The RAKTL Defendants)**

26 |     147.    Plaintiff incorporates herein by reference the allegations set forth in

27 | Paragraphs 1 through 140, inclusive, as though fully set forth herein.

28 |     148.    From mid-2006 through September 2008, Debtor performed valuable legal

services for the RAKTL Defendants and invested more than $18,500,000 in uncompensated billable time in the Cases. Debtor's legal services involved complex matters that consumed the sustained attention of a number of Debtor's highly-qualified, skilled and specialized attorneys and staff. The RAKTL Defendants accepted Debtor's services and, under settlements negotiated by Debtor, have received more than $100 million in gross settlement proceeds.

149. Debtor is entitled to a recovery in quantum meruit with respect to, among other things, the fair value of Debtor's services to the RAKTL Defendants prior to the termination of Debtor's engagement by the RAKTL Defendants, whether such value was enjoyed by the RAKTL Defendants before or after the RAKTL Defendants terminated Debtor.

**THIRD CLAIM FOR RELIEF**
**(Breach of the Implied Covenant of Good Faith**
**And Fair Dealing Against The RAKTL Defendants)**

150. Plaintiff incorporates herein by reference the allegations set forth in Paragraphs 1 through 140, inclusive, as though fully set forth herein.

151. The RAKTL Fee Agreement constitutes a binding contract between Debtor and the RAKTL Defendants. This contract contains an implied covenant of good faith and fair dealing.

152. The RAKTL Defendants breached the implied covenant of good faith and fair dealing by, inter alia:

(a) Participating in the IP Shareholder Defendants' secret plan to transfer Debtor's RAKTL business to Covington and other firms, along with Debtor's specialized and valuable employees, and to terminate Debtor's representation on the pretext that Debtor had breached its contract; and

(b) Failing and refusing to disclose the status of the Cases (and related Net Recoveries and Contingent Fee calculations) to Debtor and to account therefor;

(c) Failing and refusing, without legal order, excuse or justification, to pay

Debtor the Contingent Fee due under the RAKTL Fee Agreement on
November 1, 2010, estimated by Debtor to exceed $10,700,000; and

(d) Failing and refusing to account to Debtor for its share of fees on Cases
resolved after November 1, 2010, and pay such fees to Debtor as required
by law.

153.    Debtor has been damaged in an amount to be proven at trial but believed to
exceed $20,000,000 as a direct and proximate result of this breach of the implied covenant
of good faith and fair dealing.

### FOURTH CLAIM FOR RELIEF
#### (Breach of Contract Against
#### The IP Shareholder Defendants)

154.    Plaintiff incorporates herein by reference the allegations set forth in
Paragraphs 1 through 140, inclusive, as though fully set forth herein.

155.    By virtue of the IP Shareholders' membership in the Debtor, the Partnership
Agreement, and the related Shareholders Agreements and Employment Agreements, there
was and is a binding contract between Debtor and the IP Shareholder Defendants and/or
Debtor is a third-party beneficiary of binding contracts between the IP Shareholder
Defendants and the Heller PC's with power to enforce such contracts and to seek damages
thereunder.

156.    Debtor performed all of its contractual duties except to the extent that its
performance was waived, excused or discharged by actions of the IP Shareholder
Defendants.

157.    The IP Shareholder Defendants breached its contractual duties to the
Debtor, and those in the Partnership Agreement, and the related Shareholders Agreements
and Employment Agreements by, inter alia:

(a) Soliciting Debtor's clients to terminate their client relationships with
Debtor, without informing Debtor in advance and obtaining consent from
Debtor;

(b) Receiving, retaining and failing to account for the proceeds of Unfinished

Business; and

  (c) Failing to comply with their duties to account for and hold as trustee all profits derived from use of the Debtor's property or information and from all appropriations of the partnership opportunities.

  158. Debtor has been damaged in an amount to be proven at trial but believed to exceed $20,000,000 as a direct and proximate result of this breach of the Employment Agreements.

**FIFTH CLAIM FOR RELIEF**
**(Breach of the Implied Covenant of Good Faith**
**And Fair Dealing Against The IP Shareholder Defendants)**

  159. Plaintiff incorporates herein by reference the allegations set forth in Paragraphs 1 through 140, inclusive, as though fully set forth herein.

  160. By virtue of the IP Shareholders' membership in the Debtor, the Partnership Agreement, and the related Shareholders Agreements and Employment Agreements, there was and is a binding contract between Debtor and the IP Shareholder Defendants and/or Debtor is a third-party beneficiary of binding contracts between the IP Shareholder Defendants and the Heller PC's with power to enforce such contracts and to seek damages thereunder.

  161. Each contract between the IP Shareholders and the Debtor and/or with respect to which Debtor is a third-party beneficiary contains an implied covenant of good faith and fair dealing.

  162. The IP Shareholder Defendants breached the implied covenant of good faith and fair dealing by, inter alia:

  (a) Participating in a joint plan to solicit and transfer Debtor's IP litigation clientele to Covington and other firms, and to solicit Debtor's attorneys, clients and staff employees;

  (b) Failing timely to disclose their joint plan to depart from Debtor en masse under circumstances in which such information was material to Debtor's

1       ability to manage Debtor's financial circumstances and avoid severe

2       financial losses;

3     (c) Failing and refusing to disclose the status of unfinished business of Debtor,

4       including but not limited to the RAKTL Cases (and related Net Recoveries

5       and Contingent Fee calculations), and to account for any fees that are due to

6       Debtor;

7     (d) Failing to comply with their duties to account for and hold as trustee all

8       profits derived from use of the Debtor's property or information and from

9       all appropriations of the partnership opportunities; and

10     (e) Devising and participating in a secret plan to transfer Debtor's RAKTL

11       business to Covington and other firms, along with Debtor's specialized and

12       valuable employees, and to terminate Debtor's representation of the RAKTL

13       Defendants on the pretext that Debtor had breached its contract.

14     163.    Debtor has been damaged in an amount to be proven at trial but believed to

15 exceed $20,000,000 as a direct and proximate result of this breach of the implied covenant

16 of good faith and fair dealing.

### SIXTH CLAIM FOR RELIEF
### (Breach of Fiduciary Duty Against The
### IP Shareholder Defendants)

20     164.    Plaintiff incorporates herein by reference the allegations set forth in

21 Paragraphs 1 through 140, inclusive, as though fully set forth herein.

22     165.    The IP Shareholder Defendants violated their fiduciary duties to Debtor by,

23 inter alia:

24     (a) Participating in a joint plan to solicit and transfer Debtor's IP litigation

25       clientele to Covington and other firms, and to solicit Debtor's attorneys,

26       clients and staff employees;

27     (b) Failing timely to disclose their joint plan to depart from Debtor en masse

28       under circumstances in which such information was material to Debtor's

| | |
|---|---|
| 1 | ability to manage Debtor's financial circumstances and avoid severe |
| 2 | financial losses; |

3    (c) Failing and refusing to disclose the status of unfinished business of Debtor,
4        including but not limited to the RAKTL Cases (and related Net Recoveries
5        and Contingent Fee calculations), and to account for any fees that are due to
6        Debtor;

7    (d) Failing to comply with their duties to account for and hold as trustee all
8        profits derived from use of the Debtor's property or information and from
9        all appropriations of the partnership opportunities;.

10    (e) Devising and participating in a secret plan to transfer Debtor's RAKTL
11        business to Covington and other firms, along with Debtor's specialized and
12        valuable employees, and to terminate Debtor's representation of the RAKTL
13        Defendants on the pretext that Debtor had breached its contract; and

14    (f) Failing to compete reasonably for business against Covington during the
15        period in which the IP Shareholder Defendants were planning to move to
16        Covington.

17    166.    Debtor has been damaged in an amount to be proven at trial but believed to
18 exceed $20,000,000 as a direct and proximate result of this breach of their fiduciary
19 duties.

20                    **SEVENTH CLAIM FOR RELIEF**
21                    **(Equitable Indemnification Against**
                      **The IP Shareholder Defendants and Covington)**
22
23    167.    Plaintiff incorporates herein by reference the allegations set forth in
   Paragraphs 1 through 140, inclusive, as though fully set forth herein.
24
25    168.    The RAKTL Claim seeks more than $50 million from Debtor based upon
   circumstances surrounding of the transition of the RAKTL Cases from Debtor's
26
   representation to Covington and other counsel.  This transition was orchestrated by the IP
27
   Shareholder Defendants (who, in this transition, the RAKTL Defendants knew were not
28
   acting for Debtor's benefit) and Covington, who are responsible for all disclosures made

to the RAKTL Defendants, the timing and mechanics of the transition, the negotiation of fee agreements or other arrangements with the RAKTL Defendants and their successor law firms.

169.   In connection with the transition of the RAKTL Cases from Debtor's representation to Covington and other successor counsel, the IP Shareholder Defendants owed professional duties of loyalty, care and disclosure directly to the RAKTL Defendants.

170.   In connection with the transition of the RAKTL Cases from Debtor's representation to Covington and other successor counsel, Covington as a successor law firm owed professional duties of loyalty, care and disclosure directly to the RAKTL Defendants.

171.   If the RAKTL Defendants were injured in the transition of the RAKTL Cases from Debtor's representation to Covington and other successor counsel, as the RAKTL Defendants allege in the RAKTL Claim, such injuries were actually and proximately caused, in whole or in part, by breaches of the duties owed by the IP Shareholder Defendants and/or by Covington to the RAKTL Defendants in the transition, not by Debtor.

172.   Debtor is entitled to equitable indemnification from the IP Shareholder Defendants and Covington for any damages incurred by the RAKTL Defendants, as alleged in the RAKTL Claim. Debtor also is entitled to recover the attorneys' fees and costs incurred by Debtor in Debtor's defense against the RAKTL Claim and related proceedings.

## EIGHTH CLAIM FOR RELIEF
### (To Avoid and Recover Intentional Fraudulent Transfers – 11 U.S.C. §§ 548(a)(1)(A) and 550 Against Covington)

173.   Plaintiff incorporates herein by reference the allegations set forth in Paragraphs 1 through 140, inclusive, as though fully set forth herein.

174.    The Jewel Waiver constituted one or more transfers of an interest in property of the Debtor.  Prior to the adoption of the Dissolution Plan, Debtor had an exclusive property interest in all profits and/or benefits derived or arising from the completion of any Unfinished Business existing at the time of the adoption of the Dissolution Plan.

175.    Defendant Covington was the entity for whose benefit the transfers were made and/or the immediate or mediate transferee of the initial transferees of such transfers.

176.    Covington allowed the IP Shareholder Defendants to move their law practices to Covington.

177.    By its own express terms, and following Covington's hiring of the IP Shareholder Defendants, the Jewel Waiver initially transferred certain Unfinished Business, including, but not limited to, those "non-contingency/non-success" matters listed in Exhibit B to the Complaint, to Covington ("Covington Captured Unfinished Business"), which initial transfer of Covington Captured Unfinished Business occurred within two years prior to the Petition Date of December 28, 2008.[1]

178.    The Jewel Waiver was not granted in exchange for anything of value from Covington because no provision of the Dissolution Plan conditioned anyone's right to enjoy the benefits of the Jewel Waiver in exchange for the payment of any consideration of any kind to the Debtor.

179.    Debtor received no value or less than a reasonably equivalent value in exchange for the Jewel Waiver.

---

[1] The Unfinished Business matters listed in Exhibit B are identified using the matter numbers used by the Debtor prior to the transfer of these matters to Defendant.  The Jewel Waiver, by its own terms, applied only to "non-contingency/non-success" matters.  By listing a matter number in Exhibit B, Plaintiff is not conceding that the matter falls within this definition, or that the Jewel Waiver applies to it.  Plaintiff is also not conceding that the matters identified in Exhibit B are a complete list of all matters transferred to Defendant Covington.

180.     Debtor entered into the Jewel Waiver with actual intent to hinder, delay, or defraud one or more entities to which Debtor was indebted or became indebted on or after the date of such transfers.

181.     Plaintiff is informed and believes and based thereon alleges that, to the extent the Debtor did receive consideration of any kind from Covington, or anyone else, in exchange for the Jewel Waiver, the value of such consideration did not have a value that was reasonably equivalent to the value of the Covington Captured Unfinished Business initially transferred by virtue of the Jewel Waiver to Covington.

182.     At the time of the Jewel Waiver, Debtor was insolvent or became insolvent as a result of the loss of the value of the Covington Captured Unfinished Business initially transferred by virtue of the Jewel Waiver to Covington.

183.     At the time of the Jewel Waiver, Debtor was engaged in business or a transaction, or was about to engage in business or a transaction, for which the property remaining with Debtor following its loss of the value of the Covington Captured Unfinished Business initially transferred by virtue of Jewel Waiver to Covington, was an unreasonably small capital.

184.     At the time of the loss of the value of the Covington Captured Unfinished Business initially transferred by virtue of the Jewel Waiver to Covington, Debtor intended to incur, or believed that it would incur, debts that would be beyond its ability to pay as such debts matured.

185.     Plaintiff may avoid the initial transfer of the Covington Captured Unfinished Business initially transferred by virtue of the Jewel Waiver to Covington under Section 548(a)(1)(A) and recover the value of the Covington Captured Unfinished Business initially transferred by virtue of the Jewel Waiver to Covington pursuant to Section 550.

//

//

# NINTH CLAIM FOR RELIEF
## (To Avoid and Recover Constructive Fraudulent Transfers –
## 11 U.S.C. §§ 548(a)(1)(B) and 550 Against Covington)

186.    Plaintiff incorporates herein by reference the allegations set forth in Paragraphs 1 through 140, inclusive, as though fully set forth herein.

187.    The Jewel Waiver constituted one or more transfers of an interest in property of the Debtor.

188.    Defendant was the entity for whose benefit the transfers were made and/or the immediate or mediate transferee of the initial transferees of such transfers.

189.    By its own express terms, and following Covington's hiring the IP Shareholder Defendants, the Jewel Waiver initially transferred Covington Captured Unfinished Business, which initial transfer of Covington Captured Unfinished Business occurred within two years prior to the Petition Date of December 28, 2008.

190.    The Jewel Waiver was not granted in exchange for anything of value from Covington because no provision of the Dissolution Plan conditioned anyone's right to enjoy the benefits of the Jewel Waiver in exchange for the payment of any consideration of any kind to Debtor.

191.    Debtor received no value or less than a reasonably equivalent value in exchange for the Jewel Waiver.

192.    At the time of the Jewel Waiver, Debtor was insolvent or became insolvent as a result of the loss of the value of the Covington Captured Unfinished Business initially transferred by virtue of Jewel Waiver to Covington.

193.    At the time of the loss of the value of the Covington Captured Unfinished Business initially transferred by virtue of the Jewel Waiver to Covington, Debtor intended to incur, or believed that it would incur, debts that would be beyond its ability to pay as such debts matured.

194.    Plaintiff may avoid the initial transfer of the Covington Captured Unfinished Business initially transferred by virtue of the Jewel Waiver to Covington under Section 548(a)(1)(B) and recover the value of the Covington Captured Unfinished Business initially transferred by virtue of the Jewel Waiver to Covington pursuant to Section 550.

**TENTH CLAIM FOR RELIEF**
**(To Avoid and Recover Actual and Constructive Fraudulent Transfers –**
**Cal. Civ. Code §§ 3439.04 and 3439.07 and 11 U.S.C. §§ 544, 550**
**Against Covington)**

195.    Plaintiff incorporates herein by reference the allegations set forth in Paragraphs 1 through 140, inclusive, as though fully set forth herein.

196.    Plaintiff is informed and believes, and thereon alleges, that there is a creditor that holds an unsecured claim that is allowable under Section 502 of the Bankruptcy Code.

197.    The Jewel Waiver constituted one or more transfers of an interest in property of the Debtor.  Prior to the adoption of the Dissolution Plan, Debtor had an exclusive property interest in all profits and/or benefits derived or arising from the completion of any Unfinished Business existing at the time of the adoption of the Dissolution Plan.

198.    Defendant was the entity for whose benefit the transfers were made and/or the immediate or mediate transferee of the initial transferees of such transfers.

199.    By its own express terms, and following Covington's hiring the IP Shareholder Defendants, the Jewel Waiver initially transferred Covington Captured Unfinished Business, which initial transfer of Covington Captured Unfinished Business occurred within four years prior to the Petition Date of December 28, 2008.

200.    The Jewel Waiver was not granted in exchange for anything of value from Covington because no provision of the Dissolution Plan conditioned anyone's right to enjoy the benefits of the Jewel Waiver in exchange for the payment of any consideration of any kind to the Debtor.

201.    Debtor received no value or less than a reasonably equivalent value in exchange for the Jewel Waiver.

202.    Debtor entered into the Jewel Waiver with actual intent to hinder, delay, or defraud one or more creditors of Debtor.

203.    Plaintiff is informed and believes and based thereon alleges that, to the extent Debtor did receive consideration of any kind from Covington, or anyone else, in exchange for the Jewel Waiver, the value of such consideration did not have a value that was reasonably equivalent to the value of the Covington Captured Unfinished Business initially transferred by virtue of the Jewel Waiver to Covington.

204.    At the time of the Jewel Waiver, Debtor was insolvent or became insolvent as a result of the loss of the value of the Covington Captured Unfinished Business initially transferred by virtue of Jewel Waiver to Covington.

205.    At the time of the Jewel Waiver, Debtor was engaged in business or a transaction, or was about to engage in business or a transaction, for which the property remaining with Debtor following its loss of the value of the Covington Captured Unfinished Business initially transferred by virtue of Jewel Waiver to Covington, was an unreasonably small capital.

206.    At the time of the loss of the value of the Covington Captured Unfinished Business initially transferred by virtue of the Jewel Waiver to Covington, Debtor intended to incur, or believed that it would incur, debts that would be beyond its ability to pay as such debts matured.

207.    Plaintiff may avoid the initial transfer of the Covington Captured Unfinished Business initially transferred by virtue of the Jewel Waiver to Covington under California Civil Code Sections 3439.04, 3439.07, and Bankruptcy Code Section 544 and recover the value of the Covington Captured Unfinished Business initially transferred by virtue of the Jewel Waiver to Covington pursuant to Section 550.

## ELEVENTH CLAIM FOR RELIEF
### (To Avoid and Recover Constructive Fraudulent Transfers –
### Cal. Civ. Code § 3439.05 and 3439.07 and 11 U.S.C. §§ 544, 550
### Against Covington)

208.   Plaintiff incorporates herein by reference the allegations set forth in Paragraphs 1 through 140, inclusive, as though fully set forth herein.

209.   Plaintiff is informed and believes, and thereon alleges, that there is a creditor that holds an unsecured claim arising on or before the Petition Date that is allowable under Section 502 of the Bankruptcy Code.

210.   The Jewel Waiver constituted one or more transfers of an interest in property of the Debtor.  Prior to the adoption of the Dissolution Plan, Debtor had an exclusive property interest in all profits and/or benefits derived or arising from the completion of any Unfinished Business existing at the time of the adoption of the Dissolution Plan.

211.   Covington was the entity for whose benefit the transfers were made and/or the immediate or mediate transferee of the initial transferees of such transfers.

212.   By its own express terms, and following Covington's hiring the IP Shareholder Defendants, the Jewel Waiver initially transferred Covington Captured Unfinished Business, which initial transfer of Covington Captured Unfinished Business occurred within four years prior to the Petition Date of December 28, 2008.

213.   The Jewel Waiver was not granted in exchange for anything of value from Covington because no provision of the Dissolution Plan conditioned anyone's right to enjoy the benefits of the Jewel Waiver in exchange for the payment of any consideration of any kind to Debtor.

214.   Debtor received no value or less than a reasonably equivalent value in exchange for the Jewel Waiver.

215.   Plaintiff is informed and believes and based thereon alleges that, to the extent Debtor did receive consideration of any kind from Covington, or anyone else, in exchange

for the Jewel Waiver, the value of such consideration did not have a value that was reasonably equivalent to the value of the Covington Captured Unfinished Business initially transferred by virtue of the Jewel Waiver to Covington.

216.   At the time of the Jewel Waiver, Debtor was insolvent or became insolvent as a result of the loss of the value of the Covington Captured Unfinished Business initially transferred by virtue of Jewel Waiver to Covington.

217.   Plaintiff may avoid the initial transfer of the Covington Captured Unfinished Business initially transferred by virtue of the Jewel Waiver to Covington under California Civil Code Sections 3439.05, 3439.07, and Bankruptcy Code Section 544 and recover the value of the Covington Captured Unfinished Business initially transferred by virtue of the Jewel Waiver to Covington pursuant to Section 550.

**TWELFTH CLAIM FOR RELIEF**
**(Aiding and Abetting Breach of Fiduciary Duty**
**Against Covington)**

218.   Plaintiff incorporates herein by reference the allegations set forth in Paragraphs 1 through 140, inclusive, as though fully set forth herein.

219.   Covington was aware at all relevant times that the IP Shareholder Defendants owed fiduciary duties of loyalty, care, candor and good faith and fair dealing to Debtor and that such duties precluded the IP Shareholder Defendants, and each of them, from, inter alia:

(a) Participating in a joint plan to solicit and transfer Debtor's IP litigation clientele to Covington and other firms, and to solicit Debtor's attorneys, clients and staff employees;

(b) Failing timely to disclose their joint plan to depart from Debtor en masse under circumstances in which such information was material to Debtor's ability to manage Debtor's financial circumstances and avoid severe financial losses;

(c) Failing and refusing to disclose the status of unfinished business of Debtor,

1   including but not limited to the RAKTL Cases (and related Net Recoveries

2   and Contingent Fee calculations), and to account for any fees that are due to

3   Debtor; and

4   (d) Devising and participating in a secret plan to transfer Debtor's RAKTL

5   business to Covington and other firms, along with Debtor's specialized and

6   valuable employees, and to terminate Debtor's representation of the RAKTL

7   Defendants on the pretext that Debtor had breached its contract.

8   220.   Covington aided, abetted and participated in the IP Shareholder Defendants'

9   breach of fiduciary duty by, inter alia:

10  (e) Arranging, hosting, paying and participating in for surreptitious meetings

11  with representatives of the IP Shareholder Defendants, in which plans were

12  made to ensure that Covington would secure the benefits of an en masse

13  departure of a substantial portion of Debtor's IP litigation practice and its

14  clients;

15  (f) Requesting, receiving and using confidential information about Debtor,

16  Debtor's clients and Debtor's employees, including but not limited to

17  confidential employee information, compensation information and

18  information with respect to Debtor's financial status and strategic plans;

19  (g) Offering the IP Shareholder Defendants financial inducements to solicit

20  each other, key employees and key clients to leave Debtor and transfer their

21  business to Covington; and

22  (h) Assisting the IP Shareholder Defendants to complete, bill for and receive

23  payment for the RAKTL Cases while refusing to account to Debtor for

24  Debtor's financial interest in the Cases.

25  221.   Debtor has been damaged in an amount to be proven at trial but believed to

26  exceed $20,000,000 as a direct and proximate result of Covington's aiding and abetting

27  breach of fiduciary duty.

28  //

## THIRTEENTH CLAIM FOR RELIEF
### (Intentional Interference With Contractual Relations)

222.    Plaintiff incorporates herein by reference the allegations set forth in Paragraphs 1 through 140, inclusive, as though fully set forth herein.

223.    There was an existing contract between the RAKTL defendants and Debtor, which contract forms the basis for the unsecured claim filed by RAKTL as described further below.

224.    Covington was aware the contract between RAKTL and the Debtor.

225.    Covington engaged in a series of acts that were designed to induce a rbeach or disruption of the contract.

226.    There was an actual breach by RAKTL of the contract and/or a disruption of the contractual relationship.

227.    The Debtor has been damaged by at least $10.7 million and in an amount to be proven at trial.

## FOURTEENTH CLAIM FOR RELIEF
### Accounting Against All Defendants)

228.    Plaintiff incorporates herein by reference the allegations set forth in Paragraphs 1 through 140, inclusive, as though fully set forth herein.

229.    Debtor demands a full and complete accounting by the IP Shareholder Defendants, the RAKTL Defendants and Covington, setting forth in detail the following items:

(i) With respect to each Case resolved as of November 1, 2010, (i) the amount of any Net Recovery by the IP Shareholder Defendants, whether by settlement, judgment or otherwise, and (ii) the amount of the Contingent Fee payable to Debtor on that Net Recovery, calculated in accordance with the Fee Agreement, showing in detail the calculation of the Net Recovery and the Contingent Fee.

(j) With respect to each Case resolved after November 1, 2010, (i) the amount

of any Net Recovery by the IP Shareholder Defendants, and (ii) the amount
of the Contingent Fee that would be payable to the Debtor on that Net
Recovery, if the Case had stayed with the Debtor, showing in detail the
calculation of the Net Recovery and the Contingent Fee.

(k) The status of each Case that remains unresolved, including the timing of any
expected settlement or trial and the amount, and a detailed calculation of the
anticipated Net Recovery and the Contingent Fee payable thereon.

230.    To the extent that the Accounting shows that Debtor is entitled to a
contractual Contingent Fee and/or a fee in quantum meruit payable immediately or in the
future, Debtor requests that the Court enter judgment for Debtor in the full amount
thereof.

## FIFTHTEENTH CLAIM FOR RELIEF
### (Declaratory Relief Against All Defendants)

231.    Plaintiff incorporates herein by reference the allegations set forth in
Paragraphs 1 through 140, inclusive, as though fully set forth herein.

232.    Debtor and A2D entered into the RAKTL Fee Agreement (the 2006 Fee
Agreement, the 4/30/07 Amendment and the 6/29/07 Amendment). The RAKTL Fee
Agreement required A2D to pay a Contingent Fee to Debtor on "Net Recoveries" in the
Cases.

233.    A number of the Cases were resolved prior to October 1, 2008 and the
accrued Contingent Fee on the Net Recoveries was at least $10.7 million, payable in full
on November 1, 2010. With respect to Cases that had not been resolved as of October 1,
2008 Debtor has a quantum meruit interest in any recoveries obtained by RAKTL.

234.    Despite a demand duly made by Debtor, no portion of the RAKTL
Contingent Fee owed to Debtor has been paid. The amount presently due and owing is at
least $10.7 million.

235.    An actual dispute has arisen and is in need of judicial resolution with respect
to the Cases that have settled prior to October 1, 2008 concerning the amount of fees for

legal services to which Debtor is entitled under the terms of the RAKTL Fee Agreement.

236. An actual dispute has arisen and is in need of judicial resolution with respect to the Cases that have settled on or after October 1, 2008 concerning the amount of fees for legal services to which Debtor is entitled under principles of quantum meruit.

237. Debtor seeks a judicial declaration as follows:

238. That the RAKTL Defendants, the IP Shareholder Defendants and Covington are required to make full disclosure of all past settlements of the Cases and of future settlements as and when such settlements occur, including a full accounting to Debtor of all settlement proceeds and other facts and circumstances that could bear on the amount of fees for legal services to which Debtor is entitled under the RAKTL Fee Agreement and/or quantum meruit;

239. That with respect to the Cases that have settled prior to October 1, 2008, Debtor is entitled to fees for legal services under the terms of the RAKTL Fee Agreement; and

240. That with respect to the Cases that have settled on or after October 1, 2008, Debtor is entitled to fees for legal services under quantum meruit principles.

241. Debtor further requests that the Court retain jurisdiction to resolve disputes related to the calculation of Debtor's fees for legal services under the RAKTL Fee Agreement or under quantum meruit principles with respect to Cases not settled at the time of trial.

242. Debtor further requests that the RAKTL Defendants, the IP Shareholder Defendants and Covington be temporarily, preliminarily and permanently enjoined against any conduct that is inconsistent with Debtor's financial interest under the RAKTL Fee Agreement and its quantum meruit rights, including but not limited to a failure to account to Debtor and the disposition or dissipation of monies due and payable to Debtor.

### SIXTEENTH CLAIM FOR RELIEF
**(To Avoid and Recover Intentional Fraudulent Transfers**
**Pursuant to 11 U.S.C. §§ 548(a)(1)(A) & 550) – Against IP Shareholder Defendants)**

243. The allegations of paragraphs 1 through 140 of this Complaint are

incorporated herein by reference.

244. Plaintiff is informed and believes, and thereon alleges, that there is a creditor of the Debtor that holds an unsecured claim that is allowable under Section 502 of the Bankruptcy Code.

245. The Annual Bonus, the Capital Transfers, and the Base Salary Transfers (collectively referred to as "the Transfers") constituted one or more transfers of property of the Debtor.

246. The Debtor made such transfers on or within two years prior to the Petition Date of December 28, 2008.

247. Plaintiff alleges on information and belief that the Debtor made the Transfers to the Heller Shareholders with the express intent to hinder, delay, or defraud one or more entities to which Debtor was indebted or became indebted on or after the date of such Transfers.

248. The Debtor made such Transfers without receiving anything of value, or, alternatively, to the extent the Debtor did receive consideration of any kind from anyone in exchange for any of the Transfers, the value of such consideration did not have a value that was reasonably equivalent to the value of the Transfer in question.

249. At the time of the Transfers, the Debtor was insolvent or became insolvent as a result of the Transfers.

250. At the time of the Transfers, the Debtor was engaged in business or a transaction, or was about to engage in business or a transaction, for which the remaining assets of the Debtor were unreasonably small in relation to the business or transaction.

251. At the time of the Transfers, the Debtor intended to incur, or believed or reasonably should have believed that it would incur, debts that would be beyond its ability to pay as such debts matured.

252. The Heller Shareholders, including IP Shareholder Defendants, were the initial transferees of the Transfers and/or the entities for whose benefit the Transfers were made.

253. Alternatively, the Heller Shareholders, including IP Shareholder Defendants, were the entities for whose benefit the Transfers were made and/or the immediate or mediate transferees of the initial transferees of such Transfers.

254. Plaintiff may avoid the Transfers under 11 U.S.C. § 548(b) and recover the value of the Transfers made to IP Shareholder Defendants pursuant to 11 U.S.C. § 550.

WHEREFORE, Plaintiff prays for judgment as set forth below.

## SEVENTEENTH CLAIM FOR RELIEF
### (To Avoid and Recover Constructive Fraudulent Transfers
### Pursuant to 11 U.S.C. §§ 548(a)(1)(B) & 550 – Against IP Shareholder Defendants)

255. The allegations of paragraphs 1 through 140 of this Complaint are incorporated herein by reference.

256. Plaintiff is informed and believes, and thereon alleges, that there is a creditor of the Debtor that holds an unsecured claim that is allowable under Section 502 of the Bankruptcy Code.

257. The Transfers constituted one or more transfers of property of the Debtor.

258. The Debtor made such transfers on or within two years prior to the Petition Date of December 28, 2008.

259. The Debtor made such Transfers without receiving anything of value, or, alternatively, to the extent the Debtor did receive consideration of any kind from anyone in exchange for any of the Transfers, the value of such consideration did not have a value that was reasonably equivalent to the value of the Transfer in question.

260. At the time of the Transfers, the Debtor was insolvent or became insolvent as a result of the Transfers.

261. At the time of the Transfers, the Debtor was engaged in business or a transaction, or was about to engage in business or a transaction, for which the remaining assets of the Debtor were unreasonably small in relation to the business or transaction.

262.   At the time of the Transfers, the Debtor intended to incur, or believed or reasonably should have believed that it would incur, debts that would be beyond its ability to pay as such debts matured.

263.   The Heller Shareholders, including IP Shareholder Defendants, were the initial transferees of the Transfers and/or the entities for whose benefit the Transfers were made.

264.   Alternatively, the Heller Shareholders, including IP Shareholder Defendants, were the entities for whose benefit the Transfers were made and/or the immediate or mediate transferees of the initial transferees of such Transfers.

265.   Plaintiff may avoid the Transfers under 11 U.S.C. § 548(b) and recover the value of the Transfers made to IP Shareholder Defendants pursuant to 11 U.S.C. § 550.

WHEREFORE, Plaintiff prays for judgment as set forth below.

**EIGHTEENTH CLAIM FOR RELIEF**
**(To Avoid and Recover Constructive Fraudulent Transfers**
**Pursuant to 11 U.S.C. §§ 548(a)(1)(B)(ii)(IV) & 550 – Against IP Shareholder**
**Defendants)**

266.   The allegations of paragraphs 1 through 140 of this Complaint are incorporated herein by reference.

267.   Plaintiff alleges on information and belief that the Debtor made the Transfers to or for the benefit of the Heller Shareholders, including IP Shareholder Defendants, each of whom was an insider, under an employment contract and not in the ordinary course of business.

268.   Plaintiff may avoid the Transfers under 11 U.S.C. § 548(b), and recover the value of the Transfers made to IP Shareholder Defendants pursuant to 11 U.S.C. § 550.

WHEREFORE, Plaintiff prays for judgment as set forth below.

**NINETEENTH CLAIM FOR RELIEF**
**(To Avoid and Recover Constructive  Fraudulent Transfers**
**Pursuant to 11 U.S.C. §§ 548(b) & 550 – Against IP Shareholder Defendants)**

269.   The allegations of paragraphs 1 through 140 of this Complaint are

1 | incorporated herein by reference.

2 |   270. At all times relevant to the claims asserted herein, the Debtor was a

3 | partnership.

4 |   271. The Transfers were made to the Heller Shareholders, including IP

5 | Shareholder Defendants

6 |   272. The Debtor did not receive fair consideration for any of the Transfers to the

7 | Heller Shareholders, including IP Shareholder Defendants.

8 |   273. Plaintiff alleges on information and belief that from the time of the first

9 | Transfers, the Debtor was insolvent or the Debtor became insolvent as a result of the

10 | Transfers.

11 |   274. Plaintiff may avoid the Transfers under 11 U.S.C. § 548(b), and recover the

12 | value of the Transfers made to IP Shareholder Defendants pursuant to 11 U.S.C. § 550.

13 |   WHEREFORE, Plaintiff prays for judgment as set forth below.

**TWENTIETH CLAIM FOR RELIEF**
**(To Avoid and Recover Actual And Constructive Fraudulent Transfers Pursuant to Cal. Civ. Code §§ 3439.04(a)(1) and (2) and 3439.07(a) and 11 U.S.C. §§ 544, 550 – Against IP Shareholder Defendants)**

17 |   275. The allegations of paragraphs 1 through 140 of this Complaint are

18 | incorporated herein by reference.

19 |   276. Plaintiff is informed and believes, and thereon alleges, that there is a

20 | creditor of the Debtor that holds an unsecured claim that is allowable under Section 502 of

21 | the Bankruptcy Code.

22 |   277. The Transfers constituted one or more transfers of property of the Debtor.

23 |   278. The Debtor made such transfers on or within two years prior to the Petition

24 | Date of December 28, 2008.

25 |   279. Plaintiff alleges on information and belief that the Debtor made the

26 | Transfers to the Heller Shareholders, including IP Shareholder Defendants, with the

27 | express intent to hinder, delay, or defraud one or more entities to which Debtor was

28 | indebted or became indebted on or after the date of such Transfers.

280. The Debtor made such Transfers without receiving anything of value, or, alternatively, to the extent the Debtor did receive consideration of any kind from anyone in exchange for any of the Transfers, the value of such consideration did not have a value that was reasonably equivalent to the value of the Transfer in question.

281. At the time of the Transfers, the Debtor was insolvent or became insolvent as a result of the Transfers.

282. At the time of the Transfers, the Debtor was engaged in business or a transaction, or was about to engage in business or a transaction, for which the remaining assets of the Debtor were unreasonably small in relation to the business or transaction.

283. At the time of the Transfers, the Debtor intended to incur, or believed or reasonably should have believed that it would incur, debts that would be beyond its ability to pay as such debts matured.

284. The Heller Shareholders, including IP Shareholder Defendants, were the initial transferees of the Transfers and/or the entities for whose benefit the Transfers were made.

285. Alternatively, the Heller Shareholders, including IP Shareholder Defendants, were the entities for whose benefit the Transfers were made and/or the immediate or mediate transferees of the initial transferees of such Transfers.

286. Plaintiff may avoid the Transfers under California Civil Code Sections 3439.04 and 3439.07 and Bankruptcy Code Section 544 and recover the value of the Transfers made to IP Shareholder Defendants under Bankruptcy Code Section 550(a).

WHEREFORE, Plaintiff prays for judgment as set forth below.

**TWENTY-FIRST CLAIM FOR RELIEF**
**(To Avoid and Recover Constructive Fraudulent Transfers**
**Pursuant to Cal. Civ. Code §§ 3439.05 and 3439.07(a) and 11 U.S.C. §§ 544, 550 –**
**Against IP Shareholder Defendants)**

287. The allegations of paragraphs 1 through 140 of this Complaint are incorporated herein by reference.

288.    Plaintiff is informed and believes, and thereon alleges, that there is a creditor of the Debtor that holds an unsecured claim that is allowable under Section 502 of the Bankruptcy Code.

289.    The Transfers constituted one or more transfers of property of the Debtor.

290.    The Debtor made such transfers on or within two years prior to the Petition Date of December 28, 2008.

291.    Plaintiff alleges on information and belief that the Debtor made the Transfers to the Heller Shareholders, including IP Shareholder Defendants, with the express intent to hinder, delay, or defraud one or more entities to which Debtor was indebted or became indebted on or after the date of such Transfers.

292.    The Debtor made such Transfers without receiving anything of value, or, alternatively, to the extent the Debtor did receive consideration of any kind from anyone in exchange for any of the Transfers, the value of such consideration did not have a value that was reasonably equivalent to the value of the Transfer in question.

293.    At the time of the Transfers, the Debtor was insolvent or became insolvent as a result of the Transfers.

294.    At the time of the Transfers, the Debtor was engaged in business or a transaction, or was about to engage in business or a transaction, for which the remaining assets of the Debtor were unreasonably small in relation to the business or transaction.

295.    At the time of the Transfers, the Debtor intended to incur, or believed or reasonably should have believed that it would incur, debts that would be beyond its ability to pay as such debts matured.

296.    The Heller Shareholders, including the IP Shareholder Defendants, were the initial transferees of the Transfers and/or the entities for whose benefit the Transfers were made.

297.    Alternatively, the Heller Shareholders, including IP Shareholder Defendants, were the entities for whose benefit the Transfers were made and/or the immediate or mediate transferees of the initial transferees of such Transfers.

1    298.    Plaintiff may avoid the Transfers under California Civil Code Sections

2    3439.05 and 3439.07 and Bankruptcy Code Section 544 and recover the value of the

3    Transfers made to IP Shareholder Defendants under Bankruptcy Code Section 550(a).

4    WHEREFORE, Plaintiff prays for judgment as set forth below.

**TWENTY-SECOND CLAIM FOR RELIEF**
5
**(To Avoid and Recover Preferential Transfers**
6    **Pursuant to 11 U.S.C. §§ 547 & 550 – Against IP Shareholder Defendants)**

7    299.    The allegations of paragraphs 1 through 140 of this Complaint are

8    incorporated herein by reference.

9    300.    Plaintiff alleges on information and belief that the Heller Shareholders,

10   including IP Shareholder Defendants, were "insiders" within the meaning of 11 U.S.C. §

11   101(31)(C).

12   301.    The Transfers constituted one or more transfers of property of the Debtor.

13   302.    The Debtor made the Transfers within one year before the Petition Date.

14   303.    Pursuant to Section 101(10)(A) of the Bankruptcy Code, the Heller

15   Shareholders, including IP Shareholder Defendants, were creditors because at the time of

16   the Transfers, the Heller Shareholders, including IP Shareholder Defendants, had a claim

17   against the Debtor that arose at the time of or before the order for relief concerning the

18   Debtor for, as applicable, payment of the Transfers.

19   304.    The Transfers were made on account of an antecedent debt owed by Debtor

20   to the Heller Shareholders, including IP Shareholder Defendants, before such Transfers

21   were made.

22   305.    The Transfers were made while the Debtor was insolvent.  The Debtor was

23   insolvent under §§101(32)(A) and 547(b)(3) of the Bankruptcy Code at all relevant times

24   because the sum of the Debtor's debts were greater than all of the Debtor's property, at a

25   fair evaluation, during the one-year preceding the Petition Date.

26   306.    The Transfers enabled the Heller Shareholders, including IP Shareholder

27   Defendants, to receive more on account of their claims than they would have received if

28   the Transfers had not been made and the Heller Shareholders, including IP Shareholder