THOMAS A. WILLOUGHBY, State Bar No. 137597
HOLLY A. ESTIOKO, State Bar No. 242392
FELDERSTEIN FITZGERALD
WILLOUGHBY PASCUZZI & RIOS LLP
500 Capitol Mall, Suite 2250
Sacramento, CA 95814
Telephone: (916) 329-7400
Facsimile: (916) 329-7435
E-mail: twilloughby@ffwplaw.com
E-mail: hestioko@ffwplaw.com

Attorneys for The Post Confirmation Liquidating Debtor
Heller Ehrman LLP

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>HELLER EHRMAN LLP,<br><br>　　　　Post Confirmation Liquidating Debtor. | CASE NO.: 08-32514<br><br>Chapter 11<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF POST CONFIRMATION LIQUIDATING DEBTOR HELLER EHRMAN LLP'S MOTION FOR AUTHORITY TO MAKE 2021 INTERIM DISTRIBUTION TO NON-EMPLOYEE GENERAL UNSECURED CREDITORS PURSUANT TO 11 U.S.C. §105(a) AND JOINT PLAN OF LIQUIDATION OF HELLER EHRMAN LLP (AUGUST 9, 2010) AND NOTICE OF OPPORTUNITY FOR HEARING**<br><br>**[No hearing will be held unless affected party responds to this Motion – Bankruptcy Local Rule 9014-1]** |

**TO THE HONORABLE DENNIS MONTALI, UNITED STATES BANKRUPTCY JUDGE:**

Pursuant to 11 U.S.C. § 105(a), Federal Rules of Bankruptcy Procedure 3009 & 3021, and the Confirmed Plan in this bankruptcy case, the post-confirmation liquidating debtor Heller Ehrman LLP, by and through its Chapter 11 Plan Administrator, Michael F. Burkart, submits this Memorandum of Points and Authorities ("MPA") in support of its Motion for entry of an order authorizing the Debtor to make an interim distribution of 4% to the Debtor's Allowed Non-

Employee GUC Claimants and for related relief as set forth in the Motion.[1]

## I. FACTUAL BACKGROUND

The Factual Background has been set forth in the accompanying Motion, and those facts are fully incorporated into this MPA.

## II. LEGAL ARGUMENT

Federal Rule of Bankruptcy Procedure 3021 provides that, "after a plan is confirmed, distribution shall be made to creditors whose claims have been allowed…" The rule "does not provide guidance concerning when distribution should occur," but "[d]istribution is made in accordance with the terms of the confirmed plan. Thus, the timing of distribution and manner of distribution may be covered in the plan. Rule 3021 allows **maximum flexibility to the drafter of the plan in the area of distribution**." 9 Collier on Bankruptcy ¶ 3021.01 (A. N. Resnick and H. J. Sommer, eds. 16th ed. 2018) (emphasis added).

Here, the Confirmed Plan at section 5.20 states, *inter alia*, that:

"Distributions to holders of Allowed Claims in Classes 7 through 9 **shall be made as soon as practicable as determined by the business judgment of the Plan Administrator** based upon the amount of funds to be distributed relative to the administrative costs of making a distribution;"

and,

"Except as otherwise agreed by the holder of a particular Claim…all amounts to be paid by the Liquidating Debtor under the Plan **shall be distributed in such amounts and at such times as is reasonably prudent, in the form of interim and/or final distributions,** with sufficient reserves established to satisfy the reserve requirements for Disputed Unsecured Claims, Professional Fees and anticipated Plan Expenses."

Plan at § 5.20 (Emphasis added).

Thus, the Plan provides that the Plan Administrator may make "interim and/or final distributions" at such times and in such amounts that he deems "reasonably prudent" and according to his "business judgment."

In addition, the Plan provides that the Court has jurisdiction over this matter and shall

---

[1] Unless otherwise noted, all capitalized terms shall have the same meaning as set forth in the Motion.

retain jurisdiction, *inter alia*, "To approve interim and/or final distributions to creditors, including the approval of any publication notices, which the Plan Administrator in his sole discretion believes should be noticed to creditors." *See* Plan, Article IX, Retention of Jurisdiction, at (xiii).

11 U.S.C. § 105(a) provides, "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. Interim distribution orders are authorized under section 105(a). *In re Frantz*, 2020 U.S. Dist. LEXIS 51778 at *38 (citing *In re Bird*, 565 B.R. 382, 400 (Bankr. S.D. Tex. 2017) ("The Code does not bar an interim distribution, and when it benefits the estate to do so, the Court is authorized to approve any interim distribution using its authority pursuant to § 105(a). Here, the interim distribution will maximize distribution to the creditors because it will decrease the amount lost to bank fees. Stated differently, an interim distribution right now is in the best interests of the estate.").

In addition, although Bankruptcy Rule 3009 provides for payment of dividends to creditors in a Chapter 7 case, a bankruptcy court, by order, may provide for distributions under Rule 3009, superseding the rule's contemplation of a Chapter 7 case. See 9 Collier on Bankruptcy ¶ 3009.02 (A. N. Resnick and H. J. Sommer, eds. 16th ed. 2018) ("Rule 3009 does not eliminate court participation in the distribution process, and circumstances may require a court order in connection with distributions (e.g., to approve interim distributions or when the trustee fails to act.").

The Plan Administrator has resolved all Disputed Claims in this case, including the Paravue claim. The Plan Administrator had intended to make a final distribution to non-employee general unsecured claimants and to close this bankruptcy case once the Paravue claim was resolved. However, the Plan Administrator has recently received funds in the amount of approximately $2.6 million in connection with an unexpected distribution from a Heller investment, specifically, the VLG Investment Fund 2002, and there is a possibility of receiving more funds in the future. In light of these changed circumstances—the receipt of a large amount of funds and the possibility of more funds to be received in the future—the Plan Administrator now believes that it is in the best interests of creditors to keep the bankruptcy case open, and further believes that it would be fair and equitable to make an interim distribution to non-

employee general unsecured claimants at this time. In addition, it is important to make such a distribution before the year's end in order to mitigate any income tax liability for 2021. The distribution percentage to non-employee general unsecured claimants will be 4%, which is the same percentage the employee general unsecured claimants received in their 2020 Employee Distribution, and will bring the total distribution to the non-employee general unsecured claimants to 64% (the same as the employee general unsecured claimants). The Plan Administrator requests Court authority to make this distribution. Burkart Decl. at ¶ 14.

As discussed in the First, Second, Third, and Fourth Distribution Motions (hereafter collectively referred to as the Prior Distribution Motions), and approved in the Orders thereto, and/or consistent with Articles 1.54, 1.58, 1.137, 4.8, 4.9, 4.10, 5.20, 5.21, 5.22(i), (iv), (vi) & (vii), 5.26 and 5.31 of the Plan, no distribution will be made with respect to De Minimis Claims, disallowed Disputed Claims, Unliquidated Claims, Late-Filed Claims, or Subordinated/Interest Claims (as defined and discussed in Prior Distribution Motions and their exhibits/amended exhibits). Burkart Decl. at ¶ 16.

A reserve account had been established with respect to De Minimus Claims consistent with the Plan. Claims that are no longer De Minimus as of the 2021 GUC Distribution have been included on Exhibit 1 and will be paid in this distribution. See Plan, Articles 5.26 & 5.28. Burkart Decl. at ¶ 17.

A thorough review of all scheduled and filed claims has been conducted, and all of the Debtor's claim objections to Disputed Claims have now been fully resolved. Disputed Claims that have been allowed, if any, have been included on Exhibit 1 and will be paid in the 2021 GUC Distribution. For Disputed Claims that have been disallowed, the funds once reserved for those claims will be redistributed to the holders of allowed general unsecured claims consistent with the Plan. See Plan, Articles 5.20, 5.21, 5.22(i), (iv), (vi) & (vii). Burkart Decl. at ¶ 18.

No reserve account was ever established with respect to Unliquidated Claims, and no order was ever entered by the Court requiring such a reserve. There will be no distribution on such claims. See Plan, Articles 1.54, 1.137, & 5.22(iii). Burkart Decl. at ¶ 19.

//

-4-

MPA iso Motion to Approve 2021 Distribution to General Unsecured Creditors

Case: 08-32514    Doc# 4403-1    Filed: 09/23/21    Entered: 09/23/21 17:17:52    Page 4 of 5

## III. CONCLUSION

WHEREFORE, based upon the Motion, the MPA, the Burkart Declaration, and the Exhibit attached to the Burkart Declaration, the Debtor requests that the Court enter an order granting the relief requested in the Motion.

Dated: September 23, 2021

FELDERSTEIN FITZGERALD
WILLOUGHBY PASCUZZI & RIOS LLP

By: /s/ Thomas A. Willoughby
THOMAS A. WILLOUGHBY
Attorneys for The Post-Confirmation Liquidating
Debtor Heller Ehrman LLP